# EXHIBIT 3

Deficit is intended to comply with the provisions of Regulations Section 1.704 1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

6.4   Timing of Distributions. The determination of reserves and the amount and timing of distributions of Cash Available For Distribution shall be made as Approved by the Partners.

6.5   Consent by Partners. The methods hereinabove set forth by which income, gains, losses, deductions, credits and distributions are allocated and apportioned are hereby expressly consented to by each Partner as a specific condition to becoming a Partner. Each Partner covenants that he or it will make no claim or representation concerning the income tax effects of the provisions contained in this Agreement that is inconsistent with the provisions of this Agreement.

6.6   In-Kind Distributions. To the extent that non-cash assets are distributed to the Partners, the fair market value of those assets shall first be determined and the Capital Accounts of the Partners shall be adjusted to reflect any gain or loss which would have been generated had the assets been sold for their determined value. Then those assets shall be distributed in accordance with that valuation. Any non-cash assets (including, but not limited to, promissory notes) received by the Partnership in connection with a sale or other disposition may be distributed in kind to the Partners or to a collection account with the proceeds to be distributed in accordance with the terms of this Paragraph 6, as received. The fair market value of assets distributable in-kind to be determined under this Paragraph 6.6 shall be equal to an amount Approved by the Partners.

6.7   Assignment of Partnership Interests. If a Partner assigns or transfers all or part of their Partnership Interests to another person during any fiscal period, allocations to the Partnership Interests for tax and accounting purposes shall be divided and allocated between the transferor and the transferee in accordance with such daily, monthly, semi-monthly or other convention provided in Section 706 of the Code and the Regulations thereunder that is selected by the General Partner.

6.8   Amounts Withheld. All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any income or gain realized by the Partnership or any payment or distribution to the Partnership or the Partners shall be treated as amounts distributed to the Partners pursuant to this Paragraph 6 for all purposes under this Agreement. The General Partner is authorized to withhold from distributions, or with respect to allocations, to any Partner and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law, and shall allocate any such amounts to the Partners with respect to which such amounts were withheld.

7.   MANAGEMENT

7.1   Management by the General Partner. The business, assets and affairs of the Partnership shall be managed exclusively by the General Partner. All such decisions concerning the management and control of the Partnership that are approved by the General Partner shall be binding on the Partnership, and each of the Partners. Except for situations in which the Approval of the Partners is expressly required by this Agreement, the General Partner shall have full, complete and exclusive authority, power and discretion to manage and control the business, property and affairs of the Partnership, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Partnership's business, property and affairs. The signature of a General Partner on any document is effective to bind the Partnership.

7.2   General Partner(s). The Partnership shall initially have one (1) General Partner with ADS, Inc. being the General Partner. The number of General Partners of the Partnership shall be fixed

7.16   Confidentiality, Non-Disclosure, Non-Circumvention and Non-Competition. As material consideration for the other Partners agreeing to enter into this Agreement, the General Partner as well as each key employee or officer of the General Partner shall enter into the Confidentiality and Non-Circumvention Agreement, attached hereto as Exhibit "B", and incorporated herein, by reference."

7.17   Fraud, Negligence, Misconduct or Breach of Duty/Agreement. If a General Partner (or its shareholder, directors, officers and/or representative(s)) (the "**Breaching General Partner**") shall commit any act of fraud, negligence, misconduct, dishonesty, breach of fiduciary duty, or breach or default of this Agreement (and/or any other agreement contemplated by this Agreement), with respect to the Partnership, its Business, its assets or its Partners, the Limited Partners (excluding any Limited Partners affiliated with General Partner) may, without prejudice to any other rights the nondefaulting Limited Partners may have, elect by notice to the Breaching General Partner to cause the Partnership to purchase the Partnership Interests belonging to that Breaching General Partner as well the Partnership Interests belonging to any Affiliate of the Breaching General Partner. In such case, the purchase price for all such Partnership Interests shall be an amount equal to the combined positive Capital Account balance of the Breaching General Partner and its Affiliate Limited Partner (if any), as of the date the election to redeem is made. If the combined Capital Account balance is negative, than the Partnership may redeem or rescind the Partnership Interest of the Breaching General Partner and its Affiliate Limited Partner without payment. Any payment shall be from Partnership cash flow in equal installments over the course of twenty-four (24) months. Alternatively, a majority of the Limited Partners (excluding any Limited Partners affiliated with General Partner), voting in accordance with their respective Percentage Interests, may elect to convert the Partnership Interests of the Breaching General Partner and its Affiliate Limited Partner (if any) to nonvoting status.

8.   LIMITED PARTNERS

8.1   Status of Limited Partners. Except as required under the Act or as expressly set forth in this Agreement, a Limited Partner shall not be bound by, or be personally liable for, the expenses, liabilities or obligations of the Partnership except to the extent of the Capital Contributions required to be made by he or it under the terms of this Agreement and any additional Capital Contributions actually made by he or it. However, the Limited Partners understand that a Limited Partner will be liable to the Partnership in an amount equal to any distributions made to such Limited Partner if, after the distribution is made, the remaining assets of the Partnership are not sufficient to pay the Partnership's then outstanding liabilities, exclusive of nonrecourse liabilities and liabilities to the Partners on account of their interests in the Partnership.

8.2   Nonassessability. Each Partnership Interest, when issued, shall be fully paid and nonassessable (except as provided in Paragraph 5.2 or otherwise in this Agreement.)

8.3   No Participation in Management. Pursuant to Paragraph 7, the management of the Partnership is vested in the General Partner. No Limited Partner, acting solely in the capacity of a Limited Partner, is an agent of the Partnership nor can any Limited Partner in such capacity bind nor execute any instrument on behalf of the Partnership. Except for certain voting rights as otherwise provided in Paragraph 7.5 or elsewhere in this Agreement, the Limited Partners have no voting or approval rights and no right or power to take part in the management or control of the Partnership or its business, or to act for or bind the Partnership in any way.

8.4   Admission of Substituted or Additional Limited Partners. A substituted or additional Limited Partner may only be admitted to the Partnership pursuant to the terms and conditions as provided in Paragraph 10.

LP Agreement (Assure Direct Services) final