# EXHIBIT 4

CONSUMER FINANCIAL PROTECTION BUREAU

| | |
|---|---|
| In the Matter of<br>Chou Team Realty, LLC dba MonsterLoans<br>et al. | RESPONSE TO NOTICE OF<br>OPPORTUNITY TO RESPOND AND<br>ADVISE |

Kenneth Lawson responds to the Notice of Opportunity to Respond and Advise ("NORA") received from the Consumer Financial Protection Bureau as follows:

> To: Colin Reardon, Senior Advisor | SEFL Front Office
> Vanessa Assae-Bille, Enforcement Attorney
> Consumer Financial Protection Bureau
> 1700 G Street, NW
> Washington, DC 20552
> via Elizabeth.Assae-Bille@cfpb.gov

### RESPONSE OF KENENTH LAWSON TO NORA LETTER

**I.   Introduction and Summary**

Kenneth Lawson hereby responds to the NORA Letter received from the Consumer Financial Protection Bureau ("Bureau"), dated June 14, 2019, arising from an investigation pursuant to a Civil Investigative Demand ("CID") issued to Chou Team Realty, LLC dba Monster Loans ("MonsterLoans"), dated June 5, 2018 ("CID Investigation"). From the NORA letter and related telephone conference between Bureau staff and Mr. Lawson's counsel, Mr. Lawson understands that Bureau staff intend to recommend that he be named in an enforcement action as a relief defendant and required to disgorge "profits" he directly or indirectly received that resulted from alleged violations of the Fair Credit Reporting Act ("FCRA"), Consumer Financial Protection Act of 2010 ("CFPA"), and the Federal Trade Commission's Telemarketing

Sales Rule ("TSR") by these entities: Chou Team Realty LLC f/k/a Chou Team Realty, Inc. d/b/a MonsterLoans; Docu Prep Center, Inc.; Document Preparation Services, LP; Certified DocPrep, Inc.; Certified Doc Prep Services, LP; Assure Direct Services, Inc.; Assure Direct Services, LP; Direct Document Solutions, Inc.; Direct Document Solutions, LP; Secure Preparation Services, Inc.; and Secure Preparation Services, LP; and Lend Tech Loans, Inc.[1]

As a relief defendant only in any lawsuit that may be filed by the Bureau arising from the CID investigation, Mr. Lawson understands that he will not be alleged to have engaged in any of the above-alleged or any other violations of law, but only that he is in possession of "profits" resulting from those alleged violations that are not rightfully his and should be disgorged. To reinforce his status as merely a relief defendant who would not be accused of any wrongdoing, Mr. Lawson, in the attached sworn declaration, recites facts to demonstrate why he could not be accused of any wrongdoing in any event in connection with the CID Investigation.

To hold an individual liable for the illegal acts of a corporation or other business entity in a Bureau enforcement action, the CFPA, borrowing from the Federal Trade Commission Act, requires proof that the individual either directly participated in the illegal acts or had the authority to control them, and had knowledge of the acts. *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 U.S. Dist. LEXIS 130584 *37, cv-15-7522-JFW (RAOx) (C.D. CA 2016); *Consumer Fin. Prot. Bureau v. Mortg. Law Grp., LLP*, 2016 U.S. Dist. LEXIS 192781 *5, 14-cv-513-bbc (W.D. WS 2016). As factually established by his declaration, at all relevant times, Mr. Lawson has been only a passive investor in Monster Loans and other entities that would be named as primary defendants, who did not participate in, or have the authority to control, any of

---

[1] "Profits" is in quotation marks because the Bureau staff stated, in the NORA telephone conference with Mr. Lawson's counsel, that it considers "profits" to include return of principal, before and whether or not Mr. Lawson realized any actual profits.

the alleged unlawful conduct, and who furthermore had no contemporaneous knowledge of its occurrence. Mr. Lawson's declaration also details the proposed primary defendants in which he has or does not have an ownership interest or any other affiliation.

The balance of this response demonstrates why, as a matter of fact and law, Mr. Lawson cannot be even a relief defendant and forced to disgorge lawfully acquired "profits" he may have received from any primary defendant in which he had an ownership interest. As a relief defendant unaccused of any legal violation, Mr. Lawson would not be a real party in interest and the "profits" from his investments would be subject to the jurisdiction of the court only if he had no legitimate claim to and ownership interest in them. As an investor, however, who paid valuable consideration for those "profits," he clearly does have a legitimate claim to and ownership interest in them. Accordingly, should the Bureau name Mr. Lawson as a relief defendant in the proposed lawsuit, the relief claim would be met with a motion to dismiss for lack of subject matter jurisdiction, and properly dismissed after any necessary evidentiary hearing to establish the legitimacy to and ownership of the "profits" he received from his investments in defendants.

