# EXHIBIT D

---

**LIMITED PARTNERSHIP AGREEMENT**
**FOR**
**DIRECT DOCUMENT SOLUTIONS, LP,**
**a California limited partnership**

---

THE PARTNERSHIP INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR QUALIFIED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968, AS AMENDED, AND ARE BEING OFFERED IN RELIANCE ON SPECIFIC EXEMPTIONS THEREIN RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF OR GIVE ITS APPROVAL TO ANY SECURITIES OFFERED OR THE TERMS OF THE OFFERING, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY OFFERING MEMORANDUM OR OTHER SELLING LITERATURE. THESE PARTNERSHIP INTERESTS ARE OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE SECURITIES AND EXCHANGE COMMISSION; HOWEVER, THE SECURITIES AND EXCHANGE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE PARTNERSHIP INTERESTS OFFERED HEREUNDER ARE EXEMPT FROM REGISTRATION. THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA DOES NOT RECOMMEND OR ENDORSE THE PURCHASE OF THESE PARTNERSHIP INTERESTS, NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION SET FORTH HEREIN.

---

PARTNERSHIP INTERESTS MAY ONLY BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF BY AN INVESTOR IF SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT AND QUALIFIED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OR IF, IN THE DETERMINATION OF COUNSEL FOR THE PARTNERSHIP, REGISTRATION OR QUALIFICATION UNDER SUCH ACTS IS NOT REQUIRED.

---

ML00005315

# TABLE OF CONTENTS

Page

1.   DEFINITIONS ........................................................................................................1
     1.1   "**Act**" ......................................................................................... 1
     1.2   "**Affiliate**" ................................................................................. 1
     1.3   "**Agreement**" ............................................................................ 1
     1.4   "**Approved by the Partners**," "**Approval of the Partners**" or "**Partners' Approval**" ........................................................................................... 1
     1.5   "**Assignee**" ................................................................................ 2
     1.6   "**Business**" ................................................................................ 2
     1.7   "**Capital Account**" .................................................................... 2
     1.8   "**Capital Contribution(s)**" ....................................................... 2
     1.9   "**Cash Available For Distribution**" .......................................... 2
     1.10  "**Certificate**" ............................................................................ 2
     1.11  "**Code**" ...................................................................................... 2
     1.12  "**DDS Inc.**" ............................................................................... 2
     1.13  "**General Partner**" .................................................................... 2
     1.14  "**Income**" and "**Loss**" ......................................................... 2
     1.15  "**Limited Partners**" .................................................................. 2
     1.16  "**Partners**" ................................................................................ 2
     1.17  "**Partnership**" ........................................................................... 3
     1.18  "**Partnership Interest**" ............................................................. 3
     1.19  "**Percentage Interest**" .............................................................. 3
     1.20  "**Regulations**" .......................................................................... 3
     1.21  "**Substituted Partner**" ............................................................. 3

2.   FORMATION AND BUSINESS OF THE PARTNERSHIP .................................3
     2.1   Formation ................................................................................... 3
     2.2   Purpose and Business of Partnership ......................................... 3
     2.3   Certificate of Limited Partnership ............................................ 3
     2.4   Agent for Service of Process ..................................................... 3
     2.5   Evidence of Non-Foreign Status ............................................... 3
     2.6   Further Assurances ..................................................................... 4
     2.7   Nature of Partners' Interests ...................................................... 4
     2.8   Title to Assets; No Partition ...................................................... 4

3.   NAMES AND ADDRESSES OF THE PARTNERS AND THE PARTNERSHIP ..........4
     3.1   Partnership ................................................................................. 4
     3.2   Partners ...................................................................................... 4

4.   TERM ....................................................................................................................4

5.   CAPITAL CONTRIBUTIONS ..............................................................................4
     5.1   Initial Contributions .................................................................. 4
     5.2   Capital Calls ............................................................................... 5
     5.3   Loans to the Partnership ............................................................ 5
     5.4   Withdrawal or Return of Capital ............................................... 5
     5.5   No Priority .................................................................................. 5
     5.6   Interest on Capital Contributions ............................................. 5

ML00005316

## TABLE OF CONTENTS
(continued)

Page

5.7    Use of Capital ................................................................................. 5

6.    ALLOCATIONS OF INCOME, LOSS AND DISTRIBUTIONS ................. 5
6.1    Distribution of Cash Available For Distribution ................................. 5
6.2    Non-Equity Participation Fee ........................................................... 6
6.3    Tax Distributions ........................................................................... 6
6.4    Allocation of Income and Loss ........................................................ 6
6.5    Timing of Distributions .................................................................. 7
6.6    Consent by Partners ....................................................................... 7
6.7    In-Kind Distributions ...................................................................... 7
6.8    Assignment of Partnership Interests ................................................ 7
6.9    Amounts Withheld .......................................................................... 7

7.    MANAGEMENT ................................................................................. 7
7.1    Management by the General Partner ................................................. 7
7.2    General Partner(s) .......................................................................... 7
7.3    Removal of the General Partner(s) ................................................... 8
7.4    Tax Matters Partner ....................................................................... 8
7.5    Acts Requiring the Approval of the Partners ..................................... 8
7.6    Compensation of the Partners .......................................................... 9
7.7    Contract With Affiliates .................................................................. 9
7.8    Partnership Funds .......................................................................... 9
7.9    Reimbursement of Partners ............................................................. 9
7.10    Devotion of Time .......................................................................... 9
7.11    Termination of General Partner ...................................................... 9
7.12    Cooperation ................................................................................ 10
7.13    Fiduciary Duties .......................................................................... 10
7.14    Confidentiality, Non-Disclosure, Non-Circumvention and Non-
        Competition ................................................................................ 10
7.15    Fraud, Negligence, Misconduct or Breach of Duty/Agreement ......... 10

8.    LIMITED PARTNERS ...................................................................... 11
8.1    Status of Limited Partners .............................................................. 11
8.2    Nonassessability ........................................................................... 11
8.3    No Participation in Management ...................................................... 11
8.4    Admission of Substituted or Additional Limited Partners ................. 11

9.    BOOKS AND RECORDS ................................................................... 11
9.1    Books and Records ........................................................................ 11
9.2    Annual Report .............................................................................. 12
9.3    Tax Returns ................................................................................. 12
9.4    Special Reports ............................................................................ 12
9.5    Tax Elections ............................................................................... 12
9.6    Fiscal Year .................................................................................. 12

10.    TRANSFER OF PARTNERSHIP INTERESTS ..................................... 12
10.1    Permitted Transfers ...................................................................... 12
10.2    No Transfer Permitted .................................................................. 13

## TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 10.3 | Indirect Transfers | 13 |
| 10.4 | Rights of Assignee | 13 |
| 10.5 | Admission of Substituted Partners | 13 |
| 10.6 | Void Transfers | 13 |
| 10.7 | Covenant Not to Withdraw | 13 |
| 11. | TERMINATION AND DISSOLUTION OF THE PartnershIp | 14 |
| 11.1 | Termination | 14 |
| 11.2 | Winding Up of the Partnership | 14 |
| 11.3 | Distributions | 14 |
| 11.4 | Compliance With Timing Requirements of Regulations | 14 |
| 11.5 | No Recourse Against Partners | 15 |
| 11.6 | Allocation of Income or Loss on Dissolution | 15 |
| 11.7 | Waiver of Right to Court Decree of Dissolution | 15 |
| 11.8 | Death, Bankruptcy, Insolvency, Incapacity or Withdrawal of a Partner Shall Not Dissolve the Partnership | 15 |
| 12. | AMENDMENTS | 15 |
| 13. | GENERAL PROVISIONS | 15 |
| 13.1 | Notices | 15 |
| 13.2 | Titles, Captions and Paragraphs | 16 |
| 13.3 | Gender and Number | 16 |
| 13.4 | Successors and Assigns | 16 |
| 13.5 | Entire Agreement | 16 |
| 13.6 | Governing Law | 16 |
| 13.7 | Counterparts | 16 |
| 13.8 | Severability | 17 |
| 13.9 | Non-Waiver of Rights and Breaches | 17 |
| 13.10 | Other Instruments | 17 |
| 13.11 | Partition | 17 |
| 13.12 | Attorneys' Fees | 17 |
| 13.13 | Time of Essence | 17 |
| 13.14 | Authority | 17 |
| 13.15 | Computation of Time | 17 |
| 13.16 | Investment Intent | 17 |

