# EXHIBIT G

Page 1

CONSUMER FINANCIAL PROTECTION BUREAU

In the Matter of:            )
                             ) Case No. 2017-1876-02
QUICKDEBTSERVICES, LLC       )

Wednesday,
November 28, 2018

Federal Building
Room 7516
300 North Los Angeles Street
Los Angeles, California

The investigational hearing testimony of

BRADLEY JOSEPH BRIGANTE commenced, pursuant to notice, at

3:00 p.m.

\* \* \*

```
 1   APPEARANCES:

 2   For The Consumer Financial Protection Bureau:

 3   COLIN T. REARDON, Attorney Advisor
     ELIZABETH VANESSA ASSAE-BILLE, Attorney at Law
 4   1700 G Street NW
     Washington, DC  20552
 5   (201) 435-9668
     elisabeth.assae-bille@cfpb.gov
 6


 7   For the Witness:

 8   SEAN BURKE, Esquire
     RAY BIEDERMAN, Esquire
 9   RICHARD HORN, Esquire
     Mattingly, Burke, Cohen & Biederman
10   155 E. Market Street, Suite 400
     Indianapolis, Indiana  46204
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1     LOS ANGELES, CALIFORNIA, WEDNESDAY, NOVEMBER 28, 2018

2                              3:00 p.m.

3

4                      BRADLEY JOSEPH BRIGANTE,

5    called as a witness, having been administered an oath, was

6    examined and testified as follows:

7

8                             EXAMINATION

9    BY MR. REARDON:

10       Q   Good afternoon, Mr. Brigante.  Before we get

11   started with your testimony, there are a few preliminary

12   matters we are going to cover on the record.

13           My name is Colin Reardon, and I'm here with

14   Vanessa Assae-Bille.  We are attorneys with the Office of

15   Enforcement at the Bureau of Consumer Financial

16   Protection.

17           It is November 28, 2018, about 3:00 o'clock, and

18   we are at the office of the United States Attorney in

19   Los Angeles, California.  This is an investigational

20   hearing conducted by the Bureau of Consumer Financial

21   Protection pursuant to 12 CFA -- 12 CFR Part 1080.

22           The objections that may be raised this afternoon

23   are limited, namely, to the constitutional or other legal

24   rights and privileges as set forth in those rules.  This

25   is not a deposition, and it is not governed by the Federal

1   Rules of Civil Procedure.

2           We are here to conduct the investigational

3   hearing of Brad Brigante pursuant to a Civil Investigative

4   Demand served on October 26, 2018.

5           Mr. Brigante, could you please state your full

6   name for the record.

7       A   Bradley Joseph Brigante.

8       Q   Did you understand the oath you just took?

9       A   Yes.

10      Q   Are you on any medications or other substances

11  that would impair your ability to give true and accurate

12  testimony today?

13      A   No.

14      Q   Is there any other reason you may not be able to

15  provide true and accurate testimony today?

16      A   No.

17      Q   Are you represented by counsel?

18      A   Yes.

19      Q   Who are your counsel?

20      MR. REARDON:  Each counsel please identify yourself

21  for the record.

22      MR. BURKE:  Sean Burke on behalf of the witness.

23      MR. BIEDERMAN:  Ray Biederman on behalf of the

24  witness.

25      MR. HORN:  Richard Horn on behalf of the witness.

1  legal advice to the limited partners.  The individuals on
2  this email appear to be limited partners in a company; is
3  that correct?
4      A    Yeah.  This is with Mike Van Loon and Tom Chou.
5      Q    Yes.
6      A    I am assuming it was legal advice relating to
7  how the limited partnership agreement worked and the way
8  limited partners have -- could vote, on what things they
9  could vote and not vote on.  That is what I am assuming.
10     Q    Okay.  And you were -- so at times you advised
11 just the limited partners, and then at times you also
12 advised both the general partners and the limited
13 partners; is that fair to say?
14     A    I am not sure if that is fair to say.  I mean,
15 Tom is obviously -- Tom's entity was a limited.  Mike's
16 was a limited.  So, you know -- I would have to go back
17 and look at the email.  I do apologize.
18          But I do think this was just something -- some
19 clarification on how the partnership agreement was
20 drafted.  But I would have to look.
21     Q    Okay.  Let's talk about those partnership
22 agreements.
23          Did each of the limited partnerships have a
24 limited partnership agreement?
25     A    I don't think so.  I can't recall if Document

1   Preparation Services, LP ever had a limited partnership
2   agreement.  I know that there was a request at some point
3   in 2017 by -- or maybe it was 2016 by Nesheiwat to have
4   some formalized partnership agreements, so I prepared a
5   partnership agreement for Assure Direct Services, LP.  I
6   prepared a partnership agreement for Certified Doc Prep
7   Services, LP.
8            I have got no knowledge of Clarity or Common
9   Data, no knowledge at all.  I prepared a partnership
10  agreement for Document Preparation Services, LP.  Oh,
11  wait.  No, that was the first entity.
12       Q   Yes.
13       A   Strike that.  Sorry.
14            Direct Document Solutions, LP.  And Secure
15  Preparation Services, LP.  I think there's four.  So
16  Assure, Certified Doc Prep, Direct Doc Solutions, and
17  Secure Preparation Services.
18       Q   Were those agreements ever amended?
19       A   I don't recall.  I don't recall.
20       Q   Were those agreements only between the limited
21  partners, or were they also with the general partner?
22       A   They were very typical limited partnership
23  agreements, so they would most definitely have a general
24  partner signing.
25       Q   So the general partner would be a party to the