# EXHIBIT K

## DECLARATION OF KENNETH LAWSON

I, Kenneth Lawson, declare as follows:

1      I make this declaration in support of my response to the Notice of Opportunity to Respond and Advise ("NORA") which I received from the Consumer Financial Protection Bureau ("Bureau"), via telephone conference with my counsel on June 14, 2019, and confirming letter of the same date, in connection with the Bureau's investigation of Chou Team Realty, LLC et al. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2.      From the NORA communications, I understand that the Bureau's staff intends to recommend to the Bureau Director that I be named as a relief defendant in a proposed lawsuit in which the staff is recommending that Chou Team Realty and certain other entities, including ones that provided document preparation services to individuals seeking modification of their student loans, be named as full defendants. As a relief defendant, I understand that I would not be alleged to have engaged in any wrongdoing but that I am in possession of "profits" generated by the proposed primary defendants in alleged violation of the Fair Credit Reporting Act ("FCRA"), the Consumer Protection Financial Act ("CFPA"), and/or the Federal Trade Commission's Telemarketing Sales Rule ("TSR"), which the Bureau staff contends are ill-gotten gains that must be disgorged. To underscore my status as a mere proposed relief defendant who would not be accused of any wrongdoing in the Bureau's lawsuit, I state facts herein to establish that I could not be accused of wrongdoing in any event, because I neither participated in any of the alleged illegal conduct of the proposed full defendants, nor had the authority to control them.

1

<u>Chou Team Realty, Inc.</u>

3.       Until February 2018, I was an investor in Chou Team Realty, Inc. ("CTR Inc."), as evidenced by a subscription agreement between me and the company, a true and correct copy of which is attached hereto as Exhibit 1.

4.       I was never a controlling shareholder, officer or director of CTR Inc. The response of CTR to the Bureau's Civil Investigative Demand, stating that I was a director of CTR Inc., is incorrect. To the best of my knowledge, at all relevant times the director, and only director, of CTR Inc. was Thomas Chou, as evidenced in CTR, Inc. corporate filings, true and correct copies of which are attached as Exhibit 2 hereto. While CTR Inc. had quarterly investor update meetings which I attended as an interested investor, which may have been casually referred to or misunderstood by certain people at certain times as "Board meetings," they were in fact not board meetings, but only meetings for investors to be updated about the progress of the company and their investments.

5.       As only a non-controlling outside investor in CTR Inc., I was never part of the management team or control group that had authority to run, and did run, the company, and oversee the conduct of its employees. As a non-controlling shareholder, non-director, non-officer and non-manager, I had no authority to control the acts of CTR Inc., including any acts in violation of the FCRA, CFPA, TSR, or any other law or regulation.

<u>CTR Realty, LLC</u>

6       On or about March 1, 2018, CTR Inc. became Chou Team Realty, LLC ("C1R, LLC"). My investment in CTR Inc. carried over to CTR, LLC.

7.    I have a non-controlling ownership interest in and am a non-managing member of CTR, LLC. The sole managing member is Mikael van Loon, as set forth in the CTR, LLC Operating Agreement. A true and correct copy of pertinent sections of the agreement is attached as Exhibit 3 hereto.

8.    Under the CTR, LLC operating agreement, the overall management and control of the the company is vested in the Management Committee. The Management Committee shall delegate the day-to-day management of the company to one or more Officers. Sections 7.1, 7.6, 8.3.

9.    I am neither a member of the CTR, LLC Management Committee nor an Officer of C FR, LLC. As such, as with CTR Inc., I am not and have never been a part of the management team or control group that has authority to run, and runs, CTR, LLC, and oversee the conduct of its employees. As a non-controlling member, non-manager and non-officer, I had no authority to control the acts of CTR, LLC, including any acts in violation of the FCRA, CFPA, TSR, or any other law or regulation.

10.    I am only an outside investor in C IR, LLC , albeit one with a natural interest in monitoring my investment in the company, which in turn incentivizes me to monitor the business performance of the company and contribute whatever advice and suggestions I believe will improve the likelihood of financial success of the company and my investment in it. The same was true for C IR, Inc.

## Lack of Personal Knowledge of and Participation in the Alleged Wrongdoing of CTR, Inc. and/or CTR, LLC

11. From the NORA communications, I understand that the Bureau staff is alleging violations of the FCRA by one or both of the Chou Team Realty entities (collectively, "CTR") involving their

alleged use of Experian consumer reports without a permissible purpose, namely, sharing those reports with certain companies providing document preparation services to individuals seeking modification of their federal student loans, for the purpose of enabling those entities to market their services to the subjects of the reports.

12.     To the extent any personnel of CTR were engaging in such alleged misconduct in violation of the FCRA, as only an outside, non-controlling investor in CTR, with no day-to-day involvement or managerial role or responsibility in CTR, I did not participate, directly or indirectly, in any activity constituting or relating to such misconduct. I further had no contemporaneous knowledge whatsoever of such activity at the time it was allegedly occurring. Had I had such knowledge, and understood it to be unlawful under the FCRA, as an investor with a financial interest in ensuring that my investment is not endangered by allegations of serious legal wrongdoing by the business, I would have brought it to the attention of CTR management and asked that it be immediately investigated and stopped.

