**PETER D. LEPISCOPO, ESQ.  C.S.B.  #139583**
LEPISCOPO & ASSOCIATES LAW FIRM
695 Town Center Drive, 7TH Floor
Costa Mesa, California 92626
Telephone: (949) 878-9418
Facsimile: (619) 330-2991

Attorneys for Defendant, **JAWAD NESHEIWAT**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION (SANTA ANA)

| | |
|---|---|
| **BUREAU OF CONSUMER FINANCIAL PROTECTION,**<br><br>       Plaintiff,<br><br>v.<br><br>**CHOU TEAM REALTY LLC,** *et al.*,<br><br>       Defendants. | Case No.  **8:20-cv-00043-JCS-ADS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JAWAD NESHEIWAT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS FOR WANT OF JURISDICTION UNDER ARTICLE III**<br><br>[U.S. Const. Art. III; and F.R.Civ.P. Rule 12(b)(1) & (c); L.R. 7-3]<br><br>* This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on 7/7/20.<br><br>DATE:  **August 24, 2020**<br>TIME:  **1:30 p.m.**<br>COURTROOM: **10-C**<br>JUDGE: **HON. JAMES V. SELNA**<br>TRIAL DATE: **July 13, 2021, 8:30 a.m.** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  RELIEF REQUESTED

Pursuant to the United States Constitution, Article III ("Article III"), Rule 12(b)(1) & (c) of the Federal Rules of Civil Procedure ("FRCP"), and the United States Supreme Court decision issued on June 29, 2020, in *Seila Law LLC v. Consumer Financial Protection Bureau,* 591 U.S. ___ (June 29, 2020), 2020 U.S. LEXIS 3515 ("*Seila Law*"), defendant Jawad Nesheiwat ("Nesheiwat") hereby requests the Court to issue an order dismissing with prejudice the First Amended Complaint[1] (ECF No. 117) ("FAC") or entering judgment on the FAC for want of jurisdiction under Article III. The LEXIS version of the *Seila Law* opinion is attached to this motion as Exhibit 2. (Decl. of Lepiscopo ¶ 3; Exh. 2.)

## II.  ARGUMENT

**A.  IN LIGHT OF *SEILA LAW*, THIS COURT HAS AN INDEPENDENT DUTY TO DETERMINE IF IT HAS ARTICLE III JURISDICTION:**

Federal courts are courts of limited jurisdiction, and parties may not expand that jurisdiction by waiver or consent. *See e.g. Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("*Matheson*") (*per curiam*). Thus,

---

[1] Pursuant to Section J of the Court's 1/13/20 *Initial Order Following Filing of Complaint Assigned to Judge Selna* (ECF No. 7), Nesheiwat has attached a copy of the FAC to the instant motion as Exhibit 1, incorporated herein by this reference, as though fully set forth herein. (Lepiscopo Decl. ¶ 2; Exh. 1.)

challenges to subject matter jurisdiction may be raised at **any point**, including for the first time on appeal. *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007) ("*Detabali*"). Moreover, even if the parties do not dispute jurisdiction, this Court has an independent obligation to assess its own jurisdiction *sua sponte*. *WildEarth Guardians v. EPA*, 759 F.3d 1064, 1070 (9th Cir. 2014); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (*en banc*) ("*Chapman*").

Even if this Court does not address the jurisdictional question now, the Ninth Circuit is dutybound to determine whether this Court had Article III subject matter jurisdiction. *See e.g. California ex rel. Sacramento Metro. Air Qual. Mgmt. Dist. v. United States*, 215 F.3d 1005, 1009 (9th Cir. 2000) ("An appellate court is under a 'special obligation to satisfy itself not only of its own jurisdiction, **but also that of the lower courts** in a cause under review, even though the parties are prepared to concede it . . . [or] make no contention concerning it.'") (quoting *Axell Int'l, Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935, 943 (9th Cir. 1999); emphasis added).

**B.    AUTHORITY FOR MOTION AND SUMMARY OF ARGUMENT:**

Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* FRCP 12(b)(1). A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). *See e.g. Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at

*11-13 (E.D. Wash. Feb. 16, 2012) (granting motion to dismiss). For a facial attack, all allegations are accepted as true. *Id*. On the other hand, this Court is not restricted to the four-corners of the FAC and may review whatever evidence is needed in order to determine whether it has Article III jurisdiction. *See e.g. Assoc. of Am. Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000), and *McCarthy v. United States*, 850 F.2d. 558, 560 (9th Cir. 1988).

Rule 12(c) provides that "after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." *See FRCP* 12(c). A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios v. Richard Feiner & Co.*, 883 F.2d 1429, 1436 (9th Cir. 1989).

