COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
KEVIN E. FRIEDL
E-mail: kevin.friedl@cfpb.gov (NY Bar #5240080)
Phone: (202) 435-9268
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA  94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Chou Team Realty, LLC et al., )<br><br>Defendants. )<br>_____ ) | Case No.: 8-20-cv-00043-JVS-ADS<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT JAWAD NESHEIWAT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

The Supreme Court's recent decision in *Seila Law LLC v. CFPB* held that a provision of the Bureau's organic statute that limited the President's ability to remove the Bureau Director was unconstitutional but severable from the rest of the statute. 140 S. Ct. 2183 (2020). The Supreme Court made clear that, in light of its decision, "[t]he agency may … continue to operate," with the constitutional issue now resolved. *Id.* at 2192. After *Seila Law* was decided, the Bureau filed the First Amended Complaint in this case.

Defendant Jawad Nesheiwat has now moved to dismiss, or for judgment on, that amended complaint. He contends that the Court lacks jurisdiction because of the removal provision that unconstitutionally limited the President's removal power at the time this suit was first filed. That argument, however, is foreclosed by Ninth Circuit precedent and inconsistent with *Seila Law* itself, which, rather than dismissing the case for lack of jurisdiction, sent it back to the Ninth Circuit for additional proceedings.

Nor could Defendant otherwise prevail on his motion. The constitutional problem formerly created by the removal provision has now been resolved, and the amended complaint that Defendant seeks to challenge was filed *after* the Supreme Court resolved the Bureau's constitutionality. Moreover, any issue that might remain with the initial filing of this case, even after the filing of a new operative pleading, was cured when the Director ratified the initial decision to bring suit after she became removable at will.

The Court should deny Defendant's motion in full.[1]

---

[1] Defendant errs in framing his motion, in part, as a request for judgment on the pleadings under Rule 12(c). Because Defendant has not yet answered the First Amended Complaint, such a motion is premature at this time. *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). For this reason, the Court should

# ARGUMENT

## I.     The Court Has at All Times Had Jurisdiction to Hear This Case

*Seila Law* held that a provision of the Bureau's statute permitting the President to remove the Bureau's Director only for "inefficiency, neglect of duty, or malfeasance in office" was invalid because it unconstitutionally impeded the President's authority under Article II of the Constitution. 140 S. Ct. at 2197–98; *see also* 12 U.S.C. § 5491(c)(3). The Court went on to hold that the provision was severable from the rest of the statute. *Seila Law*, 140 S. Ct. at 2211 (Roberts, C.J.); *see also id.* at 2245 (Kagan, J., concurring in judgment with respect to severability and dissenting in part). It remanded the case for the Ninth Circuit to address the parties' arguments about ratification—in particular, about a former Acting Director's ratification of the civil investigative demand at the center of the dispute.

The constitutional problem identified, and resolved, in *Seila Law* has no bearing on the Court's subject-matter jurisdiction over this case. The Ninth Circuit held as much in *CFPB v. Gordon*, 819 F.3d 1179, 1187–90 (9th Cir. 2016), where it concluded that an initial Article II problem with the filing of an enforcement suit by the Bureau when it was led by an improper recess appointee did not deprive the court of jurisdiction. The Ninth Circuit emphasized that, in a government enforcement action, "it is the Executive Branch, not any particular individual, that has Article III standing." *Id.* at 1187 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992)). It went on to explain that the Article II flaw in the initial appointment of the Director who

---

construe Defendant's motion solely as a motion to dismiss. *Cf. Burkhart v. Banales*, No. 08-cv-3623-GAF, 2009 WL 838137, at *2 (C.D. Cal. Mar. 26, 2009) (courts may simply treat premature Rule 12(c) motions as motions to dismiss).

authorized that suit "does not alter the Executive Branch's interest or power in having federal law enforced." *Id.* at 1189. "While the failure to have a properly confirmed director may raise Article II Appointments Clause issues," the court concluded, "it does not implicate our Article III jurisdiction to hear this case." *Id.*; *see also id.* at 1190 (observing that "no court, including the Supreme Court, has ever suggested that Article II problems nullify Article III jurisdiction").

*Gordon* forecloses Defendant's argument that the Article II problem with the removal provision that existed at the time this suit was filed nullifies this Court's jurisdiction.[2] *See also FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707 (D.C. Cir. 1996) (claim that the agency prosecuting an enforcement action was "unconstitutionally composed cannot be regarded as anything other than an affirmative defense" that can be waived, and thus is necessarily non-jurisdictional).

Defendant's position is also contradicted by the outcome in *Seila Law* itself. After concluding in that case that the removal provision was invalid but severable, the Supreme Court remanded the dispute to the Ninth Circuit "to consider whether the civil investigative demand was validly ratified." *Seila Law*, 140 S. Ct. at 2211 (Roberts, C.J.). That result is wholly inconsistent with Defendant's view that the removal provision deprives courts of jurisdiction to resolve cases filed while the provision was still in effect. *Cf. id.* at 2208 (recognizing that the Court should not return the case to the Ninth Circuit if "such a remand would be futile").

