COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, | Case No.: 8-20-cv-00043-SB-ADS |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES** |
| vs. | |
| Chou Team Realty, LLC, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

I.    Introduction ........................................................................................... 1

II.   Procedural History ................................................................................. 3

III.  Argument ............................................................................................... 6

      A. The Court has Authority to Enter Default Judgment ...................... 6

      B. The *Eitel* Factors Favor Granting Default Judgment ..................... 6

           i.    The Bureau Will Be Prejudiced Without a Judgment ............. 7

           ii.   The SAC States Claims and the Merits of Plaintiff's Claims
                 Warrant Default Judgment ................................................... 7

           iii.  The Money at Stake Supports Default Judgment ................... 15

           iv.   The Possibility of Dispute of Material Facts is Unlikely ........ 15

           v.    The Default Is Not Due to Excusable Neglect ...................... 16

           vi.   Other Factors Outweigh Deciding the Case on the Merits ...... 16

      C. Default Judgment for Injunctive and Monetary Relief Is Warranted  16

           i.    Injunctive Relief to Prevent Future Violations ..................... 18

           ii.   Monetary Relief to Compensate Consumers ......................... 20

           iii.  Civil Money Penalties .......................................................... 23

IV.   Conclusion ........................................................................................... 24

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Alan Neuman Prods., Inc. v. Albright,*
  862 F.2d 1388 (9th Cir. 1988)............................................................15

*Aldabe v. Aldabe,*
  616 F.2d 1089 (9th Cir.1980)...............................................................6

*Banga v. Chevron U.S.A. Inc.,*
  No. 11-cv-1498, 2013 WL 71772 (N.D. Cal. Jan. 7, 2013).............................8

*Benny v. Pipes,*
  799 F.2d 489 (9th Cir. 1987)...............................................................15

*Blair v. City of Worcester,*
  522 F.3d 105 (1st Cir. 2008) ................................................................5

*Blasi v. United Debt Services LLC,*
  No. 14-cv-83 (S.D. Ohio Nov. 5, 2014)...................................................9

*Bruno v. Equifax Info. Servs. LLC,*
  No. 8:17-cv-327, 2018 WL 11176020 (E.D. Cal. May 3, 2018)......................9

*CFPB v. Consumer Advocacy Center Inc.,*
  No. 19-cv-1998, 2020 WL 7774930 (C.D. Cal. Dec. 1, 2020).................16, 18

*CFPB v. Global Fin. Support et al.,*
  No. 15-cv-2440, 2021 WL 242939 (S.D. Cal. Jan. 25, 2021) ....................7, 14

*CFPB v. Gordon,*
  819 F.3d 1179 (9th Cir. 2015)............................................................13

*CFPB v. Siringoringo,*
  No. 14-cv-01155, 2016 WL 102435 (C.D. Cal. Jan. 7, 2016)..............7, 19, 23

*CFTC v. Co Petro Marketing Grp., Inc.,*
  502 F. Supp. 806 (C.D.Cal.1980).......................................................17

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

iii

*Const. Laborers Trust Funds for S. Cal. Admin. Co. v. Anzalone Masonry, Inc.*,
    316 F. Supp. 3d 1192 (C.D. Cal. 2018) ...........................................................6

*Davis v. Fendler*,
    650 F.2d 1154 (9th Cir. 1981)..............................................................6, 16,19

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986)...................................................................*passim*

*FTC v. 1263523 Ontario, Inc.*,
    205 F. Supp. 2d 205 (S.D.N.Y. 2002)..........................................................16

*FTC v. Affordable Media, LLC*,
    179 F.3d 1228 (9th Cir. 1999).............................................................17, 18

*FTC v. Alliance Document Preparation*,
    296 F. Supp. 3d 1197 (C.D. Cal. 2017) ........................................................14

*FTC v. Am. Fin. Benefits Ctr.*,
    324 F. Supp. 3d 1067 (N.D. Cal. 2018) ........................................................10

*FTC v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965) ......................................................................................17

*FTC v. Elegant Solutions, Inc.*,
    No. 19-cv-1333, 2020 WL 4390381 (C.D. Cal. July 6, 2020) ..........................10

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001)..........................................................................18

*FTC v. Stefanchik*,
    559 F.3d 924 (9th Cir. 2009).....................................................................14, 19

*Nayab v. Capital One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019)............................................................................9

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002). ....................................................7, 16

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

iv

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*,

189 F.R.D. 431 (C.D. Cal. 1999) ..................................................................6

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494 (C.D. Cal. 2003) ..................................................................6

*TeleVideo Sys., Inc. v. Heidenthal*,

826 F.2d 915 (9th Cir. 1987)..........................................................................6

*Trans World Accounts, Inc. v. FTC*,

594 F.2d 212 (9th Cir. 1979)........................................................................17

## Statutes

12 U.S.C. § 5481 ...............................................................................12, 13

12 U.S.C. § 5531 .................................................................................2, 11

12 U.S.C. § 5536 ...........................................................................2, 11, 13

12 U.S.C. § 5564 ........................................................................................8

12 U.S.C. § 5565.........................................................................8, 18, 20, 21, 21

15 U.S.C. § 1681 .................................................................................2, 13

15 U.S.C. § 6102 .................................................................................2, 13

15 U.S.C. § 6105 ......................................................................................13

28 U.S.C. § 1331 ........................................................................................8

28 U.S.C. § 1345 ........................................................................................8

## Regulations

12 C.F.R. § 1083.1 ...................................................................................21

16 C.F.R. § 310.3 .........................................................................2, 11, 12, 13

16 C.F.R. § 310.4 .........................................................................2, 10, 11

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

v

**Rules**

Fed. R. Civ. P. 55 ............................................................................*passim*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

vi

## I.   Introduction

Between 2015 and 2017, a group of five student loan debt-relief businesses unlawfully obtained consumer reports containing information about millions of consumers with student loans.  The debt-relief businesses then used the consumer reports to send deceptive direct mail solicitations.  And when consumers called in response to the solicitations, the businesses made more false statements and charged consumers who purchased their services millions in unlawful advance fees.  Plaintiff Bureau of Consumer Financial Protection ("Bureau") commenced this action to address this unlawful conduct and to provide relief to harmed consumers.

