**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Chou Team Realty, LLC, et al.,<br><br>　　　　　Defendants. | Case No.: 8-20-cv-00043-SB-ADS<br><br>**[PROPOSED] DEFAULT JUDGMENT AND ORDER AGAINST BILAL ABDELFATTAH A/K/A BELAL ABDELFATTAH A/K/A BILL ABDEL** |

　　　Plaintiff Bureau of Consumer Financial Protection ("Bureau") commenced this civil action on January 9, 2020.

　　　As relevant here, the Bureau alleged claims under Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), against Defendant Bilal Abdelfattah a/k/a Belal Abdelfattah a/k/a Bill Abdel ("Abdel" or "Defendant"). ECF No. 1. On January 22, 2020, the Bureau served the original Complaint and a Request to Waive Service of Summons on Abdel by delivering copies to his attorney. Through his attorney, Abdel returned the Waiver of Service, which the Bureau filed on January 30, 2020. ECF No. 15. However, thereafter, Abdel did not answer, move to dismiss, or otherwise appear either through counsel or pro se.

　　　On April 9, 2020, the Bureau filed an application for the Clerk to enter

default against Abdel. ECF No. 68. The Clerk entered default against Abdel on April 10, 2020. As of the date of this Order, Abdel has not answered, appeared, or otherwise defended this action.

The Bureau filed its First Amended Complaint ("FAC") on July 10, 2020, and then filed the Second Amended Complaint ("SAC") on August 26, 2020. ECF Nos. 117, 141. Those pleadings asserted the same claims against Abdel as the original Complaint.

The Bureau filed its Notice of Application and Application for Entry of Default Judgment and Order Against Abdel pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rules 55-1 and 55-2. The Court, having considered the Bureau's Application, supporting declarations, and the entire record in this matter, finds good cause to grant the relief requested in the Bureau's Application.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1. After the clerk's entry of default against a party under Rule 55(a), a court in its discretion may enter a default judgment against that party. Fed. R. Civ. P. 55(b); *see Const. Laborers Trust Funds for S. Cal. Admin. v. Cal. Co. v. Anzalone Masonry, Inc.*, 316 F. Supp. 3d 1192, 1198 (C.D. Cal. 2018). Once default is entered, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1 (1944)). Further, here, the money judgment is based on a mathematical calculation based on a statutory penalty regime. Accordingly, default judgment may be entered without a hearing. *Cf. Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (no hearing necessary to award default money judgment where the amount is based on definite figures).

2. This is an action instituted by the Bureau against Abdel under

FCRA, 15 U.S.C. § 1681b(f), and the CFPA, 12 U.S.C. §§ 5531, 5536(a), based on violations of FCRA. With respect to Abdel, the SAC seeks permanent injunctive relief and civil money penalties. The Bureau has the authority to seek this relief. 12 U.S.C. § 5565.

3. This Court has subject-matter jurisdiction over this action because it was brought under federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and the plaintiff is an agency of the United States, 28 U.S.C. § 1345. Venue is proper in this district because Abdel is located, resides, or does business in this district. 12 U.S.C. § 5564(f).

4. Abdel waived formal service of process and, thus, has been properly served.

5. Abdel failed to answer or otherwise defend this action.

6. The Clerk of Court properly entered default against Abdel on April 10, 2020.

7. Because Abdel was in default, and because the FAC and the SAC asserted the same claims against him as the original Complaint, the Bureau was not required to serve the FAC and the SAC on Abdel. *See* Fed. R. Civ. P. 5(a)(2).

8. Abdel, an individual, is not a minor, incompetent person, or current member of the military service.

9. The SAC states claims upon which relief can be granted.

10. Because of Abdel's default, the allegations in the SAC are taken as true as against him.

11. The seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), weigh in favor of a judgment of default against Abdel.

12. Because the money judgment here is capable of ascertainment from definite figures contained in the documentary evidence and affidavits submitted by the Bureau, the Court need not hold a hearing prior to entering

1. default judgment. *Davis,* 650 F.2d at 1161.

13. Judgment is entered against Abdel in favor of the Bureau, on Counts I and XI.

14. The SAC seeks (1) a permanent injunction to prevent future violations of FCRA and the CFPA; and (2) a civil money penalty. This Court is empowered to order these forms of relief under Section 1055 of the CFPA, 12 U.S.C. § 5565. Moreover, it is within this Court's discretion to enter injunctive and monetary relief at this stage, without holding an evidentiary hearing. *Davis,* 650 F.2d at 1161.

15. The Bureau is entitled to an Order imposing a permanent injunction and requiring Abdel to pay a civil money penalty in the amount of $5,000,000 under the CFPA.

16. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

17. Entry of this Order is in the public interest.

**DEFINITIONS**

18. The following definitions apply to this Order:

   a. "Assisting Others" includes, but is not limited to:
      
      i. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;
      
      ii. providing names of, or contributing to the generation of, potential customers;

      iii.   participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product; and

      iv.   acting or serving as an owner, officer, director, manager, or principal of any entity.

b. "Bureau" means the Bureau of Consumer Financial Protection.

c. "Consumer Report" means a "consumer report," as that term is defined in Section 603(d) of FCRA, 15 U.S.C. § 1681a(d).

d. "Consumer Reporting Agency" means a "consumer reporting agency," as that term is defined in Section 603(f) of FCRA, 15 U.S.C. § 1681a(f).

e. "Debt-Relief Service" means any product, service, plan, or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt, including but not limited to a student loan debt, mortgage loan debt, credit card debt, or tax debt or obligation, between a person and one or more creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

f. "Defendant" or "Abdel" means Bilal Abdelfattah, also known as Belal Abdelfattah and as Bill Abdel, and any other names by which he may be known.

g. "Effective Date" means the date on which the Order is entered.

h. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

    i. "Prescreened Consumer Reports" means Consumer Reports relating to consumers furnished by a Consumer Reporting Agency in connection with credit or insurance transactions that are not initiated by the consumers, pursuant to 15 U.S.C. § 1681b(c).

    j. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Abdel based on substantially the same facts as described in the Amended Complaint.

    k. "Student Loan Debt Relief Companies" means Docu Prep Center, Inc., d/b/a DocuPrep Center, d/b/a Certified Document Center; Document Preparation Services, LP, d/b/a DocuPrep Center, d/b/a Certified Document Center; Certified Doc Prep, Inc.; Certified Doc Prep Services, LP; Assure Direct Services, Inc.; Assure Direct Services, LP; Direct Document Solutions, Inc.; Direct Document Solutions, LP; Secure Preparation Services, Inc.; Secure Preparation Services, LP, and their successors and assigns, individually, collectively, or in any combination.

## ORDER

### I.

**Permanent Ban on Offering or Providing Debt-Relief Services**

**IT IS ORDERED** that:

19. Defendant, whether acting directly or indirectly, is permanently restrained from:

    a. participating in, advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; or

  b. Assisting Others in, or receiving any remuneration or other consideration from, the provision, advertising, marketing, promoting, offering for sale, sale or production of any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this Paragraph.

## II.
## Permanent Ban on Using or Obtaining Prescreened Consumer Reports

**IT IS ORDERED** that:

20. Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from using, obtaining, offering, providing, selling, or arranging for others to use or obtain Prescreened Consumer Reports for any purpose. Nothing in this Order shall be read as an exception to this Paragraph.

## III.
## Prohibition on Using or Obtaining Consumer Reports for Any Business Purpose

**IT IS ORDERED** that:

21. Defendant, and his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from using, obtaining, offering, providing, selling, or arranging for others to use or obtain Consumer Reports for any business purpose. Nothing in this Order shall be read as an exception to this Paragraph.

## IV.
## Consumer Information

**IT IS ORDERED** that:

22. Defendant and his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them,

who receive actual notice of this Order, whether acting directly or indirectly, may not:

    a. disclose, use, or benefit from consumer information, including the name, address, or any information about the consumer's student loans, contained in or derived from Prescreened Consumer Reports obtained for use in marketing Debt-Relief Services; or

    b. disclose, use, or benefit from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), obtained from or through the activities of the Student Loan Debt Relief Companies.

*However*, consumer information may be disclosed if lawfully requested by a government agency or required by law, regulation, or court order.

## MONETARY PROVISIONS

## V.

### Order to Pay Civil Money Penalty to Plaintiff

**It is FURTHER ORDERED** that:

23. Under sections 1042(a) 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a) and 5565(c), by reason of the violations of law alleged in the SAC and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $5,000,000 to the Bureau.

24. The civil money penalty set forth in this Section is immediately due and payable upon entry of this Order and is enforceable against any Asset owned by, on behalf of, for the benefit of, or in trust by or for Defendant.

25. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

## VI.

## Additional Monetary Provisions

**It is FURTHER ORDERED that**:

26. In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

27. Defendant must relinquish all dominion, control, and title to the funds transferred or paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

28. The facts alleged in the SAC will be taken as true and given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce their rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

29. The facts alleged in the SAC establish all elements necessary to sustain an action by the Bureau under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant, even in such Defendant's capacity as debtor-in-possession.

30. The civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

31. Under 31 U.S.C. § 7701, Defendant, unless he has already done so, must furnish to the Bureau any taxpayer-identification numbers associated with him, which may be used for purposes of collecting and reporting on any

delinquent amount arising out of this Order.

32. Within thirty days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that he is entitled to, nor may Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within thirty days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

33. Defendant must treat all civil money penalties paid under this Order as a penalty paid to the government for all purposes. Regardless of how such funds are used, Defendant may not:

    c. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    d. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil

money penalty paid under this Order.

34. Upon written request of a representative of the Bureau, any consumer reporting agency must furnish consumer reports to the Bureau concerning [any] Individual Defendant under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## VII.
## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED,** that to monitor Defendant's compliance with this Order:

a. Within 14 days of receipt of a written request from the Bureau, Defendant must submit compliance reports or other requested information, which must be sworn to under penalty of perjury; provide sworn testimony; or produce documents.

b. For purposes of this Section, the Bureau may communicate directly with Defendant, unless Defendant retains counsel related to these communications.

c. Defendant must permit Bureau representatives to interview any employee or other person affiliated with him who has agreed to such an interview. The person interviewed may have counsel present.

d. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## VIII.
### Retention of Jurisdiction

**It is FURTHER ORDERED that**:

35. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

1 | It is **SO ORDERED**, this _____ day of _____, 2021.

_____
The Honorable Stanley Blumenfeld, Jr.
United States District Judge