NOT JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 8:20-cv-00043-SB-ADS | Date: | April 27, 2021 |
|---|---|---|---|

| Title: | *Bureau of Consumer Financial Protection v. Chou Team Realty LLC, et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:   ORDER ON APPLICATIONS FOR DEFAULT JUDGMENT**

Before the Court are two Applications for Default Judgment brought by Plaintiff Bureau of Consumer Financial Protection (Bureau): one as to Defendant Bilal Abdelfattah a/k/a Belal Abdelfattah a/k/a Bill Abdel (Abdel), Dkt. No. 168-1 (Abdel App.), and the other as to Defendants Docu Prep Center, Inc.; Document Preparation Services, LP; Certified Doc Prep, Inc.; Certified Doc Prep Services, LP; Assure Direct Services, Inc.; Assure Direct Services, LP; Direct Document Solutions, Inc.; Direct Document Solutions, LP; Secure Preparation Services, Inc.; and Secure Preparation Services, LP (collectively, the Student Loan Debt Relief Companies (SLDRC)) (together with Abdel, the Defaulting Defendants), Dkt. No. 166-1 (SLDRC App.). None of the Defaulting Defendants is represented by counsel or has answered the Bureau's Second Amended Complaint (Dkt. No. 141, SAC); and none opposes the instant Applications. For the reasons discussed below, the Court GRANTS both Applications in part.

## BACKGROUND

The Bureau is an independent government agency charged with enforcing federal consumer financial laws, and it has "authority to enforce prohibitions on unfair, deceptive, and abusive acts or practices in the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536; the Fair Credit Reporting Act [(FCRA)], 15 U.S.C. § 1681s; and the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, as it applies to persons subject to the CFPA, 15 U.S.C. §§ 6102(c), 6105(d)." SAC ¶ 8.  As the Bureau alleges, the Defaulting Defendants each participated in a scheme to unlawfully obtain consumer credit reports through marketing debt-relief services to consumers with student loans and charged unlawful fees in the process.  *Id.* ¶¶ 3-6, 46-48, 61, 70, 73, 77-78, 84-111, 195.

## LEGAL STANDARD

Before a court may rule on an application for default judgment, it must first determine whether the application complies with Federal Rule of Civil Procedure 55 and Local Rule 55-1.  *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  The application must set forth:  (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required).  *Id.*

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010) (citations omitted).  The Ninth Circuit has instructed courts to consider seven factors when exercising this discretion:  "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Factual allegations—other than those relating to the damages amount—are considered admitted upon default.  Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  However, a court must still consider whether the complaint contains the required factual support and asserts legally sufficient claims. "[N]ecessary facts not contained in the pleadings,

and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## DISCUSSION

### A.  Procedural Requirements

As a threshold matter, both Applications satisfy the procedural requirements for default judgment. The Defaulting Defendants either waived service or were served with the complaint and summons. Dkt. No. 15; Dkt. No. 166-3 (SLDRC Reardon Decl.) ¶¶ 4-13. The Clerk entered default against the Defaulting Defendants after the original Complaint was filed.[1] *Id.* ¶¶ 15-22; Dkt. No. 168-4 (Abdel Reardon Decl.) ¶ 10. The Bureau's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure; none of the Defaulting Defendants is an incompetent person, a minor, or exempted under the Servicemembers Civil Relief Act. Abdel Reardon Decl. ¶¶ 19-20; SLDRC Reardon Decl. ¶ 28. Notice of the Applications was served on those Defaulting Defendants who responded to this action in some form—even if only by waiving service. Abdel Reardon Decl. ¶ 21; SLDRC Reardon Decl. ¶ 29.

### B.  Application of the *Eitel* Factors

#### 1.  Possibility of Prejudice to the Bureau

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if the court does not enter default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177. That is the case here.

The Defaulting Defendants have been unresponsive in the face of active litigation by the Bureau. Abdel initially retained counsel and returned a waiver of service (Dkt. No. 15)—meaning Abdel is aware of this action. However, after Abdel failed to answer the initial complaint, his counsel (Mr. Nuru) confirmed that he was "having issues securing [his] client's cooperation." Abdel Reardon Decl.

---

[1] The First Amended Complaint and the SAC contain the same claims and seek the same relief against the SLDRC and Abdel as the Bureau's original complaint. SLDRC Reardon Decl. ¶¶ 25-26; Abdel Reardon Decl. ¶¶ 13-14. The subsequent pleading added allegations related to other defendants. SLDRC Reardon Decl. ¶¶ 23-24; Abdel Reardon Decl. ¶¶ 11-12.

