# Summary Judgment Ex. 3

# DECLARATION OF ERIN MASON

I, Erin Mason, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1. The following facts are known to me personally and if called as a witness I could and would competently testify to them.

2. In around November 2014, I joined the mortgage company Chou Team Realty, Inc., which did business using the name Monster Loans ("Monster Loans"). My position at Monster Loans involved working as an office manager, and I also coordinated employee onboarding and licensing applications for Monster Loans' loan officers. I was hired by Jawad Nesheiwat and Sean Cowell and reported to them.

3. When I joined Monster Loans in around November 2014, Thomas Chou was Monster Loans' owner and head. Nesheiwat and Cowell were executives at Monster Loans. Nesheiwat managed the company's day-to-day operations and oversaw its sales and marketing.

4. In around June 2015, Nesheiwat directed me to help him apply for Monster Loans to receive an account with the credit bureau Experian. Nesheiwat also instructed Monster Loans marketing employee Bilal Abdelfattah, who went by the name Bill Abdel ("Abdel"), to help with the application.

5. As part of the application process, Experian requested an example of the mortgage mailer Monster Loans used. Nesheiwat told me not to provide Experian with the mailer that Monster Loans actually used to market mortgage loans, and to instead provide Experian with a "compliant mailer." Attached as Exhibit 1 is a true and correct copy of an email string from June 29, 2015 between Nesheiwat, Abdel, and me regarding providing Experian with a mailer. In the email string, I recognize Nesheiwat's Monster Loans email address

1

(jawad@monsterloans.com) and Abdel's Monster Loans email address (babdel@monsterloans.com).

6. In July 2015, Nesheiwat also directed me to fill out and submit an Experian membership application and to submit Experian's Prescreening Services Schedule. Attached as Exhibit 2 is a true and correct copy of an email I sent to Experian employee April Glaze on July 27, 2017 attaching a corrected version of the membership application and the Prescreening Services Schedule. Exhibit 2 also includes earlier emails that I exchanged with Glaze in July 2015 as part of the application process.

7. Nesheiwat signed the membership application in Exhibit 2 on behalf of Monster Loans. Monster Loans' owner Thomas Chou also signed the application. Nesheiwat told me what to write in the section of the membership application with the heading "Permissible Purpose/Appropriate Use." In addition, Nesheiwat signed the Prescreening Services Schedule in Exhibit 2 on behalf of Monster Loans.

8. After I submitted the application to Experian, Experian approved it and Monster Loans received an account with Experian.

9. During 2014 and 2015, Monster Loans was located in an office building located at 3 Whatney in Irvine, California. After I began working at Monster Loans, a business called Docu Prep Center began operating at 3 Whatney as well. Nesheiwat, Chou, and Cowell were investors in Docu Prep Center.

10. Although I was not an employee of Docu Prep Center, while I worked at Monster Loans Nesheiwat and Cowell often instructed me to provide administrative assistance to Docu Prep Center. For example, I prepared Docu Prep Center's application to the Better Business Bureau, handled its payroll, and assisted with employee onboarding and employee terminations.

11. Docu Prep Center's business involved assisting consumers with consolidating their federal student loans and enrolling in student loan repayment programs in exchange for a fee. Docu Prep Center marketed its services through direct mail and then sold its services to consumers who called in response to its mailings.

12. Through my experience assisting Docu Prep Center and working at the 3 Whatney office building, I observed Nesheiwat's interactions with Docu Prep Center's managers, David Sklar and Robert Hoose. In general, Nesheiwat told Sklar and Hoose how to run Docu Prep Center, and they followed his directions. I viewed Nesheiwat as the person who was ultimately in charge of Docu Prep Center.

13. In addition, Nesheiwat provided instructions and training to Docu Prep Center sales employees on how to sell the company's services over the phone. For example, he coached sales employees on how to overcome consumers' objections during sales calls, so that the sales employees could complete their sales. He also listened to recordings of sales calls and then provided feedback to sales representatives on how to better make sales.

14. In late 2015, Nesheiwat and Cowell asked me to help them open a new student loan business similar to Docu Prep Center. In around December 2015 or January 2016, I left Monster Loans and began working at Certified Doc Prep Services, which was located in Brea, California. At Certified Doc Prep Services, I was generally responsible for human resources issues and paying the bills. Haithem Abdelfattah, who was also known as Haithem Abdel ("Haithem"), oversaw the company's sales floor and employee training. I worked full time at Certified Doc Prep Services for about six months, and then continued to handle paying its bills for a time thereafter.

15. Certified Doc Prep Services involved two entities: Certified Doc Prep, Inc. and Certified Doc Prep Services, LP. The profits from the business

went to its limited partner investors. Certified Doc Prep Services' limited partners included Nesheiwat, Cowell, Chou, Sklar, and Hoose. Haithem and I also each received limited partnership interests in the company, which was how we received our salaries.

16. Certified Doc Prep Services was directly modelled on Docu Prep Center. Certified Doc Prep Services provided the same services to consumers with student loans as Docu Prep Center, which involved assisting consumers with consolidating their federal student loans and enrolling in student loan repayment programs in exchange for a fee.

17. Like Docu Prep Center, Certified Doc Prep Services also used direct mail to market its services. Certified Doc Prep Services also had a sales floor, and its sales representatives sold its services to consumers who called in response to the mailings.

18. To send direct mail to consumers, Certified Doc Prep Services used a mailing house called Automated Mailers, which Monster Loans and Docu Prep Center also used to send their mail. Nesheiwat arranged for Certified Doc Prep Services to send mail through Automated Mailers and then oversaw the relationship between it and Automated Mailers. I was responsible for paying Automated Mailers' invoices.

