# Summary Judgment Ex. 13

COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection, <br><br> Plaintiff, <br><br> vs. <br><br> Chou Team Realty, LLC et al., <br><br> Defendants. | Case No.: 8-20-cv-00043-JVS-ADS |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT JAWAD NESHEIWAT**

Pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 36, Plaintiff the Bureau of Consumer Financial Protection ("Bureau") hereby requests responses to the following requests for admission to Defendant Jawad Nesheiwat ("Defendant" or "you"). Defendant shall answer the requests for admission in writing and under oath according to applicable court rules and the following Instructions and Definitions, and the response shall be served within 30 days of service by uploading it to the

Bureau's Extranet or through another means agreed upon with counsel for the Bureau.

## Instructions

1. If in responding to these requests for admission, Defendant encounters any ambiguities when construing any request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2. If you cannot answer all or part of any request for admission in full after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion, and detailing what you did in attempting to secure the unknown information.

3. If you withhold information under a claim of privilege (including, but not limited to, the work-product doctrine), provide the information set forth in Rule 26(b)(5).

4. If you object to any part of a request for admission, answer all parts of such request for admission to which you do not object.

5. Your responses shall be uploaded to the CFPB's Extranet consistent with the instructions in the attached guide "What is the CFPB Extranet?" or shall be served through another means agreed upon with counsel for the Bureau.

6. Unless otherwise specified, the relevant time period for these requests for admission shall be from January 1, 2015 to the present.

7. Pursuant to Fed. R. Civ. P. 26(e), Defendant is under a duty to supplement any response to these requests for admission for which you learn that the response is in some material respect incomplete or incorrect.

## Definitions

Notwithstanding any definition set forth below, each word, term, or phrase used in these requests for admission is intended to have the broadest meaning

permitted under the Federal Rules of Civil Procedure. As used in these requests for admission, the following terms shall be interpreted in accordance with these definitions.

1. "Any" includes the word "all," and "all" includes the word "any."

2. "Concerning" means relating to, referring to, discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, comprising, showing, setting forth, considering, recommending, or pertaining to, in whole or in part.

3. "Consumer Report" means "consumer report," as that term is defined in Section 603(d) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(d).

4. "Consumer Reporting Agency" means a "consumer reporting agency," as that term is defined in Section 603(f) of FCRA, 15 U.S.C. § 1681a(f).

5. "Debt Relief Service" means any product, service, plan, or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt, including a student loan debt, mortgage loan debt, or credit card debt, between a person and one or more creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

6. "Docs Done Right" means Docs Done Right, Inc. and Docs Done Right, LP and their owners, limited partners, officers, employees, agents, and independent contractors.

7. "Docu Prep Center" means Docu Prep Center, Inc. and Document Preparation Services, LP, and their owners, limited partners, officers, employees, agents, and independent contractors.

8. "Experian" means Experian Holdings, Inc. and all of its affiliates and subsidiaries, including Experian Information Solutions, Inc.

9. "Monster Loans" means Chou Team Realty, LLC f/k/a Chou Team Realty, Inc., d/b/a Monster Loans, d/b/a MonsterLoans, and its owners, officers, directors, members, employees, agents, and independent contractors.

10. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, governmental or regulatory body, or other entity.

11. "Prescreened Lists" means Consumer Reports relating to consumers furnished by a Consumer Reporting Agency in connection with credit or insurance transactions that are not initiated by the consumers, pursuant to 15 U.S.C. § 1681b(c).

12. "Student Loan Prescreened List" means a Prescreened List containing information regarding consumers with student loans, including consumers' names, addresses, number of student loans, and aggregate balances on their student loans.

13. "Student Loan Debt Relief Defendants" means the following Persons, and their owners, limited partners, officers, employees, agents, and independent contractors:

   a. Assure Direct Services, Inc.;
   b. Assure Direct Services, LP;
   c. Certified Doc Prep, Inc.;
   d. Certified Doc Prep Services, LP;
   e. Docu Prep Center, Inc.;
   f. Document Preparation Services, LP;
   g. Direct Document Solutions, Inc.;
   h. Direct Document Solutions, LP;
   i. Secure Preparation Services, Inc.; and
   j. Secure Preparation Services, LP.

