# Summary Judgment Ex. 13c

# EXHIBIT C

# EXPERIAN
## PRESCREENING SERVICES SCHEDULE

This Prescreening Services Schedule ("Schedule") supplements the Experian Standard Terms and Conditions, dated 8-10-15 . ("Agreement"), currently in place between Experian and Client.

**1. Application.** For the purposes of this Schedule, the term "Services" shall mean the process by which lists of individuals ("Consumers") provided by Client or developed by Experian are segmented with use of credit information, either alone or in conjunction with demographic information, in order to determine the Consumers' eligibility for an offer of credit. Experian shall provide the Services to Client for the fees set forth in the applicable pricing document.

**2. Term.** This Schedule shall commence on the Schedule Effective Date and continue in force without any fixed date of termination and either Client or Experian may terminate this Schedule upon thirty (30) days prior written notice to the other party. Notwithstanding the foregoing, if a term is designated in a pricing document signed by both parties, such term will apply to this Schedule and Client shall have no right to terminate this Schedule upon thirty (30) days prior written notice with regards to the applicable Services.

**3. Definitions**

**A. Third Party Processor.** A firm engaged in the business of providing data processing services, including but not limited to netdowns, demographic appending and segmentation, merge/purge processing, and general list cleansing, with respect to direct mail or telemarketing programs.

**B. Experian Demographic Data.** Demographic Data is data Experian provides to Client or Client's Third Party Processor in performing the Services except that demographic data which Client provides to Experian ("Client Data") for file enhancement or other processing services.

**C. Experian Data.** Any data provided by Experian, including Experian Demographic Data, Credit Data and Identifying Data.

**D. Prescreened List.** When Experian completes the segmentation of the data, Experian will deliver to Client or Client's Third Party Processor a tape (or other mutually agreeable medium) containing information that identifies the Consumers who meet the eligibility criteria established or approved by Client (the "Identifying Data"), coded credit or derived information (the "Credit Data"), and coded demographic data about such Consumers (the "Prescreened List").

**4. List Segmentation.** For each Services program, Experian will segment lists of Consumers using the eligibility criteria in the program's criteria letter and select Consumer names ("Qualifying Names") using credit and/or demographic information contained in Experian's data base(s). The criteria used to segment the lists are set forth in a mutually agreed upon "Criteria Letter" prepared before the prescreen job can be started.

**5. Netdown Services.** If as a result of Third Party Processor's data processing services, Client intends to make a firm offer of credit or insurance to fewer Consumers than appeared as Qualifying Names on the Prescreened List, then as soon as reasonably possible, but in no event later than ninety (90) days after Experian delivers the Prescreened List to Client's Third Party Processor, Client will cause the Third Party Processor to provide Experian with a list of those Consumers to whom Client intends to make its offer. Unless otherwise stated in the applicable pricing document, a maximum netdown of 25% is allowed on the Prescreened List.

**6. Demographic Data Overlays/File Enhancements.**

**A.** Experian Demographic Data supplied for overlay or enhancement in conjunction with the Services shall be used solely for direct mail or telemarketing prescreen solicitations pursuant to the terms of this Schedule. Client shall not use Demographic Data to (a) develop any list, enhancement or other product other than the prescreen list or, (b) prepare, publish, clean or maintain any directory. Client certifies that any Client file to which Experian Data is being appended contains no names of persons under the age of eighteen (18). If such Client file contains such names, Experian shall not be responsible for, and shall have no liability in connection with, Client's use of such names.

**B. Copy Review.** If requested by Experian, Client agrees to provide Experian with a copy of any direct mail or online solicitations, or telephone scripts to be used in connection with the Experian Data prior to the date of order shipment.

**7. Coded Credit Attributes.** Upon Client's request, Experian will deliver to Client's Third Party Processor a coded credit attribute that counts the total number of promotional inquiries in Experian's database (the "Coded Attribute") for individual Consumers on the Prescreened List. Client certifies it will not attempt to learn the number of promotional inquiries returned to its Third Party Processor nor will it disclose to its Third Party Processor the meaning of the Coded Attribute.

**8. Client Use.** Client certifies that when it requests the Services identified herein, Client will:

**A.** extend a "firm offer of credit or insurance," as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"), to every Consumer (a) whose name appears on a Prescreened List, or (b) whose name appears on the final list produced as a result of additional data processing, performed by the Third Party Processor prior to delivery of the Prescreened List to the Client, if any, and Client will not withdraw, modify or condition the firm offer, except as permitted by the FCRA;

**B.** if Client is not the ultimate lender, have an established agreement or agreements with another creditor or other creditors to purchase or fund the credit transactions that are based upon Client's firm offer of credit. Client agrees to make available to Experian upon request such an agreement or agreements;

