# Summary Judgment Ex. 19a

# Marple Declaration -  Exhibit 1

Message

| From: | Belal Abdel [babdelfa@gmail.com] |
|---|---|
| **Sent**: | 7/5/2017 9:50:12 PM |
| **To**: | Marple, Patricia [patricia.marple@experian.com] |
| **Subject**: | Re: Experian Membership - iScreen |
| **Attachments**: | Prescreening Service Schedule.pdf; Membership Packet.pdf |

Hi Patricia -

Attached are the updated Membership Packet as well as the completed Prescreening Service Schedule.

As for our lenders, Chou Team Realty (dba MonsterLoans) is the only lender we are currently approved with. Thank you!

On Wed, Jul 5, 2017 at 1:17 PM, Marple, Patricia <patricia.marple@experian.com> wrote:

Bill,

I hope you are having a wonderful Wednesday. We've had our internal Strategic Pricing discussion today and I'm just waiting on the final green light from Product Management and Legal to get you that contract. I believe the below was all agreed upon;

- $0.07 per record total (from $0.23)

    o Which includes all attributes, FICO (all models) and Income Insight

- $0.01 (from $0.03) per record on uploads

- 1 year term.

- A monthly minimum of 500,000 records per month/$35,000.00 spend. An annual commitment of 6MM records/$420,000.00 spend. If Lend Tech does not meet the minimum, at the end of the 12 month term Experian will charge the difference between the per records pulled and the annual minimum requirement.

I have also reviewed the documents that were sent in. there are a few changes/asks. Please see below.

Membership Packet:

Page 2. The Permissible Purpose Section needs to state that you will be making a firm offer of credit.

EXP006018
CFPB-EM-0061515

The Prescreen Services Schedule was missing from the documentation. Please execute the attached.

Additional Documentation:

A full list of approved Lenders. (Names, Addresses, Phone Numbers)

1 Lender Approval Letter. Approving you as their Broker.

**Patricia Marple** [in]

Consumer Information Services | *Account Executive*

955 American Lane | Schaumburg, IL 60173

Tel: 224-698-8644

Fax: 224-698-5069

Client Support – 800-831-5614

Technical Support – 800-854-7201



Web | Blog | Twitter | Facebook | LinkedIn

**From:** Belal Abdel [mailto:babdelfa@gmail.com]
**Sent:** Wednesday, July 05, 2017 12:18 PM
**To:** Marple, Patricia <patricia.marple@experian.com>
**Subject:** Re: Experian Membership - iScreen

EXP006019
CFPB-EM-0061516

Hi Patricia -

Membership Packet attached, thanks!

On Wed, Jul 5, 2017 at 8:56 AM, Belal Abdel <babdelfa@gmail.com> wrote:

Hi Patricia -

Please find all requested files attached. I am working on collecting all of the information for the membership application form you sent and will have that over as soon as I can later this morning.

Please let me know if there is anything else I can provide for you! I know there is a holiday next week so I am hoping I've gotten this to you in time to get an on-site visit done next week. Thank you!

On Wed, Jun 28, 2017 at 7:51 AM, Marple, Patricia <patricia.marple@experian.com> wrote:

**Bill,**

Thank you for speaking with me yesterday and thank you again for your continued interest in Experian's iScreen services. Attached you will find the required documentation for Experian Membership and to initiate our services.

• Membership Packet – basic forms needed to gain access to Experian's File One credit database. All documents must be signed and submitted in full.  There is a one-time membership fee of $165 when approved and a one-time physical inspection fee of $75. This will be invoiced upon approval. 48 to 72 business hours from the point that your signed documentation is received, you will receive a call to schedule the physical inspection. The membership process can take approximately 10 – 15  business days.

**I have included a copy of the standard iScreen pricing schedule for your review. As we discussed, please itemize the most commonly used ancilalary services for your anticipated 200K records each week. I can then take the request to Stratgic pricing to obtain further discounts.**

CONFIDENTIAL

EXP006020
CFPB-EM-0061517

Along with the completed Membership documentation attached to this email, we will need a copy of the following to move forward with the Membership request;

- **Articles of Incorporation or Organization**

- **DBA Certificate (*if Applicable)**

- **List of Lenders (Full Names, Addresses, Phone Numbers)**

- **At least 1 Lender Approval Letter**

- **A copy of the Firm offer of Credit to be made to the Consumer**

• At the point and time that you have been approved for Experian Membership, you will receive a User Name and Password to pull through Experian's Access website.

Please let me know if you have any questions. All signed documentation can be emailed of faxed back directly to 224-698-5069.

Thank you!

**Patricia Marple**

Consumer Information Services | *Account Executive*

955 American Lane | Schaumburg, IL 60173

Tel: 224-698-8644

Fax: 224-698-5069

Client Support - 800-831-5614

Technical Support - 800-854-7201

CONFIDENTIAL



Web | Blog | Twitter | Facebook | LinkedIn

## EXPERIAN
## PRESCREENING SERVICES SCHEDULE

This Prescreening Services Schedule ("Schedule") supplements the Experian Standard Terms and Conditions, dated _____06/30/2017_____ ("Agreement"), currently in place between Experian and Client.

**1.    Application.** For the purposes of this Schedule, the term "Services" shall mean the process by which lists of individuals ("Consumers") provided by Client or developed by Experian are segmented with use of credit information, either alone or in conjunction with demographic information, in order to determine the Consumers' eligibility for an offer of credit. Experian shall provide the Services to Client for the fees set forth in the attached Pricing Exhibit.

**2.    Term.** Unless otherwise specified in the Pricing Exhibit, this Schedule shall commence on the Schedule Effective Date and continue in force without any fixed date of termination, but Client or Experian may terminate this Schedule upon thirty (30) days prior written notice to the other party.

**3.    Definitions**

**A.    Third Party Processor.** A firm engaged in the business of providing data processing services, including but not limited to netdowns, demographic appending and segmentation, merge/purge processing, and general list cleansing, with respect to direct mail or telemarketing programs.

**B.    Experian Demographic Data.** Demographic Data is data Experian provides to Client or Client's Third Party Processor in performing the Services except that demographic data which Client provides to Experian ("Client Data") for file enhancement or other processing services.

**C.    Experian Data.** Any data provided by Experian, including Experian Demographic Data, Credit Data and Identifying Data.

**D.    Prescreened List.** When Experian completes the segmentation of the data, Experian will deliver to Client or Client's Third Party Processor a tape (or other mutually agreeable medium) containing information that identifies the Consumers who meet the eligibility criteria established or approved by Client (the "Identifying Data"), coded credit or derived information (the "Credit Data"), and coded demographic data about such Consumers (the "Prescreened List").

**4.    List Segmentation.** For each Services program, Experian will segment lists of Consumers using the eligibility criteria in the program's criteria letter and select Consumer names ("Qualifying Names") using credit and/or demographic information contained in Experian's data base(s). The criteria used to segment the lists are set forth in a mutually agreed upon "Criteria Letter" prepared before the prescreen job can be started.

**5.    Netdown Services.** If as a result of Third Party Processor's data processing services, Client intends to make a firm offer of credit or insurance to fewer Consumers than appeared as Qualifying Names on the Prescreened List, then as soon as reasonably possible, but in no event later than ninety (90) days after Experian delivers the Prescreened List to Client's Third Party Processor, Client will cause the Third Party Processor to provide Experian with a list of those Consumers to whom Client intends to make its offer. Unless otherwise stated in the Pricing Exhibit, a maximum netdown of 25% is allowed on the Prescreened List.

**6.    Demographic Data Overlays/File Enhancements.**

**A.    Experian** Demographic Data supplied for overlay or enhancement in conjunction with the Services shall be used solely for direct mail or telemarketing prescreen solicitations pursuant to the terms of this Schedule. Client shall not use Demographic Data to (a) develop any list, enhancement or other product other than the prescreen list or, (b) prepare, publish, clean or maintain any directory. Client certifies that any Client file to which Experian Data is being appended contains no names of persons under the age of eighteen (18). If such Client file contains such names, Experian shall not be responsible for, and shall have no liability in connection with, Client's use of such names.

