COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br>Plaintiff,<br>vs.<br>Chou Team Realty, LLC, et al.,<br>Defendants. | Case No: 8-20-cv-00043-SB-ADS<br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANT NESHEIWAT'S MOTIONS TO STRIKE** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. The declarations that Nesheiwat seeks to strike ........ 2

B. Other evidence Nesheiwat challenges ........ 4

ARGUMENT ........ 4

I. Nesheiwat's motions to strike should be denied because he failed to comply with the Local Rules ........ 4

II. Nesheiwat's motions to strike should be denied because he asserts hundreds of conclusory objections with no analysis ........ 5

III. The Court can properly consider the declarations and other evidence submitted in support of the Bureau's summary judgment motion ........ 7

A. The Court can properly consider the declarations and sworn testimony of witnesses who worked closely with Nesheiwat ........ 8

1. The witnesses have personal knowledge of the facts to which they testified ........ 9

2. The testimony of these witnesses is relevant and not speculative ........ 11

3. The testimony, declarations, and attachments should not be excluded on hearsay grounds ........ 12

4. The declarations and testimony do not contain improper opinion testimony ........ 15

B. The Court can properly consider the Rule 1006 declarations summarizing voluminous documents ........ 16

1. The declarations are proper summary evidence under Rule 1006 ........ 16

2. The declarations do not contain expert opinion ........ 19

C. The Court can properly consider Dr. Skanderson's expert report and declaration....................................................................20

D. The Court can properly consider other documents and evidence to which Nesheiwat objects ..........................................22

E. The Court can consider evidence of Nesheiwat's assertion of the Fifth Amendment privilege against self-incrimination............23

CONCLUSION ..........................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Amaretto Ranch Breedables v. Ozimals Inc.*,
907 F. Supp. 2d 1080 (N.D. Cal. 2012) ....................6

*Armstrong v. Hawaiian Airlines, Inc.*,
416 F. Supp. 3d 1030 (D. Haw. 2019) ....................10

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999 (9th Cir. 1990) ....................10

*Baxter v. Palmigiano*,
425 U.S. 308 (1976) ....................24

*Bayview Loan Servicing, LLC v. Shadow Springs Community Assoc.*,
425 F. Supp. 3d 1275 (D. Nev. 2019) ....................22

*Block v. City of Los Angeles*,
253 F.3d 410 (9th Cir. 2001) ....................7

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) ....................5

*Californians for Disability Rts., Inc. v. California Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ....................5

*Calmat Co. v. U.S. Dep't of Labor*,
364 F.3d 1117 (9th Cir. 2004) ....................23

*Chevron U.S.A. Inc. v. SSD & Assocs.*,
2006 WL 2053489 (N.D. Cal. 2006) ....................15

*Communities Actively Living Indep. & Free v. City of Los Angeles*,
2011 WL 4595993 (C.D. Cal. 2011) ....................5

*Doe v. Starbucks, Inc.*,
2009 WL 5183773 (C.D. Cal. 2009) ....................8

*Dukes v. Wal-Mart, Inc.*,
222 F.R.D. 189 (N.D. Cal. 2004) ....................7

*Edwards v. Toys "R" Us*,
527 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................10
*EEOC v. Mattress Firm*,
2016 WL 1169462 (D. Nev 2016) ...............................................................17
*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
2015 WL 12655556 (C.D. Cal. 2015)........................................................ 6, 13
*Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co.*,
2016 WL 7655740 (C.D. Cal. 2020)...............................................................20
*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003).........................................................................7
*FTC v. 1st Guar. Mortg. Corp.*,
2011 WL 1233207 (S.D. Fla. 2011)................................................................21
*FTC v. Ewing*,
2014 WL 5489210 (D. Nev. 2014) ........................................................ 18, 19
*FTC v. Kutzner*,
2017 WL 4685286 (C.D. Cal. 2017)........................................................ 5, 11
*FTC v. Pioneer Enters., Inc.*,
1992 WL 372350 (D. Nev. 1992) ...................................................................20
*FTC v. Stefanchik*,
2007 WL 1058579 (W.D. Wash. 2007) ...........................................................23
*FTC v.Elegant Solutions*,
2020 WL 4390381 (C.D. Cal. 2020)........................................................ 19, 20
*Gaub v. Prof'l Hosp. Supply, Inc.*,
845 F. Supp. 2d 1118 (D. Id. 2012) ..................................................................7
*Goldberg v. United States*,
789 F.2d. 1341 (9th Cir. 1986).........................................................................20
*Griffin v. California*,
380 U.S. 609 (1965) .........................................................................................23

*Guilfoyle v. Dollar Tree Stores, Inc.*,
2014 WL 66740 (E.D. Cal. 2014) ....................................................................6
*Herring Networks, Inc. v. Maddow*,
2021 WL 409724 (S.D. Cal. 2021) ..................................................................15
*Irigaray Dairy v. Dairy Employees Union Local No. 17*,
153 F. Supp. 3d 1217 (E.D. Cal. 2015)..........................................................22
*Izett v. Crown Asset Mgmt., LLC*,
2019 WL 4845575 (N.D. Cal. 2019)................................................................22
*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
828 F.3d 1098 (9th Cir. 2016).........................................................................12
*Johnson v. Cate*,
2015 WL 5321784 (E.D. Cal. 2015) ...............................................................22
*Lopez v. Liberty Mut. Ins. Co.*,
2019 WL 4605706 (C.D. Cal. 2019)..................................................................4
*Los Angeles Times Commc'ns, LLC v. Dep't of Army*,
442 F. Supp. 2d 880 (C.D. Cal. 2006) ..............................................................9
*Nevada Dep't of Corr. v. Greene*,
648 F.3d 1014 (9th Cir. 2011).........................................................................15
*Neville v. Found. Constructors, Inc.*,
2019 WL 6894522 (C.D. Cal. 2019)................................................................20
*Parapluie, Inc. v. Mills*,
2012 WL 12887556 (C.D. Cal. 2012)..............................................................11
*Richter v. City of Des Moines*,
2012 WL 8671871 (W.D. Wash. 2012) ..............................................................6
*Sandoval v. Cnty. of San Diego*,
985 F.3d 657 (9th Cir. 2021)............................................................ 7, 10-11
*SEC v. Colello*,
139 F.3d 674 (9th Cir. 1998)...........................................................................23

