COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br>Plaintiff,<br>vs.<br>Chou Team Realty, LLC et al.,<br>Defendants. | Case No.: 8-20-cv-00043-SB-ADS<br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT NESHEIWAT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii
INTRODUCTION ..... 1
ARGUMENT ..... 2
I. There is no genuine dispute about the material facts supporting the Bureau's summary judgment motion ..... 2
A. Summary judgment is warranted on the Bureau's FCRA claim (Count I) ..... 2
B. Summary judgment is warranted on the Bureau's CFPA and TSR Claims (Counts II to XI) ..... 4
1. There is no genuine dispute that the SLDR Companies committed violations of the CFPA and TSR ..... 5
2. There is no genuine dispute that Nesheiwat violated the TSR and CFPA (Counts II, III, IV, V, VII, VIII and IX) ..... 7
3. There is no genuine dispute that Nesheiwat substantially assisted the SLDR Companies' violations of the TSR and CFPA (Counts VI and X) ..... 9
4. Nesheiwat's violations of FCRA and the TSR are Violations of the CFPA (Count XI) ..... 10
C. An adverse inference against Nesheiwat is warranted ..... 10
II. Nesheiwat failed to meet his burden of showing that the Bureau's claims are barred by the statute of limitations ..... 11
A. A constructive discovery standard does not apply to the statute of limitations in the CFPA ..... 12
B. Nesheiwat cannot show the Bureau actually discovered his violations prior to January 9, 2017 ..... 13
C. Nesheiwat's limitations defense also fails under a constructive discovery standard ..... 16

D. The Bureau's claims regarding violations occurring less than three years before the Bureau filed the complaint are necessarily timely ............ 17

III. The Court should grant injunctive relief, restitution, and a civil money penalty ............ 18

CONCLUSION ............ 19

# TABLE OF AUTHORITIES

**Cases**

*Badaracco v. C.I.R.*,
464 U.S. 386 (1984) .......... 12, 13

*Baxter v. Palmigiano*,
425 U.S. 308 (1976) .......... 11

*California v. Neville Chem Co.*,
358 F.3d 661 (9th Cir. 2004) .......... 12

*CFPB v. College Educ. Servs. LLC*,
No. 14-cv-3078 (M.D. Fla.) .......... 15

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) .......... 4, 7

*CFPB v. Howard*,
2018 WL 4847015 (C.D. Cal. 2018) .......... 18

*CFPB v. Nationwide Biweekly Admin.*,
2017 WL 3948396 (N.D. Cal. 2017) .......... 15, 16, 17

*CFTC v. Driver*,
877 F. Supp. 2d 968 (C.D. Cal. 2012) .......... 10

*FTC v. John Beck Amazing Profits, LLC*,
865 F. Supp. 2d 1052 (C.D. Cal. 2012) .......... 6

*FTC v. Student Aid Center, Inc.*,
281 F. Supp. 3d 1324 (S.D. Fla. 2016) .......... 9

*Gabelli v. SEC*,
568 U.S. 442 (2013) .......... 12

*Griffin v. California*,
380 U.S. 609 (1965) .......... 10

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010) .......... 12, 16

*Rotiskie v. Klemm*,
140 S. Ct. 355 (2019) ....................12

*SEC v. Colello*,
139 F.3d 674 (9th Cir. 1998)....................11

*Stoltie v. Soares*,
2009 WL 1513990 (E.D. Cal. 2009)....................6

*U.S. ex rel. Mei Ming v. City of LA*,
2018 WL 3814498 (C.D. Cal. 2018)....................15

**Administrative Decisions**

*In re Integrity Advance*,
No. 2015-CFPB-0029 (Jan. 11, 2021), Dkt. No. 308 ....................17

**Statutes**

12 U.S.C. § 5561.................... 11, 17

12 U.S.C. § 5564.................... 11, 12

**Regulations**

16 C.F.R. 310.3....................9

**Rules**

Fed. R. Evid. 801 ....................8

**Other Authorities**

Consumer Financial Protection Bureau, Consumer Response Annual Report (Mar. 2018)....................14

## INTRODUCTION

The Bureau's motion for summary judgment presented overwhelming evidence that Defendant Jawad Nesheiwat was the central figure in a long-running student-loan debt-relief scheme. Through his participation in that scheme, Nesheiwat violated the Fair Credit Reporting Act ("FCRA"), the Consumer Financial Protection Act of 2010 ("CFPA"), and the Telemarketing Sales Rule ("TSR").