## II.     Lawson's Legitimate Claim to and Ownership Interest in the "Profits"

A person not accused of wrongdoing may be named as a relief defendant to aid the recovery of ill-gotten funds where that person has no "ownership interest" in or a "legitimate claim" to those funds. *FTC v. LeadClick Media, LLC et al.*, 838 F.3d 158, 177 (2d Cir. 2016) (quoting *SEC v. Cavanagh (Cavanagh II)*, 445 F.3d 105, 109, n.7 (2d Cir. 2006) and *SEC v. Cavanagh (Cavanagh I)*, 155 F.3d 129, 136 (2d Cir. 1998)). "District courts may only require disgorgement of the assets of a relief defendant upon a finding that she lacks a legitimate claim." *Id.* (quoting *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 226 (2d. Cir. 2010)).

"[R]elief defendants who have provided some form of valuable consideration in good faith…are beyond the reach of the district court's disgorgement remedy." *Id.*

CoreLogic, Inc., the relief defendant in *LeadClick Media*, was the parent of LeadClick, an affiliate marketing company that had been named as a defendant in an FTC deceptive advertising suit. The FTC relief claim sought to recover, as ill-gotten gains, an outstanding loan that CoreLogic had made to LeadClick. Reversing the district court, the Second Circuit rejected the claim because an "outstanding loan from a relief defendant constitutes valuable consideration, giving rise to a 'legitimate claim' to repayment of the outstanding amount of principal and accrued interest" (citing *Janvey v. Adams*, 588 F.3d 831, 835 (5th Cir. 2009) that a debtor-creditor relationship "constitutes a sufficient legitimate ownership interest to preclude treating [defendants] as relief defendants."). *Id.* Had the transfer been "gratuitous," without the payment of consideration, CoreLogic would not have had a legitimate claim and the FTC's relief claim would have been upheld. *Id.*

The "valuable consideration" defense to a relief claim has been recognized and upheld in FTC jurisprudence in an investor context as well, on the same reasoning applied to the debtor-creditor relationship in LeadClick Media and the relevant cases cited therein. In *FTC v. Direct Marketing Concepts, Inc.*, 648 F. Supp. 2d 202 (D. Mass. 2009), also a deceptive advertising case, there were two relief defendants. One was ordered to disgorge proceeds from the sale of the deceptively advertised products because it had "no legitimate claim to any funds from the marketing of Coral Calcium….the evidence did not establish that [it]…did any work that would have entitled it to any share of revenues or profits from Coral Calcium, whether legitimately derived or not." *Id.* at 222.

4

The other relief defendant avoided disgorgement. A shareholder in two of the liability defendants, she had received a $1,545,305.00 distribution from one of them but "[t]he bare fact of that distribution" was not a sufficient basis to order her to disgorge it. There was no evidence that she had any role in the production or placement of the deceptive commercial or any other reason for questioning the legitimacy of the distribution. The court thus appropriately held that there was an "insufficient equitable basis for requiring her to forfeit a large sum which may have been a legitimate distribution." *Id.* at 222-223.

Implicit in the court's holding is that the shareholder relief defendant had paid valuable consideration for her ownership interest in the defendant company and, having had no role in the wrongdoing, had a legitimate claim to her distribution. The decision is on all fours with Mr. Lawson's facts. He paid valuable consideration – indeed, substantial sums - for his ownership interests in Monster Loans and other proposed primary defendants and had no role in their alleged wrongdoing. As with the shareholder in *Direct Marketing Concepts*, the "bare fact" of distributions to him from some of those companies, for which he paid valuable consideration, is an "insufficient equitable basis" for requiring him to forfeit those distributions.

In plain language, a "legitimate claim" is merely "any right to payment… *even if contingent or provisional*" that is lawful, genuine, or valid; an ownership "interest" is simply a "legal share in [ownership]; all *or part* of a legal or equitable claim to or right in property." Black's Law Dictionary (9th ed. 2009). An innocent investor like Mr. Lawson therefore always has a legitimate claim to investment returns, including at least the principal invested, even though those returns or even the recovery of principal are not guaranteed.