EXHIBITS

| | | |
|---|---|---|
| Exhibit "A" - | Limited Partner Percentage Interests And Signature Page | |
| Exhibit "B" | Non-Equity Participation Fee | |
| Exhibit "C" | Confidentiality and Non-Circumvention Agreement | |

ML00005318

**LIMITED PARTNERSHIP AGREEMENT**
**FOR**
**DIRECT DOCUMENT SOLUTIONS, LP,**
**a California limited partnership**

This Limited Partnership Agreement (this "**Agreement**") for DIRECT DOCUMENT SOLUTIONS, LP, a California limited partnership, dated as of January 3, 2017, is made and entered into by and among Direct Document Solutions, Inc., a California corporation, as the General Partner, and each of the parties whose names and addresses are set forth on Exhibit "A," hereto as the Limited Partners.

NOW THEREFORE, in consideration of mutual agreements, covenants and conditions contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree to the following:

1.      <u>DEFINITIONS</u>

When used in this Agreement, the terms set forth below shall have the following respective meanings unless otherwise provided or unless the context otherwise requires:

1.1      "**Act**" means Title 2, Chapter 5.5 the California Corporations Code, known as the "Uniform Limited Partnership Act of 2008," as amended from time to time.

1.2      "**Affiliate**" means:  (a) any person directly or indirectly controlling, controlled by or under common control with another person; (b) any person owning or controlling twenty percent (20%) or more of the outstanding voting or beneficial interests of such other person; (c) any officer, director, partner, member, manager, trustee or anyone acting in a substantially similar capacity as to such other person; or (d) any person who is an officer, director, general partner, member, manager, trustee or holder of twenty percent (20%) or more of the voting interests of any person described in clauses (a) through (c).

The term "control," as used in the immediately preceding sentence, means, with respect to a corporation, the right to exercise, directly or indirectly, more than forty percent (40%) of the voting rights attributable to the controlled corporation, and, with respect to any individual, partnership, limited liability company, trust, other entity or association, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.  (The word "person" is defined in Paragraph 13.3.)  An Affiliate shall include family members (spouse, lineal descendants, brothers, sisters and parents) of Partner as well as Affiliates of those family members.

1.3      "**Agreement**" means this Limited Partnership Agreement, as it may be amended from time to time.

1.4      "**Approved by the Partners**." "**Approval of the Partners**" or "**Partners' Approval**" means that (a)(i) the General Partner, and (ii) more than fifty percent (50%) of the Limited Partners, have consented or are required to consent, in writing, to a particular matter or action with each Limited Partner voting in accordance with their respective Percentage Interests in their sole discretion, or (b) sixty percent (60%) of the Limited Partners have so consented.  If a Limited Partner fails to notify the General Partner(s) of their refusal to consent to a particular matter or action within five (5) days after receipt of a request for such consent from a General Partner, that nonresponding Limited Partner shall be deemed to have rejected such matter or action.

ML00005319

1.5     "**Assignee**" means a person who has acquired a beneficial interest in a Partnership Interest but who is not a Substituted Partner.

1.6     "**Business**" refers to one or more front- and/or back-end businesses involving (a) document preparation services (e.g., entity formation, IRS elections and applications, DBAs, trademark applications, notary services, etc.), (b) government benefit consulting (including, application assistance, disability assistance, student debt advisory services, student debt relief application consulting), and (c) direct mail, internet and other marketing (including without limitation production of art work, strategy, data, data sources, contacts, etc., associated with such marketing), lead generation, sales and front/back-end operations for all of the foregoing to be developed and operated by the Partnership.

1.7     "**Capital Account**" means, with respect to any Partner, the Capital Account maintained for such Partner in accordance with Regulations Section 1.704-1(b).  If any interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

1.8     "**Capital Contribution(s)**" means the capital (including assets contributed as capital) contributed to the Partnership by the Partners.

1.9     "**Cash Available For Distribution**" means the cash receipts from the operations of the Partnership, including the cash proceeds, if any, from the sale or other disposition, financing, refinancing or liquidation of Partnership assets, less cash funds used to pay all Partnership expenses, debt payments (including the repayment of loans to the Partnership from any Partner or Affiliate), capital improvements and replacements, and less the amount set aside for restoration or creation of reasonable reserves, contingencies, and other items.  Expenses shall not include cost recovery, amortization and depreciation deductions and expenditures of funds from reserves.  The determination of the amount and timing of any distributions and reserves shall be as provided in Paragraph 6.5.

1.10    "**Certificate**" means the Certificate of Limited Partnership (LP-1) filed with the California Secretary of State in accordance with Paragraph 2.3, and any amendments thereto.

1.11    "**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

1.12    "**DDS Inc.**" means Direct Document Solutions, Inc., a California corporation.

1.13    "**General Partner**" refers to Direct Document Solutions, Inc., a California corporation, and any other person who may succeed it and/or be elected as a General Partner.

1.14    "**Income**" and "**Loss**" means for each fiscal year or other period, an amount equal to the Partnership's taxable income or loss for such year or period, determined in accordance with Section 703(a) of the Code as adjusted pursuant to Regulations Section 1.704-1 (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss).

1.15    "**Limited Partners**" refers to the persons who have been admitted to the Partnership as a Limited Partner in accordance with the provisions of this Agreement.  Reference to a "**Limited Partner**" shall refer to any one of them.

1.16    "**Partners**" refers collectively to the General Partner and to the Limited Partners, and any additional persons admitted to the Partnership as successor or substituted Partners.  Reference to a "**Partner**" shall be to any one of the Partners.

ML00005320

1.17    "**Partnership**" means the limited partnership created under this Agreement and the Certificate.

1.18    "**Partnership Interest**" means the interest of each Partner in the Partnership, including, but not limited to, that Partner's economic interest in the capital, income, gains, losses, deductions, credits and distributions of the Partnership.

1.19    "**Percentage Interest**" means a Partner's Percentage Interest in certain of the income, gains, losses, deductions, credits and distributions of the Partnership as set forth in this Agreement. The current Percentage Interest of the General Partner is one percent (1%). The current Percentage Interest of each Limited Partner is as shown on Exhibit "A." [Limited Partner Percentage Interests and Signature Page] and may be adjusted as provided in this Agreement.

1.20    "**Regulations**" means the Income Tax Regulations, including Temporary Regulations, promulgated under the Code, as amended from time to time (including corresponding provisions of succeeding regulations).

1.21    "**Substituted Partner**" refers to a person who has acquired the rights of a Partner inherent in a Partnership Interest and been substituted in place of the transferring Partner in accordance with this Agreement.

2.    FORMATION AND BUSINESS OF THE PARTNERSHIP

2.1    Formation. The parties hereby agree to form a limited partnership under the provisions of the Act for the limited purpose and scope set forth in this Agreement. The rights and liabilities of the Partners shall be as provided in the Act, except as otherwise expressly provided in this Agreement. To the extent that the rights or obligations of any Partner are different by reason of any provision of this Agreement than they would be in the absence of such provision, this Agreement shall, to the extent permitted by the Act, control.

2.2    Purpose and Business of Partnership. The business of the Partnership will be to develop and engage in the Business, and to do all things necessary, related or incidental to these purposes, as may be Approved by the Partners. The Partnership shall not engage in any other business unless Approved by the Partners.