13.     I only became aware of the possible misuse of Experian consumer reports by CTR when I was informed of the issue by CTR CEO Mikael van Loon in or about late 2016-early 2017. To the best of my recollection, I was informed by Mr. van Loon by telephone and told that company management was investigating the matter and would take all necessary steps to stop the practice and discipline any personnel who were involved in it. Certain senior personnel responsible for the practice were subsequently terminated, including Jawad Nesheiwat, who was terminated in Q2 2017.

**Student Loan Document Preparation Companies**

14.    From the NORA communications, I understand that Bureau staff is alleging that certain companies besides CTR, including ones that allegedly inappropriately received Experian consumer reports from CTR, also violated the FCRA, CFPA and/or TSR. These include: Docu Prep Center, Inc.; Document Preparation Services, LP; Certified Doc Prep, Inc.; Certified Doc Prep Services, LP; Assure Direct Services, Inc.; Assure Direct Services, LP; Direct Document Solutions, Inc.; Direct Document Solutions, LP; Secure Preparation Services, Inc.; Secure Preparation Services, LP; and Lend Tech Loans. I further understand from the NORA communications that the Bureau is seeking disgorgement from me of any distributions, including return of principal as well as any profits, that I may have received from investments that I have in any of these entities.

15.  I have no personal investments in any of the above-named entities but I am a member of XO Media, LLC, which is a non-controlling member of Docu Prep Center, LLC, and a non-controlling limited partner in Document Preparation Services, LP, Certified Doc Prep Services, LP, Assure Direct Services, LP, Direct Document Solutions, LP, and Secure Preparation Services, LP. (collectively, "DocPrep Entities"). Neither I nor XO Media is a shareholder, officer or director of, or has any other position with, any of the corporations ("Inc." entities) named in the NORA letter and listed in paragraph 14 above.

16.  The limited partnership agreements of the DocPrep Entities organized as limited partnerships are identical to one another. Attached as Exhibit 4 hereto is a true and correct copy of pertinent sections of the limited partnership agreement of Assure Direct Services, LP, which is representative of the others.

17.     Under the terms of the limited partnership agreements of the DocPrep Entities in which XO Media is a limited partner, "the business, assets and affairs of the Partnership shall be managed exclusively by the General Partner." Section 7.1. The section of the agreements dealing with limited partners contains a subsection, titled "No Participation in Management," which reiterates that the "management of the Partnership is vested in the General Partner....Limited Partners have no right or power to take part in the management or control of the Partnership or its business, or to act for or bind the Partnership in any way." Section 8.3.

18.     As only a non-controlling limited partner in the DocPrep Entities organized as limited partnerships, XO Media, and I as a member of XO Member, had and have no authority to control these entities or their conduct.

19.     Attached as Exhibit 5 hereto is a true and correct copy of pertinent sections of the operating agreement of Docu Prep Center, LLC. XO Media is a non-managing member of Docu Prep Center. See Section 1.1., defining "Managers." Under the terms of the company's operating agreement, the Managers "have the complete power and authority to manage and control the business of the Company and to make all decisions affecting the Company's business and affairs." Section 6.1(a).

20.     As only a non-controlling, non-managing member of Docu Prep Center, LLC, in which "complete power and authority to manage and control the business of the Company" is vested in the Managers, XO Media, and I as a member of XO Member, had and have no authority to control Docu Prep Center, LLC or its conduct.

21.     To the extent any of the DocPrep Entities, or any of the other entities named in the NORA letter and listed in paragraph 14 above, were engaging in conduct that violates the FCRA, CFPA and/or TSR, including the allegedly violative conduct described in the NORA communications, as a member of

only a non-controlling limited partner and non-controlling, non-managing member in those companies, with no day-to-day involvement or managerial role or responsibility in them, I did not participate, directly or indirectly, in any activity constituting or relating to such misconduct. Specifically, I had no role or input in: (a) the advertising and telemarketing activities of the DocPrep Entities (or any other of the named entities), including the formulation, review, approval and dissemination of any of the specific representations made to consumers about their services (loan consolidation can lower interest rates and improve credit scores; after consolidation the U.S. Department of Education would be the loan servicer) that Bureau staff believes were deceptive, as contended in the NORA communications; or (b) their fee billing and collection practices, including without limitation the timing of collection of fees and when such collection is permissible under the CFPA or TSR. I further had no contemporaneous knowledge of the alleged deceptiveness of any representations or of the allegedly unlawful early collection of fees from consumers, at the time they were allegedly occurring. Had I had such knowledge, and understood such conduct to be unlawful under the CFPA and/or TSR, as an investor with a financial interest in ensuring that my investment is not endangered by allegations of serious legal wrongdoing by the business, I would have brought it to the attention of management of the DocPrep Entity(ies) in question and asked that it be immediately investigated and stopped.

**LendTech Loans**

22.     From the NORA communications, I understand that the Bureau staff alleges that a company named LendTech Loans was created in or about June 2017 purportedly to provide

mortgage loans, but was a sham intended only to be a conduit for the provision of prescreened consumer report information from consumer reporting agencies to student loan document preparation companies, in violation of FCRA. Until my counsel informed me of this allegation made in the NORA communications, I had never heard of a company called LendTech Loans. I have no association or involvement with such company and no knowledge of its business purposes and practices.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my personal knowledge.

EXECUTED this 27th day of June, 2019, 8:15pm

KENNETH LAWSON