Whether raised under Rule 12(b)(1) or 12(c), the Bureau has the burden of establishing Article III jurisdiction in this Action, especially in light of *Seila Law*. *See e.g. Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Finally, as the FAC may not be maintained by an unconstitutional officer (*i.e.*, Bureau's director) acting through an unconstitutional **office**, and as the FAC is the product of the actions of an unconstitutional officer, again, the director, the Court does not have Article III jurisdiction. Specifically, *Seila Law* makes clear that the

director's actions taken prior to and during this litigation are void *ab initio* and, therefore, unconstitutional. Accordingly, this Court does not have Article III jurisdiction thereby justifying dismissal of the entire action under Rule 12(b)(1) or entry of judgment in favor of defendants under Rule 12(c).

**C.    IN LIGHT OF *SEILA LAW*, THIS COURT DOES NOT HAVE ARTICLE III JURISDICTION AND, THEREFORE, SHOULD EXERCISE ITS POWER UNDER RULE 12(b)(1) TO DISMISS THIS ENTIRE ACTION WITH PREJUDICE OR RULE 12(c) TO ENTER JUDGMENT ON THE FAC IN FAVOR OF DEFENDANTS:**

This Action was filed by plaintiff Bureau of Consumer Financial Protection ("Bureau") under the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Act"), July 21, 2010, P.L. 111-203, § 4, 124 Stat. 1390, codified at 12 United States Code ("U.S.C.") §§ 5301-5641. (*See* FAC ¶¶ 1, 8, & 9.)

The Act creates the Bureau by way of 12 U.S.C. § 5491(a):

> "There is established in the Federal Reserve System, an independent bureau to be known as the 'Bureau of Consumer Financial Protection', which shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws."

In addition, the Act attempted to create the **office** of director ("Director") as the single leadership position of the Bureau by way of 12 U.S.C. § 5491(b)(1) & (2):

> "There is established the position of the Director, who shall serve as the head of the Bureau. . .the Director shall be appointed by the President, by and with the advice and consent of the Senate."

In *Seila Law*, it was creation of the **office** of the Director that was declared unconstitutional because it was created in contravention of the Doctrine of Separation of Powers through limiting the President's Article II powers. Specifically, the Act established the term ("Term") and reasons for removal ("Removal") of the Director pursuant to 12 U.S.C. § 5491(c)(1) & (3):

> "(c) Term.
>   (1) In general. The Director shall serve for a term of 5 years. . .
>   (3) Removal for cause. The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office."

Through the Term and Removal clauses, § 5491(c)(1) & (3), the Supreme Court declared the **office** of Director and the **officer** (i.e., the Director) appointed thereby unconstitutional under the Doctrine of Separation of Powers:

> "We hold that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers."

*Seila Law*, *supra*, at *25.

The Supreme Court noted that the Bureau was an "independent agency led by a single Director and vested with significant executive power." And that such "an agency has no basis in history and no place in our constitutional structure." *Id*. at *34.

In addition, in *Seila Law*, the Supreme Court cited *The Federalist* No. 58, wherein James Madison discussed the principles underlying the Doctrine of Separation of Powers:

> "The CFPB's single-Director structure contravenes this carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one. The Director is neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is. The Director does not even depend on Congress for annual appropriations. See The Federalist No. 58, at 394 (J. Madison) (describing the 'power over the purse' as the 'most compleat and effectual weapon' in representing the interests of the people). Yet the Director may ***unilaterally***, without meaningful supervision, issue final regulations, oversee adjudications, set enforcement priorities, **initiate prosecutions, and determine what penalties to impose on private parties**. With no colleagues to persuade, and no boss or electorate looking over her shoulder, the Director may dictate and enforce policy for a vital segment of the economy affecting millions of Americans.
>
> The CFPB Director's insulation from removal by an accountable President **is enough to render the agency's structure unconstitutional**."

*Seila Law*, *supra*, at *41 - *42 (emphasis in original and added).

Further, in *Seila Law*, the Supreme Court provided a stark example and analysis on how Congress created an unconstitutional executive branch officer—the Director—who would be unaccountable and would not serve under the control or at the pleasure of the President:

> "Because the CFPB is headed by a single Director with a five-year term, some Presidents may not have any opportunity to shape its leadership and thereby influence its activities. A President elected in 2020 would likely not appoint a CFPB Director until 2023, and a President elected in 2028 may never appoint one. That means an unlucky President might get elected on a consumer-protection platform and enter office only to find herself saddled with a holdover Director from a competing political party who is dead set against that agenda. To make matters worse, the agency's single-Director structure means the President will not have the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JAWAD NESHEIWAT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS FOR WANT OF JURISDICTION UNDER ARTICLE III**

6

opportunity to appoint any other leaders—such as a chair or fellow members of a Commission or Board—who can serve as a check on the Director's authority and help bring the agency in line with the President's preferred policies."