This Court has at all times had jurisdiction over this action, notwithstanding the invalidity of the statutory removal provision.

---

[2] Although counsel for the Bureau alerted Defendant's counsel to the holding in *Gordon* before Defendant filed his motion, the motion nowhere acknowledges the existence of this contrary binding circuit precedent.

## II.   Defendant Cannot Otherwise Prevail Based on a Constitutional Issue That Has Now Been Resolved

Even when properly understood as a non-jurisdictional affirmative defense, Defendant's argument fails. First, the Supreme Court's decision in *Seila Law* holding the removal provision invalid but severable has resolved any constitutional problem with this case moving forward. The Bureau's subsequent filing of a new operative pleading removes any doubt on this point. Second, the Director's ratification of this action after the decision in *Seila Law* rendered her removable at will has resolved any constitutional problem with the initiation of this case that might possibly persist past the filing of the amended complaint.

### A.   *Seila Law* resolved any constitutional problem with this case moving forward.

Defendant's motion turns entirely on the statutory removal provision addressed in *Seila Law*. But that provision no longer has any force and effect. The Supreme Court held it invalid and severable from the rest of the statute, and in so doing, emphasized that the Bureau may now "continue to operate" under the leadership of a Director "removable by the President at will." *Id.* at 2192. That decision finally and fully resolves the constitutional problem with the Bureau's organic statute. *See id.* at 2209 (Roberts, C.J.) (because "the Director's insulation from removal" was the "only constitutional defect" the Court "identified in the CFPB's structure," the constitutional problem "disappear[s]" once the Director is "removable at will by the President"). The inoperative removal provision is thus no impediment to this case moving forward.

If there were any doubt, it was removed when the Bureau filed its First Amended Complaint *after* the Supreme Court corrected the flaw in the Bureau's

statute. *See* ECF No. 117.[3] Defendant can hardly challenge that complaint based on a constitutional problem that did not exist at the time it was filed. It is self-evident that an amended complaint cannot be dismissed based on an alleged legal deficiency specific to the original complaint. *See generally Ramirez v. San Bernardino County*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." (internal quotation marks omitted)); *cf. Merritt v. Wells Fargo Bank, N.A.*, No. 8:18-cv-1960-JVS, 2019 WL 1951608, at *4 (C.D. Cal. Mar. 15, 2019) (noting this rule and declining to consider allegations in original complaint when considering whether to dismiss amended complaint).

**B.     The ratification by a Director fully accountable to the President cured any constitutional problem with the original initiation of this case.**

In addition, after the Supreme Court issued its decision in *Seila Law*, the Director considered the basis for the initial decision to file this action and ratified that decision on behalf of the Bureau. Her declaration of ratification is attached.[4] Under the Ninth Circuit's decision in *Gordon*, that ratification by an official fully accountable to the President resolves any Article II problem with

---

[3] While the First Amended Complaint is currently the operative pleading, the Bureau notes that it has moved for leave to file a Second Amended Complaint that, if permitted, would allege additional claims against Defendants Eduardo Martinez, Docs Done Right, Inc., and Docs Done Right, LP. *See* ECF No. 126.
[4] Defendant's motion notes that the Director's ratification of certain Bureau regulatory actions on July 10 did not "ratify the initiation and prosecution of this Action." Mem. at 8. Defendant fails to mention that counsel for the Bureau informed him via email on July 9 that the Director had formally ratified this case.

this action's initial approval—and thus any problem that might conceivably be thought to persist beyond of the filing of a new operative pleading.

In *Gordon*, the Ninth Circuit, after confirming its jurisdiction, went on to consider the effect of a ratification made by the Bureau's then-Director, Richard Cordray, after he was properly appointed. The court held that "any initial Article II deficiencies" with the Bureau's filing of a suit while Director Cordray was serving as an improper recess appointee were "cure[d]" by "the subsequent valid appointment [of Director Cordray], coupled with Cordray's August 30, 2013 ratification." 819 F.3d at 1190–91.

This Court should reach the same conclusion here. The ratification of this action by a Director who is removable at will cured the initial Article II deficiency that existed at the time this suit was filed. *See also Legi-Tech*, 75 F.3d at 708 (holding that agency's decision to ratify enforcement action after the agency became properly structured "adequately addressed" the separation-of-powers problem that existed with the agency's structure when it first filed suit); *United Food & Com. Workers Union Local Nos. 135, 324, 770, 1036, 1167, 1428, 1442 v. NLRB*, 669 F. App'x 397, 398 (9th Cir. 2016) (following *Gordon* and holding that ratification of final agency order by properly constituted agency "cured" any initial "Article II Appointments Clause defects"). Indeed, dismissing this case (or awarding judgment to Defendant) after an official fully accountable to the President has approved it would undermine, not respect, the executive authority vested in the President by Article II.