The Bureau alleged claims against the five student loan debt-relief businesses (collectively, the "Student Loan Debt Relief Companies" or "SLDR Companies"), each of which was composed of a corporation and an associated limited partnership: (1) Docu Prep Center, Inc. and Document Preparation Services, LP (collectively, "Docu Prep Center"); (2) Certified Doc Prep, Inc. and Certified Doc Prep Services, LP (collectively, "Certified Doc Prep Services"); (3) Assure Direct Services, Inc. and Assure Direct Services, LP (collectively, "Assure Direct Services"); (4) Direct Document Solutions, Inc. and Direct Document Solutions, LP (collectively, "Direct Document Solutions"); and (5) Secure Preparation Services, Inc. and Secure Preparation Services, LP (collectively, "Secure Preparation Services").

The Clerk of Court has entered defaults against each of the Student Loan Debt Relief Companies.  *See* ECF Nos. 71, 76, 101, 122.  Pursuant to Fed. R. Civ. P. 55(b)(2) and L.R. 55-1, the Bureau applies for entry of the proposed Default Judgment and Order Against Student Loan Debt Relief Companies ("Default Judgment") filed with this motion against each of the SLDR Companies.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

1

Default judgment is appropriate under the circumstances.  The Bureau's original Complaint alleged that, in connection with providing debt-relief services to consumers with student loans, the SLDR Companies committed several violations of federal consumer financial law.  *See* ECF No. 1.  The Bureau's currently-operative complaint, the Second Amended Complaint ("SAC"), alleges that same claims and same facts against the SLDR Companies.  *See* ECF No. 141.

Specifically, the SAC states valid claims that the SLDR Companies used or obtained consumer reports without a permissible purpose in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(f) (Count I); requested and received advance fees for debt relief services in violation of the Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.4(a)(5) (Count II); misrepresented that consumers would obtain lower interest rates and improve their credit scores by consolidating their student loans, in violation of the TSR, 16 C.F.R. § 310.3(a)(2)(x) and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536 (Counts III, IV, VII, and VIII); and violated the CFPA based upon their violations of FCRA and the TSR, 12 U.S.C. § 5536(a)(1)(A), 15 U.S.C. §§ 1681s(d), 6102(c) (Count XI).  In addition, the SAC states valid claims that Docu Prep Center misrepresented to consumers that the U.S. Department of Education would become the "new servicer" on their student loans, in violation of the TSR, 16 C.F.R. § 310.3(a)(2)(x), and of the CFPA, 12 U.S.C. §§ 5531, 5536 (Counts V and IX).

There is no just reason to delay issuance of a default judgment order.  No counsel has appeared on behalf of the SLDR Companies and the companies have not attempted to defend themselves in this action.  Moreover, the well-pleaded allegations in the SAC, which are taken as true as a result of the SLDR Companies' default, combined with evidence submitted with this

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

2

Memorandum, establish the SLDR Companies' unlawful conduct and the consumer injury attributable to it.  Finally, as explained below, the seven *Eitel* factors counsel in favor of entry of default judgment against the SLDR Companies.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Plaintiff requests that the Court enter the proposed Default Judgment, which includes injunctive relief prohibiting future violations, a judgment for consumer redress collectively totaling $19,699,870 million to provide restitution to harmed consumers, and a judgment for civil money penalties against each company collectively totaling $25 million.  This relief is authorized under the CFPA, and is necessary to protect consumers, redress injury, and deter unlawful conduct.

## II.   Procedural History

The Bureau commenced this civil action on January 9, 2020.  With respect to the SLDR Companies, the Bureau's original Complaint alleged violations of FCRA, the TSR, and the CFPA, and sought permanent injunctive relief, rescission or reformation of contracts, disgorgement, damages, redress, and civil money penalties.  *See* ECF No. 1.

Between January and June 2020, the Bureau served the original Complaint on each of the ten entities that composed the SLDR Companies and filed proofs of service with this Court.

For six of those defendants, the Bureau served a summons and a copy of the original Complaint by personally serving the company's registered agent. On January 16, 2020, the Bureau served Direct Document Solutions, Inc.'s registered agent, Jimmy A. Calderon.  ECF No. 25.  On January 23, 2020, the Bureau served Secure Preparation Services, Inc.'s registered agent, Aaron Sebreros.  ECF No. 26.  On January 30, 2020, the Bureau filed the proofs of service showing service on those defendants.  ECF Nos. 25-26.  On February 3

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

3

and March 25, 2020, the Bureau served Haithum Abdelfattah, the registered agent for both Certified Doc Prep, Inc. and Certified Doc Prep Services, LP. The Bureau filed the associated proofs of service on February 5 and April 7, 2020.  ECF Nos. 34, 66.  On February 6, 2020, the Bureau served David Sklar, the registered agent for both Direct Document Solutions, LP and Secure Preparation Services, LP, and on February 12, 2020 filed those proofs of service.  ECF Nos. 38, 41.