¶ 7. Abdel never answered the complaint, and the clerk entered default against him in April 2020. *Id.* ¶¶ 9-10. After filing the SAC, the Bureau's counsel again reached out to Mr. Nuru, who confirmed that he no longer represented Abdel. *Id.* ¶ 14. Counsel then called Abdel directly and left him a voicemail stating "that [Abdel] was in default in the litigation, . . . that the Bureau intended to seek default judgment against him, and asked him to contact [the Bureau's counsel] immediately if he had any questions or intended to appear in the lawsuit." *Id.* ¶ 16. Since that time, Abdel has not addressed the entry of default against him or responded to the Bureau's counsel. *Id.* ¶¶ 17-18. The SLDRC have been similarly unresponsive. Each has "failed to appear, retain counsel, or otherwise respond to the allegations in the original Complaint." SLDRC Reardon Decl. ¶ 27. None has responded to the SAC or moved to vacate the entry of default against them. *Id.* In addition to failing to appear, answer any pleading, or move to vacate the default against them, none of the Defaulting Defendants has opposed the instant Applications.

Meanwhile, the Bureau has expended effort, incurred costs, and invested time in prosecuting this action. But it is not just prejudice to the Bureau at issue here; under the CFPA, victims of the Defaulting Defendants' violations of federal consumer financial protection laws may be compensated for the harm caused when the Bureau collects a civil monetary penalty. 12 U.S.C. § 5497(d). Denying the Bureau—and the consumers on whose behalf it litigates—relief at this point would result in prejudice. This factor favors default judgment.

### 2.      Substantive Merits and Sufficiency of the Complaint

*Eitel*'s second and third factors turn on the merits of a plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. Courts typically evaluate these factors together, looking to whether the plaintiff has "state[d] a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (citations omitted). The Bureau has done so here. As discussed in more detail directly below, the merits of the claims against the Defaulting Defendants appear strong, and the SAC is sufficiently pled. Accordingly, these two *Eitel* factors favor default judgment.

#### a.   Abdel:  FCRA and CFPA

The Bureau's allegations against Abdel fairly state claims on which it could recover.

The FCRA prohibits a person from using or obtaining a consumer credit report unless the person obtains it for a permissible purpose and the purpose is certified by the prospective user of the report. 15 U.S.C. § 1681b(f). Using prescreened lists to market debt-relief services is not permitted under the FCRA. *See* 15 U.S.C. §§ 1681b(c)(1)(B)(i), (f); *see* *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 495 (9th Cir. 2019) (recognizing that the FCRA generally prohibits obtaining a consumer report unless a specific exception applies).

In the SAC, the Bureau alleges that:

> While at Monster Loans, Abdel participated in a scheme to unlawfully use the company's account with the credit bureau Experian to purchase prescreened lists for a group [of] student loan debt-relief companies that included Docu Prep Center and Assure Direct Services. [SAC] ¶¶ 52-62. As part of the scheme, Monster Loans certified to Experian that it would use the prescreened lists it purchased to make firm offers of credit for mortgage loans. *Id.* ¶ 54. But in reality, Monster Loans primarily used its Experian account to buy prescreened lists for student loan debt-relief companies. *Id.* ¶ 57.

Abdel App. at 8. The Bureau further alleges that Abdel later coordinated with other Defendants to purchase prescreened lists (containing information about more than 12.5 million consumers with student loans) through a new company, Lend Tech Loans, Inc. SAC ¶¶ 48, 63-79. Abdel used those lists to market student-loan debt-relief services through new companies and also resold the prescreened lists to other companies. *Id.* ¶¶ 69-70, 77-78. The companies that received these lists "did not use the lists to make firm offers of credit or insurance." *Id.* ¶ 79. As pled by the Bureau, Abdel's conduct violates the FCRA.

What's more, the CFPA provides that it is "unlawful . . . for any covered person or service provider . . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A). A "related person" is "a covered person for all purposes of any provision of Federal consumer financial law." 12 U.S.C. § 5481(25)(B). Abdel—as a manager of both Monster Loans and Lend Tech Loans, Inc., two companies purporting to offer mortgages—is both a related and covered person under the CFPA. SAC ¶¶ 188, 195. Because the FCRA is a "[f]ederal consumer

financial law" under the CFPA (12 U.S.C. §§ 5481(12)(F), (14)), Abdel's violation of the FCRA also constitutes a violation of the CFPA.