19. At Nesheiwat's direction, Abdel generally handled the day-to-day process of placing orders for direct mail with Automated Mailers on behalf of Certified Doc Prep Services. As part of that process, Abdel provided Automated Mailers with spreadsheets of consumer data to populate the mailings. Nesheiwat arranged for Certified Doc Prep Services to obtain and use those spreadsheets.

20. As part of the mailing process, Automated Mailers sent "proofs" for Certified Doc Prep Services to review before a mailing went out. The proofs were examples of the solicitations that consumers would receive.

1  Attached as Exhibit 3 is a true and correct copy of an email that Automated Mailers employee Alex Klarow sent to me on February 17, 2016, attaching copies of proofs for review.  Abdel and Nesheiwat are also copied on the email. I recognize the proofs in Exhibit 3 as examples of the marketing letters that Certified Doc Prep Services sent around that time.  Klarow's email refers to "DPC Brea," which I understand to refer to Certified Doc Prep Services, which was located in Brea, California.

21.  The direct mail solicitations that Certified Doc Prep Services used were based on the template that Docu Prep Center used for its solicitations.

22.  I am not aware of any steps taken by anyone associated with Certified Doc Prep Services or Docu Prep Center—including Nesheiwat—to determine whether the statements made in their direct mail solicitations were truthful.

23.  In addition to coordinating Certified Doc Prep Services' mailings, Nesheiwat provided Haithem Abdelfattah with guidance regarding how to sell the company's services and how to train employees.

24.  When consumers called in response to Certified Doc Prep Services' direct mail solicitations, Certified Doc Prep Services' representatives would attempt to sell consumers services over the phone and to agree to pay Certified Doc Prep Services' fee.

25.  The sales representatives typically worked from sales scripts, and Certified Doc Prep Services included those scripts as part of the training of new employees.  When it began, Certified Doc Prep Services used Docu Prep Center's sales script.  Thereafter, Certified Doc Prep Services and Docu Prep Center shared scripts with each other.

26.  Attached as Exhibit 4 is a true and correct copy of an email that Haithem sent me on June 27, 2016 attaching a Certified Doc Prep Services sales

script. He sent the email to my Certified Doc Prep Services email account, emason@certifieddocprep.com.

27. During 2016, as part of the regularly conducted activity of Certified Doc Prep Services, I sent and received emails (and attachments to emails) using the email address emason@certifieddocprep.com. I also kept such emails (and their attachments) as a regular practice.

28. The email in Exhibit 4 was sent by Haithem Abdelfattah and attached a copy of Certified Doc Prep Services' sales script. Because of his position and responsibilities at Certified Doc Prep Services, Haithem had knowledge of the sales script that Certified Doc Prep Services used. Haithem's email and its attachment are records of Certified Doc Prep Services' regularly conducted activity that were made at or near the time he sent the email and were sent in the ordinary course of business at Certified Doc Prep Services.

29. Certified Doc Prep Services worked with a company called Docs Done Right, which was managed by Eduardo Martinez.

30. Docs Done Right provided various forms of assistance to Certified Doc Prep Services. For example, Martinez and Docs Done Right provided Certified Doc Prep Services with access to the computer software system that Certified Doc Prep Services and Docs Done Right used, which was called Debt Pay Pro.

31. Martinez and Docs Done Right also coordinated the collection of consumers' payments for Certified Doc Prep Services' fees. Docs Done Right tracked which consumers made payments, when they made payments, and what they paid, and then informed Certified Doc Prep Services about those payments so that Certified Doc Prep Services could pay commissions to its sales representatives.

32. In addition, Docs Done Right handled consumer complaints and refund requests. Docs Done Right employees would inform me when to

provide consumers who complained with a refund. For example, attached as Exhibit 5 is a true and correct copy of an email I received on October 4, 2016 from Docs Done Right employee Mariana Diaz regarding two Certified Doc Prep Services customers who complained and were given refunds. Because of her position and responsibilities at Docs Done Right, Diaz had knowledge of the refunds described in her email in Exhibit 5. Diaz's email is a record of Certified Doc Prep Services' and Docs Done Right's regularly conducted activity that was made at or near the time she sent the email.

33. In around August 2016, I returned to work full time at Monster Loans. Between August 2016 and February 2017, I worked as the sales manager at a branch office of Monster Loans called Zoom Home Loans that was being launched at that time. In around February 2017, I became the human resources manager at Monster Loans, and began reporting to Mike van Loon. I remained at Monster Loans until around April 2020.

34. In around October 2016, Mark Nevarez and Aaron Sebreros became Certified Doc Prep Services' new managers, replacing Haithem Abdelfattah and me. Before that, Nevarez and Sebreros were both employees of Docu Prep Center.

35. Although I was less involved in Certified Doc Prep Services on a day-to-day basis, I continued to pay the company's bills and provide human resources support.

36. In early 2017, Certified Doc Prep Services' limited partners decided to replace Certified Doc Prep Services with a new company called Secure Preparation Services.

37. Secure Preparation was effectively a continuation of Certified Doc Prep Services under a new name. Nevarez and Aaron Sebreros became the managers of Secure Preparation Services. The employees of Certified Doc Prep Services were transferred over to Secure Preparation Services, which continued

1 | to operate out of the same office location in Brea, California. Secure
2 | Preparation Services offered the same services as Certified Doc Prep Services.
3 | When Certified Doc Prep Services stopped enrolling new clients, its former
4 | employees began enrolling new clients under the name Secure Preparation
5 | Services.

7 | I declare under penalty of perjury that the foregoing is true and correct.

9 | Executed on March 5th, 2021.

*Erin Mason* (signature)

Erin Mason

At Laguna Beach, California