## Requests

**The Bureau requests that you admit the following**:

1. Exhibit A, bates stamped CFPB-JN-0036485 to 36486, is a true and correct copy of Monster Loans' Experian membership application that you signed on behalf of Monster Loans on or about June 22, 2015.

2. Exhibit B, bates stamped CFPB-JN-005535 to 55536, is a true and correct copy of Experian's Standard Terms and Conditions that you signed on behalf of Monster Loans in or about June 2015.

3. Exhibit C, bates stamped CFPB-JN-0055531 to 55532, contains a true and correct copy of Experian's Prescreening Services Schedule that you signed on behalf of Monster Loans in or about June 2015.

4. Exhibit D, bates stamped CFPB-JN-0067461 to 67462, contains a true and correct copy of an email string between you, Belal Abdelfattah a/k/a Bill Abdel ("Bill Abdel"), and Erin Mason from June 2015.

5. In or about June 2015, you directed Erin Mason not to provide Experian with the mortgage mailer that Monster Loans used in its marketing.

6. In or about June 2015, you knew that the mortgage mailer that Monster Loans used in its marketing was not compliant with FCRA.

7. In or about June 2015, you directed Erin Mason to submit "something compliant" to Experian as a purported example of Monster Loans' mortgage mailer.

8. Between December 2015 and April 2017, you controlled Monster Loans' Experian account.

9. Between December 2015 and April 2017, you oversaw Monster Loans' purchases of Student Loan Prescreened Lists from Experian for use by the Student Loan Debt Relief Defendants in their direct mailings.

10. Between December 2015 and April 2017, Monster Loans purchased prescreened lists containing information about approximately 6 million consumers with student loans for use in marketing student loan debt-relief services.

11. Between December 2015 and around September 2016, you directed Bill Abdel to order Student Loan Prescreened Lists through Monster Loans' Experian account and to send those Student Loan Prescreened Lists to a direct mail marketing company called Automated Mailers.

12. Between around September 2016 and April 2017, you directed Max Chou to order Student Loan Prescreened Lists through Monster Loans' Experian account and to send those Student Loan Prescreened Lists to Automated Mailers.

13. In communications with Experian between 2015 and 2017, you falsely represented the purposes for which Monster Loans would use and was using Student Loan Prescreened Lists.

14. On or about September 26, 2016, you directed Max Chou to communicate with Experian using a Monster Loans email address to conceal from Experian that Monster Loans was providing Prescreened Lists to outside companies offering debt relief services.

15. Between 2015 and 2017, you knew that the Student Loan Debt Relief Defendants lacked a permissible purpose to use or obtain the Student Loan Prescreened Lists under FCRA.

16. Exhibit E, bated stamped CFPB-JN-0071803 to 71806, contains a true and correct copy of an email string between you and Thomas Chou from May 2017.

17. During 2015, you participated extensively in the management and operation of Docu Prep Center.

18. During 2015, you had authority over David Sklar and Robert Hoose and provided directions to them regarding how Docu Prep Center should market and sell its services.

19. During 2015, you directed Sklar and Hoose to use and adapt telemarketing sales scripts provided by Student Loan Processing Center for Docu Prep Center's sales calls.

20. During 2015, you participated in editing, reviewing, and approving the direct mail solicitations that Docu Prep Center sent to consumers.

21. Between 2015 and 2017, you arranged for the Student Loan Debt Relief Defendants to send direct mail marketing their services to consumers through Automated Mailers.

22. Between 2015 and 2017, you oversaw the direct mail marketing that the Student Loan Debt Relief Defendants sent using Automated Mailers.

23. Between 2015 and 2017, the Student Loan Debt Relief Defendants represented to consumers that consolidating their federal student loans would cause consumers to obtain a lower interest rate on their federal student loans.

24. Between 2015 and 2017, you knew that the Student Loan Debt Relief Defendants made the misrepresentation described in Request for Admission No. 23.

25. During 2015, you participated in Docu Prep Center's making of the representation described in Request for Admission No. 23.

26. During 2015, you had the authority to control Docu Prep Center's making of the representation described in Request for Admission No. 23.