**C.** not divulge the credit or insurance criteria used for any program or the meaning of any flag, score or coded or encrypted information to any person (other than the Consumer to whom such criteria relates), including without limitation, a Third Party Processor. Client will not in any direct mail or telemarketing solicitation refer to any selection criteria or any presumed knowledge about the recipient;

**D.** provide oral, written or electronic notice of any adverse action (as defined by Section 603(k) of the FCRA taken with respect to any consumer as required by Section 615(a);

**E.** provide with each written solicitation made to the consumer pursuant to paragraph 8.A above, the statement and disclosure required by Section 615(d) of the FCRA;

**F.** maintain all criteria used to select the consumer to receive the offer and any requirements of collateral for a three

# EXPERIAN
## PRESCREENING SERVICES SCHEDULE

(3) year period beginning on the date in which the offer is made;

G. not store, compile, maintain or use a Prescreened List for any purpose other than as stated in paragraph 8.A above and will not use the Prescreened List more than once without the prior written approval of Experian. Notwithstanding the foregoing, Client may, for the fees set forth in the applicable pricing document, re-use the Prescreened List as a continuation of the first mail offer, offering the same product with the same terms as the initial offer; and

H. not receive or accept from the Third Party Processor (1) any Experian Data regarding consumers whose names do not appear on the final Prescreened List; and (2) any data identifying the number of promotional inquiries.

9. **Online Solicitations.** If Client provides online firm offers of credit or insurance, Client will:

A. subsequently mail or provide online access to, for a reasonable period of time, the firm offer of credit or insurance for each consumer who received the initial online solicitation;

B. authenticate each consumer who accepts an online firm offer of credit or insurance using a consumer report or other industry acceptable out-of-wallet authentication service;

C. comply with all federal, state and local statutes, regulations, rules, and guides applicable to its online solicitation actions, including but not limited to compliance with any applicable advertising statutes, regulations, rules, and guides, and shall not engage in any unfair or deceptive trade practices with respect to the performance of its obligations hereunder; and

D. comply with Experian's digital marketing policy, including, but not limited to, any match and authentication requirements, as reasonably required by Experian.

10. **Audit Rights**

A. **Experian's Audit Rights.** In addition to the audit provisions in the Agreement, use of the Prescreened List may be monitored by Experian to the extent and through methods deemed reasonable and appropriate by Experian, including but not limited to by the seeding of names.

B. **Client's Audit Rights.** If requested, Client will have the right to audit Experian's performance of the Services (excluding Easy Prescreen services) as follows: Experian will supply Client with an agreed upon number of sample reports (with identifying Data deleted) to enable Client to confirm that the selection criteria established by Client and set forth in the Criteria Letter were applied correctly by Experian in performance of the Services. If the criteria established by Client are found not to have been applied correctly, then Client will notify Experian in writing as soon as reasonably possible but in no event later than five (5) business days after receipt of the applicable sample reports. After receipt of such notice, Experian shall, at its election, make the corrections that may be necessary, reperform the applicable Services or issue Client a refund for any amount paid by Client for such Services. Such correction, reperformance or refund shall constitute Client's sole remedy and Experian's maximum liability for Experian's breach of its obligations hereunder.

11. **Third Party Beneficiaries.** When certain demographic data, such as automotive or property ("Insurance Services"), is provided by Experian in conjunction with consumer credit information, the Disclaimer of Warranty and Limitation of Liability provisions in the Agreement shall also be for the benefit of not only Experian, but also Experian's suppliers of the Insurance Services.

12. **Third Party Processing.** In the event Client chooses to use the services of a third party to perform certain data processing or model building services, the parties understand and acknowledge that the third party shall be acting on behalf of Client. Client will cause the third party to handle, process, and possess all Experian provided data in accordance with the Agreement and this Schedule. Client shall provide Experian with the appropriate mailing instructions at least ten (10) days prior to the requested shipment date. Prior to Experian's delivery of the Prescreened List to Client's Third Party Processor, Client shall have caused the Third Party Processor to have delivered to Experian a duly executed Third Party Processor Undertaking form.

13. **Minimums.** Unless otherwise stated in the applicable pricing document, the following per program Prescreening Services minimums shall apply: (a) $3000 for batch prescreen, and (b) $500.00 for "IScreen."

This Schedule (including all applicable pricing documents), together with the Agreement as amended herein constitutes the entire agreement between the parties with respect to the Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

| Experian Information Solutions, Inc. | Chou Team Realty, Inc, dba MonsterLoans |
|---|---|
| | Print or Type Full Legal Name of Client |
| By: _____ *[signature]* _____ | By: _____ *[signature]* _____ |
| Sig(nature Duly Authorized Representative Only) | Signature (Duly Authorized Representative Only) |
| Name: Peter Henke | Name: Jawad Nesheiwat |
| | Print |
| Title: Director of Membership | Title: Operations Manager |
| Schedule Effective Date: 8-10-2015 | |