**B.    Copy Review.** If requested by Experian, Client agrees to provide Experian with a copy of any direct mail solicitations or telephone scripts to be used in connection with the Experian Data prior to the date of order shipment.

**7.    Coded Credit Attributes.** Upon Client's request, Experian will deliver to Client's Third Party Processor a coded credit attribute that counts the total number of promotional inquiries in Experian's database (the "Coded Attribute") for individual Consumers on the Prescreened List. Client certifies it will not attempt to learn the number of promotional inquiries returned to its Third Party Processor nor will it disclose to its Third Party Processor the meaning of the Coded Attribute.

**8.    Client Use.** Client certifies that when it requests the Services identified herein, Client will:

**A.    extend** a "firm offer of credit or insurance," as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"), to every Consumer (a) whose name appears on a Prescreened List, or (b) whose name appears on the final list produced as a result of additional data processing, performed by the Third Party Processor prior to delivery of the Prescreened List to the Client, if any, and Client will not withdraw, modify or condition the firm offer, except as permitted by the FCRA;

**B.    if** Client is not the ultimate lender, have an established agreement or agreements with another creditor or other creditors to purchase or fund the credit transactions that are based upon Client's firm offer of credit. Client agrees to make available to Experian upon request such an agreement or agreements;

**C.    not** divulge the credit or insurance criteria used for any program or the meaning of any flag, score or coded or encrypted information to any person (other than the Consumer to whom such criteria relates), including without limitation, a Third Party Processor. Client will not in any direct mail or telemarketing solicitation refer to any selection criteria or any presumed knowledge about the recipient;

**D.    provide** oral, written or electronic notice of any adverse action (as defined by Section 603(k) of the FCRA taken with respect to any consumer as required by Section 615(a);

**E.    provide** with each written solicitation made to the consumer pursuant to paragraph 8.A above, the statement and disclosure required by Section 615(d) of the FCRA;

3.30.11

1

PrescreeningServicesSchedule

CONFIDENTIAL                                    EXP006023
                                               CFPB-EM-0061520

## EXPERIAN
## PRESCREENING SERVICES SCHEDULE

**F.** maintain all criteria used to select the consumer to receive the offer and any requirements of collateral for a three (3) year period beginning on the date in which the offer is made;

**G.** not store, compile, maintain or use a Prescreened List for any purpose other than as stated in paragraph 8.A above and will not use the Prescreened List more than once without the prior written approval of Experian. Notwithstanding the foregoing, Client may, for the fees set forth in the Pricing Exhibit, re-use the Prescreened List as a continuation of the first mail offer, offering the same product with the same terms as the initial offer; and

**H.** not receive or accept from the Third Party Processor (1) any Experian Data regarding consumers whose names do not appear on the final Prescreened List; and (2) any data identifying the number of promotional inquiries.

**9. Audit Rights**

**A. Experian's Audit Rights.** In addition to the audit provisions in the Agreement, use of the Prescreened List may be monitored by Experian to the extent and through methods deemed reasonable and appropriate by Experian, including but not limited to by the seeding of names.

**B. Client's Audit Rights.** If requested, Client will have the right to audit Experian's performance of the Services (excluding Easy Prescreen services) as follows: Experian will supply Client with an agreed upon number of sample reports (with Identifying Data deleted) to enable Client to confirm that the selection criteria established by Client and set forth in the Criteria Letter were applied correctly by Experian in performance of the Services. If the criteria established by Client are found not to have been applied correctly, then Client

will notify Experian in writing as soon as reasonably possible but in no event later than five (5) business days after receipt of the applicable sample reports. After receipt of such notice, Experian shall, at its election, make the corrections that may be necessary, reperform the applicable Services or issue Client a refund for any amount paid by Client for such Services. Such correction, reperformance or refund shall constitute Client's sole remedy and Experian's maximum liability for Experian's breach of its obligations hereunder.

**10. Third Party Beneficiaries.** When certain demographic data, such as automotive or property ("Insurance Services"), is provided by Experian in conjunction with consumer credit information, the Disclaimer of Warranty and Limitation of Liability provisions in the Agreement shall also be for the benefit of not only Experian, but also Experian's suppliers of the Insurance Services.

**11. Third Party Processing.** In the event Client chooses to use the services of a third party to perform certain data processing or model building services, the parties understand and acknowledge that the third party shall be acting on behalf of Client. Client will cause the third party to (1) handle, process, and possess all Experian provided data in accordance with the Agreement and this Schedule, (2) Client shall provide Experian with the appropriate mailing instructions at least ten (10) days prior to the requested shipment date. Prior to Experian's delivery of the Prescreened List to Client's Third Party Processor, if applicable, Client shall have caused the Third Party Processor to have delivered to Experian a duly executed Third Party Processor Undertaking form.

**12. Minimums.** Unless otherwise stated in the Pricing Exhibit, the following per program Prescreening Services minimums shall apply: (a) Prescreen Services – Minimum = $2500 and (b) "iScreen" = $500.00.

This Schedule (including the Pricing Exhibit), together with the Agreement as amended herein constitutes the entire agreement between the parties with respect to the Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

| **Experian Information Solutions, Inc.** | LEND TECH LOANS, INC. |
|---|---|
| | Print or Type Full Legal Name of Company |
| By: | By: |
| Signature (Duly Authorized Representative Only) | Signature (Duly Authorized Representative Only) |
| Name: | Name: SEAN COWELL |
| Print | Print |
| Title: | Title: OWNER |
| Schedule Effective Date: | |

CONFIDENTIAL     EXP006024   CFPB-EM-0061521

**EXPERIAN**
**PRESCREENING SERVICES SCHEDULE**

**PRICING EXHIBIT**

The following pricing shall apply to the Prescreening Services provided under the Standard Terms and Conditions ("Agreement") and the Prescreening Services Schedule ("Schedule"):

CONFIDENTIAL

EXP006025
CFPB-EM-0061522

# Membership Application



**experian.**

**Experian Information Solutions Division**

**Important:** <u>All information must be completed in its entirety.</u> Please print clearly and legibly to ensure accurate and timely processing.

## Business Information

Legal Name (under which tax returns are filed): __Lend Tech Loans, Inc.__

DBA or Assumed Name: _____    Type of Business: __Mortgage__

Time in Business: __0__ yrs __6__ mos.  Annual Revenue: __N/A__    Estimated # of Credit Reports Accessed Monthly: __800,000__

Type of Ownership:   ☒ Corporation   ☐ LLC   ☐ Sole Proprietorship   ☐ Partnership   ☐ Nonprofit   ☐ Other _____

Business License (attach as necessary)    Do you have an **Investigation License**? ☐ Yes ☒ No If Yes, please provide a copy

Business Website: __TBD__    Business Email Address: __TBD__

Number of Owners and percentage ownership (if publicly traded, provide exchange name and stock symbol): __1__

Owners' Name, title, address and phone numbers: __SEAN COWELL, OWNER,__ ▮▮▮▮▮ CA ▮ (949) 295-8938

Will you be using a third party or technology partner to access? If yes, please provide that party's name: __NO__

What services does that third party provide (if applicable): _____

Business Physical Address (**no P.O. box numbers**): __3 WHATNEY, STE 100__

City: __IRVINE__    State: __CA__    ZIP: __9 2 6 1 8__    How Long? __0__ yrs __6__ mos.

Primary Phone: (877) __352-1022__    Fax: ( ) _____    Is this a **residential** address? ☐ Yes ☒ No

**Contact for Physical Inspection:** __BILL ABDEL__  Title: __MANAGER__

Phone Number: (949) __735-7821__    Email Address: __BABDELFA@GMAIL.COM__

**Billing Address** (if different): _____    City: _____    State: ___    ZIP: _____

Billing Contact: _____    Title: _____    Phone: ( ) _____

Previous Business Address: _____

City: _____    State: ___    ZIP: _____    How Long? _____ yrs _____ mos.