*SEC v. Competitive Techs., Inc.*,
2006 WL 3346210 (D. Conn. 2006) ....................17
*Sunset Bay Assoc. v. Eureka Fed. Sav. & Loan Ass'n*,
944 F.2d 1503 (9th Cir. 1991) ....................13
*United States v. Corporations for Character, L.C.*,
116 F. Supp. 3d 1258 (D. Utah 2015) ....................23
*United States v. Rizk*,
660 F.3d 1125 (9th Cir. 2011) ....................17
*United States v. Lane*,
2013 WL 3716601 (D. Ariz. 2013) ....................23
*U.S. Wholesale Outlet & Distrib. v. Innovation Ventures, LLC*,
2019 WL 8504725 (C.D. Cal. 2019) ....................13

**Rules**

Fed. R. Civ. P. 56 .................... 7, 8, 12
Fed. R. Evid. 602 ....................21
Fed. R. Evid. 701 .................... 15, 16
Fed. R. Evid. 702 ....................20
Fed. R. Evid. 801 .................... 12, 13, 14
Fed. R. Evid. 803 .................... 14, 22
Fed. R. Evid. 807 ....................18
Fed. R. Evid. 902 ....................22
Fed. R. Evid. 1006 .................... *passim*

## INTRODUCTION

Defendant Jawad Nesheiwat is wasting this Court's time. He cannot marshal evidence showing disputed issues of fact, so he filled his summary judgment papers with hundreds of boilerplate evidentiary objections with no analysis or explanation and filed ten meritless motions to strike declarations supporting the Bureau of Consumer Financial Protection's ("Bureau") summary judgment motion. *See* ECF Nos. 202 to 211 (motions to strike); ECF No. 201 ("Statement of Genuine Disputes"). His motions should be denied and his objections summarily overruled.

*First*, Nesheiwat's filings all but ignore the Local Rules and can be denied on that basis. Nesheiwat failed to comply with Local Rule 7-3's conference of counsel requirement and the "motions to strike" peppered throughout his Statement of Genuine Disputes are not proper motions at all.

*Second*, Nesheiwat's filings contain hundreds of boilerplate evidentiary objections that merely recite the objection type—e.g., "601 and 602 (lack of foundation, competency, and personal knowledge)" and "802 (hearsay)"—without explanation. He expects the Court to comb through his filings and, armed with a bare conclusion, rule on hundreds of objections. These objections should be summarily overruled under this Court's standing order on summary judgment motions, which prohibits blanket objections like these, and under caselaw recognizing that such objections should be disregarded.

*Third*, even if Nesheiwat's objections are considered, those objections are meritless, and the Court may consider all the evidence submitted in support of the Bureau's summary judgment motion. With respect to the ten declarations Nesheiwat moves to strike, he primarily objects on what appear to be "hearsay" or "foundation" grounds. But four of the declarations contain facts based on the firsthand knowledge of witnesses who worked closely with Nesheiwat, and five of the declarations are appropriate summary declarations under Federal Rule of

Evidence 1006. Instead of considering this summary evidence, Nesheiwat would have this Court wade through thousands of lines of data and hundreds of complaints. Rule 1006 is meant to avoid that absurd result. Nesheiwat's motion to strike the declaration and accompanying expert report of Dr. David Skanderson simply repeats evidentiary objections without analysis. Nesheiwat's myriad other objections in the Statement of Genuine Disputes on hearsay, foundation, and other grounds similarly lack merit.

## BACKGROUND

### A. The declarations that Nesheiwat seeks to strike

Four of the declarations Nesheiwat seeks to strike are by witnesses who worked closely with him and have firsthand knowledge of his conduct and the broader debt-relief scheme. Defendants Robert Hoose and David Sklar were co-managers of the first of the SLDR Companies—Docu Prep Center—and were familiar with the four other SLDR Companies as limited partners and through Docu Prep Center's interactions with those businesses. *See* Plaintiff's Summary Judgment Exhibit ("SJ Ex.") No. 1 at ¶¶ 1-7, 17, 96; SJ Ex. 4 at ¶¶ 1, 8, 12, 59-62.[1] Their declarations describe their roles and responsibilities at Docu Prep Center: Sklar generally monitored the sales floor, while Hoose was in charge of training employees, but each covered the other's responsibilities as needed. SJ Ex. 1 at ¶ 21; SJ Ex. 4 at ¶ 16. The declarations describe their interactions with Nesheiwat, Nesheiwat's extensive participation in the management, operation, and sales activities of Docu Prep Center, his oversight of the direct mail marketing by Docu Prep Center and the other SLDR Companies, and his central role in the scheme to illegally obtain prescreened lists for the SLDR Companies through Monster Loans' Experian account. *See generally* SJ Exs. 1, 4.

---

[1] The "SLDR Companies" are Docu Prep Center, Certified Doc Prep Services, Assure Direct Services, Direct Document Solutions, and Secure Preparation Services. *See* Plaintiff's Statement of Undisputed Facts ("UF") ¶¶ 4-21.

Erin Mason began as an office manager at Monster Loans in November 2014 and reported to Nesheiwat and another executive at the company. *See* SJ Ex. 3 at ¶¶ 2-3. In 2015, at Nesheiwat's direction, she helped him apply for the account with Experian and provided administrative assistance to Docu Prep Center. *See id.* at ¶¶ 4-13. During 2016, Mason helped co-manage one of the other SLDR Companies, and was generally responsible for human resources issues and paying the company's bills; in her declaration, she describes Nesheiwat's extensive assistance to that company, including his oversight of its direct mail marketing. *See id.* at ¶¶ 14-23.

Mikael van Loon was a limited partner in the SLDR Companies between 2015 and 2017, and for a six-month period in 2016 worked closely with the managers of the SLDR Companies to improve their reporting on their financial performance to the limited partners. *See* SJ Ex. 5 at ¶¶ 2-6. He was hired as Monster Loans' CFO in August 2016 and then as its CEO in December 2016, and thereafter oversaw the company's mortgage lending activities and its employees. *See id.* at ¶¶ 7-9. In his declaration, van Loon describes Nesheiwat's role at Monster Loans, Nesheiwat's extensive involvement in the SLDR Companies' marketing activities, and Nesheiwat's efforts to obtain prescreened lists for the SLDR Companies through Monster Loans' Experian account. *See id.* at ¶¶ 10-15.