Nesheiwat's opposition generally does not dispute that the businesses he worked for and with—Monster Loans and the SLDR Companies—violated the law. Instead, his main strategy is to assert hundreds of boilerplate evidentiary objections to the evidence establishing his role in and knowledge of the violations. The Bureau's opposition to Nesheiwat's motions to strike explains why those objections are baseless and should be disregarded, *see* ECF No. 217 ("Pl.'s Strike Opp."), and Nesheiwat's reply does not even attempt to defend the merits of those objections, *see* ECF No. 218. Nesheiwat presents almost no evidence in his own defense, and the meager evidence he does present is either consistent with the Bureau's evidence or irrelevant. Nesheiwat also mischaracterizes the legal standards that apply to the Bureau's claims, ignoring binding Ninth Circuit decisions and other authority cited by the Bureau, and wrongly argues (contrary to binding authority) that the Court cannot impose an adverse inference against him based on his assertion of the Fifth Amendment. In short, summary judgment is warranted on each of the Bureau's claims.

Nesheiwat also has not established, and cannot establish, that the Bureau's claims against him are untimely. To prevail on his statute of limitations defense, Nesheiwat must do more than assert that the Bureau was "on notice" of its claims; he must show that the Bureau actually discovered his violations more than three years before filing this action on January 9, 2020. But Nesheiwat cannot identify a single fact about his conduct that the Bureau

knew more than three years before it filed suit. Further, even if a constructive discovery standard applied, Nesheiwat has not come close to establishing that a reasonably diligent plaintiff should have discovered his violations more than three years before filing suit.

Finally, Nesheiwat barely addresses the relief requested by the Bureau, and fails to present any evidence creating a genuine factual dispute regarding the appropriateness of that relief.[1]

## ARGUMENT

### I. There is no genuine dispute about the material facts supporting the Bureau's summary judgment motion.[2]

#### A. Summary judgment is warranted on the Bureau's FCRA claim (Count I).

The evidence shows that Nesheiwat violated FCRA by overseeing Monster Loans' purchases of Experian prescreened lists for the SLDR Companies and directing Lend Tech to obtain prescreened lists for the SLDR Companies. *See* Mem. in Supp. Pl.'s Mot. for Summ. Judg. ("Pl.'s MSJ Mem.") at 5-6, 11, ECF No. 189-1.

---

[1] Because Nesheiwat did not comply with the formatting requirements in the Court's standing order governing summary judgment motions, the Bureau is filing with this reply a consolidated version of its Statement of Undisputed Facts and Nesheiwat's Statement of Genuine Disputes of Material Fact in the proper format. That filing also includes the Bureau's Statement of Genuine Disputes of Material Fact addressing Nesheiwat's Statement of Undisputed Facts. In this reply, the Bureau cites its Statement of Undisputed Facts as "Pl.'s UF," its Statement of Genuine Disputes of Material Fact as "Pl.'s Disputes," and its Summary Judgment Exhibits as "SJ Ex."

[2] There is no basis for Nesheiwat's assertion that the Court may not grant partial summary judgment if it determines that there are genuine disputes of fact as to certain claims. *See* Def.'s Opp. 7. Rule 56 permits a court to enter summary judgment as to some, but not all, of the issues. Fed. R. Civ. P. 56(g). In that event, entry of partial summary judgment would help streamline this case in advance of trial and preserve the parties' and the Court's resources.

Nesheiwat does not dispute the facts showing that Monster Loans and Lend Tech obtained prescreened lists for the SLDR Companies. *See* Pl.'s UF ¶¶ 119-23, 143, 150, 156-59. Nor does he appear to dispute that obtaining and using prescreened lists to market debt relief services is not permissible under FCRA. *See* Def.'s Mem. in Supp. of Cross-Mot. for Summ. Judg. and in Opp. to Pl.'s Mot. for Summ. Judg. ("Def.'s Opp.") at 9-10, ECF No. 197. He principally argues that the evidence establishing his central role in the FCRA violations is inadmissible, *see id.*, but that evidence is based on the declarations and testimony of witnesses with personal knowledge of Nesheiwat's conduct as well as documents admissible under various hearsay exclusions and exceptions, including the party-opponent and business records exceptions. *See* Pl.'s Strike Opp. at 2-3, 9-15.

Nesheiwat attempts to create a factual dispute by asserting that "he did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered prescreened lists from Experian." *E.g.*, Pl.'s UF ¶ 128. For support, Nesheiwat cites emails and other documents containing the names of others who participated in obtaining the prescreened lists. *See* Def. Exs. 132-140. But those documents are entirely consistent with—and do not contradict—the evidence that Nesheiwat oversaw and worked closely with others, including Sklar, Abdel, and Chou, to unlawfully obtain prescreened lists for the SLDR Companies. *See* SJ Ex. 1 at ¶¶ 43-44, 47-49; SJ Ex. 4 at ¶¶ 33-36; SJ Exs. 4d, 4e; SJ Ex. 5 at ¶¶ 13-15; SJ Ex. 5a. That evidence remains undisputed. Additional evidence the Bureau cited—including evidence that Nesheiwat signed Monster's application for an Experian account and falsely told Experian that Monster was purchasing prescreened lists to provide firm offers of credit to potential mortgage borrowers—also remains undisputed. *See* Pl.'s MSJ Mem. at 5-6; Pl.'s UF ¶¶ 107-16, 140-44; *see also* Pl.'s Strike Opp. at 11 (discussing declaration by

Monster Loans employee stating based on personal knowledge that Nesheiwat signed Experian application). And Nesheiwat asserted the Fifth Amendment with respect to all questions relating to prescreened lists and Monster Loans' Experian account, which supports drawing an adverse inference against him. *See* Pl.'s MSJ Mem. at 21-22; Pl.'s UF ¶¶ 101, 111, 114-15, 118, 127-33, 135, 137, 141-42, 144-47, 150, 155, 159, 292, 295, 297. In sum, there is no genuine factual dispute to resolve.