Other decisions besides *Direct Marketing Concepts*, often arising in securities and investment fraud contexts involving receiverships, have upheld the "innocent investor" principle

5

against relief claims for recovery of ill-gotten gains where there was no evidence to rebut the relief defendant's assertion of a legitimate claim to and ownership interest in her investment returns. In one, *Johnson v. Studholme*, 619 F. Supp. 1347, 1348–49 (D. Colo. 1985), *aff'd sub nom. Johnson v. Hendricks*, 833 F.2d 908 (10th Cir. 1987), the receiver claimed that the investors in a Ponzi scheme investigated by the Commodities Futures Trading Commission had not given value for their returns on investment. The court disagreed, finding that the investors had given value for their entire returns:

> There was…no allegation that the defendants received these payments with anything less than a good faith belief that it was a legitimate return on their investment as part of a contractual relationship…. The plaintiffs' contention that the defendants were not purchasers for value is…wrong because the value given by the investors was, of course, their contributions and the risk that they may lose all or part of their investment…. While the scheme may have been illegal, from an economic perspective there is no doubt that the innocent investors gave value.

In another, *Janvey v. Adams*, 588 F.3d 831, 835 (5th Cir. 2009), a Ponzi scheme action brought by the Securities and Exchange Commission that also involved a receivership, the receiver added as relief defendants hundreds of certificate of deposit ("CD") investors, claiming they had no legitimate claim to any of these funds, including even principal, because they were simply lucky to have received payments from other investors' and creditors funds before the scheme collapsed. On appeal of the district's court ruling allowing the continuation of a freeze

on the accounts, the Fifth Circuit wholly rejected the receiver's claim, finding that investors had a legitimate claim to *all* of their contractual investment proceeds — both principal and interest:

> [T]he Receiver has failed to establish that the Investor Defendants lack a legitimate claim to the CD proceeds they received from the Stanford Bank. They are therefore not proper relief defendants....There was a debtor-creditor relationship between the Investor Defendants and the Stanford Bank based on written agreements well before the underlying SEC enforcement action against Stanford and the resulting receivership and restraining order. This constitutes a sufficient legitimate ownership interest to preclude treating the Investor Defendants as relief defendants.... Therefore, the Receiver's claims and motions as to the Investor Defendants [regarding both principal and interest] should have been denied completely.

*Id.* at 834-835.

These cases stand for and establish the proposition that innocent investors have a *per se* legitimate claim to their investment proceeds. That well-founded equitable proposition bars a relief claim against Mr. Lawson, who, like the innocent investors in *Janvey* and *Studholme* and the innocent shareholder in *Direct Marketing Concepts*, had established a written contractual investor relationship with MonsterLoans and certain other proposed primary defendants well before the commencement of the CID investigation and any knowledge or notice of the Bureau's allegations of wrongdoing against them. Lawson Decl. ¶¶ 3, 7,15-16,19, Exs. 1, 3-5. As only an

7

investor, he did not participate in or have the authority to control their behavior, including the alleged unlawful acts. In every respect, therefore, he meets the definition of an innocent investor and the Bureau, like the courts in these cases, respectfully should recognize that he has a *per se* legitimate claim to his investment proceeds and not name him as a relief defendant.

Should the Bureau name Mr. Lawson as a relief defendant nonetheless, it will have the burden of proof to show that he does not have a legitimate claim to and ownership interest in the "profits" he received on his investments in any of the defendants. *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("the creditor plaintiff must show that the nominal defendant has received ill-gotten funds and that he does not have a legitimate claim to those funds.").[2] To carry its burden, the Bureau will have to overcome the "presumptive title" Mr. Lawson has to those "profits," based on the undisputed fact of the valuable consideration (substantial capital contributions and risk of losing them) he paid for his investments, well before the CID Investigation, and the legitimate claim to and ownership interest he acquired in those returns as a result. *SEC v. Ross*, 504 F.3d 1130, 1142 (9th Cir. 2007) (relief defendant securities salesman accused of violating securities laws had presumptive title to commissions earned on his sales of unregistered securities as "compensation in return for services rendered," thus warranting reversal of district court's exercise of jurisdiction over him as a relief defendant).

If Mr. Lawson is named as a relief defendant, he will make a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter of jurisdiction, and based on the foregoing authorities, is confident he will prevail.

---

[2] It also will have the burden to show that relief defendant authority even exists under the CFPA, which no appellate court has yet held, and which no district court has held based on any in depth statutory and jurisprudential analysis.

## III. Conclusion

For the foregoing reasons, Mr. Lawson submits that no basis for a relief claim against him exists. He therefore respectfully urges the Bureau staff not to recommend to the Bureau Director that he be named as a relief defendant in any enforcement action arising from the CID investigation.

DATE: June 28, 2019            By: _/s/ William I. Rothbard_

WILLIAM I. ROTHBARD
LAW OFFICES OF WILLIAM I. ROTHBARD
2333 Canyonback Rd.
Los Angeles, CA 90049

Counsel for KENNETH LAWSON

---

Nor, in possibly so holding in a Bureau enforcement action, has any court applied the concept of "valuable consideration" to the "legitimate claim- ownership interest" question in relief claim analysis.