2.3    Certificate of Limited Partnership. The General Partner, on behalf of the Partnership, shall: (a) immediately execute a Certificate of Limited Partnership (LP-1) (the "**Certificate**") for the Partnership and cause that Certificate to be filed in the office of the California Secretary of State; (b) execute and cause to be filed certificates of amendment of the Certificate whenever required by the Act or this Agreement; (c) execute and cause to be filed original or amended certificates evidencing the formation and operation of the Partnership whenever required under the laws of any other states in which the Partnership determines to do business; and (d) if appropriate, record a certified copy of the Certificate and any amendment thereto in the office of the county recorder in every county in which the Partnership owns or contemplates owning real property or any interest in real property.

2.4    Agent for Service of Process. The Partnership shall continuously maintain a registered agent in the State of California as required by the Act. The registered agent shall be as stated in the Certificate or as otherwise determined by the General Partner.

2.5    Evidence of Non-Foreign Status. The General Partner may, from time to time in its discretion, require any Partner or Assignee to provide to the Partnership (a) satisfactory evidence

ML00005321

(including, but not limited to, the certificate described in Regulations Section 1.1445-2(c)(2)) that such person is not a foreign person (as defined in Regulations Section 1.897-1(k)), and (b) satisfactory evidence (including, but not limited to, a California Withholding Exemption Certificate - FTB Form 590) that such person is a California resident or, if a corporation, partnership or limited liability company, has a permanent place of business in California.  Partners who are unable to provide the certificates and/or forms referred to above may be subject to withholding as provided in Paragraph 6.9.

2.6     Further Assurances.  The Partners will execute such other certificates and documents, and the General Partner will file, record and publish such other certificates and documents, as may be reasonably necessary or appropriate to comply with the requirements of applicable laws governing the formation and operation of a limited partnership (or a partnership in which special partners have a limited liability) in all jurisdictions where the Partnership desires to conduct business.

2.7     Nature of Partners' Interests.  The interests of the Partners in the Partnership shall be personal property for all purposes.  All property owned by the Partnership, whether real or personal, tangible or intangible, shall be deemed to be owned by the Partnership as an entity, and no Partner as an individual or entity shall have an ownership interest in such property other than as a Partner.

2.8     Title to Assets; No Partition.  Title to the assets owned by the Partnership shall be held solely in the name of the Partnership or its nominee.  The General Partner shall execute, file and record such documents as may be necessary to reflect the Partnership's ownership of the assets in such public offices in such states as may be required.  The Partners agree that the Partnership assets are not and will not be suitable for partition.  Accordingly, each Partner hereby irrevocably waives any and all rights that he or it may have to maintain any action for partition of any Partnership assets.

3.     NAMES AND ADDRESSES OF THE PARTNERS AND THE PARTNERSHIP

3.1     Partnership.  The business of the Partnership shall be conducted under the name of **Direct Document Solutions, LP**, a California limited partnership, at the following address:  23785 El Toro Road, Suite 493, Lake Forest, CA 92630, or such other name or such other address within California as Approved by the Partners by notice to the Partners and by amendment to the Certificate.

3.2     Partners.  The name and current address of each General Partner and each Limited Partner is as listed on Exhibit "A" hereto.

4.     TERM

The Partnership shall commence on the date the Partnership's Certificate is filed with the California Secretary of State in accordance with the Act and shall continue until December 31, 2030, unless sooner terminated in accordance with this Agreement or the Act.

5.     CAPITAL CONTRIBUTIONS

5.1     Initial Contributions.  It is the intention of the Partners and the Partnership to obtain necessary capital from one or more of the Partners for the building and establishment of the Business.  Each of the Partners shall make or be obligated to make one or more cash contributions to the capital of the Partnership in an amount not to exceed the aggregate Capital Contribution shown for that Partner on Exhibit "A".  As provided in Paragraph 6.1, Partner distributions shall be paid first to return prior Capital Contributions prior to any bottom-line distributions.

ML00005322

5.2     Capital Calls.  Except as otherwise provided in this Agreement, no Partner shall be required to contribute any additional money or property to the capital of the Partnership.  To the extent Approved by the Partners, from time to time, the Partners may be permitted to make additional Capital Contributions if and to the extent they so desire, and if the General Partner determines that such additional Capital Contributions are necessary or appropriate for the conduct of the Partnership's business.  In that event, the Partners shall have the opportunity, but not the obligation, to participate in such additional Capital Contributions on a pro rata basis in accordance with their Percentage Interests.  Immediately following such Capital Contributions, the Percentage Interests shall be adjusted by the General Partner to reflect the new relative proportions of the Capital Accounts of the Partners.

5.3     Loans to the Partnership.  No Partner or Affiliate shall lend or advance money to the Partnership or for the Partnership's benefit unless that loan and the terms thereof are Approved by the Partners.  If a Partner and/or any affiliate of a Partner, after all other resources for financing are exhausted, agrees to undertake any Partnership financial obligation and becomes liable on a recourse basis for any such financial obligation, the Partnership shall (to the extent permitted by any outstanding obligations of the Partnership) be obligated to retire such debt first before retiring any other debt of the Partnership.  The Partnership shall, while such debt is still in existence, fully indemnify that Partner or affiliate from any liability arising from such debt or obligation.  Such indemnity shall be paid out of Partnership assets.

5.4     Withdrawal or Return of Capital.  No Partner may withdraw or is entitled to a return of their Capital Contribution or Capital Account except as provided in this Agreement or in the Act.  No Partner shall have the right to demand and receive property other than cash in return for their Capital Contribution.  Notwithstanding the foregoing, no part of the Capital Contribution of any Partner shall be withdrawn unless all liabilities of the Partnership (except liabilities to the Partners on account of their Capital Contributions) have been paid or unless the Partnership has assets sufficient to pay the same as they become due.  A Partner shall look only to the assets of the Partnership and if the Partnership property remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return such Capital Contributions, that Partner shall have no recourse against the General Partner or any other Partner for such return.

5.5     No Priority.  No Partner shall have priority over any other Partner as to contributions, distributions or compensation by way of income, except as otherwise provided in this Agreement or in the Act.

5.6     Interest on Capital Contributions.  No Partner shall be entitled to receive interest on their Capital Contributions.

5.7     Use of Capital.  The Capital Contributions to the Partnership shall be used and employed only for the benefit and advantage of the Partnership and for no other purpose.

6.     ALLOCATIONS OF INCOME, LOSS AND DISTRIBUTIONS

6.1     Distribution of Cash Available For Distribution.  Except as otherwise provided in Paragraphs 6.3 and 11.3, Cash Available For Distribution shall be distributed to the Partners as follows:

(a)     Return of Additional Capital Contributions (Capital Calls).  First, to any Partner in the ratio that the unreturned additional Capital Contributions of each Partner bears to the aggregate unreturned additional Capital Contributions of all Partners contributed pursuant to Paragraph 5.2 until all unreturned additional Capital Contributions are reduced to zero (0).

ML00005323

(b)    <u>Return of Initial Capital Contributions</u>.  Next, to the Partners in the ratio that the unreturned initial Capital Contributions of each Partners bears to the aggregate unreturned initial Capital Contributions of all Partners contributed pursuant to Paragraph 5.1 until all unreturned initial Capital Contributions are reduced to zero (0).

(c)    <u>Percentage Interests</u>.  Next, the balance to the Partners in accordance with their relative Percentage Interests.

6.2    <u>Non-Equity Participation Fee</u>.  The Partnership shall pay DDS Inc. (so long as it remains the General Partner) an amount equal to the Non-Equity Participation Fee described in <u>Exhibit "B"</u> hereto.  The amounts paid pursuant to this Paragraph 6.2 are non-vested, non-equity participation payments subject to the conditions provided <u>Exhibit "B"</u> and are intended to constitute arm's length, pre-profit expense payments pursuant to Section 707(c) of the Code and shall not be treated as distributions for purposes of computing Capital Accounts.