*Seila Law*, *supra*, at *42.

It is important to note that in *Seila Law* the Court specifically held that the type of actions exercised by the Director in this Action were **executive** powers:

> "Finally, the Director's **enforcement** authority includes the power to seek **daunting monetary penalties against private parties** on behalf of the United States in federal court—a **quintessentially executive power**. . . Everyone agrees the CFPB Director is not an inferior officer, and her duties are far from limited. Unlike the independent counsel, who lacked policymaking or administrative authority, the Director has the sole responsibility to administer 19 separate consumer-protection statutes that cover everything from credit cards and car payments to mortgages and **student loans**."

*Seila Law*, *supra*, at *33-34 (emphasis added). In addition, in *Seila Law* the Supreme Court specifically identified **student loans**, which is the subject matter of the Director's actions in this Action, as outlined below. *Id*.

As mentioned above and in *Seila Law*, under the Act the Director has Executive Branch powers to issue civil investigative demands ("CID"), interrogatories, and demands production of documents, conduct investigative hearings of prospective defendants, and initiate civil actions in federal court. *Seila Law*, *supra*, at *15 & 33. In this Action, the Director has exercised these Executive Branch powers by issuing CIDs to Mr. Nesheiwat and other defendants, serving

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JAWAD NESHEIWAT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS FOR WANT OF JURISDICTION UNDER ARTICLE III

7

interrogatories and requests for documents, ordering Mr. Nesheiwat and other defendants to attend investigative hearings and provide testimony under oath, and initiating the instant Action (collectively "Director's Actions"). Accordingly, the filing of and all information alleged in the FAC (ECF No. 117) and the testimony and evidence gathered in this Action were done by and through the Director's Actions (Decl. of Lepiscopo ¶5), all of which are unconstitutional under *Seila Law*.

During the July 7, 2020 meet and confer, the Bureau disclosed that as of that date, the Director had not ratified the initiation and prosecution of this Action. (Decl. of Lepiscopo ¶ 4.) On July 10, 2020, the Director issued a ratification of prior regulatory actions, 85 FR 41330-41331 (July 10, 2020) ("Regulatory Ratification"). However, the Director's Regulatory Ratification does <u>not</u> include or ratify the initiation and prosecution of this Action or any other pending civil action, all of which were specifically excluded from the Regulatory Ratification (Exh. 3).[2]

Finally, it is important to note that the Director's Actions cannot be constitutionally ratified *post facto* or given effect because their origins emanate from

---

[2] See https://www.govinfo.gov/content/pkg/FR-2020-07-10/pdf/FR-2020-07-10.pdf (*see* Request for Judicial Notice; Decl. of Lepiscopo ¶ 6; Exh. 3, p. 41330, Article III. Ratification, Sections 1-6; Article IV, p. 41331, specifically excludes this Action and other enforcement actions from the Regulatory Ratification: "The Bureau is considering whether ratifications of certain other legally significant actions by the Bureau, such as certain **pending enforcement actions**, are appropriate. Where that is the case, the Bureau is making such ratifications **separately**.")

an unconstitutional **officer**, the Director, occupying an unconstitutional **office**. *See e.g. FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993) ("*NRA*"); *Free Enterprise Fund v. PCOAOB*, 561 U.S. 477, 513 (2010) ("*Free Enterprise*"); *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994) ("*FEC*"). Thus, pursuant to these decisions and *Seila Law*, this Court is constrained to declaring the Director's Action void *ab initio* and, therefore, unconstitutional because they were taken by an unconstitutional officer through an unconstitutional office of the Executive Branch with absolutely no constitutional authority to act. *Seila Law, supra* at *33 & 41-42. Accordingly, this Court should find the FAC to be void and non-actionable.

### III.   CONCLUSION

Based on the forgoing, this Court does **not** have Article III jurisdiction thereby requiring this Court to dismiss this Action or enter judgment in favor of defendants on the FAC because it is the unconstitutional product of the Director's Actions. U.S. CONST. ART. III; *Seila Law, NRA, Free Enterprise, and FEC, supra*; FRCP § 12(b)(1) & (c).

Dated: July 13, 2020.                                    LEPISCOPO & ASSOCIATES LAW FIRM

By: /s/ Peter D. Lepiscopo
    **PETER D. LEPISCOPO**
    *Counsel of Record*
    Attorneys for Defendant, **JAWAD NESHEIWAT**