That *Gordon* concerned the Appointments Clause and this case concerns the President's power to remove appointed officials provides no basis for distinguishing *Gordon*. In this case, just as in *Gordon*, a principal (the Bureau), acting through a valid agent (here, a Director who is now removable at will),

ratified a prior action taken by an agent who allegedly lacked authority (here, a Director who was removable only for the reasons specified in the statute). And, just as in *Gordon*, notwithstanding any constitutional issues with the exercise of authority by the Director while she was shielded from at-will removal, the Bureau itself had clear statutory authority "to bring the action at the time [Defendant] was charged." *Gordon*, 819 F.3d at 1192 (citing 12 U.S.C. § 5564(a)–(b)).

Defendant errs in claiming that the Director cannot ratify the decision to file this suit because that decision "emanate[s] from an unconstitutional *officer*, the Director, occupying an unconstitutional *office*." Mem. at 8–9 (ECF No. 118-1). As an initial matter, *Seila Law* did not hold unconstitutional the office of the Director. (Still less did it hold the Director herself to be unconstitutional—whatever that would mean.) Instead, the Supreme Court held invalid (but severable) the removal provision that formerly applied to the Director, 12 U.S.C. § 5491(c)(3). It in no way suggested that the provision creating the office of the Director—12 U.S.C. § 5491(b)(1)—was invalid. Instead, the Court made clear that the Bureau may continue to carry out its statutory responsibilities, led by a Director removable at will. There is no more impediment to the Director ratifying this suit than there was in *Gordon*. *See also Legi-Tech*, 75 F.3d at 708 (rejecting argument that separation-of-powers problems "necessarily void[] all prior decisions" of an agency, and upholding ratification).

Defendant offers three cases in support of his view of ratification. *See* Mem. at 9. They are of no help. First, *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), did not involve ratification or even a dispute about any particular agency action. It does not support Defendant's argument.

Second, *FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994), held a ratification ineffective for reasons that have no relevance here. In that case, the Supreme Court concluded that the Solicitor General could not ratify an improperly filed petition for certiorari after the jurisdictional deadline to petition for certiorari in the case had passed, because he would have lacked authority to petition for certiorari at the time he made the ratification. *Id.* at 98–99. Unlike in that scenario, there is no doubt here that the Bureau's Director had authority to ratify the bringing of this suit at the time she did so. *Cf. Seila Law*, 2020 WL 3492641, at *5 ("[t]he agency may … continue to operate" with a Director removable at will).

Third, *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), the decision from which the FEC and Solicitor General attempted unsuccessfully to appeal, must be read in light of a follow-on decision by same court (indeed, authored by the same judge): *FEC v. Legi-Tech, Inc*., 75 F.3d 704 (D.C. Cir. 1996). *NRA Political Victory Fund* involved an enforcement action brought by the FEC. The D.C. Circuit held that the FEC's structure violated the constitutional separation of powers because the Commission included two *ex officio* congressional members. 6 F.3d at 826–28. Being "aware of no theory" that would allow it to do otherwise, the Court reversed the district court's judgment in favor of the FEC. *Id.* at 828.

Shortly after that decision, the FEC reconstituted itself without the congressional members. *Legi-Tech, Inc*., 75 F.3d at 706. It then ratified its ongoing enforcement actions, including one against Legi-Tech. *Id.* Legi-Tech argued that it was entitled to dismissal because the FEC had been unconstitutionally structured when it issued its complaint. *Id.* at 707. The D.C. Circuit disagreed. It held that ratification by a properly constituted FEC was an "adequate remedy for the *NRA* constitutional violation" that had existed when

the FEC filed suit. So too here: Any Article II problem with the initial filing of this action was remedied when the Director ratified this action after becoming fully accountable to the President.

Finally, Defendant appears to argue that this case cannot be ratified because the constitutional defect of which he complains existed at the time that Bureau enforcement staff undertook their pre-suit investigation. Mem. at 7–8. But this was equally true of the enforcement action in *Gordon*, and no barrier to the Ninth Circuit upholding the ratification of that case. In fact, *Gordon* rejected a roughly similar argument that the then-Director's invalid recess appointment rendered unlawful all actions of others at the Bureau, dismissing that view as an "unprecedented" "Article II version of the fruit of the poisonous tree doctrine." 819 F.3d at 1188. More fundamentally, Defendant fails to provide any basis in law or reason for his view that a constitutional problem that existed during the Bureau's investigation, but no longer (and which Defendant never saw fit to raise during that investigation), would justify dismissal or judgment in his favor, particularly after a Director subject to the President's plenary supervision has ratified this suit.

## CONCLUSION

For all these reasons, the Court should deny Defendant's motion to dismiss the First Amended Complaint or for judgment on the pleadings.

MEMORANDUM IN OPPOSITION TO DEFENDANT JAWAD NESHEIWAT'S
MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS
10

1   Dated August 3, 2020                Respectfully Submitted,

2                                       /s/ Kevin E. Friedl

3                                       Leanne E. Hartmann
                                        E. Vanessa Assae-Bille (*pro hac vice*)
4                                       Colin Reardon (*pro hac vice*)
                                        Kevin E. Friedl (*pro hac vice*)
5                                       Bureau of Consumer Financial Protection
                                        1700 G Street, NW
6                                       Washington, D.C. 20552

7                                       *Attorneys for Plaintiff Bureau of*
                                        *Consumer Financial Protection*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28