The Bureau also obtained waivers of service from three of the SLDR Companies.  On January 22, 2020, the Bureau served a copy of the original Complaint and a Request to Waive Service of a Summons on Docu Prep Center, Inc. and Document Preparation Services, LP by delivering copies to Joshua Robbins, the attorney who represents Robert Hoose, the registered agent for service of process for both entities.  The Bureau filed executed Waivers of Service of Summons on February 5, 2020.  ECF Nos. 28, 29.  Similarly, on March 23, 2020, the Bureau served a copy of the original Complaint and a Request to Waive Service of a Summons on Assure Direct Services, LP by delivering copies to David Holt, the attorney who represents David Sklar, Assure Direct Services, LP's registered agent for service of process.  All these entities executed and returned the Waivers of Service, which the Bureau filed on April 7, 2020.  ECF No. 63.[1]

Finally, on June 3, 2020, the Court granted the Bureau permission to serve Assure Direct Services, Inc. through the California Secretary of State.

---

[1] Although Docu Prep Center, Inc., Document Preparation Services, LP, and Assure Direct Services, LP have not formally appeared or answered, because they waived service the Bureau has provided them with written notice of this Application and the monetary relief the Bureau is seeking.  *See* Reardon Decl. ¶ 30; *see also* Fed. R. Civ. P. 55(b)(2) (requiring written notice if party against whom a default judgment is sought has appeared); Local Rule 55-2 (requiring written notice to include amount of damages sought).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

4

ECF No. 98.  On June 4, 2020, the Bureau served a summons, a copy of the

original Complaint, and a copy of the Court's order authorizing alternative

service on Assure Direct Services, Inc., via the California Secretary of State.

ECF No. 103.

The Bureau filed applications for entry of default against each of the

SLDR Companies.  ECF Nos. 68, 75, 100, 121.  The Clerk entered defaults

against the SLDR Companies between April 10, 2020 and July 15, 2020.  ECF

Nos. 71, 76, 101, 122; *see also* Fed. R. Civ. P. 55(a).

The Bureau filed its First Amended Complaint on July 10, 2020, and then

filed the SAC on August 26, 2020.  ECF Nos. 117, 141.  The First Amended

Complaint added factual allegations supporting the Bureau's claim against

certain relief defendants following the Court's ruling on their motion to dismiss,

and the SAC added claims against defendants Eduardo Martinez, Docs Done

Right, Inc., and Docs Done Right, LP.  *See* Reardon Decl. ¶¶ 23-24

(summarizing changes).  The Bureau's amended pleadings did not add new

claims against the SLDR Companies or seek any new relief against them.  *See

id.* ¶¶ 25-26.[2]

As of the date of this filing, the SLDR Companies have not answered,

moved to dismiss, or otherwise appeared in this action, and the time within

which they could do so has expired.  Default judgment is appropriate against

them because facts alleging their liability are well-pleaded and they have failed

to participate in the litigation.

---

[2] Because the Student Loan Debt Relief Companies were in default and both
subsequent amended complaints asserted the same claims against them as the
original Complaint, the Bureau did not serve those pleadings on the Student
Loan Debt Relief Companies.  *See* Fed. R. Civ. P. 55(a)(2); *see also Blair v.
City of Worcester*, 522 F.3d 105, 110 (1st Cir. 2008).

## III.   Argument

### A.   The Court has Authority to Enter Default Judgment

After the clerk's entry of default against a party under Rule 55(a), a court in its discretion may enter a default judgment against that party.  Fed. R. Civ. P. 55(b); *see Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. Anzalone Masonry, Inc.*, 316 F. Supp. 3d 1192, 1198 (C.D. Cal. 2018).  Once the clerk enters default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Further, where, as here, damages are capable of mathematical calculation, *i.e.*, based on definite figures contained in documentary evidence or in detailed affidavits, default judgment for money may be entered without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

### B.   The *Eitel* Factors Favor Granting Default Judgment

In determining whether to enter a default judgment, courts in the Ninth Circuit evaluate the seven factors set forth in *Eitel*: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471–72.  "'In applying this discretionary standard, default judgments are more often granted than denied.'"  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).  Here, the *Eitel* factors weigh in favor of entry of a default judgment against the SLDR Companies.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

6

### i.  The Bureau Will Be Prejudiced Without a Judgment

The Bureau will be prejudiced if default judgment is not entered against the SLDR Companies because it will be forced to commit time, resources, and personnel to prosecute a lawsuit in which those companies will not participate. *See CFPB v. Siringoringo*, No. 14-cv-01155, 2016 WL 102435, at *2 (C.D. Cal. Jan. 7, 2016) (first *Eitel* factor favored default judgment where Bureau "expended effort and incurred costs" prosecuting action).

Additionally, absent a judgment against SLDR Companies, Plaintiff will be unable to reach any assets they may have to provide redress to the many victims of their unlawful conduct, to obtain a permanent injunction protecting consumers from future violations of law, or to impose penalties to deter future wrongdoing.  *See CFPB v. Global Fin. Support et al.*, No. 15-cv-2440, 2021 WL 242939 at *17 (S.D. Cal. Jan. 25, 2021).