### b. SLDRC: FCRA, CFPA, and TSR

As with Abdel, the allegations in the Bureau's SAC are sufficient to state a claim against the SLDRC.

As discussed *supra*, the FCRA prohibits using prescreened lists to market debt-relief services. That is precisely what the SAC alleges the SLDRC did. SAC ¶¶ 52, 57, 69. And those lists were not used to make firm offers of credit or insurance. *Id.* ¶ 59. This is sufficient to state a claim for violation of the FCRA and—as the SLDRC are "covered persons"—of the CFPA.[2]

The Bureau also claims that the SLDRC violated two components of the TSR: the advance fees provision (16 C.F.R. § 310.4(a)(5)(i)) and the deceptive practices provision (16 C.F.R. § 310.3(a)(2)(x)). The SAC adequately alleges that the SLDRC are "sellers" or "telemarketers" of a "debt relief service" who engaged in "telemarketing," as those terms are defined in the TSR. SAC ¶¶ 168-175. And as discussed below, the Bureau has properly pled claims for violation of both provisions of the TSR.

Advance Fees: In exchange for fees ranging from $699 to $999, the SLDRC offered services to consumers (by making nationwide calls) to renegotiate, settle, or alter the terms of payments of those consumers' federal student loans by preparing and submitting requests for loan consolidations, loan forgiveness, and loan-repayment plans to consumers' student-loan servicers. *Id.* ¶¶ 84, 106-107, 111, 172-174. These fees were charged and received by the SLDRC before consumers' applications were approved and before consumers made their first payments under the altered terms of their student loans—all in violation of the TSR's advance fees provision. *Id.*; 16 C.F.R. § 310.4(a)(5)(i).

---

[2] The Bureau also alleges that the SLDRC engaged in deceptive practices under the CFPA (12 U.S.C. §§ 5531(a), 5536(a)(1)). By offering or providing the debt-relief services described in the SAC, the SLDRC offered a covered consumer financial product or service, and the SLDRC made multiple false misrepresentations (*see infra*) likely to mislead reasonable consumers. SAC ¶¶ 92-94, 97-98, 99-105, 183, 226, 230, 235.

Deceptive Practices: It is unlawful for a seller or telemarketer to misrepresent any material aspect of a debt-relief service. Yet the SLDRC made myriad misrepresentations upon which reasonable consumers relied, including: that consumers would obtain lower interest rates by consolidating their federal student loans (SAC ¶¶ 92-94); that consumers were required to consolidate their loans to be eligible for an interest-rate reduction associated with setting up automatic payments (*id.* ¶¶ 97-98); and that consolidating student loans would improve consumers' credit scores (*id.* ¶¶ 99-102). Because these statements misrepresented material aspects of a debt-relief service, the Bureau sufficiently alleges that the SLDRC violated the deceptive practices provision of the TSR. 16 C.F.R. § 310.3(a)(2)(x).

### 3. Sum of Money at Stake

The next *Eitel* factor directs the court to "consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. The Bureau seeks a default judgment against the SLDRC in the amount of $19,699,870 in fees wrongfully charged to consumers and civil penalties collectively totaling $25 million.[3] SLDRC App. at 18-20. As for Abdel, the Bureau seeks a default judgment imposing a civil penalty of $5 million against him. Abdel App. at 14.

Because the total civil penalties to be awarded in this case are within the Court's discretion—and could have been much higher—the amount in controversy slightly favors granting default judgment. See *Consumer Fin. Prot. Bureau v. Siringoringo*, 2016 WL 102435, at *3 (C.D. Cal. Jan. 7, 2016) (granting default judgment where the amount in controversy was $12 million, but "the uncontroverted evidence suggests that the sum of money Defendants are potentially liable to pay in a civil penalty could have been assessed at a much higher amount.").

### 4. Possibility of Dispute Over Material Facts

The next *Eitel* factor—the possibility of dispute over material facts—also weighs in favor of default judgment. "Upon entry of default, the well-pleaded

---

[3] The CFPA provides a framework for imposing such penalties. See 12 U.S.C. § 5565(c) (establishing a tiered system of penalties-per-day based on whether the violation was knowing, reckless, or without any established *scienter*).

allegations of the complaint relating to a defendant's liability are taken as true." *PepsiCo*, 238 F. Supp. 2d at 1175. None of the Defaulting Defendants has answered the allegations levied by the Bureau. Each has therefore failed to defend against or otherwise dispute the Bureau's claims, and no disputes of material fact preclude granting either Application.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have been the product of excusable neglect. *Id.* at 1177. As discussed *supra*, the Defaulting Defendants were either served through their designated agents or waived service. Those who returned the waiver of service were also served with notice of the relevant Application. As such, their failure to appear and litigate this dispute is not rooted in excusable neglect. This factor favors default judgment.