27. The representation referenced in Request for Admission No. 23 was false.

28. Between 2015 and 2017, consolidating federal student loans did not cause consumers to obtain a lower interest rate on their federal student loans.

29. Between 2015 and 2017, the Student Loan Debt Relief Defendants represented to consumers that consumers were required to consolidate their student loans to obtain an interest-rate reduction.

30. Between 2015 and 2017, you knew that the Student Loan Debt Relief Defendants made the misrepresentation described in Request for Admission No. 29.

31. During 2015, you participated in Docu Prep Center's making of the representation described in Request for Admission No. 29.

32. During 2015, you had the authority to control Docu Prep Center's making of the representation described in Request for Admission No. 29.

33. The representation referenced in Request for Admission No. 29 was false.

34. Between 2015 and 2017, consumers were generally not required to consolidate their student loans to obtain an interest-rate reduction.

35. Between 2015 and 2017, the Student Loan Debt Relief Defendants represented to consumers that consolidating student loans would improve consumers' credit scores.

36. Between 2015 and 2017, you knew, consciously avoided knowing, or recklessly avoided knowing that the Student Loan Debt Relief Defendants made the misrepresentation described in Request for Admission No. 35.

37. During 2015, you participated in Docu Prep Center's making of the representation described in Request for Admission No. 35.

38. During 2015, you had the authority to control Docu Prep Center's making of the representation described in Request for Admission No. 35.

39. The representation referenced in Request for Admission No. 35 was false in many instances.

40. Between 2015 and 2017, in many instances, consolidating federal student loans was not likely to improve a consumer's credit score.

41. Between 2015 and 2017, the Student Loan Debt Relief Defendants lacked any basis for representing to consumers that consolidating student loans would improve consumers' credit scores.

42. Between 2015 and 2017, you knew, consciously avoided knowing, or recklessly avoided knowing that the Student Loan Debt Relief Defendants lacked any basis for representing to consumers that consolidating student loans would improve consumers' credit scores.

43. At times between 2015 and 2017, Docu Prep Center represented to consumers that the Department of Education would become the consumers' "new servicer" after their federal student loans were consolidated.

44. Between 2015 and 2017, you knew, consciously avoided knowing, or recklessly avoided knowing that Docu Prep Center made the misrepresentation described in Request for Admission No. 43.

45. During 2015, you participated in Docu Prep Center's making of the representation described in Request for Admission No. 43.

46. During 2015, you had the authority to control Docu Prep Center's making of the representation described in Request for Admission No. 43.

47. The representation referenced in Request for Admission No. 43 was false.

48. Between 2015 and 2017, the Department of Education did not become consumers' new servicer after their federal student loans were consolidated.

49. Exhibit F, bates stamped CFPB-JN-0072276 to 72277, contains a true and correct copy of an email you received from Robert Hoose on or about April 22, 2015, which forwarded an April 21, 2015 email from Trans2Pay, LLC.

50. Exhibit G, bates stamped CFPB-JN-0079828 to 79829, contains a true and correct copy of an email you received from Thomas Chou on May 18, 2015, which responded to an earlier email from David Sklar.

51. Exhibit H, bates stamped CFPB-JN-0079823 to 0079824, contains a true and correct copy of an email you received from David Sklar on June 8, 2015.

52. Exhibit I, bates stamped CFPB-JN-0102822, contains a true and correct copy of an email you received from David Sklar on July 1, 2015.

53. Between 2015 and 2017, you knew that the Telemarketing Sales Rule ("TSR") prohibited the Student Loan Debt Relief Defendants from collecting advance fees.

54. Between 2015 and 2017, you knew that the Student Loan Debt Relief Defendants charged and received fees before consumers' applications for loan consolidations, loan repayment plans, and loan forgiveness plans were approved, and before consumers had made the first payments under the altered terms of their student loans.

55. Collectively, the Student Loan Debt Relief Companies and Docs Done Right collected more than $15 million in fees from consumers between 2015 and at least 2017.

56. The Student Loan Debt Relief Defendants offered services to alter the terms of payment of consumers' federal student loans by preparing and submitting requests for loan consolidations, loan forgiveness, and loan-repayment plans to consumers' student-loan servicers or the Department of Education.