Have you previously applied or have been an Experian Member?   ☐ Yes   ☐ No   **If Yes, when?** _____

Under what business name? _____    Previous Member number (if known): _____

## Principal of the Company

(Must be completed by majority owner or general partner, as applicable)

(Must be completed unless the business is a publicly traded entity on a recognized stock exchange or the business is a state or federally regulated financial institution). Please provide exchange name and stock symbol or charter number and name of regulatory agency: _____

I understand I am providing written instructions to Experian under the Fair Credit Reporting Act authorizing Experian to obtain my credit report. I authorize Experian to obtain this information solely to process this application.

Principal signature: _Sean Cowell_    Date: _6/30/17_    Social Security Number: ▮▮▮8734    Year of Birth: _1969_

Principal name: __SEAN COWELL__    Title or Position: __OWNER__    Phone: (949) __295-8938__

Residential Address: ▮▮▮▮▮    City: __LAGUNA NIGUEL__    State: __CA__    ZIP: ▮▮▮▮

## Parent or Affiliated Business Information

Parent Company Name (if applicable): _____

Contact Name: _____    Title: _____    Phone: ( ) _____

Address: _____    City: _____    State: ___    ZIP: _____

CONFIDENTIAL

| Permissible Purpose/Appropriate Use | (Application will not be processed unless this information is provided.) |
|---|---|

Provide detailed description of your use of Experian products and consumer data.  Also, describe the nature of your business interaction with consumers.

WE ARE A MORTGAGE COMPANY LOOKING TO PURCHASE RECORDS OF POTENTIAL CLIENTS TO MARKET VIA DIRECT MAIL.

WE WILL BE MAKING A FIRM OFFER OF CREDIT.

## Head Designate for Internet Access

Full Name & Title:   ANTHONY SEBREROS, MANAGER          Email Address:    FSEBREROS@GMAIL.COM

Phone Number        ( 949 )  357-8992

User ID - First Choice (minimum 6 characters)        LENDTECH

User ID - Second Choice (minimum 6 characters)      LENDTECHLOANS

Organization Static IP Address(es)                           98.173.13.210

**Head Designate Certificate.** This form is to be used by Experian to identify the individual that will act on behalf of the Client in regards to end user access to Experian's systems. Client's Head Security Designate will submit all requests to create, change or lock Client employee end user access to accounts and permissions associated with Experian's systems and information via the Internet. The Head Security Designate must be an authorized representative of the Client's organization and must be available to interact with Experian on information and product access matters in accordance with the attached Access Security Requirement for FCRA and GLB 5A Data. Such requirements may be updated from time to time by Experian in accordance with the terms therein. This Head Designate Authorization Form must be signed by a duly authorized representative of the Client. The Client acknowledges and agrees that Client 1) has received the Access Security Requirement for FCRA and GLB 5A Data, 2) has read and understands the Clients' obligations described in the Access Security Requirement for FCRA and GLB 5A Data, 3) will communicate the contents of the Access Security Requirement for FCRA and GLB 5A Data and any subsequent updates thereto to all employee end users that shall have access to Experian's systems and information via the Internet, and 4) will abide to the provisions of the Access Security Requirement for FCRA and GLB 5A Data. Changes in Head Security Designate status (e.g., transfer or termination) are to be reported to Experian immediately. On an annual basis Experian will require the Head Security Designate to attest to the accuracy and currency of the status of the employee end users that access accounts and permissions to Experian's systems and information via the Internet. Attestation must be completed within 30 days of notification to Client, or the Head Security Designate will be prohibited from accessing Experian's systems and information until such attestation is complete.

**If this application involves Company's use of consumer credit products then the following shall apply:**

I have read and understand the **"FCRA Requirements"** notice and Experian's **"Access Security Requirements For FCRA and GLB 5A Data"** and will take all reasonable measures to enforce them within my facility.  I certify that I will use the Experian product information for no other purpose other than what is stated in the Permissible Purpose/Appropriate Use section on this application and for the type of business listed on this application.  I will not sell the report to any consumer directly or indirectly.  I understand that if my system is used improperly by Company personnel, or if my access codes are made available to any unauthorized personnel due to carelessness on the part of any employee of my company, I may be held responsible for financial losses, fees, or monetary charges that may be incurred and that my access privilege may be terminated.

**Important Tax Notice**

If Company is exempt from sales tax in any of the states where the information is delivered to you or accessed by you, please send Experian a completed and signed sales tax exemption certificate for each of those states.

I certify that I have read the above statements and all information provided is accurate.

LEND TECH LOANS, INC.
_____
Legal Company Name                                              DBA Name (If Applicable)

X _____                            6/30/17
Authorized Signature                                                 Date

SEAN COWELL                                                          OWNER
Type or Print Name of Authorized Signer                   Title

**If you have questions or need additional information, please call 1-800-831-5614.**                    Revised 01/16

EXP006027
CFPB-EM-0061524

**EXPERIAN**
## STANDARD TERMS AND CONDITIONS

This Standard Terms and Conditions ("Agreement") is made on the Effective Date set forth below between Experian Information Solutions, Inc. and Experian Marketing Solutions, Inc. (collectively, "Experian") and the Client indicated below at the signature line ("Client"). All references herein to this Agreement, unless otherwise specified, shall include the schedules and exhibits to this Agreement.

**1. Agreement.** This Agreement contains the standard terms and conditions for Experian's provision of products and services (collectively, the "Services") to the Client. The terms of this Agreement shall be supplemented by individual schedules containing additional terms and conditions applicable to specific Services (each a "Schedule").

**2. Term.** The term of this Agreement shall begin upon the Effective Date set forth below and shall continue in effect until the termination or expiration of all Schedules issued pursuant to this Agreement.

**3. Client Orders.** Client shall provide Experian with such information as necessary to provide the Services, which shall include at Experian's request job specifications or criteria reasonably necessary to perform the Services ("Client Order"). The terms of this Agreement shall be superior to, and supersede, any conflicting or inconsistent terms contained in any Client Order or other Client provided documents. If Client changes or cancels a Client Order, or any portion thereof, after Experian has commenced work, Client agrees to pay Experian for its costs incurred for such work in process. If the Services are substantially completed at the time of such change or cancellation, Client agrees to pay Experian the full price for such Services.

**4. Fees and Payment.** Client will pay Experian for the Services in the amounts agreed upon and set forth in the applicable Schedule or other mutually agreed pricing document. Unless otherwise provided in an applicable pricing document, Experian shall have the right to revise or amend the pricing by providing thirty (30) days prior written notice to Client before such revision or amendment becomes effective. Experian's invoices will be deemed to be correct and acceptable to Client unless Client advises Experian of disputed items within ten (10) days of their receipt. Payments shall be made to Experian within thirty (30) days of invoice date. If Client fails to pay any invoice in accordance with the foregoing terms, Client shall also pay interest on the unpaid amount at the lesser of one and one-half percent (1.5%) per month or the maximum amount allowed by law. The prices and rates for the Services do not include either shipping costs or applicable federal, state, local, or foreign sales or use taxes, and Client will pay or reimburse Experian for such shipping costs and taxes.

**5. Confidential Treatment.** Under no circumstances will Client resell or otherwise disclose to any other person, other than employees or agents whose duties reasonably relate to the lawful business purpose for which the Services were obtained, any of the Services or data that Experian delivers to Client. Both parties hereby acknowledge that the Services and/or data provided by either party to the other may include personal information pertaining to individual consumers, and requires that the parties treat such information responsibly and take reasonable steps to maintain appropriate confidentiality and to prevent unlawful dissemination or misuse by its employees, officers, agents or any other person with access to such information. The Services and data shall only be used as expressly authorized in this Agreement or in any Schedule.

**6. Compliance with Laws.** Experian shall comply with all federal, state and local laws, rules, regulations and decisions applicable to Experian's provision of Experian data and the Services pursuant to this Agreement. Client shall comply with all federal, state and local laws, rules regulations and decisions applicable to Client's collection and provision to Experian of the Client data and Client's use of the Experian data and Services provided pursuant to this Agreement. Experian reserves the right to revise the terms, or conditions or pricing under this Agreement, any Schedule and/or the Services (including without limitation the right to withdraw or restrict affected data) to meet any requirement imposed by federal, state, or local law, rule or regulation, or to address matters concerning privacy and confidentiality, upon reasonable notice to Client.