Nesheiwat also moves to strike five declarations by Bureau staff that summarize voluminous records pursuant to Fed. R. Evid. 1006, such as records reflecting thousands of consumers' transactions and the SLDR Companies' fees, consumer complaints about the SLDR Companies, and records of orders of consumer reports from Experian. *See* ECF Nos. 202, 203, 207-209; SJ Exs. 25-28, 30. He also seeks to strike the declaration and expert report of Dr. David Skanderson, an expert on credit scoring models. ECF No. 210; SJ Ex. 17, 17a.

### B. Other evidence Nesheiwat challenges

In his Statement of Genuine Disputes, *see* ECF No. 201, Nesheiwat purports to move to strike dozens of documents, including: (1) portions of the deposition testimony of Defendants Docs Done Right, Inc., Eduardo Martinez, and Frank Anthony Sebreros, *see* SJ Exs. 6, 8, 9, and the pre-complaint investigational hearing testimony of Martinez, *see* SJ Ex. 11; (2) portions of the declaration of an Experian employee who supported Monster Loans' account, *see* SJ Ex. 18; (3) documents from the U.S. Department of Education's Federal Student Aid website for which the Bureau requested that the Court take judicial notice, *see* SJ Exs. 31, 47-50; (4) emails produced by Monster Loans, *see* SJ Exs. 52-63; and (5) Nesheiwat's own discovery responses and deposition testimony asserting the Fifth Amendment privilege against self-incrimination, *see* SJ Exs. 7, 13-14.

## ARGUMENT

### I. Nesheiwat's motions to strike should be denied because he failed to comply with the Local Rules.

As an initial matter, Nesheiwat's motions to strike should be denied because he failed to comply with the Local Rules.

With respect to his ten motions to strike declarations filed in support of the Bureau's motion for summary judgment, *see* ECF Nos. 202-211, Nesheiwat failed to comply with Local Rule 7-3's requirement that before filing a motion counsel must first "contact opposing counsel to discuss thoroughly … the substance of the contemplated motion and any potential resolution." Under this Court's standing order, the motions to strike should be "summarily denied." Standing Order for Civil Cases ¶ 6.a.i.; *see also Lopez v. Liberty Mut. Ins. Co.*, 2019 WL 4605706, at *2 (C.D. Cal. 2019) (denying request to strike expert reports and witness declarations where party failed to comply with Local Rule 7-3).

With respect to Nesheiwat's attempts to move to strike other evidence through brief statements in his Statement of Genuine Disputes, *see* ECF No. 201, Nesheiwat failed entirely to comply with the Local Rules. He did not actually file a motion (i.e., a notice of motion and supporting memorandum) and did not confer with Bureau counsel. *See* Local Rules 7-3 to 7-5.

## II. Nesheiwat's motions to strike should be denied because he asserts hundreds of conclusory objections with no analysis.

In a motion to strike evidence submitted in support of a motion for summary judgment, it is the movant's burden to state objections with specificity. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006). The Court's standing order for summary judgment provides that "[b]lanket or boilerplate objections will be overruled and disregarded." Order re Motions for Summary Judgment ¶ 5 (Oct. 27, 2020). Relying on a similar standing order, another court in this District declined to consider blanket objections to the FTC's evidence in a case involving deceptive conduct and unlawful advance fees. *See FTC v. Kutzner*, 2017 WL 4685286, at *3 (C.D. Cal. 2017). Other courts routinely summarily overrule blanket evidentiary objections to declarations. For example, in *Communities Actively Living Independent and Free v. City of Los Angeles*, the Court "summarily overrule[d] all of the City's objections" where the "City merely repeat[ed] the same categorical objections but provide[d] little to no explanation as to why the subject evidence is objectionable." 2011 WL 4595993, at *8 (C.D. Cal. 2011). And in *Californians for Disability Rights, Inc. v. California Department of Transportation*, the court "decline[d] the defendants' invitation to analyze objections that defendants did not themselves bother to analyze, and the objections [were] overruled on those grounds alone." 249 F.R.D. 334, 349–50 (N.D. Cal. 2008); *see also Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F.

Supp. 2d 1080, 1081 (N.D. Cal. 2012); *Richter v. City of Des Moines*, 2012 WL 8671871, at *7 (W.D. Wash. 2012).

Here, the ten motions to strike declarations violate these principles and can be rejected out of hand. Each asserts an identical foundation objection to the "Entire Declaration" that "no facts are provided to support how the declarant has any personal knowledge or the source of that knowledge" *E.g.*, ECF No. 204 at 3. Nesheiwat does not develop that argument and simply ignores the relevant paragraphs of each declaration that establish the foundation for the witnesses' personal knowledge or demonstrate that the witness is providing summary or expert testimony. *See infra* at pp. 9-11, 17, 21.

The motions to strike also contain hundreds of undeveloped objections to particular paragraphs based on a variety of grounds, such as the following:

> OBJECTIONS: FRCP Rule 56(c)(4) and FRE Rules 401 & 402 (relevance, vague & ambiguous and speculative); 601 and 602 (lack of foundation, competency, and personal knowledge); 802 (hearsay); 803 (hearsay within hearsay); 701 (improper & irrelevant opinion).

ECF No. 204 at p. 4. This same list (with minor variations) appears dozens of times in Nesheiwat's motions to strike the declarations of Hoose, Sklar, Mason, and van Loon. *See* ECF Nos. 204, 205, 206, 211. Thus, as an example, he makes 36 identical objections to paragraphs in Hoose's declaration through the repeated phrase "802 (hearsay); 803 (hearsay within hearsay)." ECF No. 204. Nesheiwat never explains how these objections apply, and courts regularly overrule similarly conclusory objections based on these grounds. *See Guilfoyle v. Dollar Tree Stores, Inc.*, 2014 WL 66740, at *6 n.2 (E.D. Cal. 2014) (overruling "conclusory and unsupported evidentiary objections" that party's testimony "lacks foundations, is unfairly prejudicial, confusing and misleading, and constitutes inadmissible opinion"); *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, 2015 WL 12655556, at *6 (C.D. Cal. 2015) (summarily overruling hearsay objections that were "merely recitations of the objection

type … without any accompanying analysis"). Further, many of Nesheiwat's objections—i.e., that evidence is irrelevant, speculative, a legal conclusion, or vague and ambiguous—are duplicative of the summary judgment standard and need not be considered. *See Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021); *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1128 (D. Id. 2012).