**B. Summary judgment is warranted on the Bureau's CFPA and TSR Claims (Counts II to XI).**

Nesheiwat is liable under the CFPA and TSR because the undisputed evidence shows that (1) he and the SLDR Companies were subject to the CFPA and TSR, (2) the SLDR Companies violated the CFPA and TSR, and (3) Nesheiwat is (a) liable for engaging in violations in his role at Docu Prep Center and (b) liable for substantially assisting the violations by each of the SLDR Companies. *See* Pl.'s MSJ Mem. at 12-21.

As an initial matter, Nesheiwat mischaracterizes the standards governing the Bureau's claims. *See* Def. Opp. at 11-23. He wrongly implies that the Bureau must show that Nesheiwat personally engaged in all the unlawful conduct (e.g., that the Bureau must show that Nesheiwat himself made misleading statements to consumers during sales calls and charged those consumers fees). *See id*. But no such showing is required. Under binding Ninth Circuit law, the Bureau can prove Nesheiwat's individual liability for his conduct related to Docu Prep Center's violations by showing that "(1) he participated directly in the deceptive acts *or* had the authority to control them and (2) he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *CFPB v. Gordon*, 819 F.3d 1179, 1193 & n.8 (9th Cir. 2016) (cleaned up). Further, the

Bureau can establish that Nesheiwat violated the CFPA and TSR's substantial assistance prohibitions by showing that (1) the SLDR Companies committed primary violations and that (2) Nesheiwat provided substantial assistance to the SLDR Companies (3) with a culpable state of mind. *See* Pl.'s MSJ Mem. at 19-20.

**1. There is no genuine dispute that the SLDR Companies committed violations of the CFPA and TSR.**

There is no dispute that the SLDR Companies committed the violations of the CFPA and TSR described in the Bureau's opening brief. Nesheiwat's Statement of Genuine Disputes does not dispute (or otherwise address) facts demonstrating that the SLDR Companies engaged in deceptive acts or practices in violation of the CFPA and TSR or charged unlawful advance fees in violation of the TSR. Accordingly, these facts are deemed undisputed. *See* Local Rule 56-3; Order re Motions for Summ. Judg. at ¶ 3 (Oct. 27, 2020).[3]

With respect to the SLDR Companies' deceptive acts or practices, Nesheiwat does not dispute any facts showing that the SLDR Companies' representations that consumers would receive lower interest rates by consolidating were deceptive. *See* Pl.'s UF ¶¶ 160-178; Pl.'s MSJ Mem. at 8-9, 15-16. Nor does he dispute the facts showing that Docu Prep Center's representations that the Department of Education would become consumers' "new servicer" were deceptive. *See* Pl.'s UF ¶¶ 201-14; Pl.'s MSJ Mem. at 10, 17.

Nesheiwat does not challenge most of the facts regarding the SLDR Companies' deceptive statements that consolidating would improve consumers'

---

[3] Nesheiwat also does not dispute facts demonstrating that the SLDR Companies were sellers and telemarketers of debt relief services under the TSR and providers of financial advisory services under the CFPA. *See* Pl.'s MSJ Mem. at 12-13; Pl.'s UF ¶¶ 58, 71, 74, 76-79, 84-86, 161-64.

credit scores, and mainly challenges facts based on the report of Dr. David Skanderson, an expert on credit scoring models. *See* Pl.'s UF ¶¶ 179-200. Nesheiwat's undeveloped objections to Dr. Skanderson's report are meritless, *see* Pl.'s Strike Opp. at 20-21, and Nesheiwat offers no evidence challenging Dr. Skanderson's expert opinions. Based on his opinions and the other undisputed evidence, there is no dispute that the SLDR Companies lacked a reasonable basis for their representations about improved credit scores and that those representations were false in many instances. *See* Pl.'s MSJ Mem. at 9-10, 16-17; *cf. Stoltie v. Soares*, 2009 WL 1513990, at *11 (E.D. Cal. 2009) (granting summary judgment against plaintiff that failed to rebut defendant's "expert opinion with probative evidence or expert opinion"). Further, even without Dr. Skanderson's opinions, the remaining undisputed facts establish a deception violation because (1) the SLDR Companies made representations that credit scores would improve and (2) there is no evidence that the SLDR Companies or Nesheiwat had any basis for those claims about improved credit scores. *See* Pl.'s MSJ Mem. at 9-10, 16-17; *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012).