6.3    <u>Tax Distributions</u>.  Notwithstanding any other provision of this Agreement, and without regard to any calculation of Cash Available for Distributions (including estimates of working capital and reserve needs), the Partnership shall make a tax distribution in cash (the "**Tax Distribution**") to each Partner (at least annually on or before January 31st or prior to the due date for quarterly tax payments) of amounts which, in the aggregate with other distributions pursuant to Paragraph 6.1, are not less than the result obtained by multiplying the Tax Rate (as hereinafter defined) by the estimated Income of the Partnership allocable to each of the Partners under Paragraph 6.4 for the preceding tax year or preceding quarter (but only to the extent that the Partnership's total Income has exceeded total Loss).  However, such payments shall not be made if either (a) that Partner has already received other distributions that year or quarter pursuant to Paragraph 6.1 which equal or exceed the cumulative potential Tax Distribution for that year, or (b) such payments are likely to result in Capital Contributions being required to be made in the future.  In addition, no such distributions shall be made to any Partner that would cause that Partner to have a negative Capital Account at the end of the fiscal year.  The "**Tax Rate**" shall be the sum of the highest federal and California marginal rates in effect for individual taxpayers during such year.  To the extent a Partner receives a distribution pursuant to this Paragraph 6.3, those distributions shall be treated as an early distribution of any amounts the Partner would be entitled to receive pursuant to Paragraph 6.1.

6.4    <u>Allocation of Income and Loss</u>.  Except as otherwise provided in this Agreement, the Partnership's Income and Loss, and all related items, such as revenues, expenses, capital gains and losses, preferences, deductions and credits, shall be allocated to the Partners in accordance with their Percentage Interests.  Notwithstanding the preceding sentence, no Loss shall be allocated to any Limited Partner who is not a General Partner to the extent such allocation of Loss would cause that Limited Partner to have an Adjusted Capital Account Deficit at the end of any fiscal year.  All Loss in excess of the limitation set forth in this Paragraph 6.4 will be allocated to the General Partner in accordance with their relative Percentage Interests.

For purposes of this Paragraph, the term "**Adjusted Capital Account Deficit**" means, with respect to any Limited Partner, the deficit balance, if any, in that Limited Partner's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments: (a) A credit to such Capital Account of any amounts which that Limited Partner is obligated to restore pursuant to this Agreement or is deemed to be obligated to restore pursuant to the next to last sentence of Regulations Sections 1.704 2(g)(1) and 1.704 2(i)(5), and (b) a debit to such Capital Account for the items described in Regulations Sections 1.704 1(b)(2)(ii)(d)(4), (5) and (6).  This definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Regulations Section 1.704 1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

ML00005324

6.5    <u>Timing of Distributions</u>.  The determination of reserves and the amount and timing of distributions of Cash Available For Distribution shall be made as Approved by the Partners.

6.6    <u>Consent by Partners</u>.  The methods hereinabove set forth by which income, gains, losses, deductions, credits and distributions are allocated and apportioned are hereby expressly consented to by each Partner as a specific condition to becoming a Partner.  Each Partner covenants that he or it will make no claim or representation concerning the income tax effects of the provisions contained in this Agreement that is inconsistent with the provisions of this Agreement.

6.7    <u>In-Kind Distributions</u>.  To the extent that non-cash assets are distributed to the Partners, the fair market value of those assets shall first be determined and the Capital Accounts of the Partners shall be adjusted to reflect any gain or loss which would have been generated had the assets been sold for their determined value.  Then those assets shall be distributed in accordance with that valuation.  Any non-cash assets (including, but not limited to, promissory notes) received by the Partnership in connection with a sale or other disposition may be distributed in kind to the Partners or to a collection account with the proceeds to be distributed in accordance with the terms of this Paragraph 6, as received.  The fair market value of assets distributable in-kind to be determined under this Paragraph 6.7 shall be equal to an amount Approved by the Partners.

6.8    <u>Assignment of Partnership Interests</u>.  If a Partner assigns or transfers all or part of their Partnership Interests to another person during any fiscal period, allocations to the Partnership Interests for tax and accounting purposes shall be divided and allocated between the transferor and the transferee in accordance with such daily, monthly, semi-monthly or other convention provided in Section 706 of the Code and the Regulations thereunder that is selected by the General Partner.

6.9    <u>Amounts Withheld</u>.  All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any income or gain realized by the Partnership or any payment or distribution to the Partnership or the Partners shall be treated as amounts distributed to the Partners pursuant to this Paragraph 6 for all purposes under this Agreement.  The General Partner is authorized to withhold from distributions, or with respect to allocations, to any Partner and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law, and shall allocate any such amounts to the Partners with respect to which such amounts were withheld.

7.    <u>MANAGEMENT</u>

7.1    <u>Management by the General Partner</u>.  The business, assets and affairs of the Partnership shall be managed exclusively by the General Partner.  All such decisions concerning the management and control of the Partnership that are approved by the General Partner shall be binding on the Partnership, and each of the Partners.  Except for situations in which the Approval of the Partners is expressly required by this Agreement, the General Partner shall have full, complete and exclusive authority, power and discretion to manage and control the business, property and affairs of the Partnership, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Partnership's business, property and affairs.  The signature of a General Partner on any document is effective to bind the Partnership.

7.2    <u>General Partner(s)</u>.  The Partnership shall initially have one (1) General Partner with DDS Inc. being the initial General Partner.  The number of General Partners of the Partnership shall be fixed from time to time by the Approval of the Partners, provided that in no instance shall there be less than one General Partner and provided further that if the number of General Partners is increased to more than one, the Certificate shall be amended to delete the statement that the Partnership has only one

ML00005325

General Partner, and that if the number of General Partners is reduced from more than one to one, the Certificate shall be amended to so state.  Upon the bankruptcy, removal or withdrawal of a General Partner, such General Partner shall be converted to a Limited Partner.  In the event there are more than one (1) General Partner, any action requiring the consent or approval of the General Partner shall be deemed to require the consent or approval of a majority of the General Partners with each General Partner having one (1) vote.

7.3   Removal of the General Partner(s).  At any time, Partners owning more than fifty percent (50%) of the Percentage Interests may remove a General Partner  with or without cause, and may elect any person as a new General Partner.  Unless otherwise provided in this Agreement, the General Partner's Partnership Interest shall be converted to a Limited Partner interest upon removal.

7.4   Tax Matters Partner.  The Partners do hereby appoint Theresa Wray, an officer of the General Partner, to act as the "**Tax Matters Partner**" as defined in Section 6231(a)(7) of the Code.

7.5   Acts Requiring the Approval of the Partners.  The General Partner shall not take or cause the Partnership to take any of the following actions without the Approval of the Partners:

(a)   Merge or convert the Partnership with or into another corporation, limited liability company, partnership or other person; provided in no event shall a Limited Partner be required to become a general partner in a merger with, or a conversion into, a partnership without their express written consent.

(b)   File any voluntary petition for the Partnership under the federal bankruptcy act, or seek the protection of any other federal or state bankruptcy or insolvency law or debtor relief statute.

(c)   Enter into any business other than the Business..

(d)   Confess a judgment against the Partnership.

(e)   Dispose of the goodwill of the business.

(f)   Loan any Partnership funds.

(g)   On behalf of the Partnership guarantee or secure the obligations of a Limited Partner or any other person other than the Partnership.

(h)   Make any expenditure or expenditures, or incur any obligation or obligations, which when added to any other expenditures or obligations for the fiscal year of the Partnership, exceeds One Hundred Thousand Dollars ($100,000).

(i)   Borrow funds in any amount or incur any other obligation or expenditure on behalf of the Partnership.

(j)   Prepay, in whole or in part, refinance, increase, modify or extend any obligations affecting the assets of the Partnership.

(k)   Enter into any contract or transaction with any Partner or any affiliate of a Partner.

ML00005326

(l)      Enter into any joint venture, partnership, limited liability company or other business entity.

(m)      Issue new Partnership Interests.

(n)      Admit any other person or entity as a General Partner or Limited Partner.