### ii.  The SAC States Claims and the Merits of Plaintiff's Claims Warrant Default Judgment

The second and third *Eitel* factors consider the sufficiency of the complaint and merits of the plaintiff's claims, both of which weigh in favor of entering default judgment.  Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, except for the allegations as to the amount of damages.  *See Geddes v. United Fin. Group,*, 559 F.2d 557,  560 (9th Cir. 1977).  These factors, in essence, "require that a plaintiff state a claim on which [it] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal quotation omitted).  Here, the SAC adequately alleges facts supporting the SLDR Companies' liability.[3]

---

[3] The analysis in this section focuses on the SAC, since it is the operative pleading.  The allegations supporting the Bureau's claims against the SLDR

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

7

### a.  Jurisdiction

This Court has subject-matter jurisdiction over this action because it was brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and the plaintiff is an agency of the United States, 28 U.S.C. § 1345.  SAC ¶ 1; *see also* ECF No. 139 (denying motion to dismiss for lack of subject matter jurisdiction).  Moreover, venue is proper in this district because the SLDR Companies are located, reside, or do business here.  12 U.S.C. § 5564(f).  SAC ¶¶ 16-27.  The CFPA also authorizes the Bureau to bring this action.  *Id*. at ¶ 9; *see also* 12 U.S.C. §§ 5564(a), 5565(a)(2).

### b.  FCRA Violation, 15 U.S.C. § 1681b(f) (Count I)

The SAC alleges that the SLDR Companies violated FCRA by using prescreened lists to market student loan debt-relief services.

FCRA prohibits using or obtaining a consumer report unless it is for a permissible purpose and the purpose is certified by the prospective user of the report.  15 U.S.C. § 1681b(f).  Where a transaction is not initiated by the consumer—that is, where the person obtaining the report is seeking to solicit a consumer with whom the person hasn't previously interacted—a consumer report may only be used or obtained if, among other things, the "transaction consists of a firm offer of credit or insurance."  *Id.* § 1681b(c)(1)(B)(i); *see also Banga v. Chevron U.S.A. Inc.*, No. 11-cv-1498, 2013 WL 71772, at *10 (N.D. Cal. Jan. 7, 2013).  A "firm offer of credit or insurance" is any offer of credit or insurance that will be honored (subject to certain exceptions) if the consumer continues to meet the pre-selected criteria used to select them for the offer.

---

Companies did not materially change in the Bureau's amended pleadings, and the Bureau's original Complaint also sufficiently alleged facts supporting liability.  *See generally* Compl. ¶¶ 16-27, 50-106, 122-25, 133.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

8

15 U.S.C. § 1681a(l).  Thus, under FCRA, a lender may ask a consumer reporting agency to "compile a list of consumers whose credit reports meet certain criteria bearing on creditworthiness," and the lender may then "use the responsive list … to solicit consumers by extending firm offers of credit." *Bruno v. Equifax Info. Servs. LLC*, No. 8:17-cv-327, 2018 WL 11176020, at *2 n.2 (E.D. Cal. May 3, 2018) (internal quotation omitted).  Such lists are commonly known as "prescreened lists." *Id.*

Using prescreened lists to market debt-relief services is not permitted under FCRA.  *See* 15 U.S.C. §§ 1681b(c)(1)(B)(i), (f); *see also Blasi v. United Debt Services LLC*, No. 14-cv-83, slip op. at 5-6 (S.D. Ohio Nov. 5, 2014) (denying motion to dismiss FCRA claim where defendant allegedly used prescreened lists to market debt relief services); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 495 (9th Cir. 2019) (recognizing that FCRA generally prohibits obtaining a consumer report unless a specific exception applies).

The SAC contains well-pleaded factual allegations supporting a finding that the SLDR Companies violated FCRA.  Between at least December 2015 and August 2017, the SLDR Companies used prescreened lists that contained consumers' names, addresses, and student loan balances to market debt relief services to those consumers.  SAC ¶¶ 52, 57, 69.  They obtained the lists from a mortgage lender known as Monster Loans and a purported mortgage brokerage company called Lend Tech Loans, both of which bought the lists from the credit reporting agency Experian.  *Id.* ¶¶ 57, 64, 69.[4]  Monster Loans and Lend Tech Loans each certified to Experian that they would use the prescreened lists

---

[4] The Court entered a stipulated final judgment and order against Monster Loans on May 14, 2020.  *See* ECF No. 90.  Lend Tech Loans answered the SAC, ECF No. 156-1, and remains a defendant in the action.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

9

to make firm offers of credit for mortgage loans. *Id.* ¶¶ 54, 66. But the SLDR Companies did not offer or extend credit, and they thus did not use the prescreened lists to make firm offers of credit. *Id.* ¶¶ 59, 84. Rather, the SLDR Companies used the prescreened lists to market debt-relief services. *Id.* ¶¶ 84, 172, 175.

### c.  Advance Fees in Violation of the TSR, 16 C.F.R. § 310.4(a)(5) (Count II)

The TSR is the implementing regulation of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. The TSR prohibits abusive practices by telemarketers or sellers, including requesting or receiving advance fees for debt relief services before renegotiating, settling, or otherwise altering the terms of at least one of a consumer's debts and before the consumer has made at least one payment under the altered terms of the debt. 16 C.F.R. § 310.4(a)(5)(i).