### 6. Strong Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Even with this strong policy, however, when a defendant's failure to respond to the complaint "makes a decision on the merits impractical, if not impossible," entry of default judgment is warranted. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, given the Defaulting Defendants' disregard for this action, the Court finds a decision on the merits is not "reasonably possible." *Eitel*, 782 F.2d at 1472. Consequently, this factor does not weigh heavily against a default judgment.

\* \* \*

In sum, the *Eitel* factors weigh in favor of granting default judgment.

### C. Relief Sought

#### 1. Injunctive Relief

The Bureau seeks injunctive relief against the Defaulting Defendants. For the SLDRC, the Bureau seeks a permanent injunction barring these Defendants from ever again offering or providing debt-relief services, using or obtaining consumer reports, and using or disclosing any of the information obtained about consumers through their unlawful conduct. SLDRC App. at 17. As to Abdel, the

Bureau seeks a permanent injunction preventing him from offering or providing debt-relief services, using or obtaining prescreened consumer reports, using or obtaining consumer reports for any business purpose, and "using or disclosing any of the information about consumers that Abdel and the student loan debt relief companies named as defendants obtained through their illegal conduct." Abdel App. at 12.

The Court's authority to grant the requested injunctions is governed by 12 U.S.C. § 5565.  A permanent injunction is justified when there is "some reasonable likelihood of future violations." *Commodity Futures Trading Commission v. Co Petro Marketing Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982).  This is true even if the Defaulting Defendants have ceased their unlawful activities, so long as recurrence remains possible. *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999).  Finally, where the illegal conduct is elaborate and wide-ranging—as here—regulatory agencies may seek injunctive relief, "which extends beyond the immediate facts" of the case, using "fencing in" provisions "to prevent similar and related violations from occurring in the future." *Trans World Accts., Inc. v. F.T.C.*, 594 F.2d 212, 215 (9th Cir. 1979).

The Defaulting Defendants engaged in unlawful conduct over a period of several years—to the potential detriment of millions of consumers.  Consequently, the Court finds that the Bureau's requested permanent injunctions are warranted as to both Abdel and the SLDRC.

### 2.     Relief on Behalf of Consumers

The CFPA authorizes the Court to grant relief on behalf of consumers, including a refund of moneys, restitution, and disgorgement or compensation for unjust enrichment.  12 U.S.C. § 5565(a)(2).  "Restitution may be measured by the 'full amount lost by consumers rather than limiting damages to a defendant's profits.'" *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016).

The Bureau seeks a default judgment against the SLDRC in order to return to consumers $19,699,870 in fees wrongfully collected.  In support of this request, the Bureau offers a declaration from one of its forensic accountants.  The accountant (Heidari) reviewed three sets of records to determine the fees wrongfully collected by the SLDRC in this action. *See* Dkt. No. 166-4 (Heidari Decl.) ¶ 5 (detailing the records reviewed).  After netting out refunds, Heidari

determined that the SLDRC "collectively charged consumers a total of $19,699,870 in fees." *Id.* ¶¶ 15-16.

With the supporting evidence uncontroverted, the Court finds it appropriate to impose judgment against the SLDRC for their respective shares of the total fees wrongfully charged, as detailed below:

- Docu Prep Center, Inc. and Document Preparation Services, LP (collectively, Docu Prep) – $8,739,347

- Certified Doc Prep, Inc. and Certified Doc Prep Services, LP (collectively, Certified Doc Prep) – $3,806,626

- Assure Direct Services, Inc. and Assure Direct Services, LP (collectively, Assure Direct Services) – $3,404,455

- Direct Document Solutions, Inc. and Direct Document Solutions, LP (collectively, Direct Document Solutions) – $1,902,259

- Secure Preparation Services, Inc. and Secure Preparation Services, LP (collectively, Secure Preparation Services) – $1,847,182