57. The Student Loan Debt Relief Defendants offered "debt relief services" under the TSR.  16 C.F.R. § 310.2(o).

58. The Student Loan Debt Relief Defendants' direct mail marketing sought to induce consumers to purchase their services during telephone calls.

59. The Student Loan Debt Relief Defendants sold services to consumers during telephone calls.

60. You arranged for Docu Prep Center to provide services to consumers in exchange for consideration.

61. You are a "seller" under the TSR.  16 C.F.R. § 310.2(dd).

62. Monster Loans is a "covered person" because it offered or provided consumer-financial products or services, including extending credit for mortgage loans. 12 U.S.C. § 5481(5), (6), (15)(A)(i).

63. You were the chief operating officer of Monster Loans between January 2015 and April 2017.

64. You exercised substantial managerial responsibility for and control over Monster Loans' business practices between January 2015 and April 2017.

65. You are a "related person" and "covered person" because you were Monster Loans' COO and had managerial responsibility for Monster Loans. 12 U.S.C. §§ 5481(25)(B), (C)(i), (C)(ii).

66. You are a "related person" and "covered person" because you materially participated in the conduct of the Student Loan Debt Relief Companies. 12 U.S.C. §§ 5481(25)(B), (C)(ii).

Dated October 14, 2020

/s/ Colin Reardon
Leanne E. Hartmann
E. Vanessa Assae-Bille (*pro hac vice*)
Colin Reardon (*pro hac vice*)
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

# CERTIFICATE OF SERVICE

I, Colin Reardon, certify pursuant to Local Rule 5-3.2.1 that on this day, October 14, 2020, I caused to be served by e-mail[1] these interrogatories on each of the following parties:

1. **Jawad Nesheiwat**
   c/o Pete Lepiscopo, counsel for Jawad Nesheiwat
   Lepiscopo & Associates
   695 Town Center Drive, 7th Floor
   Costa Mesa, CA 92626
   E-mail address: plepiscopo@att.net and pete@familyofficelaw.com

2. **Kenneth Lawson**
   c/o William Rothbard, counsel for Kenneth Lawson
   Law Offices of William I. Rothbard
   2333 Canyonback Road
   Los Angeles, California 90049
   E-mail address: bill@rothbardlaw.com

3. **XO Media, LLC**
   c/o William Rothbard, counsel for XO Media, LLC
   Law Offices of William I. Rothbard
   2333 Canyonback Road
   Los Angeles, California 90049
   E-mail address: bill@rothbardlaw.com

4. **Anthony Sebreros**
   c/o Jeffrey Benice
   Benice Law
   3080 Bristol St., Suite 630
   Costa Mesa, CA 92626
   Email address: JSB@JeffreyBenice.com

5. **David Sklar**
   c/o David Holt, counsel for David Sklar
   The Holt Law Firm
   1432 Edinger Avenue, Ste. 130
   Tustin, CA 92780
   Email address: dholt@holtlawoc.com

6. **Docs Done Right, Inc.**
   c/o David Holt, counsel for Docs Done Right, Inc.
   The Holt Law Firm
   1432 Edinger Avenue, Ste. 130
   Tustin, CA 92780
   Email address: dholt@holtlawoc.com

---

[1] Each of the listed parties have consented in writing to accept service of discovery requests and responses by email. *See* Fed. R. Civ. P. 5(b).

7. **Docs Done Right, LP**
    c/o David Holt, counsel for Docs Done Right, LP
    The Holt Law Firm
    1432 Edinger Avenue, Ste. 130
    Tustin, CA 92780
    Email address: dholt@holtlawoc.com

8. **Lend Tech Loans, Inc.**
    c/o David Holt, counsel for Lend Tech Loans, Inc.
    The Holt Law Firm
    1432 Edinger Avenue, Ste. 130
    Tustin, CA 92780
    Email address: dholt@holtlawoc.com

9. **Eduardo Martinez**
    c/o David Holt, counsel for Eduardo Martinez
    The Holt Law Firm
    1432 Edinger Avenue, Ste. 130
    Tustin, CA 92780
    Email address: dholt@holtlawoc.com