**A. Gramm-Leach-Bliley Act.** Client shall implement and maintain a comprehensive information security program written in one or more readily accessible parts and that contains administrative, technical, and physical safeguards that are appropriate to Client's size and complexity, the nature and scope of its activities, and the sensitivity of the information provided to Client by Experian. Such safeguards shall include the elements set forth in 16 C.F.R. § 314.4 and shall be reasonably designed to (i) insure the security and confidentiality of the information provided by Experian, (ii) protect against any anticipated threats or hazards to the security or integrity of such information, and (iii) protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any consumer. Client shall, at a minimum, comply with Experian's standard security requirements to the extent applicable to Client's use of the Services. Client shall provide its security program to Experian upon request and shall adopt any safeguard that Experian may reasonably request.

**7. Data and Intellectual Property Ownership.** Client acknowledges that Experian has expended substantial time, effort and funds to create and deliver the Services and compile its various databases. All data in Experian's databases and any other intellectual property that are part of the Services are and will continue to be Experian's exclusive property. Nothing contained in this Agreement or in any Schedule shall be deemed to convey to Client or to any other party any ownership interest in or to intellectual property or data provided in connection with the Services.

**8. Domestic Access and Use of Services.** Client shall not access, transfer, or use the Services outside the United States or its territories. Any direct or indirect access to, transfer, or use of the Services outside the United States or its territories shall require the prior written approval of Experian.

**9. Termination for Cause.** If either party is in material breach of this Agreement or any Schedule, the non-breaching party may terminate the individual Schedule or this Agreement, as applicable, provided such breach is not cured within thirty (30) days following written notice of such breach, unless such breach is the failure to pay for the Services under the terms of this Agreement, in which case Client shall have ten (10) days to cure such breach following notice. Notwithstanding the foregoing, this Agreement or any Schedule may be terminated by Experian immediately upon written notice to Client if in Experian's reasonable good faith judgment any Services and/or data provided to Client are being used or disclosed contrary to this Agreement or any Schedule. In the event that this Agreement or a Schedule is terminated as a result of a breach, the non-breaching party shall, in addition to its rights of termination, be entitled to pursue all other remedies against the breaching party. Termination of this Agreement or any Schedule shall not relieve Client of its obligation to pay for any Services performed or provided by Experian under this Agreement or any Schedule.

**10. Warranty and Disclaimers.** Experian warrants to Client that Experian will use commercially reasonable efforts to deliver the Services in a timely manner. Because the Services involve conveying information provided to Experian by other sources, Experian cannot and will not, for the fee charged for the Services, be an insurer or guarantor of the accuracy or reliability of the Services or the data contained in its various databases. THE WARRANTY IN THE FIRST SENTENCE OF THIS PARAGRAPH IS THE ONLY WARRANTY EXPERIAN HAS GIVEN CLIENT WITH RESPECT TO THE SERVICES. EXPERIAN MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES, ANY EXPERIAN DATA, OR ANY OTHER MATERIALS (TANGIBLE OR INTANGIBLE) SUPPLIED BY EXPERIAN HEREUNDER, AND EXPERIAN HEREBY EXPRESSLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES WITH RESPECT THERETO, INCLUDING WITHOUT LIMITATION, ANY WARRANTIES AS TO THE ACCURACY, COMPLETENESS OR CURRENTNESS OF ANY DATA OR ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

**11. Limitation of Liability.** Client acknowledges that Experian maintains several databases updated on a periodic basis, and that Experian does not undertake a separate investigation for each inquiry or request for Services made by Client. Client also acknowledges that the prices Experian charges for the Services are based upon Experian's expectation that the risk of any loss or injury that may be incurred by use of the Services will be borne by Client and not Experian. Client therefore agrees that it is responsible for determining that the Services

CONFIDENTIAL                                                                                   EXP006028
                                                                                               CFPB-EM-0061525

are in accordance with Experian's obligations under this Agreement. If Client reasonably determines that the Services do not meet Experian's obligations under this Agreement, Client shall so notify Experian in writing within ten days after receipt of the Services in question. Client's failure to so notify Experian shall mean that Client accepts the Services as is. If Client so notifies Experian within ten days after receipt of the Services, then, unless Experian reasonably disputes Client's claim, Experian shall, at its option, either reperform the Services in question or issue Client a credit for the amount Client paid to Experian for the nonconforming Services. EXPERIAN'S REPERFORMANCE OF THE SERVICES OR THE REFUND OF ANY FEES CLIENT HAS PAID FOR SUCH SERVICES SHALL CONSTITUTE CLIENT'S SOLE REMEDY AND EXPERIAN'S MAXIMUM LIABILITY UNDER THIS AGREEMENT. IF NOTWITHSTANDING THE ABOVE, LIABILITY IS IMPOSED ON EXPERIAN, THEN CLIENT AGREES THAT EXPERIAN'S TOTAL LIABILITY FOR ANY OR ALL OF CLIENT'S LOSSES OR INJURIES FROM EXPERIAN'S ACTS OR OMISSIONS UNDER THIS AGREEMENT, REGARDLESS OF THE NATURE OF THE LEGAL OR EQUITABLE RIGHT CLAIMED TO HAVE BEEN VIOLATED, SHALL NOT EXCEED THE AMOUNT PAID BY CLIENT TO EXPERIAN UNDER THIS AGREEMENT FOR THE PARTICULAR SERVICES WHICH ARE THE SUBJECT OF THE ALLEGED BREACH DURING THE SIX MONTH PERIOD PRECEDING THE ALLEGED BREACH BY EXPERIAN. CLIENT COVENANTS THAT IT WILL NOT SUE EXPERIAN FOR ANY AMOUNT GREATER THAN SUCH AMOUNT.

NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES (INCLUDING BUT NOT LIMITED TO DAMAGES TO BUSINESS REPUTATION, LOST BUSINESS, OR LOST PROFITS), WHETHER FORESEEABLE OR NOT AND HOWEVER CAUSED, EVEN IF SUCH PARTY IS ADVISED OF THE POSSIBILITY THAT SUCH DAMAGES MIGHT ARISE.

**12. Waiver.** Either party may waive compliance by the other party with any covenants or conditions contained in this Agreement or any Schedule, but only by written instrument signed by the party waiving such compliance. No such waiver, however, shall be deemed to waive any other circumstance or any other covenant or condition not expressly named in the written waiver.

**13. Audit.** Experian will have the right to audit Client's and any of its agent's use of the Services to assure compliance with the terms of this Agreement. Client will be responsible for assuring full cooperation with Experian in connection with such audits and will provide Experian or obtain for Experian access to such properties, records and personnel as Experian may reasonably require for such purpose.

**14. Successors and Assigns.** This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective heirs, representatives, successors and permitted assignees. This Agreement may not be assigned, transferred, shared or divided in whole or in part by Client without Experian's prior written consent.

**15. Excusable Delays.** Neither party shall be liable for any delay or failure in its performance under this Agreement (except for the payment

of money) if and to the extent which such delay or failure is caused by events beyond the reasonable control of the party including, without limitation, acts of God, public enemies, or terrorists, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes. If a party becomes aware that such an event is likely to delay or prevent punctual performance of its own obligations, the party will promptly notify the other party and use its best effort to avoid or remove such causes of nonperformance and to complete delayed job whenever such causes are removed.

**16. Choice of Law.** This Agreement is governed by and construed in accordance with the internal substantive laws of the State of California. Any dispute under this Agreement shall be brought in the federal or state courts in Orange County, California.

**17. Notices.** All notices, requests and other communications hereunder shall be in writing and shall be deemed delivered at the time of receipt if delivered by hand or communicated by electronic transmission, or, if mailed, three (3) days after mailing by first class mail with postage prepaid. Notices to Experian and Client shall be addressed to the addresses provided below each party's signature, or to such other address as either party shall designate in writing to the other from time to time.

**18. Complete Agreement.** This Agreement, as supplemented by any Schedules, sets forth the entire understanding of Client and Experian with respect to the subject matter hereof and supersedes all prior letters of intent, agreements, covenants, arrangements, communications, representations, or warranties, whether oral or written, by any officer employee, or representative of either party relating thereto.