Similarly, Nesheiwat's motions to strike the five summary declarations by Bureau staff contain identical lists of conclusory objections that do not analyze the declarations. *See* ECF Nos. 202, 203, 207-209. Nesheiwat repeats most of those conclusory objections in his motion to strike the declaration and report of the Bureau's expert. *See* ECF No. 210.

The "motions to strike" in Nesheiwat's Statement of Genuine Disputes are even worse. *See* ECF No. 201. He asserts hundreds of boilerplate evidentiary objections without ever analyzing those objections.

In sum, Nesheiwat's "grossly overbroad approach is more suggestive of an intent to harass than a good faith effort to address genuine objections." *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 198 (N.D. Cal. 2004). The Court should summarily deny Nesheiwat's motions to strike and overrule his evidentiary objections.

## III. The Court can properly consider the declarations and other evidence submitted in support of the Bureau's summary judgment motion.

At the summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Courts therefore "do not focus on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Declarations submitted in support of summary judgment suffice if they

are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Though the Court can summarily overrule Nesheiwat's objections, if the Court is inclined to wade through those objections, it will find them meritless. Because it would be unduly burdensome for the Bureau (and the Court) to analyze each objection individually, the Bureau focuses on why the Court can properly consider the evidence it submitted in support of its summary judgment motion, addressing the principal flaws in Nesheiwat's objections along the way. *Cf. Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. 2009) (where parties assert blanket or boilerplate objections "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised").

**A. The Court can properly consider the declarations and sworn testimony of witnesses who worked closely with Nesheiwat.**

In support of its motion for summary judgment, the Bureau submitted declarations and deposition transcript excerpts of several witnesses who worked closely with Nesheiwat. The declarations were by (1) Defendants Robert Hoose and David Sklar, who were co-managers of the first of the SLDR Companies—Docu Prep Center—and who interacted extensively with Nesheiwat; (2) Erin Mason, who worked at Monster Loans starting in November 2014 and who, at Nesheiwat's direction, helped him apply for the account with Experian; and (3) Mikael van Loon, a limited partner in the SLDR Companies between 2015 and 2017 and Monster Loans' CEO beginning in December 2016. The Bureau also submitted excerpts of oral testimony of Defendants Docs Done Right, Inc., Eduardo Martinez, and Frank Anthony Sebreros. *See* SJ Exs. 6, 8, 9, 11. Martinez managed Defendant Docs Done Right, which provided support services to the SLDR Companies, while Sebreros was initially a sales employee

at Docu Prep Center and, in August 2016, became manager of Defendant Assure Direct Services. All this evidence is proper.

**1. The witnesses have personal knowledge of the facts to which they testified.**

Nesheiwat claims that witnesses who worked closely with him lack personal knowledge to testify to the facts in their declarations or their testimony. These objections are meritless.

Hoose, Sklar, Mason, and van Loon all swear, under penalty of perjury, that they have personal knowledge of the facts in their declarations. SJ Ex. 1 ¶ 1; SJ Ex. 3 ¶ 1; SJ Ex. 4 ¶ 1; SJ Ex. 5 ¶ 1. More importantly, these witnesses primarily describe what they did or what they observed while working for the relevant companies and interacting with Nesheiwat. There can be no question that these witnesses have personal knowledge to testify to their own firsthand observations. *E.g.*, *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("first-hand observation is the most common form of personal knowledge").

For example, Hoose and Sklar's knowledge of Nesheiwat's conduct is based on their direct experience working with him, which is detailed in their respective declarations. *See generally* SJ Exs. 1, 4. Likewise, Martinez and Sebreros testified to firsthand observations and regarding their personal experiences managing or working for the relevant companies. Martinez managed Docs Done Right, which provided services to consumers on behalf of the SLDR Companies and handled consumers complaints and refund requests. *See* SJ Ex. 8 at 14, 59-61; SJ Ex. 9 at 52-55. In his roles in sales and as a manager, Sebreros obtained firsthand knowledge of the activities he testified to, including Nesheiwat's role in overseeing Docu Prep Center's direct mail marketing. *See* SJ Ex. 6 at pp. 13-14, 28-29, 31. Sebreros also participated in the scheme to obtain Experian prescreened lists through the purported mortgage

company Lend Tech Loans, Inc., and received instructions from Nesheiwat and other limited partners in the SLDR Companies regarding Lend Tech. *See id.* at pp. 22-24, 144-145.

To the extent these witnesses describe broader practices of the relevant companies for which their personal knowledge is not self-evident, the declarations or testimony include facts showing that "[e]ach of the declarants occupies a position … from which personal knowledge of the facts to which he [or she] testifies can be inferred." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007); *see also Armstrong v. Hawaiian Airlines, Inc.*, 416 F. Supp. 3d 1030, 1039 (D. Haw. 2019). Hoose, Sklar, Mason, van Loon, Martinez, and Sebreros all describe their positions and roles at the SLDR Companies and/or Monster Loans, the business practices of the companies with which they were associated, and their interactions with Nesheiwat. The declarations and testimony therefore support an inference that each witness has personal knowledge of the facts. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (declarants' personal knowledge and competence to testify were "reasonably inferred from their positions and the nature of their participation in the matters to which they swore").[2]

Nesheiwat fails to present any evidence countering the natural inference that these witnesses have personal knowledge and are competent to testify as to the matters addressed in their declarations. Nesheiwat's undeveloped foundation objections are thus "no basis for excluding the evidence" submitted by the Bureau. *Sandoval*, 985 F.3d at 666-67 (cursory objections for

[2] Nesheiwat also objects to the declaration of Experian employee April Glaze. *See* ECF No. 201 at pp. 19-24, 36-38. In her declaration, Glaze describes her direct interactions with Nesheiwat—of which she clearly has personal knowledge—and her personal knowledge can also be inferred based on her role supporting Monster Loans' account. *See* SJ Ex. 18 at ¶¶ 2-4, 10-11, 17.

"foundation" were insufficient); *see also Parapluie, Inc. v. Mills*, 2012 WL 12887556, at *1 n.6 (C.D. Cal. 2012) (rejecting foundation objections "asserted to each of defendant's 55 facts" where party failed to "state why the evidence lacks foundation").