Finally, Nesheiwat does not dispute most of the facts demonstrating that the SLDR Companies charged unlawful advance fees in violation of the TSR. *See* Pl.'s UF ¶¶ 215-62. Nesheiwat attempts to dispute seven facts that refer to him or to the total fees charged by the SLDR Companies. *See id.* at ¶¶ 231, 234, 240, 242, 260-62. But his evidentiary objections are meritless, *see* Pl.'s Strike Opp. at 8-20, 23, and the documents he cites do not create a genuine issue of fact as to his liability, *see infra* at p. 8. Even if the Court ignored the seven facts Nesheiwat purports to challenge, the remaining undisputed facts demonstrate that the SLDR Companies violated the TSR's prohibition on charging advance fees for debt relief services. *See* Pl.'s MSJ Mem. 7, 14.

**2. There is no genuine dispute that Nesheiwat violated the TSR and CFPA (Counts II, III, IV, V, VII, VIII, and IX).**

There is no genuine factual dispute regarding Nesheiwat's liability for his conduct related to Docu Prep Center's violations of the CFPA and TSR. The evidence overwhelmingly demonstrates that Nesheiwat participated in and had the authority to control Docu Prep Center's unlawful practices and that he had knowledge of or was recklessly indifferent to those practices. *See* Pl.'s MSJ Mem. at 2-3, 7, 18-19; Pl.'s UF ¶¶ 38, 231-42, 263-87, 305-18; *see also Gordon*, 819 F.3d at 1193.

Nesheiwat's opposition does not address his extensive participation in Docu Prep Center's sales and marketing practices or his knowledge of those practices—indeed, he does not refer to Docu Prep Center once in his entire discussion of Counts II to V and VII to IX. *See* Def. Opp. 11-21. In his Statement of Genuine Disputes, Nesheiwat asserts hundreds of boilerplate objections to evidence regarding his involvement in and knowledge of Docu Prep Center's practices. As the Bureau has shown, those objections are meritless and the Court can properly consider that evidence on summary judgment. *See* Pl.'s Strike Opp. at 2-3, 8-20, 23-24. Much of that evidence consists of declarations and deposition testimony by those who worked closely with Nesheiwat and have firsthand knowledge of his conduct, including Docu Prep Center's co-managers Robert Hoose and David Sklar and Monster Loans' employee Erin Mason (who provided assistance to Docu Prep Center at Nesheiwat's direction). *See generally* SJ Exs. 1, 4; SJ Ex. 3 at ¶¶ 2, 9-14; *see also* Pl.'s Strike Opp. at 2-3, 8-11. That evidence also includes emails Nesheiwat received regarding the SLDR Companies' direct mail solicitations and advance fees, which are admissible and not hearsay because (among other reasons) they are evidence of Nesheiwat's knowledge and recklessness. *See* SJ Exs. 1n, 4j, 4k (advance fees); SJ Exs. 64, 65 (solicitations); *see also* Fed. R.

Evid. 801(c); Pl.'s Strike Opp. at 23 (discussing evidence not introduced for truth of matter asserted).

Nesheiwat's Statement of Genuine Disputes also repeatedly cites two exhibits, neither of which creates a genuine dispute of material fact. One exhibit contains registration filings for the SLDR Companies with the California Secretary of State, and the other contains testimony by Docs Done Right's manager Eduardo Martinez. *See* Def. Exs. 130, 131. Nesheiwat does not explain how these exhibits raise any disputed issues of fact, but nothing in them contradicts the evidence establishing Nesheiwat's role in and knowledge of Docu Prep Center's practices. In particular, Martinez testified that Docu Prep Center's co-manager Robert Hoose generally handled "day-to-day decisions" but "would get outvoted" by Nesheiwat and two other limited partners. *See* Def. Ex. 130 at 153:10-154:9. Martinez's testimony is consistent with—and does not contradict—the evidence that Nesheiwat provided directions to Docu Prep Center's co-managers Hoose and Sklar regarding how to market and sell the company's services, while they were generally responsible for more day-to-day matters such as training employees and hiring and firing. *See* SJ Ex. 1 at ¶¶ 17-22; SJ Ex. 3 at ¶¶ 10-13; SJ Ex. 4 at ¶¶ 15-16, 19-20. Further, Martinez's testimony does not contradict the evidence establishing Nesheiwat's role in overseeing Docu Prep Center's direct mail marketing and in editing and approving Docu Prep Center's sales scripts, *see* Pl.'s UF ¶¶ 270-76, and does not address Nesheiwat's knowledge of unlawful conduct. Thus, Nesheiwat's evidence does nothing to create a genuine issue of material fact regarding his individual liability.