(o)      Do any act in contravention of this Agreement in its present form or as amended.

(p)      Take any other action which is required to be Approved by the Partners by any other provision of this Agreement.

7.6      <u>Compensation of the Partners</u>.  Unless Approved by the Partners, none of the Partners shall be entitled to receive, directly or indirectly, any compensation, commission or other payment for or on account of or in connection with the performance of any of the duties or services to be performed by any of them under this Agreement.

7.7      <u>Contract With Affiliates</u>.  The General Partner may contract on behalf of the Partnership with affiliates of a Partner to provide services or materials for the Partnership provided that the fees or amounts to be paid therefore and/or the terms and conditions thereof are fair and reasonable to the Partnership and are not less favorable to the Partnership than those which could be reasonably obtained by the Partnership from equally qualified but unaffiliated third parties, and provided that such transaction is Approved by the Partners.

7.8      <u>Partnership Funds</u>.  The General Partner shall open and maintain, at bank(s) or brokerage company(ies) as approved by the General Partner, a special account or accounts in which shall be deposited all cash contributions of the Partners and all other funds of the Partnership.  Funds in the account or accounts shall be used only for the business of the Partnership, and all withdrawals shall be made only on checks signed by a General Partner or by a person designated by the General Partner.

7.9      <u>Reimbursement of Partners</u>.  The Partners and their affiliates shall be entitled to reimbursement from the Partnership for all reasonable out-of-pocket expenses incurred by them or their affiliates, on behalf of the Partnership and/or its assets, in managing the business and affairs of the Partnership and/or the its assets and in the formation of the Partnership including, but not limited to, each Partner's legal and accounting expenses incurred on behalf of the Partnership.

7.10     <u>Devotion of Time</u>.  The General Partner, as well as any officer, director, partner, member, manager, employee, trustee and/or agent of a General Partner, shall not be required to devote their full time to the affairs of the Partnership but only that amount of time which each General Partner believes is reasonably necessary to perform its obligations under this Agreement.

7.11     <u>Termination of General Partner</u>.  Notwithstanding Sections 15906.05 of the Act, a General Partner shall cease being a General Partner upon its adjudication of bankruptcy or insolvency, or its withdrawal from the Partnership.  A General Partner may not withdraw as a General Partner of the Partnership without the Approval of the Partners, which approval may be withheld or denied in the sole discretion of the relevant Partners, or which may be conditioned on such requirements as may be imposed by the relevant Partners in their sole discretion.  A General Partner may not dispose of its interest as a general partner in the Partnership except pursuant to this Paragraph 7.11 or as otherwise expressly

ML00005327

provided for in this Agreement.  In the event that a General Partner breaches this Paragraph 7.11, that General Partner shall be liable for all resulting damages to the other Partners.

7.12   Cooperation.  Each Partner agrees to use their reasonable efforts in performing their duties and responsibilities, and to cooperate with the other Partners in accordance with the terms and spirit of this Agreement.

7.13   Fiduciary Duties.  The General Partner shall owe fiduciary duties of the highest level to the Partnership and the Limited Partners and shall user their best efforts in performing their duties and responsibilities.  Such fiduciary duties shall include (but not be limited to) the duty of loyalty, the duty of care and the duty of good faith and fair dealing.

(a)   Duty of Loyalty.  The General Partner's duty of loyalty shall include (but not be limited to) the following obligations:

(i)   Account and Hold.  The General Partner must account to the Partnership, and hold as a trustee for it, any property, profit, or benefit obtained by the General Partner in the conduct or winding up of the Partnership business or from a use by the General Partner of Partnership property or information.

(ii)   Company Opportunities.  The General Partner also must not appropriate a business opportunity of the Partnership.

(iii)   Non-Competition.  The General Partner must also refrain from dealing with the Partnership in the conduct or winding up of the Partnership's business as or on behalf of a party having an interest adverse to the Partnership and may not compete with the Partnership in the conduct of its business before the dissolution of the Partnership.  This duty not to compete with the Partnership shall exist even after the General Partner withdraws from the Partnership.

(iv)   Disclosure.  The General Partner must disclose to the other Partners matters affecting their business relationship.

(b)   Duty of Care.  The General Partner shall at all times maintain duty of care in the conduct or winding up of the Partnership's business to refrain from engaging in negligent or reckless conduct, intentional misconduct or a knowing violation of law.

(c)   Good Faith and Fair Dealing.  The General Partner must discharge their duties and exercise their duties under this Agreement and the Act consistently with the obligation of good faith and fair dealing so as to (i) not act in bad faith, or (ii) do anything that will deprive the other Partners to the Agreement of the benefits contemplated in this Agreement.

7.14   Confidentiality, Non-Disclosure, Non-Circumvention and Non-Competition.  As material consideration for the other Partners agreeing to enter into this Agreement, the General Partner as well as each key employee or officer of the General Partner shall enter into the Confidentiality and Non-Circumvention Agreement, attached hereto as Exhibit "C".

7.15   Fraud, Negligence, Misconduct or Breach of Duty/Agreement.  If a General Partner (or its shareholder, directors, officers and/or representative(s)) (the "**Breaching General Partner**") shall commit any act of fraud, negligence, misconduct, dishonesty, breach of fiduciary duty, or breach or default of this Agreement (and/or any other agreement contemplated by this Agreement), with respect to the Partnership, its Business, its assets or its Partners, the Limited Partners (excluding any Limited

LP Agreement (Direct Document Solutions) final

ML00005328

Partners affiliated with General Partner) may, without prejudice to any other rights the nondefaulting Limited Partners may have, elect by notice to the Breaching General Partner to cause the Partnership to purchase the Partnership Interests belonging to that Breaching General Partner as well the Partnership Interests belonging to any Affiliate of the Breaching General Partner.  In such case, the purchase price for all such Partnership Interests shall be an amount equal to the combined positive Capital Account balance of the Breaching General Partner and its Affiliate Limited Partner (if any), as of the date the election to redeem is made.  If the combined Capital Account balance is negative, than the Partnership may redeem or rescind the Partnership Interest of the Breaching General Partner and its Affiliate Limited Partner without payment.  Any payment shall be from Partnership cash flow in equal installments over the course of twenty-four (24) months.  Alternatively, a majority of the Limited Partners (excluding any Limited Partners affiliated with General Partner), voting in accordance with their respective Percentage Interests, may elect to convert the Partnership Interests of the Breaching General Partner and its Affiliate Limited Partner (if any) to nonvoting status.

8.    LIMITED PARTNERS

8.1    Status of Limited Partners.  Except as required under the Act or as expressly set forth in this Agreement, a Limited Partner shall not be bound by, or be personally liable for, the expenses, liabilities or obligations of the Partnership except to the extent of the Capital Contributions required to be made by he or it under the terms of this Agreement and any additional Capital Contributions actually made by he or it.  However, the Limited Partners understand that a Limited Partner will be liable to the Partnership in an amount equal to any distributions made to such Limited Partner if, after the distribution is made, the remaining assets of the Partnership are not sufficient to pay the Partnership's then outstanding liabilities, exclusive of nonrecourse liabilities and liabilities to the Partners on account of their interests in the Partnership.

8.2    Nonassessability.  Each Partnership Interest, when issued, shall be fully paid and nonassessable (except as provided in Paragraph 5.2 or otherwise in this Agreement.)

8.3    No Participation in Management.  Pursuant to Paragraph 7, the management of the Partnership is vested in the General Partner.  No Limited Partner, acting solely in the capacity of a Limited Partner, is an agent of the Partnership nor can any Limited Partner in such capacity bind nor execute any instrument on behalf of the Partnership.  Except for certain voting rights as otherwise provided in Paragraph 7.5 or elsewhere in this Agreement, the Limited Partners have no voting or approval rights and no right or power to take part in the management or control of the Partnership or its business, or to act for or bind the Partnership in any way.