The SAC adequately pleads that the Student Loan Debt Relief Companies are "sellers" or "telemarketers" of a "debt relief service" who engaged in "telemarketing," as those terms are defined in the TSR. SAC ¶¶ 168-75. The SLDR Companies offered services to renegotiate, settle, or alter the terms of payments of consumers' federal student loans by preparing and submitting requests for loan consolidations, loan forgiveness, and loan-repayment plans to consumers' student-loan servicers. SAC ¶¶ 84, 172. These are "debt relief services" under the TSR. *See FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1081-83 (N.D. Cal. 2018) (FTC adequately alleged that similar student loan "document preparation" companies provided "debt relief services" under TSR); *see also FTC v. Elegant Solutions, Inc.*, No. 19-cv-1333, 2020 WL 4390381, at *14 (C.D. Cal. July 6, 2020). Further, the SLDR Companies offered and provided these services to consumers nationwide using

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

10

telephones and employing more than one interstate telephone call, in exchange for payment of fees that ranged from $699 to $999. *Id.* at ¶¶ 106, 173-74. Sales representatives handled incoming consumer calls, and during sales calls purported to advise consumers about their eligibility for, and the potential benefits of, consolidating their federal student loans and enrolling in the Department of Education's repayment and forgiveness programs. SAC ¶¶ 86, 92, 99.

The SAC also contains well-pleaded allegations supporting a finding that the SLDR Companies requested or received illegal advance fees in violation of the TSR. Between 2015 and at least 2017, the companies charged and received fees before consumers' applications for loan consolidations, loan repayment plans, and loan forgiveness plans were approved, and before consumers had made the first payments under the altered terms of their student loans. *Id.* at ¶¶ 107, 111. Charging and receiving those fees violated the TSR. 16 C.F.R. § 310.4(a)(5)(i).

### d. Deceptive Acts or Practices in Violation of the TSR, 16 C.F.R. § 310.3(a)(2)(x), and of the CFPA, 12 U.S.C. §§ 5531, 5536 (Counts III-V and VII-IX)

The SAC contains well-pleaded factual allegations supporting a finding that the SLDR Companies violated the CFPA and TSR by engaging in deceptive acts or practices.

As an initial matter, the SAC adequately alleges that SLDR Companies were subject to the prohibitions on deceptive practices in the CFPA and TSR. With respect to the CFPA, it is unlawful for a covered person to engage in a deceptive act or practice in connection with the offering of a consumer financial product or service. 12 U.S.C. §§ 5531(a), 5536(a)(1). A "covered person" under the CFPA means any person, including any individual or business entity,

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

11

that engages in "offering or providing a consumer financial product or service." *Id.* § 5481(6)(A) and (19).  By offering or providing the debt relief services described in the SAC, the SLDR Companies offered a consumer financial product or service covered by the CFPA.  Specifically, they offered financial-advisory services such as assisting consumers with debt-management or debt-settlement and modifying the terms of any extension of credit.  12 U.S.C. § 5481(5), (6), (15)(A)(viii); SAC ¶ 183.  As a result, the SLDR Companies are each a "covered person" under the CFPA and are subject to the CFPA's prohibition on deceptive acts or practices.  SAC ¶ 183.

With respect to the TSR, it is unlawful for a seller or telemarketer to misrepresent any material aspect of a debt-relief service.  16 C.F.R. § 310.3(a)(2)(x).  As discussed above, the SAC adequately alleges that the SLDR Companies are "sellers" or "telemarketers" of a "debt relief service" under the TSR.  *See supra* pp. 10-11; *see also* SAC ¶¶ 168-75.

Further, the well-pleaded allegations in the SAC support a finding that between 2015 and 2017 the SLDR Companies violated the prohibitions on deceptive acts or practices in the CFPA and TSR.  First, the SLDR Companies represented that consumers would obtain lower interest rates by consolidating their federal student loans; but consolidation results in either the same effective interest rate as the prior loans or a higher rate.  *Id.* at ¶¶ 92-94.  The companies also implied that consumers were required to consolidate their loans to be eligible for an interest-rate reduction associated with setting up automatic payments; but consumers were generally eligible for that reduction regardless of whether they consolidated.  *Id.* at ¶¶ 97-98.  Second, the SLDR Companies represented that consolidating student loans would improve consumers' credit scores, when in many instances consolidating was not likely to improve a consumer's credit score and when the companies lacked a reasonable basis to

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

12

make that representation.  *Id*. at ¶¶ 99-102.  Third, Docu Prep Center represented to consumers that the Department of Education would become the "new servicer" on their loans after they consolidated, which was also false.  *Id*. at ¶¶ 103-05.

These misrepresentations were material and likely to mislead consumers acting reasonably under the circumstances.  *Id*. at ¶¶ 226, 230, 235.  As such, they are deceptive acts or practices under the CFPA.  *See CFPB v. Gordon*, 819 F.3d 1179, 1192–93 (9th Cir. 2015).  Similarly, these representations misrepresented material aspects of a debt-relief service, and thus violated the TSR.  16 C.F.R. § 310.3(a)(2)(x).

**e.  Violation of the CFPA Based on Violations of FCRA and the TSR, 12 U.S.C. § 5536(a)(1)(A), 15 U.S.C. §§ 1681s(d), 6102(c) (Count XI)**

By violating FCRA and the TSR, the SLDR Companies also violated the CFPA.  Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful . . . for any covered person or service provider. . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law."  12 U.S.C. § 5536(a)(1)(A).  As discussed above, the SLDR Companies were covered persons under the CFPA.  FCRA and the Telemarketing Act are "Federal consumer financial laws" under the CFPA.  12 U.S.C. § 5481(12)(F), (14); 15 U.S.C. § 6105(d).  Thus, their violations of FCRA and the TSR also violated § 1036(a)(1)(A) of the CFPA.  SAC ¶¶ 244, 246, 247.  In addition, the SLDR Companies' violations of FCRA are deemed to be violations of the CFPA, *see* 15 U.S.C. § 1681s(d); SAC ¶ 243, and their violations of the TSR are treated as a violation of a rule under the CFPA, *see* 15 U.S.C. § 6102(c); SAC ¶ 245.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

13

### iii.  The Money at Stake Supports Default Judgment

The fourth *Eitel* factor considers the sum of money at stake in the action in relation to the seriousness of the defendant's conduct.  782 F.2d at 1471–72; *see also PepsiCo*, 238 F. Supp. 2d at 1176.  This factor, too, supports entry of a default judgment.  Here, the student-loan debt-relief scheme constituted serious illegal conduct that took place over more than two years, involving millions of consumers whose consumer reports were misused and over 20,000 consumers who paid unlawful advance fees based on deceptive representations.  SAC ¶¶ 58, 69; Declaration of Mansour Heidari ("Heidari Decl.") at ¶¶ 30.  Collectively, after netting out refunds, the SLDR Companies charged consumers $19,699,870.  Heidari Decl. at ¶ 15.