### 3. Civil Penalties

The CFPA also allows the Court to issue civil money penalties against "[a]ny person that violates, through any act or omission, any provision of Federal consumer financial law." 12 U.S.C. §§ 5565(a)(2)(H), (c)(1). The CFPA provides a three-tier system for calculating and awarding such penalties. For all the Defaulting Defendants, the Bureau applies the penalty under the first of these tiers: $5,000 for conduct that occurred before November 2, 2015 or $5,953 for conduct that occurred on or after November 2, 2015. SLDRC App. at 20-23; Abdel App. at 14-17. The selected tier provides for the lowest penalty of the three the Bureau could pursue. 12 U.S.C. § 5565(c)(2). The Bureau then multiplied the applicable penalty by the number of consumers each SLDRC unlawfully charged fees and the number of consumers whose credit reports Abdel unlawfully obtained. The resulting possible civil penalties—under the Bureau's calculations—exceed $125 million for the SLDRC and $76 billion for Abdel.[4] SLDRC App. at 21; Abdel App. at 15.

---

[4] The Bureau does not explain its use of the number of affected consumers as the variable for the number of "violations." The Bureau's methodology also does not account for the number of days on which violations occurred, despite the plain language of the statute stating that penalties "may not exceed *$5,000 for each day*

While the Bureau takes multiple mitigating factors into account (including the limited financial resources of the Defaulting Defendants and the potential disproportionality of the possible penalty as compared to the gravity of the offending conduct), the requested sums are still high.  The Bureau seeks a penalty of $5 million against Abdel and seeks the following proportionate penalties against the various SLDRC:

- $10.5 million against Docu Prep;
- $5 million against Certified Doc Prep;
- $4.5 million against Assure Direct Services;
- $2.5 million against Direct Document Solutions; and
- $2.5 million against Secure Preparation Services.

SLDRC App. at 23; Abdel App. at 16.

The Court cannot reconcile the plain language of the statute, which suggests that these penalties should be a function of the number of days on which violations occurred, with the Bureau's proposed calculation that overlooks this factor.  However, the Bureau acknowledges that, should the Court disagree that its proposed penalties are appropriate, the Court may look to various mitigating factors (discussed *supra*) to reduce the requested penalties.  Dkt. No. 176 at 3.  The Court does so.  For Abdel, the Court will enforce a total penalty of $3,262,244.  The Court elects to enforce a civil penalty of $2,702,662 against each Docu Prep, Certified Doc Prep, and Assure Direct Services; and a civil penalty of $1,637,075 against each Direct Document Solutions and Secure Preparation Services.  Given the nature of the Defaulting Defendants' conduct, the relevant mitigating factors, and the fact that these penalties could have been significantly higher, the Court finds these modified civil penalties are properly tailored to penalize the offenses and deter further unlawful acts.

---

*during which such violation or failure to pay continues*."  12 U.S.C. § 5565(c)(2)(a) (emphasis added).  The Bureau's reliance on *Siringoringo*, Dkt. No. 176 at 2, does little to shed light on the propriety of its method of calculation as that opinion does not address the proper methodology under the statute.

# **CONCLUSION**

For the reasons detailed above, the Court **GRANTS IN PART** the Abdel Application and the SLDRC Application. Judgment shall be entered as follows:

- Judgment is entered in favor of the Bureau and against the SLDRC in the total amount of **$31,082,006**, comprising individual judgments against each SLDRC, including both consumer relief and civil penalties, as detailed below;

    - Docu Prep – $8,739,347 (consumer relief) and $2,702,662 (civil penalty);

    - Certified Doc Prep – $3,806,626 (consumer relief) and $2,702,662 (civil penalty);

    - Assure Direct Services – $3,404,455 (consumer relief) and $2,702,662 (civil penalty);

    - Direct Document Solutions – $1,902,259 (consumer relief) and $1,637,075 (civil penalty);

    - Secure Preparation Services – $1,847,182 (consumer relief) and $1,637,075 (civil penalty);

- The SLDRC are also permanently barred from offering or providing debt-relief services, using or obtaining consumer reports, and using or disclosing any of the information about consumers the SLDRC obtained through their illegal conduct;

- Judgment is entered in favor of the Bureau and against Abdel in the amount of **$3,262,244** in civil penalties; and

- Abdel is also permanently barred from offering or providing debt-relief services, using or obtaining prescreened consumer reports, using or obtaining consumer reports for any business purpose, and using or disclosing any of the information about consumers that he and the SLDRC obtained through their illegal conduct.

The Bureau is directed to file a conforming judgment against both Abdel and the SLDRC by no later than **May 7, 2021**.