**19. Amendments.** This Agreement may only be amended in writing signed by authorized representatives of both parties.

**20. Survival.** The provisions of Sections 4, 5, 6, 7, 8, 10, 11, 13, and 17, in addition to any other provisions of this Agreement or any Schedule that would normally survive termination, shall survive termination of this Agreement for any reason.

**21. Authority to Sign.** Each party represents that (i) the person signing this Agreement or any Schedule has all right, power and authority to sign this Agreement or any Schedule on behalf of such party; (ii) it has full power and authority and all necessary authorizations to comply with the terms of this Agreement and to perform its obligations hereunder; and (iii) if it signs this Agreement or any Schedule with an electronic signature, it (a) shall comply with all applicable electronic records and signatures laws, including but not limited to the Electronic Signatures in Global and National Commerce Act; (b) hereby acknowledges its electronic signature is effective and will not dispute the legally binding nature, validity or enforceability of this Agreement or any Schedule based on the fact that the terms were accepted with an electronic signature; and (c) shall ensure that its electronic signature vendor shall comply with the confidentiality obligations of this Agreement.

IN WITNESS WHEREOF, Client and Experian sign and deliver this Agreement as of the Effective Date set forth below.

| **Experian Information Solutions, Inc.** | LEND TECH LOANS, INC. |
|---|---|
| | Print or Type Legal Name of Client |
| By: _____ Signature (Duly Authorized Representative Only) | By: _____ Signature (Duly Authorized Representative Only) |
| Name: _____ Print | Name: SEAN COWELL Print |
| Title: _____ | Title: OWNER |
| Effective Date: _____ | |

Address for Notice: Experian Information Solutions, Inc., 475 Anton Boulevard, Costa Mesa, CA 92626, Attn: General Counsel

Physical Address for Notice: Attn:

06.19.15 — Standard Terms and Conditions

CONFIDENTIAL — EXP006029 — CFPB-EM-0061526

# EXPERIAN
## CONSUMER SERVICES SCHEDULE

This Consumer Services Schedule ("Schedule") supplements the Experian Standard Terms and Conditions, dated 6/30/17("Agreement"), currently in place between Experian and Client.

**1. Application.** For the purposes of this Schedule, the term "Services" shall mean Experian's provision of services to Client which includes the supply of consumer credit information, account review services, identification information, generic scoring services, and other data services from information stored in one of Experian's consumer databases. Experian will provide Services to Client for the fees set forth in a pricing document signed by both parties that identifies the Services being ordered by Client and which incorporates this Schedule and the Agreement by reference.

**2. Term.** This Schedule shall commence on the Schedule Effective Date and continue in force without any fixed date of termination and either Client or Experian may terminate this Schedule upon thirty (30) days prior written notice to the other party. Notwithstanding the foregoing, if a term is designated in a pricing document signed by both parties, such term will apply to this Schedule and Client shall have no right to terminate this Schedule upon thirty (30) days prior written notice with regards to the applicable Services.

**3. FCRA Use.** Client will request and use the Services strictly in accordance with the federal Fair Credit Reporting Act, 15 U.S.C. 1681 *et. seq.*, as amended (the "FCRA"). Without limiting the foregoing, Client certifies that Client will request and use the Services solely in connection with (i) a single credit transaction with a consumer, or, if applicable, for another "permissible purpose" as defined by the FCRA; and (ii) transactions involving the consumer as to whom such information is sought and will not request or use such Services for purposes prohibited by law. Permissible purpose does not include the collection of debts not voluntarily incurred by the consumer unless those debts are judicially established by a court order or judgment. Client further certifies that it will comply with all requirements of the FCRA applicable to it. If Client has purchased a consumer report from Experian in connection with a consumer's application for credit, and the consumer makes a timely request of Client, Client may share the contents of that report with the consumer as long as it does so without charge and only after authenticating the consumer's identity.

**4. Data Use Restrictions.** Client agrees that it will not, either directly or indirectly, itself or through any agent or third party, without the prior written consent of Experian, request, compile, store, maintain, resell or use the Services (including any of the information contained in the Services) to build its own credit reporting database. Client shall be solely responsible for assuring the secure and confidential manner in which it stores, delivers and transmits Services to its authorized employee users. Client shall, at a minimum, comply with Experian's standard access security requirements.

**5. Inquiries.** When accessing Services, Client certifies it will use reasonable measures to identify consumers and will accurately provide Experian with complete identifying information about the consumer inquired upon in the form specified by Experian. Client will enter all requested Client and type code information when requesting Services. Experian may use Client's inquiry data for any purpose consistent with applicable federal, state and local laws, rules, and regulations. Client will be responsible for installing the necessary equipment, software and security codes to prevent unauthorized access to an Experian database.

**6. Data Contribution.** If Client contributes information on its credit experience with consumers, including updates thereof, (collectively "Client Records") to Experian, Client agrees to make Client Records available to Experian at mutually agreeable times and format, in accordance with Section 623 of the FCRA. Client shall provide Client Records which are accurate to the best of its knowledge and shall promptly update and correct all known inaccurate information. Client shall provide Experian with written notice (i) if any information is disputed by a consumer, (ii) if the consumer closes the account; and (iii) not later than 90 days after furnishing the information, of the date of the commencement of the delinquency of an account which is placed for collection. Client shall bear the expense of preparing and delivering Client's Records to Experian. Experian may incorporate, at Experian's expense, Client Records into its credit reporting system. Information, once incorporated and merged with other contributed data, will be Experian's exclusive property. Client shall retain ownership in information used to compile its Client Records. At Experian's request, Client will promptly reinvestigate and verify the accuracy of Client Records. Experian may use Client Records for any purpose consistent with applicable federal, state and local laws, rules, and regulations; provided, however, that Experian will use reasonable commercial efforts not to release a list that specifically identifies individuals as Client's customers. Where applicable, Experian and the credit reporting industry expect all data contributors to report collection accounts as "paid collection" transactions when they are paid. This information should not be deleted unless required by law. Although this may seem like a valuable consumer service and helps Client collect on debt, it is a disservice to credit grantors for Experian to allow the deletion of this valuable collection information. For these reasons, if Client is deleting valid collection information, or charging fees to delete information, or both, Experian reserves the right to terminate this Agreement immediately and remove Client Records from Experian's credit reporting system.

**7. Third Party Processors.** In the event Client chooses to use a third party to perform certain data processing or model building services, the parties understand and acknowledge that the third party shall be acting on behalf of Client. Client will cause the third party to (i) handle, process, and possess all Experian provided data in accordance with this Agreement, and (ii) sign a Third Party Processor Undertaking form. Client shall provide Experian with the appropriate mailing instructions at least ten (10) days prior to the requested shipment date.

---

**ALL CLIENTS MUST COMPLETE THIS SECTION**

**8. Point of Sale Certification.** In compliance with Section 1785.14(a) of the California Civil Code, Client certifies to Experian that (i) Client ☐ *IS* ☒ *IS NOT* a retail seller, as defined in Section 1802.3 of the California Civil Code ("Retail Seller") and issues credit to consumers who appear in person on the basis of applications for credit submitted in person ("Point of Sale); (ii) if Client is a Retail Seller who issues Point of Sale credit, Client will instruct its employees and agents to inspect a photo identification of the consumer at the time an application is submitted in person; and (iii) it will only use the appropriate subscriber code number designated by Experian for accessing consumer reports for California Point of Sale credit transactions conducted by Retail Seller. Client shall notify Experian within 24 hours of any change in Client's status as a Retail Seller.