**2. The testimony of these witnesses is relevant and not speculative.**

Nesheiwat also challenges the testimony of witnesses he worked closely with, including essentially all evidence of his own conduct and knowledge, on relevance and other related grounds. Though the Court need not consider these objections—it can surely determine whether the evidence is relevant—the evidence Nesheiwat seeks to strike is plainly relevant because it goes to whether Nesheiwat engaged in the illegal conduct at the heart of the Bureau's claims. *See Kutzner*, 2017 WL 4685286, at *4.

Nor is there any basis for Nesheiwat's speculation and vagueness objections. For example, Nesheiwat makes speculation objections to evidence that he signed Monster Loans' application to Experian. ECF No. 201 at pp. 20-21 (UF ¶ 111). That evidence includes the sworn declaration of former Monster Loans employee Erin Mason, who helped Nesheiwat prepare the application, described the application process in detail, and swore based on her personal knowledge that he signed the application. *See* SJ Ex. 3 at ¶¶ 4-8. Nesheiwat does not actually dispute that he signed the application and asserted the Fifth Amendment when asked if he did so. *See* SJ Ex. 7 at 71:11-14.

Nesheiwat also makes speculation objections to portions of declarations describing his role in overseeing purchases of prescreened lists for the SLDR Companies through Monster Loans' Experian account, ECF No. 201 at pp. 26-27 (UF ¶¶ 127, 128). But again, those declarations were made by witnesses who worked closely with Nesheiwat and are testifying to their firsthand observations

of his conduct. *See* Ex. 1 at ¶¶ 41-47, 49, 51, 103; SJ Ex. 4 at ¶¶ 30-36, 67; SJ Ex. 5 at ¶¶ 11-15.

**3. The testimony, declarations, and attachments should not be excluded on hearsay grounds.**

Nesheiwat also makes hundreds of "hearsay" objections to evidence that is clearly not hearsay or that obviously meets hearsay exceptions. Because Nesheiwat does not analyze the principles governing hearsay, the Bureau briefly reviews them here. Hearsay is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). At summary judgment, "a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Thus, the court may consider facts set forth in declarations or deposition testimony that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4).

Non-Statements. Much of the evidence to which Nesheiwat objects does not involve "statements"—i.e., oral or written assertions. *See* Fed. R. Evid. 801(a). For example, Nesheiwat objects on hearsay grounds to van Loon's sworn statement that: "Between 2015 and around April 2017, Nesheiwat was Monster Loans' COO and oversaw its sale and marketing." ECF No. 205 at p. 4 (objecting to SJ Ex. 5 at ¶ 11). Similarly, Nesheiwat objects to Hoose's statements that "Sklar and I began managing Docu Prep Center together in February 2015," ECF No. 204 at p. 4 (objecting to SJ Ex. 1 at ¶ 17), and that "[t]he limited partners of Docu Prep Center at the time Docu Prep Center was incorporated in early 2015 were Chou, Nesheiwat, Cowell, Lawson, Sklar, Tuan Anh 'Kevin' Nguyen and me" *id.* at p. 15 (objecting to SJ Ex. 1 at ¶ 80). The basis for Nesheiwat's claim that this evidence is hearsay is anyone's guess. Van Loon and Hoose testified to those facts based on their own personal knowledge

and they do not reference a statement by another person. This is not hearsay. *See* Fed. R. Evid. 801(c); *Elohim EPF USA*, 2015 WL 12655556, at *5.

Opposing Party Statements. Nesheiwat objects to evidence containing his own oral and written statements, which are admissible as statements by a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). For example, Nesheiwat repeatedly objects to portions of declarations describing his statements and his instructions, such as Sklar's explanation that "Nesheiwat regularly instructed Hoose and me on how to manage Docu Prep Center's operations and its employees." ECF No. 211 at p. 6. Nesheiwat also objects to emails he sent, such as the September 2016 email in which Nesheiwat discussed "work[ing] with Experian … to continue ordering data for [the] student loan shops." SJ Ex. 5a. That email is an opposing party statement and therefore not hearsay. *See U.S. Wholesale Outlet & Distrib. v. Innovation Ventures, LLC*, 2019 WL 8504725, at *2 (C.D. Cal. 2019). Other emails Nesheiwat sent and to which he objected are likewise admissible as statements of a party opponent. *See* SJ Exs. 1e, 1g, 3a, 4b to 4e, 52-53, 55-63 (other exhibits containing emails by Nesheiwat). Likewise, emails that Nesheiwat forwarded or incorporated into an email chain are opposing party statements under Fed. R. Evid. 801(d)(2)(B) because Nesheiwat adopted them. *See* SJ Exs. 1e, 1g, 3a, 4c, 4e, 52, 61; *see also U.S. Wholesale Outlet & Distrib.*, 2019 WL 8504725, at *2.

Further, Nesheiwat's subordinate Bilal Abdelfattah a/k/a Bill Abdel sent emails with Experian prescreened lists to the SLDR Companies' mailing house. *See* SJ Exs. 1f, 54. Those emails are also admissible as opposing party statements under Fed. R. Evid. 801(d)(2)(C) and (D) because Nesheiwat authorized Abdel to email those lists to the mailing house. *See* SJ Ex. 1 at ¶¶ 31, 43-44; SJ Ex. 4 at ¶¶ 27, 33; *cf. Sunset Bay Assoc. v. Eureka Fed. Sav. & Loan Ass'n*, 944 F.2d 1503, 1519 (9th Cir. 1991) (where superior directed employee

to further fraudulent scheme, statements by employee relating to scheme were admissible against superior under Rule 801(d)(2)(D)).