Finally, Nesheiwat's opposition repeatedly misstates the legal standards governing the Bureau's TSR and CFPA claims. In addition to ignoring the standard for individual liability, *see supra* at pp. 4-5, Nesheiwat wrongly suggests that a TSR deception claim requires proof that a false representation

was "intentionally deceptive." Def. Opp. at 12, 14, 15. But an intent to deceive is not an element of a TSR claim. *See FTC v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016); *see also* 16 C.F.R. 310.3. Nesheiwat also argues that the Bureau's deception claims under the CFPA "should be dismissed as duplicative" of its TSR deception claims. Def. Opp. 17, 19, 20; *see also id.* at 21, 22-23 (asserting same argument for other CFPA claims). But the parallel TSR and CFPA claims present alternative grounds for relief and do not seek a "double recovery" from Nesheiwat. There is no basis to dismiss them.

**3. There is no genuine dispute that Nesheiwat substantially assisted the SLDR Companies' violations of the TSR and CFPA (Counts VI and X).**

For many of the same reasons, there is no genuine factual dispute regarding Nesheiwat's liability for substantially assisting the SLDR Companies' violations. *See* Pl.'s MSJ Mem. at 19-21.

First, as discussed above, Nesheiwat generally does not dispute that the SLDR Companies violated the TSR and CFPA. *See supra* at pp. 5-6.

Second, Nesheiwat does not address the Bureau's argument (and supporting evidence) that he provided substantial assistance by providing the SLDR Companies with Experian prescreened lists and overseeing their direct-mail marketing, or the Bureau's argument (and supporting evidence) that Nesheiwat knew about the SLDR Companies' violations, or at least recklessly and consciously avoided knowing about them. *See* Pl.'s MSJ Mem. at 19-21; Def. Opp. at 16-17, 21-22. Instead, Nesheiwat repeatedly argues that there is no evidence that Nesheiwat himself "made material misrepresentations." Def. Opp. at 17, 22. Even if that assertion were correct—which it is not[4]—that is no

---

[4] Nesheiwat made material misrepresentations by editing and approving the deceptive direct mail solicitations that the SLDR Companies sent to consumers. *See* Pl.'s UF ¶¶ 73, 161-63, 176, 271-72, 283.

defense to the Bureau's claim that Nesheiwat provided substantial assistance to the SLDR Companies by providing them prescreened lists, which were crucial to their direct mail marketing efforts and their TSR and CFPA violations. *See* Pl.'s MSJ Mem. 20.

Third, as with his other objections, Nesheiwat's blanket objections to the evidence supporting the Bureau's substantial assistance claim are meritless and should be summarily overruled.

Finally, as discussed above, the evidence that Nesheiwat cites—Secretary of State filings, random documents containing the names of others involved in obtaining Experian prescreened lists, and the testimony of Martinez—does nothing to contradict the Bureau's evidence or create a genuine factual dispute for trial. *See supra* at pp. 3, 8.

**4. Nesheiwat's violations of FCRA and the TSR are violations of the CFPA (Count XI).**

Nesheiwat offers no meaningful response to the Bureau's argument that his violations of FCRA and the TSR are also CFPA violations. *See* Pl.'s MSJ Mem. at 21; Def. Opp. at 22-24. Because the Bureau is entitled to summary judgment on its FCRA and TSR claims, the Court should also grant summary judgment on Count XI.

**C. An adverse inference against Nesheiwat is warranted.**

Nothing in Nesheiwat's opposition casts doubt on the Court's ability to draw an adverse inference against him based on his invocation of the Fifth Amendment and shift the burden to him "with respect to every question to which [he] asserted his Fifth Amendment privilege." *CFTC v. Driver*, 877 F. Supp. 2d 968, 976–77 (C.D. Cal. 2012); *see also* Pl.'s MSJ Mem. at 21-22.

Instead, ignoring binding authority cited by the Bureau, Nesheiwat asserts that *Griffin v. California*, 380 U.S. 609 (1965), prohibits drawing an adverse inference against him. But *Griffin* held that courts may not draw an

adverse inference based on the invocation of the Fifth Amendment in a criminal case, 380 U.S. at 613-615, and it has long been established that that rule does not apply to civil cases. *See Baxter v. Palmigiano*, 425 U.S. 308, 318-319 (1976); *SEC v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998).

## II. Nesheiwat failed to meet his burden of showing that the Bureau's claims are barred by the statute of limitations.

Nesheiwat asserts that the Bureau's claims against him under the CFPA, TSR, and FCR, are barred by the three-year date-of-discovery statute of limitations in the CFPA. *See* 12 U.S.C. § 5564(g)(1). Nesheiwat has failed to show—as the CFPA requires—that the Bureau actually discovered his violations more than three years before filing this action on January 9, 2020. Though there is no genuine dispute about the facts, Nesheiwat mischaracterizes the evidence and jumps to unwarranted conclusions while utilizing erroneous legal standards.

The Bureau's FCRA, TSR, and CFPA claims are governed by the statute of limitations in the CFPA, which provides that "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." *See* 12 U.S.C. § 5564(g)(1). A "violation" is "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). Nesheiwat asserts that the Bureau's claims are untimely because the Bureau was allegedly "on notice" more than three years before the Bureau commenced this action. *See* Def. Opp. at 2-3.