8.4    Admission of Substituted or Additional Limited Partners.  A substituted or additional Limited Partner may only be admitted to the Partnership pursuant to the terms and conditions as provided in Paragraph 10.

9.    BOOKS AND RECORDS

9.1    Books and Records.  The General Partner, at Partnership expense, shall maintain at the Partnership's principal office in California adequate books and records that will fully and accurately set forth all transactions entered into by the Partnership arising out of or connected with the conduct of its business.  In addition, the Partnership will maintain all of the records required to be kept under the Act at its principal office in California.  Any Partner, or their designated representative, may inspect and copy the Partnership's books and records at their own expense, at reasonable times and on reasonable notice.

ML00005329

9.2     Annual Report.  The General Partner shall have prepared at least once annually, at Partnership expense, a report containing (a) a balance sheet as of the end of the fiscal year and an income statement for the fiscal year; and (b) a statement of each Partner's share of the Partnership's income, gains, losses, deductions and credits for use in the preparation of their tax return for such fiscal year. Copies of the above shall be in the form maintained by the Partnership and shall be distributed to each Partner within ninety (90) days after the close of each taxable year of the Partnership.

9.3     Tax Returns.  The General Partner, at Partnership expense, shall cause income tax returns for the Partnership to be prepared and timely filed with the appropriate authorities.

9.4     Special Reports.  The General Partner, at Partnership expense, shall cause to be prepared and timely filed with appropriate federal and state regulatory and administrative bodies all reports required to be filed with such entities under the then current applicable laws, rules and regulations.  Such reports shall be prepared under the accounting or reporting basis required by such regulatory bodies.

9.5     Tax Elections.  All elections that are required or permitted to be made by the Partnership under the Code or any applicable state or local tax law (including, but not limited to, the election under Section 754 of the Code) will be made by the General Partner, in their reasonable good faith discretion.

9.6     Fiscal Year.  The fiscal year of the Partnership shall end on December 31.

10.     TRANSFER OF PARTNERSHIP INTERESTS

10.1     Permitted Transfers.  A General Partner may not sell, assign, exchange, pledge or otherwise transfer or encumber all or any part of their Partnership Interest.  A Limited Partner may not sell, assign, exchange, pledge or otherwise transfer or encumber all or any part of their Partnership Interest, without first obtaining the Approval of the Partners, except as follows:

(a)     To another Limited Partner; or

(b)     To a Controlled Affiliate (as defined below).

Any act in violation of this Paragraph 10.1 shall not be binding upon or recognized by the Company and any purported transfer that does not comply with this Agreement is void.  Unless the admission of the transferee to the Company in substitution for his transferor is Approved by the Partners, the transfer shall not terminate any of the transferor's obligations under this Agreement.  In addition, any Partnership Interest transferred pursuant to Paragraphs 10.1 shall continue to remain subject to the provisions of this Paragraph 10.

A **"Controlled Affiliate"** means with respect to a Limited Partner:  (a) that Limited Partner; (b) a trust for the benefit of that Limited Partner, and/or the spouse and/or lineal descendants of that Partner, in which that Limited Partner either serves as a trustee, or has the power to remove the trustee and substitute himself as trustee, and if acting as trustee has the power to bind the trust with his signature alone; (c) a corporation in which stock possessing more than eighty percent (80%) of the combined voting power of all classes of stock eligible to vote is owned directly or indirectly by that Limited Partner, and/or their Controlled Affiliates; (d) a general partnership in which more than eighty percent (80%) of the combined eighty percent (80%) of the capital, profits and voting interests are owned directly or indirectly by that Limited Partner, and/or their Controlled Affiliates; (e) a limited partnership in which that Limited Partner, and/or their Controlled Affiliates are the sole general partner(s), retain voting control and own more than eighty percent (80%) of the capital and profit interests of that entity; or (f) a limited liability company in which that Limited Partner, and/or their Controlled Affiliates are either the sole manager(s) (if there are

LP Agreement (Direct Document Solutions) final

ML00005330

managers) or a majority in interest of the members (if there are no managers), and also as members and/or manager(s) retain management and voting control and own more than eighty percent (80%) of the capital and profit interests of that entity.

10.2     No Transfer Permitted.  Notwithstanding any other provision of this Agreement, unless Approved by the Partners, no sale, exchange, transfer or assignment of any Partnership Interests by a Partner, directly or indirectly, is permitted.

10.3     Indirect Transfers.  Any sales, transfers or encumbrances, directly or indirectly, of an aggregate interest of fifty percent (50%) or more in the income, losses, capital, or voting or management rights of any Partner that is a corporation, partnership, limited liability company, trust or other entity, or any amendment or change to the partnership agreement of a Partner that is a partnership, to the operating agreement of a Partner that is a limited liability company, or to the trust agreement or trustees of a Partner that is a trust, that changes the management or control of that entity, shall be considered a prohibited sale, transfer or encumbrance of the Partnership Interests of that Partner for purposes of this Paragraph 10.

10.4     Rights of Assignee.  An Assignee who is not admitted as a Substituted Partner is entitled only to allocations and distributions pursuant to Paragraphs 6 and 11 with respect to the Partnership Interests that Assignee acquires, and that Assignee has no right to any information or accounting of the affairs of the Partnership, is not entitled to inspect the Partnership's books or records, and does not have any of the rights of a Partner under this Agreement or the Act.

10.5     Admission of Substituted Partners.

10.5.1     Subject to the other provisions of this Paragraph 10, a transferee of a Partnership Interest may be admitted to the Partnership as a Substituted Partner only if all of the following conditions are satisfied:

(a)     The Approval of the Partners is obtained.

(b)     The Partnership Interest(s) with respect to which the transferee is being admitted were acquired in a transfer permitted under this Agreement.

(c)     The transferee becomes a party to this Agreement, and executes any documents or instruments that the General Partner reasonably request (including, but not limited to, an amendment to this Agreement and an instrument pursuant to which the transferee agrees to be bound by all of the terms of this Agreement).

(d)     The transferee pays or reimburses the Partnership for all costs incurred by the Partnership in connection with the admission of the transferee.

10.5.2     A Substituted Partner has all of the rights and powers, and is subject to all the restrictions and liabilities, of their transferor, except those liabilities he or it was ignorant of at the time he or it became a Partner and that could not be ascertained from this Agreement.

10.6     Void Transfers.  Any assignment, sale, exchange or other transfer in contravention of any of the provisions of this Agreement shall be void and ineffectual, and shall not bind or be recognized by the Partnership.

10.7     Covenant Not to Withdraw.  Each Limited Partner agrees not to withdraw or attempt to withdraw from the Partnership.

ML00005331

11.   TERMINATION AND DISSOLUTION OF THE PARTNERSHIP

    11.1   Termination.  The Partnership shall be terminated and dissolved in accordance with the Act or upon the first to occur of any of the following events:

        (a)   The Approval of the Partners in favor of termination and dissolution of the Partnership.

        (b)   Substantially all of the assets of the Partnership are sold or liquidated, unless before the completion of the transactions all of the Partners agree in writing that the transactions shall not cause the dissolution of the Partnership.

        (c)   Judicial decree.

        (d)   The expiration of the term of the Partnership.

        (e)   Any Partner acquires all of the Partnership Interests.

    11.2   Winding Up of the Partnership.

        11.2.1   Upon the dissolution of the Partnership, the General Partner shall proceed to the winding up of the affairs of the Partnership and the assets shall be liquidated as promptly as is consistent with obtaining reasonable values for the assets.  If the Partnership is dissolved as a result of the Partnership no longer having a General Partner, a majority in interest of the Limited Partners shall, within sixty (60) days after the event of the dissolution, appoint a trustee to wind up and terminate the business and affairs of the Partnership.  The assets may be distributed in kind or may be transferred, exchanged or sold at public or private sales as the General Partner shall deem advisable, and any Partner may purchase assets in the event of a sale.  Every reasonable effort shall be made to dispose of the assets of the Partnership so that the distribution may be made to the Partners in cash.