All these fees were the product of the SLDR Companies' deceptive representations to consumers alleged in the SAC, and therefore are subject to restitution.  *See Gordon*, 819 F.3d at 1195 (holding that restitution "may be measured by the 'full amount lost by consumers'" and that "[a] district court may use a defendant's net revenues as a basis for measuring unjust gains" (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).  In addition, the Bureau estimates that at least $18 million of the fees charged were unlawful advance fees.  *See* Heidari Decl. ¶ 28.  This estimate is based on the fees the SLDR Companies charged before the expiration of the 90-day forbearance period the SLDR Companies arranged for consumers as part of their services.  *See id.* at ¶¶ 18-27; Ramírez-Velázquez Decl. ¶¶ 8-12 (summary of forbearance requests).  As another court explained, "[b]ecause the loans are in forbearance at the time Defendants collect their fee, consumers cannot have made any payments pursuant to the new agreement—a clear violation of the up-front payment rule."  *FTC v. Alliance Document Preparation*, 296 F. Supp. 3d 1197, 1210 (C.D. Cal. 2017).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

14

As discussed below, the Bureau seeks in redress the amounts that each of the SLDR Companies charged so that those funds can be returned to consumers. These sums represent a significant amount of money to consumers harmed by the SLDR Companies' unlawful conduct, and the SLDR Companies should be held liable for the consumer injury this conduct caused.

### iv.   The Possibility of Dispute of Material Facts is Unlikely

The fifth factor, the possibility of dispute concerning material facts, favors entry of the default judgment.  A year has passed since the Bureau filed the original Complaint and SLDR Companies have not appeared, nor have they made any filing disputing the Bureau's allegations or defending the action.  The SLDR Companies never challenged the Clerk's entry of default and the well-pleaded allegations in the SAC are now deemed true as to the SLDR Companies.  Moreover, the Bureau has submitted competent evidence supporting the money judgment sought, which can be calculated with certainty. *See* Heidari Decl.  As a result, the possibility of dispute concerning the material facts is slim.

### v.  The Default Is Not Due to Excusable Neglect

The sixth factor, whether the default was due to excusable neglect, also favors entry of default judgment.  To the contrary, the SLDR Companies, which are corporate entities, did not retain counsel, file an answer, or offer any defense, despite having been served.  *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)  ("[D]efendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer."); *see also Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1987) (finding no abuse of discretion denying motion to set aside default when party had notice of filing and failed to answer the complaint).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

15

Considering these circumstances, the SLDR Companies' failure to participate is not the result of excusable neglect.

### vi.  Other Factors Outweigh Deciding the Case on the Merits

Although the final *Eitel* factor favors deciding cases on the merits when possible, this factor is outweighed by the other factors.  *Pepsico*, 238 F. Supp. 2d at 1177 ("the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive."); *CFPB v. Consumer Advocacy Center Inc.*, No. 19-cv-1998, 2020 WL 7774930, at *3 (C.D. Cal. Dec. 1, 2020) (holding that *Eitel* factors weighed in favor of default judgment and that the policy favoring decisions on the merits was not dispositive).  And declining to enter the default judgment won't actually lead to a decision on the merits; the SLDR Companies have not appeared seeking to defend the action on the merits. Thus, the weight of the *Eitel* factors favor entry of a default judgment against the Student Loan Debt Relief Defendants.

### C.    Default Judgment for Injunctive and Monetary Relief Is Warranted

The SAC seeks (1) a permanent injunction to prevent future violations of FCRA, the TSR, and the CFPA; (2) monetary relief to redress injury to consumers; and (3) civil money penalties.  These forms of relief are authorized under the CFPA.  12 U.S.C. § 5565.  Moreover, it is within the Court's discretion to enter injunctive and monetary relief at this stage, without holding an evidentiary hearing.  *Fendler*, 650 F.2d at 1161; *see also FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205, 223 (S.D.N.Y. 2002) (calculating relief based on declaration).

### i.  Injunctive Relief to Prevent Future Violations

The Bureau seeks injunctive relief against the SLDR Companies for the violations of federal consumer financial law alleged in the SAC.  The requested

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

16

relief is detailed in the proposed Default Judgment filed with this Application and is tailored to the allegations in the SAC.  The proposed relief includes a permanent ban on offering or providing debt relief services, a permanent ban on using or obtaining consumer reports, and a prohibition on using or disclosing any of the information that the SLDR Companies obtained about consumers through their illegal conduct.