---

Experian Confidential

ConsumerServicesSchedule

CONFIDENTIAL

EXP006030
CFPB-EM-0061527

## EXPERIAN
## CONSUMER SERVICES SCHEDULE

This Schedule, together with the applicable pricing document(s) and the Agreement as amended herein constitutes the entire agreement between the parties with respect to the Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

| Experian Information Solutions, Inc. | | LEND TECH LOANS, INC. |
|---|---|---|
| | | Print or Type Full Legal Name of Client |
| By: _____ | By: | _____ |
| Signature (Duly Authorized Representative Only) | | Signature (Duly Authorized Representative Only) |
| Name: _____ | Name: | SEAN COWELL |
| Print | | Print |
| Title: _____ | Title: | OWNER |
| Schedule Effective Date: _____ | | |

10.22.12

Experian Confidential

ConsumerServicesSchedule

## EXPERIAN
## VANTAGESCORE SUPPLEMENT

This VantageScore Supplement ("Supplement") to the Consumer Services Schedule, the Prescreening Services Schedule, and/or the Coded Data Services Schedule (each, the "Schedule"), as applicable, supplements the Experian Standard Terms and Conditions, dated6/30/17("Agreement"), currently in place between Experian and Client identified below.

**Instructions**. The language set forth in this Supplement shall append the Consumer Services Schedule, the Prescreening Services Schedule, and/or the Coded Data Services Schedule, depending on the Service with which Client chooses to use the VantageScore. If Client chooses to use VantageScore in an online or account review environment, this Supplement shall append the Consumer Services Schedule. If Client chooses to use VantageScore in a prescreen environment, this Supplement shall append the Prescreening Services Schedule. If Client chooses to use VantageScore in (1) an online or account review environment; and (2) prescreen environment, this Supplement shall append both the Consumer Services Schedule and the Prescreening Services Schedule. If Client chooses to receive depersonalized VantageScores as part of the Client's output in conjunction with a coded data project, this Supplement shall append either (a) the Consumer Services Schedule and the Consumer Services Schedule Supplement, or (b) the Coded Data Services Schedule, whichever is applicable to Client's use of the VantageScores.

Client will request VantageScores only for Client's exclusive use. Client may store VantageScores solely for Client's own use in furtherance of Client's original purpose for obtaining the VantageScores. Client shall not use the VantageScores for model development or model calibration, except in compliance with the following conditions: (1) the VantageScores may only be used as an independent variable in custom models; (2) only the raw archived VantageScore and VantageScore segment identifier will be used in modeling (*i.e.* no other VantageScore information including, but not limited to, adverse action reasons, documentation, or scorecards will be used); and (3) Client's depersonalized analytics and/or depersonalized third party modeling analytics performed on behalf of Client, using VantageScores, will be kept confidential and not disclosed to any third party other than as expressly provided for below in subsections (ii), (iii), (iv), and/or (v) of this paragraph. Client shall not reverse engineer the VantageScore. All VantageScores provided hereunder will be held in strict confidence and may never be sold, licensed, copied, reused, disclosed, reproduced, revealed or made accessible, in whole or in part, to any person, except (i) to those employees of Client with a need to know and in the course of their employment; (ii) to those third party processing agents and other contractors of Client who have executed an agreement that limits the use of the VantageScores by the third party only to the use permitted to Client and contains the prohibitions set forth herein regarding model development, model calibration, reverse engineering and confidentiality; (iii) when accompanied by the corresponding reason codes, to the consumer who is the subject of the VantageScore; (iv) to government regulatory agencies; or (v) as required by law.

This Supplement, the applicable pricing document, the applicable Schedule(s), and if applicable, the Consumer Services Schedule Supplement, together with the Agreement as amended herein, constitute the entire agreement between the parties with respect to the VantageScores provided hereunder and supersede all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

LEND TECH LOANS, INC.
Print or Type Full Legal Name of Client

By: _____
Signature (Duly Authorized Representative Only)

Name: SEAN COWELL
_____
Print

Title: OWNER
_____

**Supplement Effective Date:** _____

CONFIDENTIAL
EXP006032
CFPB-EM-0061529

## EXPERIAN/FAIR, ISAAC
## CREDIT SCORING SERVICES AGREEMENT

This **Credit Scoring Services Agreement**, ("Agreement"), dated: _____JUNE_____ _30_, _2017_ between LEND TECH LOANS, INC. _____ ("Subscriber") and Experian Information Solutions, Inc. and Fair, Isaac Corporation (collectively "Experian/Fair, Isaac").

For good and valuable consideration and intending to be legally bound, Subscriber and Experian/Fair, Isaac hereby agree as follows:

### 1. General Provisions

**A. Subject of Agreement.** The subject of this Agreement is Subscriber's purchase of certain credit scoring services known as the "Experian/Fair, Isaac Model" from Experian/Fair, Isaac.

**B. Application.** This Agreement applies to all uses of the Experian/Fair, Isaac Model by Subscriber during the Term (as defined below).

**C. Meaning of Experian/Fair, Isaac Model.** For purposes of this Agreement, the term "Experian/Fair, Isaac Model" means application of a risk model developed by Experian and Fair, Isaac Corporation which employs a proprietary algorithm and which, when applied to credit information relating to individuals with whom Subscriber has a credit relationship or with whom Subscriber contemplates entering into a credit relationship will result in a numerical score; the purpose of the models being to rank said individuals in order of the risk of unsatisfactory payment.

**D. Term.** The term of this Agreement (the "Term") is the period consisting of the Initial Term and, if this Agreement is renewed, the Renewal Term(s), as follows:

(1) *Initial Term.* The "Initial Term" is the period beginning at 12:01 a.m. on the date written above and ending at 11:59 p.m. on the day before the first anniversary of that date.

(2) *Renewal Term(s).* Unless one or both of the parties delivers written notice of such party's (parties') intent not to renew no later than thirty (30) days before the end of the Initial Term, this Agreement will renew automatically and without further action by either party for an additional one-year period (a "Renewal Term"). Thereafter, this Agreement will continue to renew automatically unless and until either party delivers nonrenewal notice no later than thirty (30) days before the end of a Renewal Term. This Agreement will terminate without further action by either of the parties in the event Subscriber discontinues use of the Experian/Fair, Isaac Model.

### 2. Experian/Fair, Isaac Model

**A. Generally.** Upon request by Subscriber during the Term, Experian/Fair, Isaac will provide Subscriber with the Experian/Fair, Isaac Model.

**B. Time of Performance.** Experian/Fair, Isaac will use commercially reasonable efforts to provide the Experian/Fair Isaac Model as expeditiously as possible and in a timely manner; *provided, however*, Experian/Fair, Isaac will have no liability to Subscriber hereunder for delays in providing such Experian/Fair, Isaac Model.

**C. Warranty.** Experian/Fair, Isaac warrant that the Experian/Fair, Isaac Model is empirically derived and demonstrably and statistically sound and that to the extent the population to which the Experian/Fair, Isaac Model is applied is similar to the population sample on which the Experian/Fair, Isaac Model was developed, the Experian/Fair, Isaac Model score may be relied upon by Subscriber to rank consumers in the order of the risk of unsatisfactory payment such consumers might present to Subscriber. Experian/Fair, Isaac further warrants that so long as it provides the Experian/Fair, Isaac Model, it will comply with regulations promulgated from time to time pursuant to the Equal Credit Opportunity Act, 15 USC Section 1691 *et seq.* THE FOREGOING WARRANTIES ARE THE ONLY WARRANTIES EXPERIAN/FAIR, ISAAC HAVE GIVEN SUBSCRIBER WITH RESPECT TO THE EXPERIAN/FAIR ISAAC MODEL AND SUCH WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, EXPERIAN/FAIR, ISAAC MIGHT HAVE GIVEN SUBSCRIBER WITH RESPECT THERETO, INCLUDING, FOR EXAMPLE, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Subscriber's rights under the foregoing Warranty are expressly conditioned upon Subscriber's periodic revalidation of the Experian/Fair, Isaac Model in compliance with the requirements of Regulation B as it may be amended from time to time (12 CFR Section 202 *et seq.*).

### 3. Fees

**A. Generally.** In consideration of Experian/Fair, Isaac's performance of the Experian/Fair, Isaac Model, Subscriber will pay Experian/Fair, Isaac fees (the "Fees") as agreed upon in writing by Subscriber and Experian/Fair, Isaac from time to time.

**B. Taxes.** Subscriber will be solely responsible for all Federal, state, and local taxes levied or assessed in connection with Experian/Fair, Isaac's performance of the Experian/Fair, Isaac Model, other than income taxes assessed with respect to Experian/Fair, Isaac's net income, for which income taxes Experian/Fair, Isaac will be solely responsible.