Business records. The business records hearsay exception applies to documents (1) "made at or near the time" of the events described, "by—or from information transmitted by—a person with knowledge" of those events, (2) "kept in the course of a regularly conducted activity of a business," and (3) made as a "regular practice," (4) as "shown by the testimony of a custodian or other qualified witness." Fed. R. Evid. 803(6). Here, Nesheiwat ignores evidence that many documents in support of the Bureau's summary judgment motion are business records and does not present evidence challenging the applicability of that exception. For example, van Loon's declaration establishes that emails, Docu Prep Center employee manuals containing sales scripts, and several documents concerning the business activities of Monster Loans and the SLDR Companies are business records. *See* SJ Ex. 5 at ¶¶ 17-40 (establishing that SJ Exs. 1f-1h, 1j, 4b-4f, 4i-4k, 5a, 6b, 6c, 13e, 13h, 54-57, and 59-62 are business records). The declarations of Hoose and Mason also show that certain exhibits to their declarations, including sales scripts, are business records. *See* SJ Ex. 1 at ¶¶ 109-114 (showing that SJ Exs. 1l, 1m, and 1n are business records); SJ Ex. 3 at ¶¶ 26-28, 32 (showing that SJ Exs. 3d and 3e are business records).[3]

"Based on Hearsay" Objections. Nesheiwat's Statement of Genuine Disputes makes dozens of objections that portions of declarations or deposition testimony are "based on hearsay (i.e., documents)." *See*, *e.g.*, ECF No. 201 at pp. 9, 25, 33-34 (UF ¶¶ 55, 126, 136). These objections appear to assume that the witnesses lacked personal knowledge and therefore must have relied on

[3] In addition, the declaration of Alexander Klarow shows that two documents produced by the SLDR's Companies' mailing house are business records. *See* SJ Ex. 22 (declaration); SJ Exs. 64-65 (documents); *see also* SJ Ex. 29 at ¶ 59.

documents. But, as explained above, these witnesses have personal knowledge of the facts to which they testified. And hearsay objections based on "[u]nfounded speculation as to an affiant's alleged lack of personal knowledge of the events in his [or her] affidavit do not render [the affidavit] inadmissible." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011); *see also supra* at pp. 9-11 (discussing Nesheiwat's meritless foundation objections).

**4. The declarations and testimony do not contain improper opinion testimony.**

Nesheiwat's motions to strike and his Statement of Genuine Disputes assert hundreds of objections that evidence is based on improper opinion under Fed. R. Evid. 701. *See, e.g.*, ECF No. 204 (dozens of objections based on "701 (improper & irrelevant opinion)"). Like Nesheiwat's other objections, these objections lack analysis and their purported basis is often unclear. Nesheiwat fails to explain why the evidence involves an opinion (rather than a fact) and, if it is an opinion, why the opinion is improper under Rule 701. *Cf. Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *3 (S.D. Cal. 2021) (overruling boilerplate improper opinion objections).

Most of the evidence to which Nesheiwat objects involves statements of fact, rather than opinion. For example, the statements in the declarations of Hoose, Sklar, Mason, and van Loon regarding Nesheiwat's position and conduct are facts based on their personal knowledge, not matters of opinion. *See generally* SJ Exs. 1, 3, 4, 5; *cf. Chevron U.S.A. Inc. v. SSD & Assocs.*, 2006 WL 2053489, at *5 (N.D. Cal. 2006) (bookkeeper's statement about the common practice of accountant she worked with "was a statement of a fact that she observed personally" and "not an opinion").

Further, to the extent any testimony to which the Bureau cites involves lay opinion, that evidence complies with Rule 701, which provides that a lay person may offer testimony in the form of an opinion if it is "(a) rationally

based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. For example, Defendant Martinez testified that the SLDR Companies' direct mail solicitations were "exaggerated" and did not accurately reflect the SLDR Companies' services. *See* UF ¶ 81 (citing SJ Ex. 9 at 229-230). That testimony is based on Martinez's firsthand knowledge of the SLDR Companies' services as the manager of their service provider Docs Done Right. And that testimony is helpful to determining whether the solicitations were deceptive because it is based on his direct perception of whether the solicitations accurately characterized the SLDR Companies' services. Nesheiwat ignores all of this, does not address the elements of Rule 701 for Martinez's testimony or for any other evidence he challenges, and all his improper opinion objections should be rejected.

### B. The Court can properly consider the Rule 1006 declarations summarizing voluminous documents.

Nesheiwat filed five virtually identical motions to strike declarations by Bureau staff that summarize voluminous records pursuant to Fed. R. Evid. 1006. *See* ECF Nos. 202, 203, 207-209; SJ Exs. 25, 26, 27, 28, 30. Nesheiwat's motions ignore the requirements of Rule 1006 and do not challenge the summaries' accuracy. Instead, the motions assert conclusory and inapplicable objections that the declarations lack foundation, are based on hearsay, and do not satisfy the requirements for expert opinion testimony. These declarations are admissible under Rule 1006, and Nesheiwat's objections are meritless.

#### 1. The declarations are proper summary evidence under Rule 1006.

Rule 1006 provides that "[t]he contents of voluminous writings … which cannot conveniently be examined in court may be presented in the form of a

chart, summary, or calculation." Fed. R. Evid 1006. The rule permits "the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury," *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (cleaned up). The witness is not required to have personal knowledge of the facts and events underlying the documents. *See EEOC v. Mattress Firm*, 2016 WL 1169462, at *2 n.3 (D. Nev 2016) (where paralegal provided summary of spreadsheets she reviewed, her "lack of personal knowledge as to the facts underlying the data represented in the spreadsheets [was] irrelevant"); *SEC v. Competitive Techs., Inc.*, 2006 WL 3346210, at *2 (D. Conn. 2006) (denying motion to strike SEC summary declaration despite fact that SEC staff did not "have personal knowledge of the defendants' alleged activity").

Under Rule 1006, all that is required is "that the underlying materials upon which the summary is based (1) are admissible in evidence and (2) were made available to the opposing party for inspection." *Rizk*, 660 F.3d at 1130. Both requirements are met here.

First, the underlying documents were made available to Nesheiwat, a fact he does not dispute. *See* SJ Ex. 25 at ¶ 6; SJ Ex. 26 at ¶ 4; SJ Ex. 27 at ¶ 6; SJ Ex. 28 at ¶ 7; SJ Ex. 30 at ¶ 7. Nor does Nesheiwat dispute that the documents are so voluminous that they cannot be conveniently examined in court.