As an initial matter, Nesheiwat appears to apply the wrong standard to whether the Bureau discovered its claims—the CFPA provides that the limitations period begins to run after "discovery" of violations, not when the Bureau is "on notice" of potential violations. But regardless of the applicable standard, his evidence of consumer complaints against certain of the SLDR

Companies falls far short of satisfying his burden of showing that the Bureau discovered his violations more than three years before filing suit.

**A. A constructive discovery standard does not apply to the statute of limitations in the CFPA.**

The plain language of the CFPA unambiguously states that no action may be brought "more than three years after the date of discovery of the violation," 12 U.S.C. § 5564(g)(1). While not clear, Nesheiwat appears to be arguing that a constructive discovery standard be added to the CFPA's statutory text. But grafting such a standard onto the statute would run afoul of basic principles of statutory construction. *See Rotiskie v. Klemm*, 140 S. Ct. 355, 360-61 (2019) (construing limitations provision based on its "plain meaning" and noting that "it is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts" (cleaned up)). Reading a constructive discovery standard into the CFPA would also be inconsistent with longstanding precedent holding that statutes of limitations must be strictly construed in favor of the government. *See Badaracco v. C.I.R.*, 464 U.S. 386, 391 (1984); *see also California v. Neville Chem Co.*, 358 F.3d 661, 666 (9th Cir. 2004).

To the extent Nesheiwat is relying on *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010) to import a constructive discovery standard into the CFPA, that case has no application here. In *Merck*, the Court interpreted a statute of limitations that required private plaintiffs to bring certain securities claims within two years after the discovery of "facts constituting the violation." *Id.* at 647. The Court held that "discovery" as used in that statute included both "facts the plaintiff actually knew," and "those facts a reasonably diligent plaintiff would have known." *Id.* at 648. The Court relied on "history and precedent" regarding statutes of limitations that applied to *private* plaintiffs. *Id.* at 644-48. As the Court later noted in *Gabelli v. SEC*, those precedents decidedly do not apply to government enforcement actions. 568 U.S. 442, 449-54 (2013); *cf. also*

*Badaracco*, 464 U.S. at 391. Thus, nothing in *Merck* suggests that a statute of limitations applying only to the government should be interpreted to encompass constructive discovery, and Nesheiwat has provided no basis to do so.

**B. Nesheiwat cannot show the Bureau actually discovered his violations prior to January 9, 2017.**

There is no evidence that the Bureau discovered Nesheiwat's violations more than three years before it filed suit on January 9, 2020. Nesheiwat does not—and cannot—identify a single fact about Nesheiwat's conduct that the Bureau knew by January 9, 2017.

Nesheiwat attempts to point to consumer complaints and a single email as evidence of the Bureau's knowledge, but neither supports such a conclusion.

Referring to a spreadsheet listing consumer complaints, Nesheiwat asserts that from "April 23, 2015, through January 6, 2017 … the Bureau received 108 consumer complaints against Defendants." *See* Pl.'s Disputes at ¶ 29. But that spreadsheet actually lists 108 complaints submitted to the Federal Trade Commission's Consumer Sentinel database, not to the Bureau. *See id.*; SJ Ex. 30 at ¶¶ 6-7.[5] Of those 108 complaints, 24 complaints were contributed by the Bureau—meaning that the Bureau received the complaint and then submitted the complaint to Consumer Sentinel—during that period. *See* Def. Ex. 141 (complaints "Created By" a "CFPB-USER"). There is no evidence that

[5] The Federal Trade Commission's ("FTC") Consumer Sentinel database contains consumer complaints made to the FTC directly by consumers, as well as consumer complaints provided by 45 data contributors, including the Bureau. *See* SJ Ex. 30 at ¶ 6. The Bureau has an Office of Consumer Response that accepts complaints from consumers about financial products and services, and it receives hundreds of thousands of consumer complaints annually. *See, e.g.*, Consumer Financial Protection Bureau, Consumer Response Annual Report at p. 6 (Mar. 2018) (about 320,200 complaints received in 2017), *available at* https://files.consumerfinance.gov/f/documents/cfpb_consumer-response-annual-report_2017.pdf.

the Bureau received any of the other complaints contributed to Sentinel during that period.

Though Nesheiwat tells the Court that the Bureau had received "complaints filed against … Nesheiwat" and other defendants, Def. Opp. at 2, the truth is that Nesheiwat's name does not appear in any of the 24 complaints the Bureau received or in the other complaints on Consumer Sentinel. *See* SJ Ex. 66 at ¶¶ 3-6; Pl.'s Disputes ¶¶ 3-19, 21-28. Nor do those complaints reference Monster Loans, where between 2015 and 2017 Nesheiwat was the COO and actively concealed his unlawful use of the Experian account to benefit the SLDR Companies. *See* SJ Ex. 66 at ¶ 7; Pl.'s Disputes at ¶¶ 3-19, 21-28; *see also* Pl.'s UF ¶¶ 35-36, 133-35.