        11.2.2   During the period of the winding up of the affairs of the Partnership, the rights and obligations of the General Partner set forth in this Agreement concerning the management of the Partnership shall continue.  For purposes of winding up, the General Partner shall continue to act and shall make all decisions relating to the conduct of any business or operations during the winding up period.

    11.3   Distributions.  The proceeds from the liquidation, to the extent available, shall be applied and distributed by the Partnership in the following order of priority:

        (a)   To the payment and discharge of all of the Partnership's debts and liabilities to creditors, including Partners (or former Partners) who are creditors, to the extent permitted by law, and including the payment of promissory notes assigned and guaranteed by the Partnership and the expenses of liquidation.

        (b)   The balance, if any, to the Partners in proportion to and to the extent of the positive balances in their respective Capital Accounts, after giving effect to all contributions, distributions and allocations for all periods.

    11.4   Compliance With Timing Requirements of Regulations.  If the Partnership is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), (a) distributions shall be made pursuant to this Paragraph 11 (if such liquidation constitutes a dissolution of the Partnership) or Paragraph 6 (if it

ML00005332

does not) to the Partners who have positive Capital Accounts on or before the last day of the fiscal year in which the liquidation occurs (or, if later, ninety (90) days after the date of the liquidation), and (b) if any General Partner's Capital Account has a deficit balance (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), such General Partner shall contribute to the capital of the Partnership the amount necessary to restore such deficit balance to zero in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(3). Distributions pursuant to the preceding sentence may be distributed to a trust established for the benefit of the Partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership, and paying any contingent or unforeseen liabilities or obligations of the Partnership.  The assets of any such trust shall be distributed to the Partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the Partners pursuant to this Agreement.

   11.5   <u>No Recourse Against Partners</u>.  A Partner shall look solely to the assets of the Partnership for the return of their investment.  If the Partnership property remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return such investment, the Limited Partners shall have no recourse against a General Partner or any other Limited Partner unless such failure is a result of the fraud, bad faith, gross negligence or willful misconduct by that Partner.

   11.6   <u>Allocation of Income or Loss on Dissolution</u>.  Any Income or Loss arising out of a disposition of Partnership assets during the course of liquidation shall be allocated among the Partners under the allocation provisions of Paragraph 6 as if the Partnership were not being dissolved.

   11.7   <u>Waiver of Right to Court Decree of Dissolution</u>.  All of the Partners agree that irreparable damage would be done to the goodwill and reputation of the Partnership if any Partner should bring an action in court to dissolve the Partnership in any way other than as provided in this Agreement.  Care has been taken in this Agreement to provide what the parties feel are fair and just methods of liquidation of the interests of all Partners.  Accordingly, each Partner hereby waives and renounces their rights to a court decree of dissolution, to seek the appointment by the court of a liquidator for the Partnership, to maintain an action for partition with respect to their undivided interest in the Partnership properties or to compel any sale of the Partnership properties.

   11.8   <u>Death, Bankruptcy, Insolvency, Incapacity or Withdrawal of a Partner Shall Not Dissolve the Partnership</u>.  Except as may otherwise be provided in this Agreement, under no circumstances shall the death, bankruptcy, insolvency, incapacity or withdrawal of any Partner, or the sale, assignment or other disposition of a Partnership Interest, result in the dissolution or termination of the Partnership.

12.   <u>AMENDMENTS</u>

   This Agreement may be amended only with the Approval of the Partners.  Notwithstanding any other provision of this Agreement, without the consent of the Partner or Partners to be adversely affected by any amendment to this Agreement, this Agreement may not be amended to (a) convert a Limited Partner's interest into a General Partner's interest; (b) modify the limited liability of a Limited Partner; (c) alter the interest of a Partner in income, gains, losses, deductions, credits and distributions of the Partnership; (d) increase, add or alter any obligation of any Partner; (e) affect the treatment of the Partnership as a partnership for federal income tax purposes; or (f) alter this Paragraph 12.

13.   <u>GENERAL PROVISIONS</u>

   13.1   <u>Notices</u>.  Any notice, consent, waiver, demand, payment or other communication required or permitted to be given by or to any person pursuant to this Agreement (collectively, "**notice**")

LP Agreement (Direct Document Solutions) final

ML00005333

must be in writing, and must be given either (a) by personal service (including service by overnight courier service); (b) by registered or certified first class mail, return receipt requested; or (c) by facsimile (if confirmed in writing sent that same day by personal service or by registered or certified, first class mail, return receipt requested), to a party at the address set forth in Paragraphs 3.2 for such Partner or at such other address as he or it may specify in writing.  However, the notice of any meeting or the furnishing of any financial statement to the Partners may be done by first class mail.

Any notice, request or demand sent pursuant to clause (a) hereof shall be deemed received upon such personal service, and, if sent pursuant to clause (b) or (c) shall be deemed received on the date shown on the return receipt.  All notices shall be addressed to and given to the party at the party's address as it appears in this Agreement or on any amendment to this Agreement, and a party may change the address at which notice is to be received, at any time and from time to time, by giving notice of the new address to all parties in accordance with this Paragraph 13.1.  Rejection or other refusal to accept delivery, or the inability to deliver because of a changed address of which no notice was given, shall be deemed to constitute receipt of notice or other communication sent.

13.2    <u>Titles, Captions and Paragraphs</u>.  All titles or captions of paragraphs contained in this Agreement are for convenience only and shall not be deemed part of the context of this Agreement.  Such titles and captions in no way define, limit, extend or describe the scope of this Agreement nor the intent of any provision hereof.  Reference to paragraph numbers are to the paragraphs as numbered in this Agreement unless expressly stated otherwise.

13.3    <u>Gender and Number</u>.  Concerning the words used in this Agreement, the singular form shall include the plural form, the masculine gender shall include the feminine or neuter gender, and vice versa, as the context requires, and the word "**person**" shall include any natural person, partnership, corporation, association, trust, estate or other legal entity.

13.4    <u>Successors and Assigns</u>.  Except as otherwise provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, executors, administrators, successors and all persons hereafter having or holding an interest in the Partnership, whether as Assignees, Substituted Partners or otherwise.

13.5    <u>Entire Agreement</u>.  This Agreement contains the entire understanding among the Partners and supersedes any prior written or oral understandings and agreements between them regarding the subject matter of this Agreement.  There are no representations, agreements, arrangements or understandings, oral or written, between and among the Partners relating to the subject matter of this Agreement which are not fully expressed herein.

13.6    <u>Governing Law</u>.  Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions of this Agreement and the rights and liabilities of the parties hereto shall be governed by and construed in accordance with the laws of the State of California (other than its choice of law rules) including, without limitation, to the extent permitted by law, the Act.  Any action to interpret or enforce this Agreement shall be brought solely in the State of California.   To the extent permitted by law, the parties agree that the sole venue for such action shall be Orange County, California.  The parties each consent to the jurisdiction of California courts.

13.7    <u>Counterparts</u>.  This Agreement may be signed in multiple counterparts and by different parties in separate counterparts.  Each counterpart shall be deemed an original agreement and all of them together shall constitute one agreement among all the parties signing any of the counterparts.

ML00005334

13.8     Severability.  If any part of this Agreement is declared by a court of competent jurisdiction to be invalid, void or unenforceable, such part shall be deemed severed from the remainder of the Agreement and the balance of the Agreement shall remain in effect.

13.9     Non-Waiver of Rights and Breaches.  Waiver by a party of any breach of the provisions of this Agreement shall not be deemed to be a waiver of any subsequent breach of this Agreement, or of any breach of any other provision of this Agreement.

13.10     Other Instruments.  The parties hereto covenant and agree that they shall execute all other instruments and documents that are or may become necessary or convenient to effectuate and carry out the limited partnership created by this Agreement.

13.11     Partition.  Each of the parties hereto irrevocably waives during the term of the Partnership any right that it  may have to maintain any action for partition with respect to the Partnership properties, except as herein otherwise expressly provided.