A permanent injunction is justified when there is "some reasonable likelihood of future violations." *CFTC v. Co Petro Marketing Grp., Inc*., 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982).  The fact that the SLDR Companies ceased doing business does not moot an action for injunctive relief; otherwise defendants "would be free to return to their old ways." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999).  A permanent injunction may prohibit conduct broader in scope than the illegal conduct at issue.  Where, as here, the SLDR Companies were involved in elaborate, illegal conduct to deceive consumers, broader "fencing-in" relief provisions help "to prevent similar and related violations from occurring in the future." *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979); *see also FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) (FTC "is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. . . .[R]espondents must expect some reasonable fencing in." (citation omitted)).

A permanent injunction is warranted here.  The SLDR Companies victimized thousands of student loan borrowers.  They also shut down their operations in September 2017 when the Bureau served Civil Investigative Demands during the pre-complaint investigation, rather than respond to the Bureau's inquiries.  SAC ¶ 157; Reardon Decl. ¶¶ 30-32.  And even after that, the SLDR Companies continued collecting fees from existing customers and

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

17

distributing their purported profits to their limited partners.  SAC ¶ 157; Heidari Decl. ¶¶ 10, 13.  A permanent injunction is appropriate because, otherwise, there is a possibility that the SLDR Companies "could simply begin the wrongful activity again."  *Affordable Media*, 179 F.3d at 1238.

The CFPA authorizes this Court to impose "limits on the activities or functions of the person," 12 U.S.C. § 5565(a)(2)(G), and courts have approved industry bans as proper injunctive relief considering a defendant's repeated violations of laws.  *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (upholding ban on participation in credit repair business); *Consumer Advocacy Center*, 2020 WL 7774930, at *5 (granting default judgment and issuing permanent injunction prohibiting defendants from advertising, marketing, promoting, offering, or selling mortgage relief products and from assisting others in doing the same); *Siringoringo*, 2016 WL 102435, at *6 (granting default judgment and issuing permanent injunction prohibiting defendants from advertising, marketing, promoting, offering, or selling mortgage relief products and from assisting others in doing the same).  As in those cases, the requested permanent bans are necessary and appropriate to protect consumers from future harm.

### ii.  Monetary Relief to Compensate Consumers

The Bureau seeks a default judgment against the SLDR Companies in order to return to consumers the $19,699,870 in fees wrongfully taken from them.

The CFPA authorizes the Court to grant relief, including refund of moneys, restitution, and disgorgement or compensation for unjust enrichment. 12 U.S.C. § 5565(a)(2)(B), (C), and (D).  In ordinary usage, a "refund" means "to return (money) in restitution, repayment, or balancing of accounts."  *See* "refund" Mirriam-Webster.com 2021, https://www.merriam-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

18

webster.com/dictionary/refund (last visited Feb. 1, 2021).  Likewise, "[r]estitution may be measured by the 'full amount lost by consumers rather than limiting damages to a defendant's profits.'"  *Gordon*, 819 F.3d at 1195 (quoting *Stefanchik*, 559 F.3d at 931).  Importantly, appropriate restitution includes the entire amount consumers paid, regardless of whether some consumers were satisfied with or benefited from the goods or services.  *See id.* at 1195-96.

In seeking a default judgment, the Bureau bears the burden of proving the amount of monetary relief to which it is entitled.  It may satisfy that burden through affidavits and other documentary evidence showing the amount consumers paid, and an evidentiary hearing is unnecessary because the evidence is not controverted.  *See Fendler*, 650 F.2d at 1161; *see also 1263523 Ontario*, 205 F. Supp. 2d at 223 (calculating $10 million relief based on declaration from defendants' payment processor); *Siringoringo*, 2016 WL 102435, at *7 (relying on Bureau declaration in awarding $12 million penalty).

This supporting evidence establishes that the SLDR Companies collectively charged consumers about $19,699,870 in fees in connection with their unlawful conduct.  Heidari Decl. at ¶ 15.  The proposed order would impose a judgment against the SLDR Companies for their respective shares of that total:

- Docu Prep Center – $8,739,347
- Certified Doc Prep Services – $3,806,626
- Assure Direct Services – $3,404,455
- Direct Document Solutions – $1,902,259
- Secure Preparation Services – $1,847,182

*Id.* ¶ 16.  These amounts were derived from transaction records of two third-party payment processors the SLDR Companies used and data produced by

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

19

defendants Docs Done Right, Inc. and Docs Done Right, LP.  Heidari Decl. at ¶¶ 5-14.  These amounts are the total fees charged to consumers by each of the SLDR Companies, less fees that were refunded to consumers.  *Id.* ¶ 16.  Therefore, these amounts reasonably approximate the consumer losses attributable to the SLDR Companies.  Given the absence of rebuttal evidence, the facts alleged in the SAC, and the evidence submitted with this Application, the Court should enter a redress judgment against the SLDR Companies in these amounts.[5]

### iii.  Civil Money Penalties

The Bureau seeks a default judgment imposing civil penalties collectively totaling $25 million against the SLDR Companies.  These amounts are based upon the CFPA's framework for determining a civil penalty, including the statutory factors for mitigating a penalty.  *See* 12 U.S.C. § 5565(c).

The CFPA authorizes the Court to order civil money penalties against "[a]ny person that violates, through any act or omission, any provision of Federal consumer financial law."  12 U.S.C. §§ 5565(a)(2)(H), (c)(1).  There are three tiers of penalties, based on the degree of scienter, which are adjusted for inflation.  For civil penalties involving conduct that occurred before November 2, 2015, those amounts are up to $5,000 per day for any violation; up to $25,000 per day for each reckless violation; and up to $1,000,000 for knowing violations.  For civil penalties assessed after January 15, 2021, whose

---

[5] The Bureau is not seeking a double recovery for consumers.  The Bureau has received $828,750 towards redress for customers of the SLDR Companies through stipulated settlements, *see* ECF Nos. 90, 115, and 162, and is seeking redress from certain of the remaining defendants.  The Bureau will not seek to recover from the SLDR Companies (or other defendants) any amounts that the Bureau has already received towards redress.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

20

associated violations occurred on or after November 2, 2015, those amounts are up to $5,953 per day for any violation; up to $29,764 per day for each reckless violation; and up to $1,190,546 per day for each knowing violation.  12 U.S.C. § 5565(c)(2); 12 C.F.R. § 1083.1.