**C. Method of Payment.** Periodically during the Term, Experian/Fair, Isaac will deliver to Subscriber invoices

CONFIDENTIAL                                                                                    EXP006033
                                                                                           CFPB-EM-0061530

reflecting Fees (including taxes) for which Subscriber is responsible hereunder. Subscriber will pay Experian/Fair, Isaac the amounts indicated on such invoices within thirty (30) days after the invoice date. Subscriber's obligation to pay Fees shall be absolute and unconditional and shall not be affected by any circumstance, including, without limitation, set off, counterclaim, recoupment, defense (other than the defense of payment itself) or other right Subscriber may have or allege to have against Experian/Fair, Isaac for any reason whatsoever. If Subscriber does not pay any undisputed portion of invoiced Fees within the thirty (30) day period described above, then Subscriber will also pay interest on the unpaid amount at the rate of one and one-half percent (1.5%) per month or the highest rate permitted by law, whichever is less.

## 4. Intellectual Property

**A. No License.** Nothing contained in this Agreement shall be deemed to grant Subscriber any license, sublicense, copyright interest, proprietary rights, or other claim against or interest in any computer programs utilized by Experian/Fair, Isaac or any third party involved in the delivery of the Experian/Fair, Isaac Model.

**B. Subscriber Use Limitations.** By providing the Experian/Fair, Isaac Model to Subscriber pursuant to this Agreement, Experian/Fair, Isaac grants to Subscriber a limited license to use information contained in reports generated by the Experian/Fair, Isaac Model solely in its own business with no right to sublicense or otherwise sell or distribute said information to third parties.

**C. Proprietary Designations.** Neither party will use, or permit their respective employees, agents and subcontractors to use, the trademarks, service marks, logos, names, or any other proprietary designations of the other party, the other party's affiliates or any third party involved in the provision of the Experian/Fair, Isaac Model, whether registered or unregistered, without such party's prior written consent.

## 5. Compliance and Confidentiality

**A. Compliance with Law.** In performing this Agreement and in using information provided hereunder, both parties will comply with all Federal, state, and local statutes, regulations, and rules applicable to consumer credit information and nondiscrimination in the extension of credit from time to time in effect during the Term.

**B. Confidentiality.** Each party will maintain internal procedures to minimize the risk of unauthorized disclosure of information delivered hereunder. Both parties will take reasonable precautions to assure that such information will be held in strict confidence and disclosed only to those of their respective employees whose duties reasonably relate to the legitimate business purposes for which the information is requested or used and to no other person. Without limiting the generality of the foregoing, each party will take suitable precautions to prevent loss, compromise, or misuse of any tapes or other media containing

consumer credit information while in the possession of either party and while in transport between the parties.

**C. Proprietary Criteria.** Under no circumstances will Subscriber attempt in any manner, directly or indirectly, to discover or reverse engineer any confidential and proprietary criteria developed or used by Experian/Fair, Isaac in performing the Experian/Fair Isaac Model.

**D. Consumer Disclosure.** Notwithstanding any contrary provision of this Agreement, Subscriber may disclose the scores provided to Subscriber under this Agreement to credit applicants, when accompanied by the corresponding reason codes, in the context of bona fide lending transactions and decisions only.

## 6. Indemnification and Limitations

**A. Indemnification of Experian/Fair, Isaac.** Subscriber will indemnify, defend, and hold Experian/Fair, Isaac harmless from and against any and all liabilities, damages, losses, claims, costs, and expenses (including attorneys' fees) arising out of or resulting from any nonperformance by Subscriber of any obligations to be performed by Subscriber under this Agreement, *provided that* Experian/Fair, Isaac have given Subscriber prompt notice of, and the opportunity and the authority (but not the duty) to defend or settle any such claim.

**B. Indemnification of Subscriber.** Experian/Fair, Isaac will indemnify, defend, and hold Subscriber harmless from and against any and all liabilities, damages, losses, claims, costs, and expenses (including attorneys' fees) arising out of or resulting from any nonperformance by Experian/Fair, Isaac of any obligations to be performed by Experian/Fair, Isaac under this Agreement, *provided that* Subscriber has given Experian/Fair, Isaac prompt notice of, and the opportunity and the authority (but not the duty) to defend or settle any such claim.

**C. Limitation of Liability.** NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, UNDER NO CIRCUMSTANCES WILL EITHER PARTY HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER OR TO ANY END USER HEREUNDER FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES INCURRED BY THE OTHER PARTY, REGARDLESS OF HOW SUCH DAMAGES ARISE AND OF WHETHER OR NOT A PARTY WAS ADVISED SUCH DAMAGES MIGHT ARISE. IN NO EVENT SHALL THE AGGREGATE LIABILITY OF EXPERIAN/FAIR, ISAAC TO SUBSCRIBER EXCEED THE FEES PAID BY SUBSCRIBER PURSUANT TO SECTION 3.A DURING THE 12 MONTH PERIOD IMMEDIATELY PRECEDING THE DATE OF SUBSCRIBER'S CLAIM.

## 7. Miscellaneous

**A. Amendments.** This Agreement may be amended at any time, but only by written agreement which refers expressly to this Agreement and is signed by both parties.

1.01.09        2 of 3        FICOCreditScoringServicesAgreement

CONFIDENTIAL

EXP006034
CFPB-EM-0061531

**B. Termination and Cancellation.** This Agreement may be terminated by either party upon thirty (30) days prior written notice to the other party. This Agreement shall terminate automatically in the event the Standard Terms and Conditions Agreement or other similar agreement which is entered into between Experian and Subscriber is terminated or canceled for any reason. This Agreement may be canceled unilaterally by either party, but only if and when (1) the other party has breached a material obligation under this Agreement, (2) the party desiring to terminate has delivered to the breaching party a written demand that the breaching party cure the breach, (3) the breaching party has failed to cure such breach within thirty (30) days after receipt of the demand, and (4) the party desiring to terminate then delivers to the breaching party written notice of cancellation.

**C. Waivers.** Either party may at any time waive compliance by the other with any covenants or conditions contained in this Agreement, but only by written instrument signed by the party waiving such compliance. No such waiver, however, shall be deemed to constitute the waiver of any such covenant or condition in any other circumstance or the waiver of any other covenant or condition.

**D. Successors.** This Agreement shall be binding upon and inure to the benefit of the successors of each of the parties hereto, but shall not be assignable by Subscriber without the prior written consent of Experian/Fair, Isaac.

**E. Third Parties.** Subscriber acknowledges that the Experian/Fair, Isaac Model results from the joint efforts of Experian Information Solutions, Inc. and Fair, Isaac Corporation. Subscriber further acknowledges that Experian/Fair, Isaac have a proprietary interest in said Model and agrees that either Experian Information Solutions, Inc. or the Fair, Isaac Corporation may enforce those rights as required.

**F. Complete Agreement.** This Agreement sets forth the entire understanding of Subscriber and Experian/Fair, Isaac with respect to the subject matter hereof and supersedes all prior letters of intent, agreements, covenants, arrangements, communications, representations, or warranties, whether oral or written, by any officer, employee, or representative of either party relating thereto.

**IN WITNESS WHEREOF**, Subscriber and Experian/Fair, Isaac have signed and delivered this Agreement.

**Experian Information Solutions, Inc. and Fair, Isaac Corporation**

LEND TECH LOANS, INC.

Print or Type Full Legal Name of Company

By: _____
Signature (Duly Authorized Representative Only)

By: _____
Signature (Duly Authorized Representative Only)

Name: _____
Print

Name: SEAN COWELL
Print

Title: _____

Title: 0WNER

Address for Notice:
Experian Information Solutions, Inc.
475 Anton Boulevard
Costa Mesa, CA 92626
Attn: General Counsel

Physical Address for Notice:
3 WHATNEY, STE 100
IRVINE, CA 92618

Attn: SEAN COWELL

CONFIDENTIAL

EXP006035
CFPB-EM-0061532

# EXPERIAN

## CONSUMER SERVICES SCHEDULE SUPPLEMENT

This Consumer Services Schedule Supplement ("Supplement") to the Consumer Services Schedule ("Schedule") supplements the Experian Standard Terms and Conditions dated 6/30/17 ("Agreement"), currently in place between Experian and Client.