Second, the underlying documents would be admissible at trial. The declaration of the Bureau's forensic accountant Mansour Heidari provides calculations regarding the SLDR Companies' fees based on transaction records from two third-party payment processors and from Defendant Docs Done Right. SJ Ex. 25 at ¶¶ 5-6. The declarations by employees of those payment processors make clear that those transaction records satisfy the elements of the hearsay exception for business records. *See* SJ Exs. 23, 24; *see also* SJ Ex. 29 at ¶ 32. The Bureau also filed deposition testimony by Docs Done Right's Rule 30(b)(6)

corporate representative establishing that the records are business records. The SLDR Companies and Docs Done Right used a shared customer relationship management database to contemporaneously update their records regarding their interactions with consumers and fee transaction information, and the companies "trusted" the database on which these records were maintained. *See* SJ Ex. 8 at 97-99, 103-07, 109-114, 153-54, 207-08; *see also* SJ Ex. 4 at ¶ 48 (corroborating that records stored on the database qualify as business records).

The three declarations by Bureau paralegal Annaís Ramírez-Velázquez present (1) calculations regarding the number of consumer reports purchased from Experian based on order records produced by Experian, SJ Ex. 26; (2) a summary of notes reflecting consumer complaints about deceptive conduct by the SLDR Companies, SJ Ex. 27; and (3) a summary of a sample of forbearance requests produced by Docs Done Right, SJ Ex. 28. The Bureau filed a declaration by an Experian employee showing that the documents underlying the calculations in the first declaration are business records. *See* SJ Ex. 21; *see also* SJ Ex. 29 at ¶ 33. And the testimony of Docs Done Right's corporate representative shows that the consumer complaints and forbearance requests—which were produced from the same database discussed above—are business records.

The declaration of Bureau investigator Dani Schneider provides a summary of consumer complaints regarding deceptive conduct by the SLDR Companies that the Bureau obtained from the Federal Trade Commission's Consumer Sentinel complaint database. SJ Ex. 30. Courts regularly admit consumer complaints like these under the "residual" hearsay exception because they are supported by sufficient guarantees of trustworthiness and are the most probative evidence the Bureau can obtain through reasonable efforts. *See* Fed. R. Evid. 807. As in *FTC v. Ewing*, the consumer complaints here have circumstantial guarantees of trustworthiness because they "were made

independently by numerous unrelated consumers to different sources." 2014 WL 5489210, at *2 (D. Nev. 2014); *see* SJ Ex. 30 at ¶¶ 6, 10. It is proper to consider these complaints through a summary declaration under the residual hearsay exception given the burden of calling hundreds of consumers to testify, which "would not necessarily result in testimony that is any more trustworthy than the complaints themselves, particularly given that years have lapsed since some of the complaints." *Ewing*, 2014 WL 5489210, at *3.

Further, given Nesheiwat's authority over and participation in Docu Prep Center's operations, as well as his extensive participation in the other SLDR Companies' marketing, he was or should have been aware of the complaints summarized in Schneider's and Ramírez-Velázquez's declarations. *See* Pl.'s Mem. in Supp. of Mot. for Summ. Judg. Against Def. Nesheiwat ("MSJ Mem."), ECF No. 189-1, at p. 19; UF ¶¶ 38, 127-29, 263-89; *see also FTC v. Elegant Solutions*, 2020 WL 4390381, at *8 (C.D. Cal. 2020) (individual defendants "were or should have been aware of consumer complaints regarding misrepresentations" given "their degree of participation and control" over corporate defendants). Thus, those declarations are also admissible for the non-hearsay purpose of establishing that Nesheiwat knew about or recklessly disregarded the deceptive practices. *See infra* p. 23 (discussing evidence not introduced for the truth of the matter asserted).

**2. The declarations do not contain expert opinion.**

Nesheiwat's objections that the summary declarations do not satisfy the standards for expert testimony fail because the declarations do not contain expert testimony. All the declarations provide factual calculations and summaries of voluminous records and contain no specialized or scientific opinion. *See* SJ Exs. 25-28, 30.

Heidari's declaration regarding the SLDR Companies' fees and Ramírez-Velázquez's declaration regarding the number of consumer reports ordered

from Experian both present the results of straightforward calculations; their declarations are admissible under Rule 1006 and are not expert testimony. *See* SJ Exs. 25, 26; *Goldberg v. United States*, 789 F.2d. 1341, 1343 (9th Cir. 1986) (IRS agent's summary of voluminous tax records was permitted by Rule 1006 and not expert testimony); *Elegant Solutions*, 2020 WL 4390381, at *8 (overruling objection that declaration by FTC employee calculating defendants' fees was inadmissible expert testimony); *Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co.*, 2016 WL 7655740, at *5 n.8 (C.D. Cal. 2020) (declaration summarizing "hundreds of pages of purchase orders, invoice, and other documents" was admissible).

Similarly, the two declarations summarizing consumer complaints required no scientific or specialized knowledge and are proper under Rule 1006. *See* SJ Exs. 27, 30; *FTC v. Pioneer Enters., Inc.*, 1992 WL 372350, at *2-3 (D. Nev. 1992) (permitting FTC investigator to introduce summaries of consumers complaints pursuant to Rule 1006). And Ramírez-Velázquez's declaration summarizing a sample of forbearance requests (which involved identifying dates within each forbearance request) likewise required no special expertise. *See* SJ Ex. 28.

**C. The Court can properly consider Dr. Skanderson's expert report and declaration.**

Nesheiwat also moves to strike the declaration and expert report of Dr. David Skanderson, but merely asserts objections that fail to analyze the substance of Dr. Skanderson's report. *See* ECF No. 210; *cf. Neville v. Found. Constructors, Inc.*, 2019 WL 6894522, at *4 (C.D. Cal. 2019) (declining to conduct an "analysis of the admissibility of expert opinions based on boilerplate objections").

There can be no serious dispute that Dr. Skanderson is qualified to offer the opinions summarized in his expert report and that the testimony reflected in

his expert report would be admissible at trial under Fed. R. Evid. 702. He is an economist with extensive experience in consumer credit scoring models and consumer credit data analysis. *See* SJ Ex. 17a at ¶¶ 1-4 & App'x 1. His specialized knowledge of credit scoring models will help the trier of fact evaluate the Bureau's claim that the SLDR Companies' representations that consolidating federal student loans would improve consumers' credit scores were deceptive. *See* MSJ Mem. at 9-10, 16; *see also FTC v. 1st Guar. Mortg. Corp.*, 2011 WL 1233207, at *6, 10, 13 (S.D. Fla. 2011) (relying on declaration by credit scoring expert in granting summary judgment on deception claims involving misrepresentations about improved credit scores). Dr. Skanderson applied his specialized knowledge of credit scores and credit scoring models to reach his opinion that the SLDR Companies' broad statements about loan consolidation improving consumers' credit scores "cannot be supported and likely would be false for many consumers," *See* SJ Ex. 17a at ¶ 12, and explained the basis for and evidence supporting his opinions at length, *see id.* ¶¶ 18-52.