Most of the 24 complaints the Bureau received alleged that Docu Prep Center, Certified Doc Prep Services, and Assure Direct Services misled consumers or were a "scam" and did not provide the promised services. *E.g.*, Def. Ex. 125 (consumer believed Assure Direct Services was affiliated with federal government). The complaints did not allege that the three SLDR Companies improperly obtained consumer report information or that the three companies violated FCRA. *See* Pl.'s Disputes at ¶¶ 3-19, 21-28. The complaints also did not allege that consumers were falsely told they would receive a lower interest rate or that ED would become their new servicer. *See id.* Only a single complaint (which is ambiguous because it also discusses a non-defendant entity) alleges that a consumer was promised a higher credit score. *See* Pl.'s Disputes at ¶ 16; Def. Ex. 115.

In several instances, the 24 complaints criticize conduct by businesses other than the SLDR Companies. Nesheiwat emphasizes a complaint from Jared McCullough, claiming that McCullough alleged that Docu Prep Center threatened to send his account to collections. Def. Opp. at 4-5. But the McCullough complaint alleges that Navient Solutions made that threat and

mentions Docu Prep Center only in passing. *See* Pl.'s Disputes at ¶ 8; Def. Ex. 107. Nesheiwat also implies that the Bureau's letter to U.S. Senator Mark Warner relating to McCullough's complaint concerned Docu Prep Center, *see* Def. Opp. 4-5, but that letter focused on Navient and did not mention Docu Prep Center, *see* Pl.'s Disputes at ¶ 8; Def. Ex. 108.

Beyond consumer complaints, Nesheiwat points only to a single email to assert that the Bureau had "full knowledge" of its claims in April 2015. *See* Def. Opp. at 3. But that assertion rests on a mischaracterization of the April 2015 email sent by a payment processor to certain defendants. *See* Pl. Disputes at ¶ 2; Def. Ex 128. That email references the TSR's prohibition on advance fees and a 2014 Bureau enforcement action against an unrelated student-loan debt relief operation in Florida. *See* Def. Ex. 128; *see also CFPB v. College Educ. Servs. LLC*, No. 14-cv-3078 (M.D. Fla.). Nothing in the email references Nesheiwat or the SLDR Companies or suggests that the Bureau was investigating them during 2015, and the Bureau only received that email after this action was filed. *See* Pl. Disputes ¶ 2; Def. Ex. 128. While that email shows that Nesheiwat should have known his conduct was illegal as early as April 2015, *see* Pl.'s UF ¶¶ 231-33; SJ Ex. 1n, it says nothing about when the Bureau discovered Nesheiwat's violations.

Nesheiwat's evidence would be insufficient to establish that the Bureau actually discovered its claims even as to the SLDR Companies. *See CFPB v. Nationwide Biweekly Admin.* 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017) ("The notion that mere receipt of a consumer complaint can trigger the statute of limitations as against CFPB is unsupported by any authority and would be unworkable."), *appeal pending*, No. 18-15431 (9th Cir.); *U.S. ex rel. Mei Ming v. City of LA*, 2018 WL 3814498, at *34 (C.D. Cal. July 25, 2018) (distinguishing "between allegations and knowledge" and holding that government's receipt of relator's False Claims Act complaint does not

constitute discovery). Here, Nesheiwat's inability to show that the Bureau had any knowledge about *his* conduct more than three years before filing suit is fatal to his statute of limitations argument.

**C. Nesheiwat's limitations defense also fails under a constructive discovery standard.**

Even if the Court were to read a constructive discovery standard into the CFPA, Nesheiwat's limitations defense still fails. Under that standard, "discovery" of facts that would put a plaintiff on "inquiry notice" of the need to begin investigating "does not automatically begin the running of the limitations period." *Merck*, 559 U.S. at 653. Instead, the statute of limitations would only begin running when a reasonably diligent plaintiff would have discovered facts regarding all necessary elements of the violation. *See id.* at 648-49; *see also Nationwide Biweekly*, 2017 WL 3948396, at *10 & n.22 (for limitations period to begin, Bureau "would have to be in possession of sufficient facts to file suit").

Nesheiwat has made no assertions, much less supported ones, as to when a reasonably diligent plaintiff would have discovered the requisite facts, including his role and scienter. *See* Pl.'s MSJ Mem. at pp.18-21; *see also Merck*, 559 U.S. at 648-49 (discovery of private securities fraud claim required discovery of facts regarding scienter); Decision of the Director at p. 18, *In re Integrity Advance*, No. 2015-CFPB-0029 (Jan. 11, 2021), Dkt. No. 308 (individual's scienter and participation in or authority over unlawful conduct were "important and necessary elements of the 'violation' that must be discovered before the statute of limitations clock begins to run"), *available at* https://files.consumerfinance.gov/f/documents/cfpb_2015-cfpb-0029_document-308_2021-01.pdf.