13.12     Attorneys' Fees.  In the event that any legal action is instituted between the parties arising out of this Agreement, the prevailing party or parties therein shall be entitled to recover a reasonable allowance for their or their attorneys' fees and court expenses, to be fixed and determined by the court in which said action is filed.

13.13     Time of Essence.  Time is expressly made of the essence concerning the performance by the Partners of their respective obligations under this Agreement.

13.14     Authority.  Each individual signing for each of the Partners warrants and represents that he or it is an authorized agent of the Partner on whose behalf he or it is signing this Agreement.

13.15     Computation of Time.  If any period of time specified in this Agreement would otherwise end on a Saturday, Sunday or legal holiday, it shall be deemed extended to end on the next day following which is not a Saturday, Sunday or legal holiday.

13.16     Investment Intent.  Each Partner represents that he or it  is acquiring the Partnership Interest for their own account or for a trust account, and not with a view to or for sale in connection with any distribution of a security.

[CONTINUED ON FOLLOWING PAGE]

LP Agreement (Direct Document Solutions) final

ML00005335

IN WITNESS WHEREOF, the undersigned Partners of Direct Document Solutions, LP, hereby execute this Agreement.

**GENERAL PARTNER:**                    DIRECT DOCUMENT SOLUTIONS, INC.,
                                        a California corporation

By: _____
    Theresa Wray, President & Secretary

By: _____
    Jimmy Calderon, Chief Financial Officer/Treasurer

[SEE EXHIBIT "A" FOR SIGNATURES OF LIMITED PARTNERS]

LP Agreement (Direct Document Solutions) final

ML00005336

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Sales Speek, Inc<br>Attn: Jawad Nesheiwat<br>26631 Cuenca Drive<br>Mission Viejo, CA 92691 | $00.00 | 14.88% |

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

SALES SPEEK, INC., a California corporation

By: _____
    Jawad Nesheiwat, President

LP Agreement (Direct Document Solutions) final

ML00005337

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Mosto Financial, Inc.<br>Attn:  Robert Hoose<br>16202 Dana<br>Irvine, Ca 92618 | $00.00 | 9.90% |

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

MOSTO FINANCIAL, INC., a California
corporation

By: _____
     Robert Hoose, President

LP Agreement (Direct Document Solutions) final

ML00005338

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Prime Ad Enterprise, Inc.<br>Attn:  David Sklar<br>25181 MacKenzie Street<br>Laguna Hills, CA 92653 | $00.00 | 9.90% |

     The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

     This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

PRIME AD ENTERPRISE, INC., a California corporation

By: _____
      David Sklar, President

LP Agreement (Direct Document Solutions) final

ML00005339

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Cre8labs, Inc.<br>Attn:  Sean Cowell<br>24632 La Plata Drive,<br>Laguna Niguel, CA 92677 | $00.00 | 14.88% |

  The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

  This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

CRE8LABS, INC.,
a California corporation


By: _____
  Sean Cowell, President

ML00005340

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION**
**AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| TDK Enterprises, LLC 3 Whatney, Suite 200 Irvine, CA 92618 | $00.00 | 14.88% |

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

TDK ENTERPRISES, LLC, a California limited liability company


By:   _____
        TOM CHOU, its sole member

ML00005341

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Newport Platinum Investments Inc.<br>Attn: Tuan Nguyen<br>895 Dove Street, Third Floor<br>Newport Beach, CA 92660 | $00.00 | 14.88% |

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached. The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

NEWPORT PLATINUM INVESTMENTS INC., a
California corporation

By: _____
       Tuan Nguyen, President

ML00005342

## EXHIBIT "A"

## LIMITED PARTNER INFORMATION
## AND SIGNATURE PAGE

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| XO Media, LLC | $00.00 | 14.88% |

XO Media, LLC
Attn:  Mike Van Loon
2629 Townsgate Road, Suite 205
Westlake Village, CA 91361

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

XO MEDIA, LLC, a California limited liability company

By: _____
     Mike Van Loon, Authorized Member

ML00005343

**EXHIBIT "A"**

**LIMITED PARTNER INFORMATION
AND SIGNATURE PAGE**

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| M&R Partners, LLC Attn:  Mike Van Loon | $00.00 | 2.39% |

_____

_____

The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

M&R PARTNERS, LLC, a California limited
liability company

By:  _____
      Mike Van Loon, Authorized Member

ML00005344

### EXHIBIT "A"

### LIMITED PARTNER INFORMATION
### AND SIGNATURE PAGE

| Name and Notice Address | Initial Capital Contribution Obligation | Percentage Interests |
|---|---|---|
| Westfield Mount Vernon Consultants, LLC<br>Attn: Brad Brigante | $00.00 | 2.39% |

_____

_____

     The signing of this Exhibit "A" by a Limited Partner shall constitute the agreement of such Limited Partner to the Limited Partnership Agreement for Direct Document Solutions, LP, a California limited partnership (the "**Agreement**"), to which this Exhibit "A" is attached.  The undersigned represents that he, she or it has read, understands and approves the provisions of the Agreement, and agrees to be bound by and accept the provisions of the Agreement.

     This Exhibit "A" may be signed in multiple counterparts.

**LIMITED PARTNER:**

WESTFIELD MOUNT VERNON CONSULTANTS, LLC,
a California limited liability company

By: _____
     Brad Brigante, Manager

LP Agreement (Direct Document Solutions) final

ML00005345

**EXHIBIT "B"**

**NON-EQUITY PARTICIPATION FEE**

NON-EQUITY PARTICIPATION FEE.
The Partnership shall pay DDS Inc. (so long as it remains the General Partner) non-vested, non-equity participation fees in the amounts described further below. Such fees are intended to constitute an arm's length, pre-profit Partnership expense pursuant to Section 707(c) of the Code and shall not be treated as distributions for purposes of computing Capital Accounts.

PARTICIPATION FEE:

1. Monthly Base Fee. DDS, Inc. shall receive Eight Thousand Dollars ($8,000) per month.

2. Bonus Participation Fee. Contemporaneously with any Partner distributions pursuant to Paragraph 6.1(c) [Percentage Interests] of the Agreement, DDS, Inc. shall be entitled to a bonus participation fee as follows:

| Partnership Distribution [Para. 6.1(c)] | | Bonus Fee Percentage | Bonus Fee Amount | | Monthly Base Fee + Bonus Participation Fee | |
|---|---|---|---|---|---|---|
| $0 | $75,000 | 0% | $0 | $0 | $8,000 | $8,000 |
| $75,000 | $100,000 | 4.00% | $3,000 | $4,000 | $11,000 | $12,000 |
| $100,000 | $150,000 | 5.00% | $5,000 | $7,500 | $13,000 | $15,500 |
| $150,000 | $200,000 | 6.00% | $9,000 | $12,000 | $17,000 | $20,000 |
| $200,000 | ? | 8.00% | $16,000 | ? | $24,000 | ? |

3. Conditions/Limitations: The fee amounts provided above are conditioned upon Theresa Wray and Jimmy Calderon, together, remaining (i) as sole shareholders and sole directors in DDS, Inc., and (ii) in control of, and actively engaged in, the direct management of DDS, Inc.

   • If either Ms. Wray or Mr. Calderon shall (i) cease to be a shareholder and/or director in DDS, Inc. and/or (ii) cease to be actively involved in the management of the DDS, Inc. (and thereby cease managing the day-to-day affairs of the Partnership's Business), then all fees (monthly base and bonus participation) described above shall be reduced by fifty percent (50%).

   • In the event Ms. Wray and Mr. Calderon shall both cease any of the foregoing [Sec. 3(a)(i) or (ii) above], then all fees (monthly base and bonus participation) described above shall also immediately cease and be reduced to zero (0).

ML00005346

# EXHIBIT "C"

**CONFIDENTIALITY AND**
**NON-CIRCUMVENTION AGREEMENT**

ML00005347