The SLDR Companies' conduct was at least reckless, if not knowing, and a penalty for each of their violations measured under the reckless tier could result in a penalty in the hundreds of millions of dollars.  For purposes of default judgment, the Bureau has used a conservative methodology to calculate the maximum civil penalties.  Specifically, the Bureau multiplied the first-tier penalty of $5000 or $5,953[6] by the number of consumers each business charged unlawful advance fees.[7]  Using that methodology, the maximum first-tier penalties against each entity are:

- $53,505,000 against Docu Prep Center;
- $25,794,349 against Certified Doc Prep Services;
- $22,752,366 against Assure Direct Services;
- $12,685,843 against Direct Document Solutions; and
- $12,703,702 against Secure Preparation Services.

---

[6] Docu Prep Center operated both before and after November 2, 2015.  For simplicity, the Bureau seeks a $5,000 penalty for each of its advance fee violations.  The remaining Student Loan Debt Relief Companies began operating after November 2, 2015, and the Bureau therefore seeks a $5,953 penalty for each of their advance fee violations.

[7] The SLDR Companies charged the following numbers of consumers unlawful advance fees:

- Docu Prep Center – 10,701 consumers
- Certified Doc Prep Services – 4,333 consumers
- Assure Direct Services – 3,822 consumers
- Direct Document Solutions – 2,131 consumers
- Secure Preparation Services – 2,134 consumers

*See* Heidari Decl. ¶ 30.; *see also supra* p. 14.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

21

This methodology is conservative:  It seeks penalties at the lowest penalty tier for the advance fee violations, and does not include additional penalty amounts for the SLDR Companies' FCRA violations or for their deceptive acts and practices.

The size of the civil penalty also depends on various statutory mitigating factors, including "good faith," "the size of financial resources . . . of the person charged," "the gravity of the violation," "the severity of the risks to or losses of the consumer," "the history of previous violations," and "such other matters as justice may require."  12 U.S.C. § 5565(c)(3).  Most of these factors do not weigh in favor of a significant mitigation of the civil money penalty.

The SLDR Companies did not act in good faith.  For example, they participated in a scheme to unlawfully obtain millions of consumers' credit information by deceiving Experian about how that information would be used, and even used a sham mortgage brokerage to get that consumer information.  SAC ¶¶ 52-69.  And they made false statements regarding the benefits of consolidating federal student loans despite purporting to be knowledgeable about the effects of consolidation.  *Id.* ¶¶ 86, 92-105.

The gravity of these violations and losses to consumers were significant.  The SLDR Companies made deceptive representations regarding the benefits of their services, and then charged thousands of consumers unlawful advance fees.  And this is precisely the conduct the TSR was meant to curb; that rule bans advance fees for debt relief services because of the injury caused by businesses like the SLDR Companies that charge upfront fees based on false representations regarding the benefits they would later deliver.  *See* Telemarketing Sales Rule, 75 Fed. Reg. 48458, 48481 (Aug. 10, 2010) (advance fee ban necessary because "debt relief companies engage in widespread deception, frequently fail to produce the results they promise, and

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

22

have caused injury to a large number of consumers").  The SLDR Companies ultimately bilked these consumers out of more than $19 million.  Further, to send their deceptive marketing letters, the SLDR Companies violated the privacy of millions of consumers whose personal information they illegally obtained through the prescreened lists.

Given their cessation of operations, the SLDR Companies appear to have limited financial resources, which supports some mitigation.  In light of the mitigating factors and the SLDR Companies' defaults, the Court should impose penalties in the following amounts:

- $10.5 million against Docu Prep Center;
- $5 million against Certified Doc Prep Services;
- $4.5 million against Assure Direct Services;
- $2.5 million against Direct Document Solutions; and
- $2.5 million against Secure Preparation Services.

These proposed penalties are conservative:  The penalties reflect an initial maximum penalty calculation based on the number of violations of the TSR's advance fee provisions under the lowest penalty tier, and have then been substantially reduced based on the mitigating factors.  As noted above, the amounts sought by the Bureau are a fraction of the hundreds of millions of dollars it could seek in civil money penalties.  Nevertheless, the proposed penalty amounts would appropriately deter future violations, while also deterring others from such conduct.  *Cf. Siringoringo*,  2016 WL 102435, at *7 (awarding, in context of default judgment, the "proposed civil penalty of $12,000,000 considering the conservative tact the Bureau took in reaching its proposed penalty").

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

23

## IV.   Conclusion

For the reasons set forth above, the Bureau respectfully requests that the Court enter the proposed Default Judgment against the Student Loan Debt Relief Companies.

Dated: March 5, 2021                        Respectfully Submitted,

Cara Petersen
Acting Enforcement Director

Deborah Morris
Deputy Enforcement Director

Michael G. Salemi
Assistant Litigation Deputy

/s/ Colin Reardon
Colin Reardon (*pro hac vice*)
E. Vanessa Assae-Bille (*pro hac vice*)
Leanne E. Hartmann
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST STUDENT LOAN DEBT RELIEF COMPANIES

24