**Instructions**. For each of the Services listed below that Client wishes to use, check the box to the immediate left of that Service. Client must check the box and sign below, before gaining access to these Services.

☐ **Depersonalized (Coded) Data, Historical Validation.** Depersonalized Data means certain data about consumers possessed by Experian and retained for modeling and research purposes which has consumers' identifying information coded or masked. Upon Client's request, Experian will provide the Depersonalized Data that may also include a record identifier. Client certifies to Experian that Client has no known ability to, and will not seek to (a) link the Depersonalized Data or record identifier to the individual identity of the consumer, including but not limited to, name, address, social security number, or customer account number, whose credit data is contained in or used to prepare the Services, or (b) otherwise identify the individual identity of the consumer whose credit data is contained in or used to prepare the Depersonalized Data.

☐ **Employment Insight.** Client certifies to Experian that (a) it will ensure that prior to procurement or causing the procurement of a consumer report for employment purposes (an Employment Insight Report): (i) a clear and conspicuous disclosure has been made in writing to the consumer before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing the procurement of the report by the Client; (b) in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, Client shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under the FCRA. Client acknowledges receipt of a copy of the Summary of Consumer Rights prescribed by the Bureau of Consumer Financial Protection under Section 609(c)(1) of the FCRA and agrees to attach a copy of such Summary of Consumer Rights to each consumer report used for employment purposes as required by Section 604(b)(3)(A)(ii) of the FCRA.

☐ **OFAC Name Matching OR**
☐ **OFAC Search Solution.** The United States Treasury Department, Office of Foreign Asset Control ("OFAC") periodically makes available to Experian a file of specially designated nationals and blocked persons. Matching of names to the OFAC list is based on very limited identification information. A match does not necessarily indicate that the consumer about whom Client inquired is the same person referenced by OFAC. When using the OFAC Search Solution Services, Experian shall not be liable to Client or Client's third party vendors for any Client-provided files (e.g. new accounts, current accounts against the OFAC of Specially Designated Nationals List) and any other government suppression lists that Client has contracted to receive from outside third party vendors and that are provided to Experian to enable Experian to perform the Services. Also, accordingly, if Client chooses to use OFAC data, Client acknowledges that any adverse action taken by Client against a consumer must be taken based on Client's complete investigation of the consumer and not based solely on the OFAC information. Client shall from time to time identify which direct subcodes shall be used in connection with the OFAC product.

☐ **Healthcare Pre-assessment.** For Services obtained for healthcare authentication purposes or pre-assessment for charity program, government assistance or fee discounting, Client certifies that it will obtain the consumer's written instructions specifically authorizing the use of the consumer report for such purposes. Client further certifies that it will not use the consumer report, in whole or in part, for any eligibility determination and Client will not take any adverse action decision including but not limited to the denial of medical services. Client acknowledges that the use of the consumer report for the purposes described is not intended to satisfy Client's compliance with any legal requirement.

☐ **Child Support Certification.** Client certifies to Experian, with respect to any consumer reports requested from Experian under Section 604(a)(4) of the FCRA, that (1) The consumer report is needed for the purpose of establishing an individual's capacity to make child support payments or determining the appropriate level of such payments; (2) The paternity of the consumer for the child to which the obligation relates has been established or acknowledged by the consumer in accordance with state laws under which the obligation arises (if required by those laws); (3) Client has provided at least 10 days prior notice to the consumer whose report is requested, by certified or registered mail to the last known address of the consumer, that the report will be requested; and (4) The consumer report will be kept confidential, and will be used solely for the purpose described in (1) above, and will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose. *(Note: If this certification is applicable to your situation, check the box to the left and the signatory below must be the head of a state or local child support enforcement agency or a governmental official authorized by the head of such agency.)*

☐ **Income and Asset Models.** Income Insight$^{SM}$, Income Insight W2$^{SM}$ and Asset Insight $^{SM}$ (the "Income and Asset Models") use consumer credit to estimate a consumer's income and/or a consumer's assets. Client acknowledges that Experian does not obtain or verify consumer income data or consumer asset data. Client shall not use the Income and Asset Models, in whole or in part, as a basis for any adverse action involving the consumer. Client acknowledges that Client must determine if the Income and Asset Models are appropriate to meet compliance with any of Client's legal or regulatory requirements.

☐ **Commercial Transactions.** Client certifies that it will request and use Experian consumer credit information provided to Client solely in connection with (a) a current commercial (i.e. not for personal, family or household purposes) credit transaction involving the individual on whom such information is sought, and only if the individual has given Client written instructions for the provision of such information and the individual is (i) the sole proprietor of an unincorporated business, (ii) a general partner in a partnership, or (iii) a personal guarantor of the business' obligation (and has provided to Client a copy of such written guaranty); or (b) to the extent approved in writing by Experian, a current non-credit commercial transaction involving the individual on whom such information is sought, and only if the individual has given Client written instructions for the provision of such information, and Client has a financial risk to which Client is exposed if it enters into an agreement with the business. Every inquiry Client makes on an individual will appear on such individual's Experian consumer credit report and will include Client's business name and address.

☐ **Balance Transfer Index$^{SM}$.** Balance Transfer Index$^{SM}$ is not determinative that a consumer will initiate a balance transfer. Client shall not use the Balance Transfer Index$^{SM}$, in whole or in part, as a basis for any adverse action involving the consumer.

☐ **EIRC (Batch).** Client shall not use the EIRC, in whole or in part, as a basis for any adverse action involving the consumer. Client acknowledges that Client must determine if the EIRC is appropriate to meet compliance with any of Client's legal or regulatory requirements.

This Supplement (including any applicable Pricing Addenda) and the Schedule, together with the Agreement as amended herein constitute the entire agreement between the parties with respect to the Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

LEND TECH LOANS, INC.
Print or Type Full Legal Name of Client

By: _____
Signature (Duly Authorized Representative Only)

Name: SEAN COWELL
Print

Title: OWNER

Supplement Effective Date: _____

04.26.16                    EXPERIAN CONFIDENTIAL                    CSSSupplement

## EXPERIAN
## DEATH MASTER FILE ADDENDUM

This Death Master File Addendum ("Addendum") supplements the Experian Standard Terms and Conditions, dated ("Agreement"), currently in place between Experian and Client.

Client and Experian agree as follows:

1.  "Experian Services" as used herein shall mean services provided to Client by Experian Information Solutions, Inc.

2.  Client acknowledges many Experian Services contain information from the Death Master File as issued by the Social Security Administration ("DMF"). Pursuant to Section 203 of the Bipartisan Budget Act of 2013 and 15 C.F.R. § 1110.102, Client certifies that consistent with its applicable FCRA or GLB use of Experian Services, Client's use of deceased flags or other indicia within the Experian Services is restricted to legitimate fraud prevention or business purposes in compliance with applicable laws, rules regulations, or fiduciary duty, as such business purposes are interpreted under 15 C.F.R. § 1110.102(a)(1).

3.  Client further certifies it will not take any adverse action against any consumer without further investigation to verify the information from the deceased flags or other indicia within the Experian Services.

4.  Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement. In the event of a conflict between this Addendum, Schedules, Supplements, pricing document(s) and the Agreement, the terms and conditions of this Addendum shall prevail.

This Addendum, together with the applicable Schedules, Supplements, pricing document(s) and the Agreement as amended herein constitute the entire agreement between the parties with respect to the Experian Services provided hereunder and supersedes all prior proposals and agreements, both written and oral, and all other written and oral communications between the parties.

| Experian Information Solutions, Inc. | LEND TECH LOANS, INC. |
|---|---|
| | Print or Type Full Legal Name of Client |
| By: _____ | By: _____ |
| Signature (Duly Authorized Representative Only) | Signature (Duly Authorized Representative Only) |
| Name: _____ | Name: SEAN COWELL |
| Print | Print |
| Title: _____ | Title: OWNER |
| Addendum Effective Date: _____ | |

07.22.14

Experian Confidential

Death Master File Addendum