Nesheiwat also objects to Dr. Skanderson's report and declaration on "foundation" grounds, arguing that Dr. Skanderson lacks personal knowledge as to the contents of his declaration or report. These objections are nonsensical. Of course Dr. Skanderson has personal knowledge regarding the contents of his declaration—the statements Nesheiwat challenges merely state that Dr. Skanderson was retained to perform the analysis in his expert report and that he prepared the expert report attached to his declaration. Regarding Nesheiwat's assertion that Dr. Skanderson does not have personal knowledge of the facts in his expert report, an expert offering opinion testimony under Rule 703 need not have personal knowledge. *See* Fed. R. Evid. 602.

**D. The Court can properly consider other documents and evidence to which Nesheiwat objects.**

In the interest of completeness, the Bureau addresses several other objections that do not fit neatly in the discussion above. These objections suffer from the same defects as the others—Nesheiwat makes naked objections without analysis—but the Bureau nevertheless endeavors to respond.

Public records. Nesheiwat objects in his Statement of Genuine Disputes on foundation and other grounds to exhibits containing printouts from the U.S. Department of Education's Federal Student Aid website. *See* SJ Exs. 47-51. But these exhibits are self-authenticating under Fed. R. Evid. 902(5) as records from a government website, *see Johnson v. Cate*, 2015 WL 5321784, at *10 (E.D. Cal. 2015), and fall within the public records exception to the hearsay rule, *see* Fed. R. Evid. 803(8); *Bayview Loan Servicing, LLC v. Shadow Springs Community Assoc.*, 425 F. Supp. 3d 1275, 1284 (D. Nev. 2019) (statement on government website admissible under public records exception); *see also* SJ Ex. 29 at ¶¶ 53-57. Nesheiwat also does not oppose the Bureau's request for judicial notice of those documents, filed along with its motion for summary judgment. *See* SJ Ex. 31.

Contracts. Nesheiwat objects on hearsay grounds to agreements between consumers and the SLDR Companies, *see* ECF No. 201 at pp. 15-16 (UF ¶ 92); SJ Exs. 35b, 36b, 37a, 38a, 44a, and to agreements between Monster Loans and Experian, *see* ECF No. 201 at pp. 19-23 (UF ¶¶ 109 to 115); SJ Exs. 18a, 18b, 18c. But contractual agreements "are not hearsay, and therefore need not fall under an exception to hearsay in order to be admitted into evidence." *Irigaray Dairy v. Dairy Employees Union Local No. 17*, 153 F. Supp. 3d 1217, 1234 (E.D. Cal. 2015); *see also Izett v. Crown Asset Mgmt., LLC*, 2019 WL 4845575, at *4 (N.D. Cal. 2019).

Evidence not introduced for the truth. "If the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004). Here, Nesheiwat objects to documents showing the SLDR Companies' deceptive statements to consumers, such as solicitation letters, telemarketing scripts, and training manuals. *See* SJ Exs. 1a, 1b, 1k, 1*l*, 1m, 3c, 3d, 4a, 4h, 4i, 6a, 6b, 35a, 36a, 39a, 41a, 64, 65. But the Bureau is not offering those documents for the truth—the statements were false. Those documents are admissible to "show that the statements were made to consumers." *FTC v. Stefanchik*, 2007 WL 1058579, at *5 (W.D. Wash. 2007) (telemarketing scripts were not hearsay), *aff'd*, 559 F.3d 924 (9th Cir. 2009); *see also United States v. Corporations for Character, L.C.*, 116 F. Supp. 3d 1258, 1665 (D. Utah 2015) (same).

Further, to the extent they are not subject to another hearsay exclusion or exception, many documents are admissible to establish Nesheiwat's knowledge. *See United States v. Lane*, 2013 WL 3716601, at *2 (D. Ariz. 2013) ("[A]n out-of-court statement introduced to prove that the person to whom the statement was made had knowledge of something is not hearsay."). For example, emails Nesheiwat received referencing the advance fee prohibition in the Telemarketing Sales Rule ("TSR") and Docu Prep Center's switch in payment processors to avoid complying with the TSR are evidence that he knew or consciously disregarded that the SLDR Companies were violating the TSR. *See* SJ Exs. 1m. 4j, 4k; *see also* ECF No. 190 at pp. 48-50 (UF ¶¶ 231-242); MSJ Mem. at 7, 19.

**E. The Court can consider evidence of Nesheiwat's assertion of the Fifth Amendment privilege against self-incrimination.**

Finally, Nesheiwat's Statement of Genuine Disputes seeks to strike his own deposition testimony, discovery responses, and even his answer to the

Second Amendment Complaint, all of which invoke his Fifth Amendment privilege against self-incrimination. *See generally* ECF No. 201. Nesheiwat claims that *Griffin v. California*, 380 U.S. 609 (1965) prohibits drawing an adverse inference here. *See* ECF No. 201 at p. 92. But as the Bureau has explained, Nesheiwat's invocation of the Fifth Amendment supports an adverse inference against him. *See* MSJ Mem. at 21-22. *Griffin* held that adverse inferences based on the invocation of the Fifth Amendment may not be made in criminal cases, 380 U.S. at 613-615, and it has long been established that that rule does not apply to civil cases, *see Baxter v. Palmigiano*, 425 U.S. 308, 318–319 (1976); *SEC v. Colello*, 139 F.3d 674, 677–78 (9th Cir. 1998). It is perfectly proper for the Court to consider Nesheiwat's invocation of the Fifth Amendment and to draw an adverse inference against him here.

## CONCLUSION

Nesheiwat thinks he can flood this Court with objections and avoid summary judgment. But his baseless objections make even clearer that he cannot point to evidence precluding summary judgment in the Bureau's favor.

For the reasons set forth above, Nesheiwat's motions to strike should be denied and his objections overruled.

Dated July 2, 2021

Respectfully Submitted,

/s/ Colin Reardon
Leanne E. Hartmann
Colin Reardon (*pro hac vice*)
E. Vanessa Assae-Bille (*pro hac vice*)
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*