Nor do the consumer complaints Nesheiwat cites demonstrate that a reasonably diligent plaintiff would have discovered the requisite facts more

than three years before the Bureau filed suit. *Cf. Nationwide Biweekly,* 2017 WL 3948396, at *10. As previously discussed, the complaints do not reference Nesheiwat or Monster Loans. The complaints therefore did not even put the Bureau on inquiry notice of his violations, much less show that a reasonably diligent plaintiff would have discovered his violations more than three years before filing suit. Indeed, the complaints would be insufficient to put the Bureau on inquiry notice even as to the SLDR Companies for most of the violations at issue here. The 24 complaints the Bureau received reference only three of the SLDR Companies (with only a single complaint about Assure Direct Services). *See* Pl.'s Disputes at ¶¶ 3-19, 21-28. And those complaints do not allege that the three SLDR Companies were violating FCRA or were engaging in the specific deceptive practices at issue in this case. *See id.*

Further, if receipt of those 24 complaints triggered the statute of limitations, all that would mean is that the statute of limitations started for specific violations those complaints establish. That is because, under the CFPA, a "violation" is judged in terms of an "act or omission." 12 U.S.C. § 5561(5). So if receipt of a complaint is "discovery" of a "violation," it is just discovery of the violations referenced in that complaint, not other violations the company mentioned in the complaint may separately be committing. Even if one consumer complains that a company misrepresented the company's services, charged an upfront fee, or improperly obtained a consumer report, that would not mean that the Bureau has discovered that the company (much less Nesheiwat) was engaging in similar conduct with respect to other consumers. When the Bureau receives the complaint, it has no way of knowing whether the alleged conduct is a one-off or whether it reflects the company's practice.

**D. The Bureau's claims regarding violations occurring less than three years before the Bureau filed the complaint are necessarily timely.**

Finally, even if the Court were to hold that receipt of the consumer complaints constituted "discovery" of Nesheiwat's violations, all the Bureau's claims relating to Nesheiwat's unlawful conduct occurring after January 9, 2017 are timely because the Bureau could not have discovered a violation *before* it occurred.

Nesheiwat's violations of FCRA involving Monster Loans' Experian account continued until his separation from Monster Loans in April 2017. Pl.'s UF ¶¶ 127-28. Later in 2017 Nesheiwat also participated in the scheme to obtain prescreened lists for the SLDR Companies through the purported mortgage company Lend Tech Loans, *see id.* at ¶¶ 145-159.

With respect to Docu Prep Center, Nesheiwat's violations of the CFPA and TSR occurred until April 2017 when Docu Prep Center ceased enrolling new customers and rebranded itself as Direct Document Solutions. *See* Pl.'s UF ¶¶ 23, 50-51, 263-280. With respect to the other four SLDR companies, Nesheiwat's substantial assistance violations occurred during the time they each operated, and continued through September 2017. *See* Pl.'s UF ¶¶ 9-20, 24-27, 127-28, 282-87.

Nesheiwat fails to assert any basis for finding that violations that occurred less than three years before the Bureau filed suit are time-barred. *See CFPB v. Howard*, 2018 WL 4847015, at *3 (C.D. Cal. 2018).

**III. The Court should grant injunctive relief, restitution, and a civil money penalty.**

Nesheiwat provides no real response to the Bureau's argument that the Court should grant injunctive relief, restitution, and a civil money penalty. *See* Def. Opp. at 24.

First, Nesheiwat does not appear to dispute that the injunctive relief sought by the Bureau is available under the CFPA and consistent with caselaw holding that "fencing in" relief is appropriate where a defendant engages in elaborate and wide-ranging illegal conduct. *See* Pl.'s MSJ Mem. at 22-23; *see also* ECF No. 189-2 (proposed judgment detailing proposed injunctive relief). Here, the evidence plainly supports entry of the injunctive relief requested by the Bureau to protect the public from future violations by Nesheiwat.

With respect to restitution, although Nesheiwat asserts various meritless evidentiary objections, he does not actually dispute the accuracy of the Bureau's calculations regarding the total fees charged by the SLDR Companies or otherwise identify any error in those calculations. *See* Pl.'s MSJ Mem. at 23-24; Pl.'s UF ¶ 261. Accordingly, an award of $19,699,870 in restitution is appropriate.

Finally, Nesheiwat does not challenge the accuracy of the Bureau's civil penalty calculations, or identify any evidence supporting substantial mitigation of that penalty. *See* Pl.'s MSJ Mem. at 24-25. The evidence supports an overall maximum penalty exceeding $115 million, and the Bureau requests that the Court impose a significant civil penalty against Nesheiwat consistent with the seriousness of his violations.

## CONCLUSION

For the foregoing reasons, as well the reasons presented in the Bureau's opening brief, the Court should grant the Bureau's motion for summary judgment.

Dated July 9, 2021

Respectfully Submitted,

/s/ Colin Reardon
Leanne E. Hartmann
Colin Reardon (*pro hac vice*)
E. Vanessa Assae-Bille (*pro hac vice*)
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*