COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>    Plaintiff,<br><br>    vs.<br><br>Chou Team Realty, LLC et al.,<br><br>    Defendants. | Case No.: 8-20-cv-00043-SB-ADS<br><br>**CONSOLIDATED STATEMENTS OF UNDISPUTED AND DISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT NESHEIWAT** |

# TABLE OF CONTENTS

**Index to Plaintiff's Summary Judgment Exhibits** .................................................. 4

**Consolidated Statement of Plaintiff's Undisputed Facts and Defendant's Genuine Disputes of Material Fact** ........................................................................ 11

I.   Overview of Defendants .................................................................................. 11

    A. Corporate Defendants ................................................................................ 11

    B. Jawad Nesheiwat .......................................................................................... 16

II.  Background on U.S. Department of Education Student Loan Programs .... 20

III. The SLDR Companies' Process for Marketing, Sale, and Delivery of Debt Relief Services ...................................................................................... 23

    A. The SLDR Companies' Business Model ................................................ 23

    B. The SLDR Companies' Direct Mail Marketing .................................... 31

    C. The SLDR Companies' Telemarketing Sales Calls .............................. 37

    D. The SLDR Companies' Debt Relief Services ....................................... 42

IV.  Nesheiwat Unlawfully Used and Obtained Prescreened Lists to Market Debt Relief Services ...................................................................................... 44

V.   The SLDR Companies Made False Promises to Consumers About the Benefits of Their Services in Marketing Materials and Sales Calls ........... 83

    A. The SLDR Companies Falsely Promised that Consumers Would Receive Lower Interest Rates by Consolidating ................................... 83

    B. The SLDR Companies Falsely Promised that Consolidating Would Improve Consumers' Credit Scores ...................................................... 91

    C. The SLDR Companies Falsely Promised that the Department of Education Would Become Consumers' "New Servicer" .................. 107

VI.  The SLDR Companies Charged Advance Fees in Violation of the TSR .................................................................................. 112

VII. Nesheiwat's Role in the Student Debt Relief Operation and Knowledge of its Practices ................................................................................................ 132

VIII. Nesheiwat's Invocation of the Fifth Amendment ..................................... 166

IX. Consumers Have Complained Extensively About the

SLDR Companies ..................................................................................... 173

**Plaintiff's Statement of Genuine Disputes of Material Fact**.............................. 183

# INDEX TO PLAINTIFF'S SUMMARY JUDGMENT EXHIBITS[1]

**Exhibits filed with Plaintiff's Motion for Summary Judgment** (ECF Nos. 190-1 to 190-55, 191 to 191-52, 192 to 192-46)

| Declarations by Defendants and Defendants' Owners and Employees | |
|---|---|
| SJ Ex. 1 | Declaration of Robert Hoose and selected exhibits |
| SJ Ex. 1a | Ex. 1 – Email & Docu Prep Center Solicitation Letters (Apr. 2015) |
| SJ Ex. 1b | Ex. 2 – Email & Docu Prep Center Solicitation Letters (Feb. 2016) |
| SJ Ex. 1c | Ex. 3 – Email re Docu Prep Center mailing (Feb. 2016) |
| SJ Ex. 1d | Ex. 4 – Emails & invoices for Docu Prep Center mailings (2015-2016) |
| SJ Ex. 1e | Ex. 5 – Emails re invoices for Docu Prep Center mailings (Sept. 2016) |
| SJ Ex. 1f | Ex. 6 – Email re Docu Prep Center mailing (Feb. 2016) |
| SJ Ex. 1g | Ex. 7 – Email re cost of Experian records (Feb. 2016) |
| SJ Ex. 1h | Ex. 9 – Email re ordering Experian records (Dec. 2016) |
| SJ Ex. 1i | Ex. 10 – Checks for Docu Prep Center purchases of Experian records |
| SJ Ex. 1j | Ex. 11 – Emails re use of Experian consumer reports (Oct. 2016) |
| SJ Ex. 1k | Ex. 12 – Email & Docu Prep Center sales script (Feb. 2015) |
| SJ Ex. 1l | Ex. 13 – Email & Docu Prep Center sales script (May 2015) |
| SJ Ex. 1m | Ex. 14 – Email & Docu Prep Center employee manual (Sept. 2015) |
| SJ Ex. 1n | Ex. 15 – Emails re compliance with Telemarketing Sales Rule (Apr. 2015) |
| SJ Ex. 1o | Ex. 19 – Email re Docu Prep Center investor update (May 2015) |
| | |
| SJ Ex. 2 | Declaration of Kenneth Lawson and selected exhibits |
| SJ Ex. 2a | Ex. 1 – Email re investing in Docu Prep Center (Jan. 2015) |
| SJ Ex. 2b | Ex. 2 – Email re Docu Prep Center investor update (May 2015) |
| SJ Ex. 2c | Ex. 3 – Email re Docu Prep Center investor update (July 2015) |
| | |

---

[1] The Bureau has not attached certain exhibits to declarations that are duplicative of exhibits to other declarations or that the Bureau is not relying on in its Statement of Undisputed Facts. The Bureau can submit those exhibits to the Court upon request.

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

4

| SJ Ex. 3 | Declaration of Erin Mason and selected exhibits |
|---|---|
| SJ Ex. 3a | Ex. 1 – Emails re Experian application (June 2015) |
| SJ Ex. 3b | Ex. 2 – Email & Experian membership application (July 2015) |
| SJ Ex. 3c | Ex. 3 – Email & Certified Doc Prep Services Solicitation Letters (Feb. 2016) |
| SJ Ex. 3d | Ex. 4 – Email & Certified Doc Prep Services script (June 2016) |
| SJ Ex. 3e | Ex. 5 – Email re consumer complaints & refunds (Oct. 2016) |
| | |
| SJ Ex. 4 | Declaration of David Sklar and selected exhibits |
| SJ Ex. 4a | Ex. 1 – Docu Prep Center Solicitation Letters (2016) |
| SJ Ex. 4b | Ex. 2 – Email re Docu Prep Center mailings (Oct. 2016) |
| SJ Ex. 4c | Ex. 3 – Email re price of Experian records (Aug. 2015) |
| SJ Ex. 4d | Ex. 4 – Email re Experian bill (Jan. 2016) |
| SJ Ex. 4e | Ex. 5 – Email re price for Experian records (Mar. 2016) |
| SJ Ex. 4f | Ex. 6 – Email re Docu Prep Center investor update (Apr. 2016) |
| SJ Ex. 4g | Ex. 7 – Checks for Docu Prep Center purchases of Experian records |
| SJ Ex. 4h | Ex. 8 – Email & Docu Prep Center script (May 2015) |
| SJ Ex. 4i | Ex. 9 – Docu Prep Center employee manual (2016) |
| SJ Ex. 4j | Ex. 10 – Email re advance fees (May 2015) |
| SJ Ex. 4k | Ex. 11 – Email re Docu Prep Center investor update (July 2015) |
| SJ Ex. 4l | Ex. 12 – Distribution checks |
| | |
| SJ Ex. 5 | Declaration of Mikael van Loon |
| SJ Ex. 5a | Ex. 1 – Email re marketing meeting (Sep. 2016) |
| **Excerpts of Deposition Transcripts and Selected Deposition Exhibits** | |
| SJ Ex. 6 | Deposition of Frank Anthony Sebreros, taken by Plaintiff on Dec. 20, 2020 (excerpts) |
| SJ Ex. 6a | Ex. 2 – Assure Direct Services Solicitation Letters (2016-2017) |
| SJ Ex. 6b | Ex. 3  -  Docu Prep Center Training Manual |
| SJ Ex. 6c | Ex. 5 – Email re Assure Direct Services sales practices |
| SJ Ex. 6d | Ex. 8 – Email re ADS/DDS/SPS/ASC Mailing |
| | |
| SJ Ex. 7 | Deposition of Jawad Nesheiwat, taken on Jan. 19, 2021 (excerpts) |
| SJ Ex. 7a | Ex. 16 – Solicitation Letters (2015-2016) |
| SJ Ex. 7b | Ex. 17 – Solicitation Letters (2016-2017) |
| | |
| SJ Ex. 8 | 30(b)(6) Deposition of Docs Done Right, Inc., taken on Jan. 22, 2021 (Designated Witness: Eduardo Martinez) (excerpts) |
| SJ Ex. 8a | Ex. 20 – Email & Compliance Worksheet (Nov. 2015) |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

5

| | |
|---|---|
| SJ Ex. 9 | Deposition of Eduardo Martinez, taken on Mar. 2, 2021 (excerpts) |
| **Excerpts of Investigational Hearing Transcripts** | |
| SJ Ex. 10 | Investigational Hearing of Mikael van Loon, taken on Nov. 28, 2018 (excerpts) |
| SJ Ex. 11 | Investigational Hearing of Eduardo Martinez, taken on Mar. 27, 2019 (excerpts) |
| | |
| SJ Ex. 12 | Investigational Hearing of Sean Cowell, taken on Feb. 27, 2019 (excerpts) |
| **Excerpts of Discovery and Civil Investigative Demand (CID) Requests and Responses** | |
| SJ Ex. 13 | Plaintiff's First Set of Requests for Admission to Defendant Nesheiwat |
| SJ Ex. 13a | Ex. A – Monster Loans' Experian Membership Application |
| SJ Ex. 13b | Ex. B – Experian Standard Terms and Conditions Agreement |
| SJ Ex. 13c | Ex. C – Experian Prescreening Services Schedule |
| SJ Ex. 13d | Ex. D – Email re solicitation letter (June 2015) |
| SJ Ex. 13e | Ex. E – Emails re new Experian account (May 2017) |
| SJ Ex. 13f | Ex. F – Email re compliance with Telemarketing Sales Rule (Apr. 2015) |
| SJ Ex. 13g | Ex. G – Email re Docu Prep Center investor update (May 2015) |
| SJ Ex. 13h | Ex. I – Email re Docu Prep Center investor update (July 2015) |
| | |
| SJ Ex. 14 | Defendant Nesheiwat's Response to Plaintiff's Requests for Admission, dated Nov. 12, 2020 (excerpts) |
| SJ Ex. 15 | Defendant Lend Tech Loans, Inc.'s Response to Plaintiff's First Set of Interrogatories, dated July 21, 2020 (excerpts) |
| SJ Ex. 16 | Experian's Response to Interrogatory No. 2 in Bureau's Dec. 19, 2018 CID to Experian (excerpts) |
| **Expert Report** | |
| SJ Ex. 17 | Declaration of Dr. David M. Skanderson |
| SJ Ex. 17a | Expert Report of Plaintiff's expert Dr. David M. Skanderson, dated Dec. 14, 2020 |
| **Third Party Declarations** | |
| SJ Ex. 18 | Declaration of April Glaze (Experian) |
| SJ Ex. 18a | Ex. 1 – Monster Loans' Membership Application |
| SJ Ex. 18b | Ex. 2 – Standard Terms and Conditions Agreement |
| SJ Ex. 18c | Ex. 3 – Prescreening Services Schedule |
| | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

6

| SJ Ex. 19 | Declaration of Patricia Marple (Experian) |
|---|---|
| SJ Ex. 19a | Ex. 1 – Lend Tech Loans' Membership Application |
| | |
| SJ Ex. 20 | Declaration of Susan Moser (Experian) |
| SJ Ex. 21 | Declaration of Peter Henke (Experian) |
| SJ Ex. 22 | Declaration of Alexander Klarow (Automated Mailers) |
| SJ Ex. 23 | Declaration of Christopher Queen (Debt Pay Gateway, Inc.) |
| SJ Ex. 24 | Declaration of Stephen Chaya (Account Management Systems, LLC, f/k/a Reliant Account Management) |
| **Bureau Declarations and Request for Judicial Notice** | |
| SJ Ex. 25 | Declaration of Mansour Heidari |
| | |
| SJ Ex. 26 | Declaration of Annais Ramirez-Velazquez re Experian Records |
| SJ Ex. 26a | Ex. 1 – Experian Order Summary |
| SJ Ex. 26b | Ex. 2 – Chart of Monster Loans Order Summaries |
| | |
| SJ Ex. 27 | Declaration of Annais Ramirez-Velazquez re Debt Pay Pro Records |
| | |
| SJ Ex. 28 | Declaration of Annais Ramirez-Velazquez re Forbearance Records |
| SJ Ex. 28a | Ex. 1 – Forbearance Request |
| SJ Ex. 28b | Ex. 2 – Review of Forbearance Request Sample |
| SJ Ex. 28c | Ex. 3 – Review of Additional Forbearance Request Sample |
| | |
| SJ Ex. 29 | Declaration of Colin Reardon |
| SJ Ex. 30 | Declaration of Dani Schneider |
| SJ Ex. 31 | Request for Judicial Notice |
| **Consumer Declarations** | |
| SJ Ex. 32 | Declaration of Dennis Akwensioge |
| SJ Ex. 32a | Ex. A – Email & consolidation packet (Mar. 2016) |
| | |
| SJ Ex. 33 | Declaration of Joseph Blevins |
| SJ Ex. 33a | Ex. A – Email re cancellation and refund (Nov. 2017) |
| | |
| SJ Ex. 34 | Declaration of Michael Capeci |
| | |
| SJ Ex. 35 | Declaration of Michael Chekanski |
| SJ Ex. 35a | Ex. A – Direct Document Solutions Solicitation Letter (2017) |
| SJ Ex. 35b | Ex. B – Agreement |
| SJ Ex. 35c | Ex. C – Email re consolidation packet (May 2017) |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

7

| | |
|---|---|
| SJ Ex. 35d | Ex. D – Email re consolidation submission (June 2017) |
| SJ Ex. 35e | Ex. E – Email re consolidation application (June 2017) |
| | |
| SJ Ex. 36 | Declaration of April Davis |
| SJ Ex. 36a | Ex. A – Certified Doc Prep Services Solicitation Letter (2017) |
| SJ Ex. 36b | Ex. B – Agreement |
| SJ Ex. 36c | Ex. C – Email re consolidation packet (Mar. 2017) |
| SJ Ex. 36d | Ex. D – Email re consolidation submission (Apr. 2017) |
| | |
| SJ Ex. 37 | Declaration of Brittany Hampton |
| SJ Ex. 37a | Ex. A – Agreement |
| SJ Ex. 37b | Ex. B – Email & consolidation packet (July 2017) |
| SJ Ex. 37c | Ex. C – Email re receipt of documents (July 2017) |
| | |
| SJ Ex. 38 | Declaration of Natalie Hebin |
| SJ Ex. 38a | Ex. A – Email & consolidation documents, agreement (Dec. 2015) |
| SJ Ex. 38b | Ex. B – Email & payment reminder (Dec. 2015) |
| | |
| SJ Ex. 39 | Declaration of Jodie Jones |
| SJ Ex. 39a | Ex. A – Certified Doc Prep Services Solicitation Letter (Jan. 2017) |
| SJ Ex. 39b | Ex. B – Email & consolidation packet (Feb. 2017) |
| | |
| SJ Ex. 40 | Declaration of James Kenner |
| SJ Ex. 40a | Ex. A – Forbearance request (2017) |
| SJ Ex. 40b | Ex. B – Email re credit score (Jan. 2017) |
| | |
| SJ Ex. 41 | Declaration of Jose Marin |
| SJ Ex. 41a | Ex. A – Docu Prep Center Solicitation Letter (2017) |
| SJ Ex. 41b | Ex. B – Agreement |
| SJ Ex. 41c | Ex. C – Servicer letter re consolidation (Feb. 2017) |
| | |
| SJ Ex. 42 | Declaration of Joshua Martin |
| SJ Ex. 42a | Ex. A – Consolidation packet (2016) |
| | |
| SJ Ex. 43 | Declaration of Laura O'Neill |
| SJ Ex. 43a | Ex. A – Consumer complaint (Jan. 2017) |
| | |
| SJ Ex. 44 | Declaration of Jordan Sowinski |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

8

| SJ Ex. 44a | Ex. A – Agreement |
|---|---|
| | |
| SJ Ex. 45 | Declaration of Thera Storm |
| SJ Ex. 45a | Ex. A – Email & consolidation documents (Dec. 2015) |
| SJ Ex. 45b | Ex. B – Email re cancellation and refund (Jan. 2016) |
| SJ Ex. 45c | Ex. C – Email re consolidation summary (Jan. 2016) |
| **Government Records and Websites**[2] | |
| SJ Ex. 46 | California Secretary of State filings |
| SJ Ex. 47 | Federal Student Aid, U.S. Department of Education, "Student Loan Consolidation." |
| SJ Ex. 48 | Federal Student Aid, U.S. Department of Education, "Forbearance." |
| SJ Ex. 49 | Federal Student Aid, U.S. Department of Education, "Servicers." |
| SJ Ex. 50 | Federal Student Aid, U.S. Department of Education, "Repayment Plans." |
| SJ Ex. 51 | Federal Student Aid, U.S. Department of Education, "Student Loan Repayment." |
| **Documents Produced by Monster Loans**[3] | |
| SJ Ex. 52 | Email re Docu Prep Center mailing (June 2015) |
| SJ Ex. 53 | Email re Docu Prep Center voicemail scripts (Oct. 2015) |
| SJ Ex. 54 | Email re Docu Prep Center mailing (Dec. 2015) |
| SJ Ex. 55 | Email re Docu Prep Center and Certified Doc Prep Services priorities (Feb. 2016) |
| SJ Ex. 56 | Email re communicating with Experian (Sep. 2016) |
| SJ Ex. 57 | Email re pricing of Experian records (Dec. 2016) |
| SJ Ex. 58 | Email re marketing data for SLDR Companies (Feb. 2017) |
| SJ Ex. 59 | Emails re new Experian account (May 2017) |
| SJ Ex. 60 | Emails re mailing house (June 2017) |
| SJ Ex. 61 | Emails re mailing order (June 2017) |

[2] Government records and websites are authenticated in the declaration of Colin Reardon. SJ Ex. 29. The Bureau's request for judicial notices of those documents is SJ Ex. 31.

[3] Documents produced by Monster Loans to the Bureau (which have Bates numbers beginning with "ML") are authenticated in the declaration of Mikael van Loon. SJ Ex. 5 at ¶¶ 18-22. In addition to the documents in this section, documents produced by Monster Loans are included as exhibits to certain declarations and depositions identified above. In some instances, other witnesses (in addition to van Loon) have also authenticated documents produced by Monster Loans, as explained in individual declarations and in deposition testimony.

| | |
|---|---|
| SJ Ex. 62 | Email re mailing house balance (July 2017) |
| SJ Ex. 63 | Email & Docu Prep Center Solicitation Letter (Aug. 2017) |
| **Documents Produced by Automated Mailers[4]** | |
| SJ Ex. 64 | Email & Docu Prep Center Solicitation Letter (May 2015) |
| SJ Ex. 65 | Email & SLDR Companies' Solicitation Letters (May 2017) |

**Exhibits filed with Plaintiff's Reply in Support of its Motion for Summary Judgment**

| | |
|---|---|
| **Bureau Declarations** | |
| SJ Ex. 66 | Supplemental Declaration of Dani Schneider |
| SJ Ex. 67 | Supplemental Declaration of Colin Reardon |

---

[4] Documents produced by Automated Mailers to the Bureau are authenticated in the Declaration of Alexander Klarow. SJ Ex. 22.

# CONSOLIDATED STATEMENT OF PLAINTIFF'S UNDISPUTED FACTS AND DEFENDANT'S GENUINE DISPUTES OF MATERIAL FACT

***Prefatory Note by Bureau***: Defendant Nesheiwat's Statement of Genuine Disputes of Material Fact, *see* ECF No. 201, did not comply with the Court's standing order governing summary judgment motions in two ways: (1) it omitted numerous facts from the Bureau's Statement of Undisputed Facts and failed to state whether those facts were disputed or undisputed, and (2) it omitted the "Supporting Evidence" column and edited (and at times omitted information from) the Bureau's descriptions of its supporting evidence in the course of responding to that evidence in the "Def.'s Response" column. For clarity, consistency with the Court's standing order, and the Court's convenience, the Bureau has consolidated the parties' respective statements in the table below. Where Nesheiwat did not dispute a fact, the Bureau has left the "Def.'s Response" column blank.

| Pl.'s SUF No. | Fact | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| **I.  OVERVIEW OF DEFENDANTS** | | | |
| **A.    Corporate Defendants** | | | |
| 1. | Chou Team Realty, Inc. was a California corporation that operated between 2014 and 2018. | SJ Ex. 5 (Van Loon Decl.) at ¶ 7; SJ Ex. 3 (Mason Decl.) at ¶¶ 2, 33 | |
| 2. | Chou Team Realty, Inc. did business as Monster Loans ("Monster Loans"). | SJ Ex. 5 (Van Loon Decl.) at ¶ 7; SJ Ex. 3 (Mason Decl.) at ¶ 2 | |

| 3. | Monster Loans operated as a mortgage lender. | SJ Ex. 5 (Van Loon Decl.) at ¶ 7 | |
|---|---|---|---|
| 4. | Docu Prep Center, Inc. was incorporated in California in February 2015. | SJ Ex. 1 (Hoose Decl.) at ¶ 2 | |
| 5. | Document Preparation Services, LP was registered as a limited partnership in California in October 2015. | SJ Ex. 1 (Hoose Decl.) at ¶ 3 | |
| 6. | Docu Prep Center, Inc. was the general partner of Document Preparation Services, LP (collectively, "Docu Prep Center"). | SJ Ex. 1 (Hoose Decl.) at ¶ 3; SJ Ex. 5 (Van Loon Decl.) at ¶ 3 | |
| 7. | Docu Prep Center initially conducted business using the name DocuPrep Center. | SJ Ex. 1 (Hoose Decl.) at ¶ 4; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 11. | |
| 8. | Beginning on or about March 31, 2016, Docu Prep Center conducted business using the name Certified Document Center.[5] | SJ Ex. 1 (Hoose Decl.) at ¶ 4; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 11 | |
| 9. | Certified Doc Prep, Inc. was registered as a corporation in California in October 2015. | SJ Ex. 46 at 3 | |
| 10. | Certified Doc Prep Services, LP was registered as a limited | SJ Ex. 46 at 4 | |

---

[5] In this Statement of Undisputed Facts, the Bureau has generally referred to "Docu Prep Center," rather than to its dbas DocuPrep Center and Certified Document Center. Some of the exhibits cited in this Statement refer to Docu Prep Center by its dba names.

| | | | |
|---|---|---|---|
| | | partnership in California in October 2015. | |
| | 11. | Certified Doc Prep, Inc. was the general partner of Certified Doc Prep Services, LP (collectively, "Certified Doc Prep Services"). | SJ Ex. 5 (Van Loon Decl.) at ¶ 3; SJ Ex. 46 at 4 | |
| | 12. | Assure Direct Services, Inc. was registered as a corporation in California in August 2016. | SJ Ex. 46 at 5 | |
| | 13. | Assure Direct Services, LP was registered as a limited partnership in California in August 2016. | SJ Ex. 46 at 6 | |
| | 14. | Between August 2016 and around January 2018, Assure Direct Services, Inc. was the general partner of Assure Direct Services, LP. | SJ Ex. 5 (Van Loon Decl.) at ¶ 3; SJ Ex. 46 at 6-7; *see also* SJ Ex. 4 (Sklar Decl.) at ¶¶ 74-75 (change in Jan. 2018) | |
| | 15. | Direct Document Solutions, Inc. was registered as a corporation in California in January 2017. | SJ Ex. 46 at 8 | |
| | 16. | Direct Document Solutions, LP was registered as a limited partnership in California in January 2017. | SJ Ex. 46 at 9 | |
| | 17. | Between January 2017 and around January 2018, Direct Document Solutions, Inc. was the general partner of Direct Document Solutions, LP. | SJ Ex. 5 (Van Loon Decl.) at ¶ 3; SJ Ex. 46 at 9-10; *see also* SJ Ex. 4 (Sklar Decl.) at ¶¶ 74-75 | |

| | | | |
|---|---|---|---|
| | | (change in Jan. 2018) | |
| 18. | Secure Preparation Services, Inc. was registered as a corporation in California in January 2017. | SJ Ex. 46 at 11 | |
| 19. | Secure Preparation Services, LP was registered as a limited partnership in California in January 2017. | SJ Ex. 46 at 12 | |
| 20. | Between January 2017 and around January 2018, Secure Preparation Services, Inc. was the general partner of Secure Preparation Services, LP. | SJ Ex. 5 (Van Loon Decl.) at ¶ 3; SJ Ex. 46 (SPS Registrations); *see also* SJ Ex. 4 (Sklar Decl.) at ¶¶ 74-75 (change in Jan. 2018) | |
| 21. | Docu Prep Center, Certified Doc Prep Services, Assure Direct Services, Direct Document Solutions, and Secure Preparation Services (collectively, the "SLDR Companies") each offered services to consumers with student loans. | SJ Ex. 5 (Van Loon Decl.) at ¶ 2; SJ Ex. 1 (Hoose Decl.) at ¶ 7 | |
| 22. | Docu Prep Center began operating in February 2015. | SJ Ex. 1 (Hoose Decl.) at ¶ 8-19; SJ Ex. 4 (Sklar Decl.) at ¶ 16. | |
| 23. | Docu Prep Center enrolled new customers between at least June 3, 2015 and April 17, 2017. | SJ Ex. 25 (Heidari Decl.) at ¶ 37; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 70. | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

14

| 24. | Certified Doc Prep Services enrolled new customers between at least January 4, 2016 and March 3, 2017. | SJ Ex. 25 (Heidari Decl.) at ¶ 37 | |
| --- | --- | --- | --- |
| 25. | Assure Direct Services enrolled new customers between at least August 9, 2016 and September 22, 2017. | SJ Ex. 25 (Heidari Decl.) at ¶ 37; *see also* SJ Ex. 6 (Sebreros Dep.) at 13:12-14:20 | |
| 26. | Direct Document Solutions enrolled new customers between at least April 17, 2017 and September 22, 2017. | SJ Ex. 25 (Heidari Decl.) at ¶ 37; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 70 | |
| 27. | Secure Preparation Services enrolled new customers between at least April 3, 2017 and September 21, 2017. | SJ Ex. 25 (Heidari Decl.) at ¶ 37; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 71 | |
| 28. | In September 2017, the Bureau served civil investigative demands ("CIDs") on certain of the SLDR Companies. | SJ Ex. 29 (Reardon Decl.) at ¶ 60; SJ Ex. 4 (Sklar Decl.) at ¶ 73; SJ Ex. 12 (Cowell IH) at 230:6-231:8 | |
| 29. | Assure Direct Services, Direct Document Solutions, and Secure Preparation Services shut down in September 2017 in response to receiving the Bureau's CIDs. | SJ Ex. 4 (Sklar Decl.) at ¶ 73; SJ Ex. 12 (Cowell IH) at 230:6-231:8; SJ Ex. 8 (DDR Dep.) at 36:19-24; SJ Ex. 6 (Sebreros Dep.) at 164:15-165:9 | |
| 30. | Docs Done Right, Inc. was registered as a corporation in California in October 2015. | SJ Ex. 46 at 1 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

15

| 31. | Docs Done Right, LP was registered as a limited partnership in California in March 2016. | SJ Ex. 46 at 2 | |
| 32. | Docs Done Right, Inc. was the general partner of Docs Done Right, LP (collectively "Docs Done Right"). | SJ Ex. 46 at 2 | |
| 33. | Lend Tech Loans, Inc. ("Lend Tech") was registered as a California corporation on June 15, 2017. | SJ Ex. 46 at 14 | |

**B.   Jawad Nesheiwat**

| 34. | Jawad Nesheiwat ("Nesheiwat") was a co-founder of Monster Loans. | SJ Ex. 5 (Van Loon Decl.) at ¶ 11[6] | **DISPUTED**: There is no admissible evidence to support this assertion. Specifically, Nesheiwat objects to and moves to strike Ex. 5, ¶ 11 of Van Loon Decl. because it: (a) misstates the testimony (¶ 11 does not state this); (b) is based on hearsay (i.e., documents); (c) lacks personal knowledge, foundation; and (d) are legal conclusion. *See* Evidentiary Objections to Van Loon Decl., ¶ 11, which is concurrently filed herewith ("Van Loon Objections"). |

---

[6] Bureau note: This fact should have cited ¶ 21 in SJ Ex. 5, rather than ¶ 11.

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

16

| 35. | Nesheiwat worked at Monster Loans between 2015 and April 2017. | SJ Ex. 5 (Van Loon Decl.) at ¶ 11; *see also* SJ Ex. 3 (Mason Decl.) at ¶¶ 2-3; SJ Ex. 7 (Nesheiwat Dep.) at 29:18-30:2 (invoking Fifth Amendment) | |
| 36. | Nesheiwat was Monster Loans' chief operating officer. | SJ Ex. 5 (Van Loon Decl.) at ¶ 11; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 29:18-30:2 (invoking Fifth Amendment) | |
| 37. | Nesheiwat oversaw Monster Loans' sales and marketing. | SJ Ex. 5 (Van Loon Decl.) at ¶ 11; SJ Ex. 1 (Hoose Decl.) at ¶ 15; SJ Ex. 3 (Mason Decl.) at ¶ 3; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 30:18-31:14 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶ 6); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12) (Disputes that Nesheiwat oversaw anything as Robert Hoose was in charge.)<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 5, ¶ 11 of Van Loon Decl.<br>   SJ Ex. 1, ¶ 15 of Hoose Decl.<br>   SJ Ex. 3, ¶ 3 of Mason Decl. because it:<br>   (a) lack personal knowledge, foundation; and<br>   (b) are based on hearsay (i.e., documents). |

| | | | | |
|---|---|---|---|---|
| | | | | *See* Evidentiary Objections: Van Loon Objections; Hoose Objections; and Mason Objections.

SJ Ex. 7, 30:18-31:14 of Nesheiwat Dep. because it is:
  (a) irrelevant & prejudicial;
  (b) violates *Griffin v. California*, 380 U.S. 609, 612 (1965) ("*Griffin*"), which prohibits any "adverse comment" because it creates a constitutionally prohibited negative inference—*i.e.*, that the defendant is hiding something. Thus, the Court in *Griffin* held that this assumption amounts to an unfair penalty on a defendant's invocation of a constitutionally protected right.

*See* Nesheiwat Dep. Objections. |
| 38. | Between 2015 and 2018, Nesheiwat owned limited partnership interests in the SLDR Companies. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 80, 91 98; SJ Ex. 4 (Sklar Decl.) at ¶ 15, 59 61; SJ Ex. 3 (Mason Decl.) at ¶ 15; SJ Ex. 5 (Van Loon Decl.) at ¶ 4; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 33:19-39:22 (invoking Fifth Amendment) | | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:**

SJ Ex. 1 (Hoose Decl.) at ¶¶ 80, 91 98;
SJ Ex. 4 (Sklar Decl.) at ¶ 15, 59 61;
SJ Ex. 3 (Mason Decl.) at ¶ 15;
SJ Ex. 5 (Van Loon Decl.) at ¶ 4 |

| | | | |
|---|---|---|---|
| | | | because they:<br>   (a) are based on hearsay (*i.e.*, documents);<br>   (b) lack personal knowledge, foundation; and<br>   (c) are legal conclusions.<br><br>*See* Evidentiary Objections: Hoose Objections, Sklar Objections; Mason Objections; and Van Loon Objections.<br><br>   SJ Ex. 7, 33:19-39:22 of Nesheiwat Dep. because it is:<br>   (a) irrelevant & prejudicial;<br>   (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 39. | Nesheiwat was a limited partner in Docs Done Right during 2016 and 2017. | SJ Ex. 8 (DDR Dep.) at 33:18-34:8; SJ Ex. 11 (Martinez IH) at 20:2-6 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 8 (DDR Dep.) at 33:18-34:8;<br>   SJ Ex. 11 (Martinez IH) at 20:2-6<br><br>because they:<br>   (a) are based on hearsay (*i.e.*, documents);<br>   (b) lack personal knowledge, foundation; and<br>   (c) are legal conclusions. |

|  |  |  | *See* Evidentiary Objections: DDR Objections, Martinez IH Objections. |
|  |  |  | SJ Ex. 7, 33:19-39:22 of Nesheiwat Dep. because it is: (a) irrelevant & prejudicial; (b) violates *Griffin*. |
|  |  |  | *See* Nesheiwat Dep. Objections. |

| **II.** | **Background on U.S. Department of Education Student Loan Programs** | | |
| 40. | The U.S. Department of Education ("Department of Education" or "ED") offers various repayment plans to eligible consumers with federal student loans, including plans that may result in lower monthly loan payments and student loan forgiveness after a certain number of payments. | SJ Ex. 50 (Repayment Plans) (describing plans) | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 50 (Repayment Plans) (describing plans) because is: (a) is based on hearsay (*i.e.*, documents); (b) lacks personal knowledge, foundation. *See* Evidentiary Objections to SJ Ex. 50. |
| 41. | A Direct Consolidation Loan allows consumers with federal student loans to consolidate (i.e., combine) multiple federal student loans into one loan. | SJ Ex. 47 (Consolidation) at 1; SJ Ex. 8 (DDR Dep.) at 47:16-48:4 | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 47 (Consolidation) at 1: |

| | | | |
|---|---|---|---|
| | | | because it:<br>  (a) is based on hearsay (*i.e.*, documents);<br>  (b) lacks personal knowledge, foundation. *See* Evidentiary Objections to SJ Ex. 47.<br><br>  SJ Ex. 8 (DDR Dep.) at 47:16-48:4:<br><br>because it:<br>  (a) is an improper opinion that lacks proper expertise, foundation, and personal knowledge;<br>  (b) is based on hearsay (*i.e.*, documents);<br>  (c) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections to DDR Dep. |
| 42. | ED does not charge borrowers any fees to consolidate their loans or to access any loan repayment and forgiveness programs. | SJ Ex. 47 (Consolidation) at 1; SJ Ex. 49 (Servicers) at 4 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 47 (Consolidation) at 1;<br>  SJ Ex. 49 (Servicers) at 4<br><br>because they:<br>  (a) are based on hearsay (*i.e.*, documents);<br>  (b) lack personal knowledge, foundation. |

| | | | |
|---|---|---|---|
| 1 | | | *See* Evidentiary Objections to SJ Exs. 47 & 49. |
| 43. | Eligible consumers with federal student loans can request to place their loans in forbearance so that they will not have to make monthly payments. | SJ Ex. 48 (Forbearance) at 1 ("With forbearance, you won't have to make a payment, or you can temporarily make a smaller payment."); SJ Ex. 8 (DDR Dep.) at 123:5-9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 48 (Forbearance) at 1<br>SJ Ex. 8 (DDR Dep.) at 123:5-9<br>because they:<br>(a) are based on hearsay (*i.e.*, documents);<br>(b) lack personal knowledge, foundation; and<br>(c) are improper opinions.<br><br>*See* Evidentiary Objections to SJ Ex. 48 and DDR Dep. |
| 44. | ED's federal student loan programs are administered through student-loan servicers that handle the billing and other services on federal student loans. | SJ Ex. 49 (Servicers) at 1 ("A loan servicer is a company that we assign to handle the billing and other services on your federal student loan on our behalf, at no cost to you."); SJ Ex. 8 (DDR Dep.) at 254:8-23. | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 49 (Servicers) at 1<br>SJ Ex. 8 (DDR Dep.) at 254:8-23.<br>because they:<br><br>(a) are based on hearsay (*i.e.*, documents);<br>(b) lack personal knowledge, foundation; and<br>(c) are improper opinions. |

| | | | |
|---|---|---|---|
| | | | *See* Evidentiary Objections to SJ Ex. 49 and DDR Dep. |
| **III.** | **The SLDR Companies' Process for Marketing, Sale, and Delivery of Debt Relief Services** | | |
| | **A.     The SLDR Companies' Business Model** | | |
| 45. | Docu Prep Center was the first of the Student Loan Companies to be created. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 18-19; SJ Ex. 4 (Sklar Decl.) at ¶ 13. | |
| 46. | Certified Doc Prep Services, Assure Direct Services, Direct Document Solutions, and Secure Preparation Services were "cookie-cutter" copies of Docu Prep Center. | SJ Ex. 6 (Sebreros Dep.) at 14:23-25; 26:4-27:20; 38:16-39:10; *see also* SJ Ex. 1 (Hoose Decl.) at ¶¶ 97, 100-06; SJ Ex. 4 (Sklar Decl.) at ¶¶ 59-68; SJ Ex. 3 (Mason Decl.) at ¶¶ 16-17, 21, 25, 37; SJ Ex. 9 (Martinez Dep.) at 203:4-7. | |
| 47. | Certified Doc Prep Services was closely modeled on Docu Prep Center. | SJ Ex. 3 (Mason Decl.) at ¶ 16. | |
| 48. | The managers of Assure Direct Services, Direct Document Solutions, and Secure Preparation Services were former employees of Docu Prep Center. | SJ Ex. 4 (Sklar Decl.) at ¶ 70-71; SJ Ex. 1 (Hoose Decl.) at ¶ 100; SJ Ex. 3 (Mason Decl.) at ¶ 34. | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

23

| | | | |
|---|---|---|---|
| 49. | At Assure Direct Services, "[e]verything was the same" as at Docu Prep Center, except its location. | SJ Ex. 6 (Sebreros Dep.) at 38:16-39:4. | |
| 50. | In early 2017, the limited partners of Docu Prep Center decided to begin operating that business using a new entity, Direct Document Solutions. | SJ Ex. 4 (Sklar Decl.) at ¶ 70 | |
| 51. | In early 2017, Docu Prep Center's employees were transferred to Direct Document Solutions. | SJ Ex. 4 (Sklar Decl.) ¶ 70 | |
| 52. | In early 2017, the limited partners of Certified Doc Prep Services decided to begin operating that business using a new entity, Secure Preparation Services. | SJ Ex. 4 (Sklar Decl.) at ¶ 71; SJ Ex. 3 (Mason Decl.) at ¶ 36 | |
| 53. | In early 2017, Certified Doc Prep Services' employees were transferred to Secure Preparation Services. | SJ Ex. 4 (Sklar Decl.) at ¶ 71; SJ Ex. 3 (Mason Decl.) at ¶ 37 | |
| 54. | Each of the SLDR Companies offered the same services to consumers. | SJ Ex. 1 (Hoose Decl.) at ¶ 101; SJ Ex. 4 (Sklar Decl.) at ¶ 64; SJ Ex. 3 (Mason Decl.) at ¶ 16; SJ Ex. 6 (Sebreros Dep.) at 38:16-39:4. | |
| 55. | The SLDR Companies' services involved assisting consumers with consolidating their federal student loans and with | SJ Ex. 1 (Hoose Decl.) at ¶ 101; SJ Ex. 4 (Sklar Decl.) at ¶ 64; SJ Ex. 3 (Mason Decl.) at ¶ 16; SJ | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:** |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

24

| | | enrolling in student loan programs offered by ED. | Ex. 6 (Sebreros Dep.) at 38:16-40:1, 58:4-14 | SJ Ex. 1 (Hoose Decl.) at ¶ 101;<br><br>SJ Ex. 4 (Sklar Decl.) at ¶ 64;<br><br>SJ Ex. 3 (Mason Decl.) at ¶ 16;<br><br>SJ Ex. 6 (Sebreros Dep.) at 38:16-40:1, 58:4-14<br><br>because they:<br><br>(a) are based on hearsay (*i.e.*, documents);<br>(b) lack personal knowledge, foundation; and<br>(c) are improper opinions.<br><br>*See* Evidentiary Objections to Hoose Decl.; Sklar Decl.; Mason Decl.; and Sebreros Dep. |
| 56. | During 2016, Docu Prep Center's employee handbook included the following in the "Company Background" section:<br><br>"Certified Document Center and its founders have been in the debt relief industry since 2007 and have led the way in niche sectors such as Debt Settlement, Tax Debt Relief and even Student Debt Relief. … In 2015, Certified Document Center began to assist students burdened with | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168852; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3) at ML00333037. | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4 (Sklar Decl.) at ¶ 45;<br><br>SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168852;<br><br>SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7;<br><br>SJ Ex. 6b (Sebreros Dep. Ex. 3) at ML00333037.<br><br>because they: |

| | | | |
|---|---|---|---|
| | debt by helping them understand and navigate through the maze of programs and available options. Certified Document Center is a proud member of the Association for Student Loan Relief and continues to set the standard for student debt relief." | | (a) are based on hearsay (*i.e.*, documents); (b) lack personal knowledge, foundation. *See* Evidentiary Objections: Sklar Decl. Objections; and Sebreros Dep. Objections. |
| 57. | The SLDR Companies relied on direct mail to generate interest in their services. | SJ Ex. 1 (Hoose Decl.) at ¶ 102; SJ Ex. 4 (Sklar Decl.) at ¶¶ 22, 65; SJ Ex. 6 (Sebreros Dep.) at 29:25-30:4, 39:2-6 | |
| 58. | The SLDR Companies sold their services during sales calls with consumers who called in response to the direct mailings. | SJ Ex. 1 (Hoose Decl.) at ¶ 102; SJ Ex. 4 (Sklar Decl.) at ¶¶ 65-66; SJ Ex. 3 (Mason Decl.) at ¶ 24; SJ Ex. 6 (Sebreros Dep.) at 29:25-30:4 | |
| 59. | The SLDR Companies' revenues were the result of their telemarketing sales to consumers with student loans. | SJ Ex. 1 (Hoose Decl.) at ¶ 105 | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 1 (Hoose Decl.) at ¶ 105 because it: |

| | | | (a) is based on hearsay (*i.e.*, documents); (b) lacks personal knowledge, foundation. *See* Evidentiary Objections: Hoose Decl. Objections. |
|---|---|---|---|
| 60. | The SLDR Companies were each owned by a group of limited partners, including Nesheiwat. | SJ Ex. 4 (Sklar Decl.) at ¶ 61; SJ Ex. 1 (Hoose Decl.) at ¶ 80, 98. | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 4 (Sklar Decl.) at ¶ 61; SJ Ex. 1 (Hoose Decl.) at ¶ 80, 98. because they: (a) are based on hearsay (*i.e.*, documents); (b) lack personal knowledge, foundation; and (c) are legal conclusions. *See* Evidentiary Objections: Sklar Decl. Objections, Hoose Decl. Objections. |
| 61. | The SLDR Companies' profits were distributed to their limited partners, including Nesheiwat. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 91, 97; SJ Ex. 4 (Sklar Decl.) at ¶¶ 59, 60 | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 1 (Hoose Decl.) at ¶¶ 91, 97; SJ Ex. 4 (Sklar Decl.) at ¶¶ 59, 60 |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

27

| | | | because they: |
|---|---|---|---|
| | | | (a) are based on hearsay (*i.e.*, documents); |
| | | | (b) lack personal knowledge, foundation; and |
| | | | (c) are legal conclusions. |
| | | | |
| | | | *See* Evidentiary Objections: Sklar Decl. Objections and Hoose Decl. Objections. |
| 62. | The SLDR Companies worked with support companies to provide their services to consumers. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 20, 23-25, 57-59, 73, 106; SJ Ex. 4 (Sklar Decl.) at ¶¶ 13, 21, 68; SJ Ex. 9 (Martinez Dep.) at 55:15-21; SJ Ex. 8 (DDR Dep.) at 37:18-38:3, 16-21 | |
| 63. | From February 2015 until October or November 2015, Docu Prep Center received support from Student Loan Processing Center ("SLPC"). | SJ Ex. 1 (Hoose Decl.) at ¶¶ 20, 23; SJ Ex. 4 (Sklar Decl.) at ¶¶ 13, 21; SJ Ex. 9 (Martinez Dep.) at 39:5-16, 48:14-18 | |
| 64. | After October or November 2015, Docs Done Right provided support services to Docu Prep Center and the other SLDR Companies. | SJ Ex. 9 (Martinez Dep.) at 38:24-39:21, 220:24-221:6; SJ Ex. 1 (Hoose Decl.) at ¶¶ 23, 106; SJ Ex. 4 (Sklar Decl.) at ¶ 21, 68 | |
| 65. | SLPC and Docs Done Right provided services to | SJ Ex. 1 (Hoose Decl.) at ¶¶ 19, | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

28

| | | | |
|---|---|---|---|
| | | consumers on behalf of the SLDR Companies after a sale was complete. | 23, 25, 57-59, 106; SJ Ex. 4 (Sklar Decl.) at ¶¶ 14, 21, 68; SJ Ex. 9 (Martinez Dep.) at 38:6-39:4, 39:11-16; SJ Ex. 8 (DDR Dep.) at 31:13-16, 21, 24-32:4, 69:24-70:3, 70:16-71:23, 72:4-73:15, 74:4-24 | |
| 66. | The services that SLPC and Docs Done Right provided to the SLDR Companies were referred to as "back end" services. | SJ Ex. 8 (DDR Dep.) at 28:3-9, 36:11-18; SJ Ex. 9 (Martinez Dep.) at 36:7-10, 37:5-8, 38:3-9 | |
| 67. | Docs Done Right was owned by a group of limited partners, including Nesheiwat and other limited partners of the SLDR Companies. | SJ Ex. 8 (DDR Dep.) at 33:18-34:23; 42:5-9; SJ Ex. 4 (Sklar Decl.) at ¶ 21 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 8 (DDR Dep.) at 33:18-34:23; 42:5-9;<br>SJ Ex. 4 (Sklar Decl.) at ¶ 21<br><br>because they:<br>(a) are based on hearsay (*i.e.*, documents);<br>(b) lack personal knowledge, foundation; and<br>(c) are legal conclusions. |

| | | | |
|---|---|---|---|
| | | | *See* Evidentiary Objections: DDR Dep. Objections and Sklar Decl. Objections. |
| 68. | Docs Done Right's limited partners instructed Docs Done Right's manager to work with each of the SLDR Companies. | SJ Ex. 8 (DDR Dep.) at 34:17-36:25 | |
| 69. | At Docs Done Right, "[a]ny big decisions had to be approved by" its limited partners, including compliance questions and refund policies. | SJ Ex. 8 (DDR Dep.) at 39:15-40:18; *see also* SJ Ex. 4 (Sklar Decl.) at ¶ 21 | |
| 70. | At times, Jawad Nesheiwat communicated the limited partners' decisions to Docs Done Right. | SJ Ex. 8 (DDR Dep.) at 42:10-17 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.)<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 8 (DDR Dep.) at 42:10-17<br><br>because it:<br>  (a) lacks personal knowledge, foundation; and<br>  (b) is based on hearsay (i.e., documents). |

| | | | *See* Evidentiary Objections: DDR Dep. Objections. |
|---|---|---|---|
| | **B.** | **The SLDR Companies' Direct Mail Marketing** | |
| 71. | The SLDR Companies marketed their services to consumers nationwide via direct mail. | SJ Ex. 1b (Hoose Decl. Ex. 2) at 1 ("We are mailing to CA, FL, MO, NJ, TX, and VA states."); SJ Ex. 30 (Schneider Decl.) at ¶ 10 (complaints from 35 states); *see also* SJ Ex. 1a (Hoose Decl. Ex. 1); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a (Nesheiwat Dep. Ex. 16); SJ Ex. 7b (Nesheiwat Dep. Ex. 17) | |
| 72. | The SLDR Companies sometimes jointly placed | SJ Ex. 6 (Sebreros Dep.) | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

31

| | | | |
|---|---|---|---|
| | | orders for direct mail through the mailing house they used. | at 128:12-17, 142:21-143:21; SJ Ex. 6d (Sebreros Dep. Ex. 8) | |
| | 73. | The SLDR Companies used the same template for their direct mail solicitations ("Solicitation Letters"). | SJ Ex. 4 (Sklar Decl.) ¶ 65; SJ Ex. 3 (Mason Decl.) ¶ 21; SJ Ex. 6 (Sebreros Dep.) 38:22-39:6, 40:2-6; *see also* SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A) | |
| | 74. | In the Solicitation Letters, the SLDR Companies offered a "Student Loan Consolidation & Payment Reduction Program Prepared For" the consumer to whom the letter was addressed. | SJ Ex. 1a (Hoose Decl. Ex. 1) at 4-6; SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

32

| | | | | |
|---|---|---|---|---|
| | | | 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a (Nesheiwat Dep. Ex. 16); SJ Ex. 7b (Nesheiwat Dep. Ex. 17) | |
| | 75. | The Solicitation Letters included a header with the phrase "FINAL NOTICE" in bold. | SJ Ex. 1a (Hoose Decl. Ex. 1) at 4-6; SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a (Nesheiwat Dep. Ex. 16); SJ Ex. 7b (Nesheiwat Dep. Ex. 17) | |

| | | |
|---|---|---|
| 76. | Until about August or September 2017, the Solicitation Letters told consumers to call the SLDR Companies by specific dates identified in the letters or before their next student loan payment was due. | SJ Ex. 1a (Hoose Decl. Ex. 1); at 4-6; SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a (Nesheiwat Dep. Ex. 16); SJ Ex. 7b (Nesheiwat Dep. Ex. 17) | |
| 77. | The Solicitation Letters included the statement "CALL TOLL-FREE TODAY TO REDEEM YOUR FEDERAL BENEFITS" in bold. | SJ Ex. 1a (Hoose Decl. Ex. 1) at 4-6; SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ | |

| | | | |
|---|---|---|---|
| | | Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a (Nesheiwat Dep. Ex. 16); SJ Ex. 7b (Nesheiwat Dep. Ex. 17) | |
| 78. | During 2015, Docu Prep Center sent Solicitation Letters that included a table referencing "NEW FEDERAL STUDENT LOAN LAW BENEFITS," including "Lower Interest Rates," "Lower Monthly Payments," and "Forgiveness Programs." | SJ Ex. 1 (Hoose Decl.) at ¶¶ 32, 34-35; SJ Ex. 1a (Hoose Decl. Ex. 1) at 4-6 | |
| 79. | In 2016 and 2017, the Solicitation Letters included the statement "Benefits of the Consolidation Program may include" followed by "No credit check," "Interest rate reduction regardless of balance or pay history," "Lower monthly payments based on income and family size," and "Loan forgiveness." | SJ Ex. 1 (Hoose Decl.) at ¶¶ 33-35; SJ Ex. 1b (Hoose Decl. Ex. 2); SJ Ex. 4 (Sklar Decl.) at ¶6 SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-EM-0037418-421; SJ Ex. 36a (Davis Decl. Ex. A); SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a | |

| | | (Chekanski Decl. Ex. A); SJ Exs. 7a and 7b (Nesheiwat Dep. Ex. 16 and 17) | |
|---|---|---|---|
| 80. | The Solicitation Letters were "designed to create urgency and make clients feel that this was something special that could only be done" through the SLDR Companies. | SJ Ex. 9 (Martinez Dep.) at 227:3-21 | **DISPUTED**: There is no admissible evidence to support this assertion. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 9 (Martinez Dep.) at 227:3-21 <br><br> because it: <br><br> (a) calls for speculation; <br> (b) is based on hearsay (*i.e.*, documents); <br> (c) lacks personal knowledge, foundation <br><br> *See* Evidentiary Objections: Martinez Dep. Objections |
| 81. | Eduardo Martinez testified that the Solicitation Letters were "exaggerated" and did not accurately represent the SLDR Companies' services. | SJ Ex. 9 (Martinez Dep.) at 229:9-230:1 | **DISPUTED**: There is no admissible evidence to support this assertion. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 9 (Martinez Dep.) at 229:9-230:1 <br><br> because it: <br><br> (a) is an irrelevant opinion; <br> (b) is based on hearsay (*i.e.*, documents); |

| | | | |
|---|---|---|---|
| | | | (c) lacks personal knowledge, foundation; (d) is an improper opinion; (e) is a factual conclusion. *See* Evidentiary Objections: Martinez Dep. Objections |

**C.    The SLDR Companies' Telemarketing Sales Calls**

| | | | |
|---|---|---|---|
| 82. | The SLDR Companies' sales representatives were directed to use scripts during sales calls. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 41, 65; SJ Ex. 1 (Hoose Decl.) at ¶¶ 54, 60-69; SJ Ex. 3 (Mason Decl.) at ¶ 25; SJ Ex. 6 (Sebreros Dep.) at 38:22-39:4. | |
| 83. | At times, sales representatives deviated from the scripts. | SJ Ex. 4 (Sklar Decl.) at ¶ 41; SJ Ex. 1 (Hoose Decl.) at ¶ 62; SJ Ex. 6c (Sebreros Dep. Ex. 5) (manager criticizing sales reps for "pitching … garbage"); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 34 (authenticating Sebreros Dep. Ex. 5) | |
| 84. | Sales employees of the SLDR Companies were sometimes called "Student Loan Advisors." | SJ Ex. 1 (Hoose Decl.) at ¶ 54; SJ Ex. 6 (Sebreros Dep.) at 28:20-22; SJ Ex. 9 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

37

| | | | | |
|---|---|---|---|---|
| | | | (Martinez Dep.) at 203:12-15. | |
| 85. | During sales calls, sales representatives for the SLDR Companies asked consumers for information about their student loans, finances, and family to identify an ED program for which the consumer would be eligible. | | SJ Ex. 1 (Hoose Decl.) at ¶ 55; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE0000046 0-63; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006178-80; SJ Ex. 36 (Davis Decl.) at ¶ 4; SJ Ex. 35 (Chekanski Decl.) at ¶ 6; SJ Ex. 42 (Martin Decl.) at ¶ 4; SJ Ex. 43 (O'Neill Decl.) at ¶ 5 | |
| 86. | Sales representatives then attempted to "sell the program" by describing its benefits. | | Hoose Decl.) at ¶ 55; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE0000046 4-65; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006181-82; *see also* SJ Ex. 39 (Jones Decl.) at ¶ 4; SJ Ex. 41 (Marin Decl.) at ¶ 5; SJ Ex. 33 (Blevins Decl.) at ¶ 4; SJ Ex. 34 (Capeci Decl.) at ¶ 5 | |
| 87. | Sales representatives typically did not explain the SLDR Companies' | | SJ Ex. 1 (Hoose Decl.) at ¶ 55; SJ Ex. 1a (Hoose | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

38

| | | | |
|---|---|---|---|
| | fees until the end of the sales call. | Decl. Ex. 13) at HOOSE0000046 5; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006183; SJ Ex. 43 (O'Neill Decl.) at ¶ 7; SJ Ex. 44 (Sowinski Decl.) at ¶ 8 | |
| 88. | If the consumer agreed to sign up for the SLDR Companies' services, the sales representatives emailed consumers a set of agreements to sign electronically. | SJ Ex. 1 (Hoose Decl.) at ¶ 55; SJ Ex. 35 (Chekanski Decl.) at ¶¶ 7-8; SJ Ex. 40 (Kenner Decl.) at ¶ 8; SJ Ex. 41 (Marin Decl.) at ¶ 8; SJ Ex. 34 (Capeci Decl.) at ¶ 6 | |
| 89. | Sales representatives for the SLDR Companies sometimes rushed consumers through the enrollment process, including electronically signing the agreements. | SJ Ex. 34 (Capeci Decl.) at ¶ 6; SJ Ex. 38 (Hebin Decl.) at ¶ 5-6; SJ Ex. 44 (Sowinski Decl.) at ¶ 7; SJ Ex. 45 (Storm Decl.) at ¶ 5; SJ Ex. 41 (Marin Decl.) at ¶¶ 6-8. | |
| 90. | Docu Prep Center's employee manual directed sales representatives to "[c]reate a sense of urgency" and "[s]trike while the iron is hot" during sales calls. | SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168868, CFPB-EM-0168881 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | | SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168868, CFPB-EM-0168881<br><br>because it:<br><br>(a) calls for speculation;<br>(b) is based on hearsay (*i.e.*, documents);<br>(c) lacks personal knowledge, foundation;<br>(d) is an irrelevant opinion;<br>(e) is an improper opinion;<br>(f) is a factual conclusion.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections. |
| 91. | If a consumer asked to read Docu Prep Center's agreements and then call Docu Prep Center back, Docu Prep Center's employee manual directed sales representatives to say: "The documents I am sending you to sign are a general set of disclosures that allow us to contact the parties involved to help you consolidate your loans with the U.S. Department of Education. They are time sensitive documents and if you are not prepared to move forward they will expire and your benefits will be denied." | SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168874. | | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168874.<br><br>because it:<br><br>(a) calls for speculation;<br>(b) is irrelevant;<br>(c) is based on hearsay (*i.e.*, documents);<br>(d) lacks personal knowledge, foundation;<br>(e) is an irrelevant as speculative.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

40

| 92. | The SLDR Companies' agreements with consumers included a "Limited Power of Attorney" permitting the SLDR Companies to communicate on consumers' behalf with student loan servicers. | SJ Ex. 41b (Marin Decl. Ex. B) at 8; SJ Ex. 36b (Davis Decl. Ex. B) at 9; SJ Ex. 35b (Chekanski Decl. Ex. B) at 7; SJ Ex. 37a (Hampton Decl. Ex. A) at 8; SJ Ex. 38a (Hebin Decl. Ex. A) at 14; SJ Ex. 44a (Sowinski Decl. Ex. A) at 11 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 41b (Marin Decl. Ex. B) at 8;<br>    SJ Ex. 36b (Davis Decl. Ex. B) at 9;<br>    SJ Ex. 35b (Chekanski Decl. Ex. B) at 7;<br>    SJ Ex. 37a (Hampton Decl. Ex. A) at 8;<br>    SJ Ex. 38a (Hebin Decl. Ex. A) at 14;<br>    SJ Ex. 44a (Sowinski Decl. Ex. A) at 11.<br><br>because they:<br><br>    (a) are improper legal opinions;<br>    (b) are irrelevant;<br>    (c) is based on hearsay (*i.e.*, documents);<br>    (d) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Marin Decl. Objections; Davis Decl. Objections; Chekanski Decl. Objections; Hampton Decl. Objections; Hebin Decl. Objections; Sowinski Decl. Objections. |

| | | | |
|---|---|---|---|
| | **D.    The SLDR Companies' Debt Relief Services** | | |
| 93. | Once the sale was complete, SLPC or Docs Done Right provided consumers with services on behalf of the SLDR Companies. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 19, 23, 25, 57-59, 106; SJ Ex. 4 (Sklar Decl.) at ¶¶ 14, 21, 68; SJ Ex. 9 (Martinez Dep.) at 38:6-39:4; SJ Ex. 8 (DDR Dep.) at 31:13-32:4, 37:18-24; 69:24-70:3, 70:16-71:23, 72:4-73:15, 74:4-24 | |
| 94. | When interacting with consumers, SLPC or Docs Done Right, as applicable, referred to themselves as the SLDR Company that sold services to the consumer. | SJ Ex. 1 (Hoose Decl.) at ¶ 57; SJ Ex. 8 (DDR Dep.) at 65:8-67:17 | |
| 95. | SLPC or Docs Done Right prepared consolidation applications, loan repayment plan requests, and forbearance requests based on information provided by consumers to the SLDR Companies during sales calls. | SJ Ex. 8 (DDR Dep.) at 60:25-62:20, 104:8-105:3, 123:5-12; SJ Ex. 1 (Hoose Decl.) at ¶ 19, 23, 25, 57-59, 106; SJ Ex. 4 (Sklar Decl.) at ¶¶ 14, 21, 68 | |
| 96. | After consumers enrolled, they were sent a packet of documents that generally included a welcome letter, a payment schedule, an | SJ Ex. 1 (Hoose Decl.) at ¶ 58; SJ Ex. 8 (DDR Dep.) at 68:4-7, 69:1-7, 71:16- | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

42

| | | | |
|---|---|---|---|
| | | application to consolidate the consumer's loans, a request to put the consumer into a new student loan repayment plan, and a forbearance request. | 72:20; SJ Ex. 42 (Martin Decl.) at ¶ 7 and Ex. A; SJ Ex. 32 (Akwensioge Decl.) at ¶ 5; SJ Ex. 32a (Akwensioge Decl. Ex. A); SJ Ex. 45 (Storm Decl.) at ¶ 6 and Ex. A | |
| 97. | The packet of documents included instructions directing consumers to sign and return the application documents by e-mail, fax, or mail. | SJ Ex. 1 (Hoose Decl.) at ¶ 58; SJ Ex. 8 (DDR Dep.) at 72:21-73:3; SJ Ex. 36 (Davis Decl.) at ¶ 7 and Ex. C at 2-3; SJ Ex. 32 (Akwensioge Decl.) at ¶ 5; SJ Ex. 32a (Akwensioge Decl. Ex. A at 3, 5; SJ Ex. 45 (Storm Decl.) at ¶ 6 and Ex. A at 3 | |
| 98. | After consumers returned the documents, SLPC or Docs Done Right submitted them to consumers' servicers. | SJ Ex. 8 (DDR Dep.) at 64:6-17; SJ Ex. 9 (Martinez Dep.) at 38:13-23; *see also* SJ Ex. 35 (Chekanski Decl.) at ¶¶ 10, 12; SJ Ex. 36 (Davis Decl.) at ¶¶ 9, 11; SJ Ex. 37 (Hampton | |

| | | | |
|---|---|---|---|
| | | Decl.) at ¶ 13; SJ Ex. 40 (Kenner Decl.) at ¶ 11; SJ Ex. 39 (Jones Decl.) at ¶ 6; SJ Ex. 41 (Marin Decl.) at ¶ 10 | |
| **IV.** | **Nesheiwat Unlawfully Used and Obtained Prescreened Lists to Market Debt Relief Services** | | |
| 99. | Experian Information Solutions, Inc. ("Experian") sells prescreened lists to clients to use in making a firm offer of credit. | SJ Ex. 18 (Glaze Decl.) at ¶ 4; SJ Ex. 19 (Marple Decl.) at ¶ 4. | |
| 100. | In around June 2015, Monster Loans applied for an account with Experian to purchase prescreened lists. | SJ Ex. 18 (Glaze Decl.) at ¶ 10; SJ Ex. 3 (Mason Decl.) at ¶ 4 | |
| 101. | Nesheiwat directed Monster Loans employee Erin Mason ("Mason") to help him apply for the Experian account. | SJ Ex. 3 (Mason Decl.) at ¶ 2, 4; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 70:14-71:4 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶ 6); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12) (Disputes that Nesheiwat oversaw anything as Robert Hoose was in charge.)<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 3 (Mason Decl.) at ¶ 2, 4<br><br>because it:<br>   (a) is irrelevant and vague.<br><br>*See* Evidentiary Objections: Mason Objections. |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 7, 70:14-71:4 of Nesheiwat Dep. because it is:<br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 102. | When it applied, Monster Loans represented to Experian that it would use Experian's prescreened lists to make firm offers of credit to consumers. | | SJ Ex. 18 (Glaze Decl.) at ¶¶ 12, 13 | |
| 103. | As part of the application process, Experian requested an example of the mortgage mailer Monster Loans used. | | SJ Ex. 3 (Mason Decl.) at ¶ 5 | |
| 104. | Nesheiwat told Mason not to provide Experian with the mailer that Monster Loans actually used to market mortgage loans. | | SJ Ex. 3 (Mason Decl.) at ¶ 5; SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies);<br>  (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.)<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 3 (Mason Decl.) at ¶ 5; |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461<br><br>because it:<br>  (a) is irrelevant, and vague and ambiguous as to time;<br>  (b) is based on hearsay (*i.e.*, documents).<br><br>*See* Evidentiary Objections: Mason Objections. |
| 105. | Nesheiwat instead directed Mason to instead provide Experian with what Nesheiwat called a "compliant mailer." | | SJ Ex. 3 (Mason Decl.) at ¶ 5; SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies);<br>  (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.)<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 3 (Mason Decl.) at ¶ 5;<br>  SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461<br><br>because it:<br>  (a) is irrelevant, and vague and ambiguous as to time;<br>  (b) is based on hearsay (*i.e.*, documents). |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

46

| | | | | |
|---|---|---|---|---|
| | | | | *See* Evidentiary Objections: Mason Objections. |
| 106. | | Nesheiwat told Mason that Monster Loans "can[']t provide [Experian] anything we are currently sending out, they will most likely be rejected." | SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.) **Nesheiwat objects to and moves to strike:** SJ Ex. 3a (Mason Decl. Ex. 1) at CFPB-JN-0067461 because it: (a) is irrelevant, and vague and ambiguous as to time; (b) is based on hearsay (*i.e.*, documents). *See* Evidentiary Objections: Mason Decl. Objections. |
| 107. | | Experian requires new clients to attest in their membership application to their permissible purpose to obtain consumer credit information under the Fair Credit Reporting Act ("FCRA") by describing | SJ Ex. 18 (Glaze Decl.) at ¶ 8; SJ Ex. 19 (Marple Decl.) at ¶ 7 | |

| | | | |
|---|---|---|---|
| | their intended use of Experian's consumer data and the nature of their business interactions with consumers. | | |
| 108. | Monster Loans' membership application identified Monster Loans as a mortgage lender. | SJ Ex. 18 (Glaze Decl.) at ¶ 13;  SJ Ex. 18a (Glaze Decl. Ex. 1) at CFPB-JN-0055517 | |
| 109. | The "Permissible Purpose/Appropriate Use" section of Monster Loans' membership application stated that "Monster Loans will be using Experian products and consumer data to select specific demographic information that will be used for marketing purposes" and "to prescreen consumers to make a firm offer of credit." | SJ Ex. 18 (Glaze Decl.) at ¶ 13; SJ Ex. 18a (Glaze Decl. Ex. 1) at CFPB-JN-0055517 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br>    SJ Ex. 18 (Glaze Decl.) at ¶ 13;<br>    SJ Ex. 18a (Glaze Decl. Ex. 1) at CFPB-JN-0055517<br><br>because it:<br><br>  (a) lacks foundation as to authentication of Nesheiwat's signature or whether he completed the application;<br>  (b)  calls for speculation;<br>  (c)  is irrelevant;<br>  (d)  is based on hearsay (*i.e.*, documents);<br>  (e)  lacks personal knowledge, foundation;<br>  (f)  is irrelevant as speculative.<br><br>*See* Evidentiary Objections: Glaze Decl. Objections. |

| 110. | Nesheiwat told Mason what to write in the "Permissible Purpose/Appropriate Use" section of the membership application. | SJ Ex. 3 (Mason Decl.) at ¶ 7 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.) **Nesheiwat objects to and moves to strike:** SJ Ex. 3 (Mason Decl.) at ¶ 7 and Ex. 2 to Mason Decl. because it: (a) is irrelevant, and vague and ambiguous as to time; (b) is based on hearsay (*i.e.*, documents). *See* Evidentiary Objections: Mason Decl. Objections. |
| 111. | Nesheiwat signed the membership application on behalf of Monster Loans. | SJ Ex. 3 (Mason Decl.) at ¶ 7; SJ Ex. 18 (Glaze Decl.) at ¶ 13; SJ Ex. 18a (Glaze Decl. Ex. 1) (membership application) *see also* SJ Ex. 7 (Nesheiwat Dep.) | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 3 (Mason Decl.) at ¶ 7; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

49

| | | | at 71:11-14 (invoking Fifth Amendment) | SJ Ex. 18 (Glaze Decl.) at ¶ 13;<br><br>SJ Ex. 18a (Glaze Decl. Ex. 1) (membership application)<br><br>because they:<br><br>(a) lack foundation as to authentication of Nesheiwat's signature or whether he completed the application;<br>(b) call for speculation;<br>(c) are irrelevant;<br>(d) are based on hearsay (*i.e.*, documents);<br>(e) lack personal knowledge, foundation;<br>(f) are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Mason Decl. Objections and Glaze Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 71:11-14<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 112. | Nesheiwat certified in the membership application that he would "use the Experian product information for no other | SJ Ex. 18 (Glaze Decl.) at ¶ 13; SJ Ex. 18a (Glaze Decl. Ex. 1) at | **DISPUTED**: There is no admissible evidence to support this assertion. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

50

|  | | | |
|---|---|---|---|
|  | | purpose other than what is stated on this application and for the type of business listed on this application." | CFPB-JN-0055518 | **Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 18 (Glaze Decl.) at ¶ 13;<br>    SJ Ex. 18a (Glaze Decl. Ex. 1) at CFPB-JN-0055518<br><br>because they:<br><br>    (a) lack foundation as to authentication of Nesheiwat's signature or whether he completed the application;<br>    (b)  call for speculation;<br>    (c)  is irrelevant;<br>    (d)  are based on hearsay (*i.e.*, documents);<br>    (e)  lack personal knowledge, foundation;<br>    (f)  are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Glaze Decl. Objections. |
| 113. | Experian requires new clients to certify that they will comply with FCRA in its Standard Terms and Conditions agreement and in other applicable agreements, such as its Prescreening Services Schedule. | SJ Ex. 18 (Glaze Decl.) at ¶ 8; SJ Ex. 19 (Marple Decl.) at ¶ 7 | |
| 114. | Nesheiwat signed Experian's Standard Terms and Conditions agreement on behalf of Monster Loans. | SJ Ex. 18 (Glaze Decl.) at ¶ 14; SJ Ex. 18b (Glaze Decl. Ex. 2); *see also* SJ Ex. 7 (Nesheiwat Dep.) | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | at 71:21-72:9 (invoking Fifth Amendment). | SJ Ex. 18 (Glaze Decl.) at ¶ 14; |
|---|---|---|---|---|

Full content of the table:

| # | Statement | Support | Response | |
|---|---|---|---|---|
| | | | at 71:21-72:9 (invoking Fifth Amendment). | SJ Ex. 18 (Glaze Decl.) at ¶ 14;<br><br>SJ Ex. 18b (Glaze Decl. Ex. 2)<br><br>because they:<br><br>(a) lack foundation as to authentication of Nesheiwat's signature or whether he completed the application;<br>(b) call for speculation;<br>(c) are irrelevant;<br>(d) are based on hearsay (*i.e.*, documents);<br>(e) lack personal knowledge, foundation;<br>(f) are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Mason Decl. Objections and Glaze Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 71:21-72:9<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 115. | Nesheiwat signed Experian's Prescreening Services Schedule agreement on behalf of Monster Loans. | SJ Ex. 3 (Mason Decl.) at ¶ 7; SJ Ex. 18 (Glaze Decl.) at ¶ 15; SJ Ex. 18b (Glaze | **DISPUTED**: There is no admissible evidence to support this assertion. | |

| | | | Ex. 3; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 72:11-72:15 (invoking Fifth Amendment) | **Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 3 (Mason Decl.) at ¶ 7;<br>    SJ Ex. 18 (Glaze Decl.) at ¶ 15;<br>    SJ Ex. 18b (Glaze Ex. 3)<br><br>because they:<br><br>    (a) lack foundation as to authentication of Nesheiwat's signature or whether he completed the application;<br>    (b)  call for speculation;<br>    (c)  are irrelevant;<br>    (d)  are based on hearsay (*i.e.*, documents);<br>    (e)  lack personal knowledge, foundation;<br>    (f)  are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Mason Decl. Objections and Glaze Decl. Objections.<br><br>    SJ Ex. 7 (Nesheiwat Dep.) at 72:11-72:15<br><br>because it is:<br><br>    (a) irrelevant & prejudicial;<br>    (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 116. | In the Prescreening Services Schedule, | SJ Ex. 18 (Glaze Decl.) at ¶ 15; SJ | |

| | | | | |
|---|---|---|---|---|
| | | Monster Loans certified that it would "extend a 'firm offer of credit or insurance,' as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA") to every Consumer" whose name appears on a prescreened list or (if applicable) whose name appeared on a final list produced after additional processing of a prescreened list. | Ex. 18c (Glaze Decl. Ex. 3) at CFPB-JN-0055531 | |
| | 117. | On or about August 10, 2015, Experian approved Monster Loans' application for an account to purchase prescreened lists. | SJ Ex. 18 (Glaze Decl.) at ¶ 16 | |
| | 118. | At the time, Nesheiwat intended to use the Experian account to buy prescreened lists for Docu Prep Center to use to send its direct mail. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 30-32; SJ Ex. 4c (Sklar Decl. Ex. 3); *see also* SJ Ex. 7 (Nesheiwat Dep.) at 70:14-71:9, 75:4-76:25 (invoking Fifth Amendment) | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4 (Sklar Decl.) at ¶¶ 30-32;<br>SJ Ex. 4c (Sklar Decl. Ex. 3)<br><br>because they:<br><br>(a) call for speculation;<br>(b) are speculative as to time;<br>(c) are irrelevant;<br>(d) are based on hearsay (*i.e.*, documents); |

| | | | | |
|---|---|---|---|---|
| | | | | (e) lack personal knowledge, foundation;<br>  (f)  are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Mason Decl. Objections and Glaze Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 70:14-71:9, 75:4-76:25<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 119. | Monster Loans began to purchase prescreened lists through the Experian account in around December 2015. | | SJ Ex. 16 (Experian Rog. Resp.); SJ Ex. 1 (Hoose Decl.) at ¶ 41; SJ Ex. 5 (Van Loon Decl.) at ¶ 14; SJ Ex. 54 (December 2015 email for "DocuPrep Order" using "Experian data"); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25 (authenticating SJ Ex. 54); SJ Ex. 26 (Ramirez-Velazquez XPN Decl.) at ¶¶ 6, 7 | |

| | | | |
|---|---|---|---|
| 120. | Monster Loans used its Experian account to obtain prescreened lists for the SLDR Companies. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 41-53, 103; SJ Exs. 1f, 1g, 1h, 1i, 1j (Hoose Decl. Exs. 6, 7, 9, 10, 11); SJ Ex. 4 (Sklar Decl.) at ¶¶ 30-37, 67 and Ex. 4, 5, 6; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 13-15; SJ Ex. 6 (Sebreros Dep.) at 130:25-131:14, 136:10-12; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 75:4-75:16 (invoking Fifth Amendment) | |
| 121. | The prescreened lists that Monster Loans obtained from Experian for the SLDR Companies included consumers' names, addresses, and student loan balances. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 41, 43, 103; SJ Ex. 4 (Sklar. Decl.) at ¶¶ 30, 67; SJ Ex. 6 (Sebreros Dep.) at 130:25-131:14; SJ Ex. 26 (Ramirez-Velazquez XPN Decl.) at ¶ 7; SJ Ex. 26a (Ramirez-Velazquez XPN Decl. Ex. 1); *see also* SJ Ex. 7 (Nesheiwat Dep.) at 74:11-75:16 (invoking Fifth Amendment) | |

| 122. | The SLDR Companies used the prescreened lists to market their services through direct mail. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 41-44, 103; SJ Ex. 1f (Hoose Decl. Ex. 6); SJ Ex. 4 (Sklar Decl.) at ¶¶ 30, 33, 36, 67 & Ex. 6; SJ Ex. 5 (Van Loon Decl.) at ¶ 13 | |
| 123. | The SLDR Companies did not offer or extend credit to consumers. | SJ Ex. 5 (Van Loon Decl.) at ¶ 16; SJ Ex. 6 (Sebreros Dep.) at 39:11-20; SJ Ex. 12 (Cowell IH) at 66:6-9, 256:1-3 | |
| 124. | At times, Monster Loans also sold the prescreened lists to Eduardo Martinez. | SJ Ex. 9 (Martinez Dep.) at 66:19-67:23; SJ Ex. 11 (Martinez IH) at 39:23-41:5, 41:23-43:23 | |
| 125. | Martinez used a company he controlled to resell the prescreened lists to other student loan debt relief companies that were affiliates of Docs Done Right. | SJ Ex. 9 (Martinez Dep.) at 66:19-67:18; SJ Ex. 11 (Martinez IH) at 39:23-41:5. | |
| 126. | Nesheiwat participated in those sales to Martinez. | SJ Ex. 11 (Martinez IH) at 41:23-43:23 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); |

| | | | | (Disputes that Nesheiwat was in control of any entities as he did not form any of the Companies and that Nesheiwat oversaw anything as Robert Hoose was in charge.) |
| --- | --- | --- | --- | --- |
| | | | | **Nesheiwat objects to and moves to strike:** |
| | | | | SJ Ex. 11 (Martinez IH) at 41:23-43:23 |
| | | | | because it: |
| | | | | (a) is irrelevant, and vague and ambiguous as to time; (b) is based on hearsay (*i.e.*, documents). |
| | | | | *See* Evidentiary Objections: Martinez IH Objections. |
| 127. | From around December 2015 until around April 2017, Nesheiwat oversaw purchases of prescreened lists through Monster Loans' Experian account. | SJ Ex. 5 (Van Loon Decl.) at ¶¶ 14-15; SJ Ex. 5a (Van Loon Ex. 1; SJ Ex. 1 (Hoose Decl.) at ¶¶ 42, 43, 49; SJ Ex. 4 (Sklar Decl.) at ¶¶ 30-34); SJ Ex. 4d (Sklar Decl. Ex. 4); *see also* Nesheiwat Dep.) at 73:15-19 (invoking Fifth Amendment) | **<u>DISPUTED</u>**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

58

| | | | | (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |
|---|---|---|---|---|
| | | | | **Nesheiwat objects to and moves to strike:** |
| | | | | SJ Ex. 5 (Van Loon Decl.) at ¶¶ 14-15; SJ Ex. 5a (Van Loon Ex. 1); SJ Ex. 1 (Hoose Decl.) at ¶¶ 42, 43, 49; SJ Ex. 4 (Sklar Decl.) at ¶¶ 30-34); SJ Ex. 4d (Sklar Decl. Ex. 4) |
| | | | | because they: |
| | | | | (a) are irrelevant, and vague and ambiguous as to time; (b) call for speculation; (c) are irrelevant; (d) are based on hearsay (*i.e.*, documents); (e) lack personal knowledge, foundation; (f) are irrelevant as speculative. |
| | | | | *See* Evidentiary Objections: Van Loon Decl. Objections; Sklar Decl. Objections; and Hoose Decl. Objections. |
| | | | | SJ Ex. 7 (Nesheiwat Dep.) at 73:15-19 |
| | | | | because it is: |
| | | | | (a) irrelevant & prejudicial; (b) violates *Griffin*. |

| | | | | |
|---|---|---|---|---|
| | | | | *See* Nesheiwat Dep. Objections. |
| 128. | From around December 2015 until around April 2017, Nesheiwat directed the efforts to obtain prescreened lists through the Experian account for the SLDR Companies. | SJ Ex. 5 (Van Loon Decl.) at ¶¶ 14, 15; SJ Ex. 5a (Van Loon Ex. 1; SJ Ex. 1 (Hoose Decl.) at ¶¶ 41-47, 49, 51, 103; SJ Ex. 4 (Sklar Decl.) at ¶¶ 33, 34; SJ Ex. 54; SJ Ex. 55; SJ Ex. 56; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27 (authenticating SJ Exs. 54, 55, 56); SJ Ex. 7 (Nesheiwat Dep.) at 76:13-77:24 (invoking Fifth Amendment) | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 5 (Van Loon Decl.) at ¶¶ 14, 15, 22-25, 27; SJ Ex. 5a (Van Loon Ex. 1; SJ Ex. 1 (Hoose Decl.) at ¶¶ 41-47, 49, 51, 103; SJ Ex. 4 (Sklar Decl.) at ¶¶ 33, 34; SJ Ex. 54; SJ Ex. 55.<br><br>because they:<br><br>(a) are irrelevant, and vague and ambiguous as to time;<br>(b) call for speculation;<br>(c) are irrelevant; |

| | | | | |
|---|---|---|---|---|
| | | | | (d)  are based on hearsay (*i.e.*, documents); (e)  lack personal knowledge, foundation; (f)  are irrelevant as speculative. *See* Evidentiary Objections: Van Loon Decl. Objections; Sklar Decl. Objections; and Hoose Decl. Objections. SJ Ex. 7 (Nesheiwat Dep.) at 76:13-77:24 because it is: (a) irrelevant & prejudicial; (b) violates *Griffin*. *See* Nesheiwat Dep. Objections. |
| 129. | Nesheiwat was the "architect of the program to provide the Experian prescreened lists to the [SLDR] Companies." | | SJ Ex. 5 (Van Loon Decl.) at ¶ 14; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 76:13-77:24 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

61

| | | | |
|---|---|---|---|
| | | | **Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 5 (Van Loon Decl.) at ¶ 14.<br><br>because it:<br><br>  (a) is irrelevant, and vague and ambiguous as to time;<br>  (b) calls for speculation;<br>  (c) is irrelevant;<br>  (d) is based on hearsay (*i.e.*, documents);<br>  (e) lacks personal knowledge, foundation;<br>  (f) is irrelevant as speculative.<br><br>*See* Evidentiary Objections: Van Loon Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 76:13-77:24<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 130. | Between January 11, 2016 and April 10, 2017, Monster Loans ordered prescreened lists containing prescreened consumer reports for 6,789,777 consumers with student loans. | SJ Ex. 26 (Ramirez Velazquez XPN Decl.) at ¶ 6; *see also* Nesheiwat Dep.) at 81:3-8 (invoking Fifth Amendment). | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 26 (Ramirez Velazquez XPN Decl.) at ¶ 6<br><br>because it:<br><br>    (a) is irrelevant and improper non-designated expert witness and expert testimony;<br>    (b) is irrelevant  and improper opinion;<br>    (c) is irrelevant;<br>    (d) is based on hearsay (*i.e.*, documents);<br>    (e) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Ramirez Velazquez XPN Decl. Objections.<br><br>    SJ Ex. 7 (Nesheiwat Dep.) at 81:3-8<br><br>because it is:<br><br>    (a) irrelevant & prejudicial;<br>    (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 131. | During most of 2016, Nesheiwat directed Monster Loans' marketing manager Bill Abdel to use the Experian account to order prescreened lists for Docu Prep Center. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 43-44; SJ Ex. 4 (Sklar Decl.) at ¶¶ 33, 34; SJ Ex. 4d (Sklar Decl. Ex. 4); *see also* SJ Ex. 1f (Hoose Decl. Ex. 6) (Abdel email re | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

63

| | | | mailing using Experian records); SJ Ex. 7 (Nesheiwat Dep.) at 77:8-12 (invoking Fifth Amendment) | prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

**Nesheiwat objects to and moves to strike:**

SJ Ex. 1 (Hoose Decl.) at ¶¶ 43-44; SJ Ex. 4 (Sklar Decl.) at ¶¶ 33, 34; SJ Ex. 4d (Sklar Decl. Ex. 4);
SJ Ex. 1f (Hoose Decl. Ex. 6)

because they:

(a) are irrelevant, and vague and ambiguous as to time;
(b) call for speculation;
(c) are irrelevant;
(d) are based on hearsay (*i.e.*, documents);
(e) lack personal knowledge, foundation;
(f) are irrelevant as speculative.

*See* Evidentiary Objections: Sklar Decl. Objections; and Hoose Decl. Objections.

SJ Ex. 7 (Nesheiwat Dep.) at 77:8-12.

| | | | |
|---|---|---|---|
| | | | because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 132. | In around September 2016, Nesheiwat directed Max Chou to take over using the Monster Loans Experian account for ordering prescreened lists for the SLDR Companies. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 49-50; SJ Ex. 1h (Hoose Decl. Ex. 9); SJ Ex. 4 (Sklar Decl.) at ¶ 33; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 77:14-18 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 1 (Hoose Decl.) at ¶¶ 49-50; SJ Ex. 1h (Hoose Decl. Ex. 9); SJ Ex. 4 (Sklar Decl.) at ¶ 33;<br><br>because they:<br><br>  (a) are irrelevant, and vague and ambiguous as to time;<br>  (b)  call for speculation; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

65

| | | | | |
|---|---|---|---|---|
| | | | | (c) are irrelevant; (d) are based on hearsay (*i.e.*, documents); (e) lack personal knowledge, foundation; (f) are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections; and Hoose Decl. Objections.<br><br>   SJ Ex. 7 (Nesheiwat Dep.) at 77:14-18<br><br>because it is:<br><br>   (a) irrelevant & prejudicial; (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 133. | At the time, Max Chou was not an employee of Monster Loans. | SJ Ex. 56; SJ Ex. (Hoose Decl.) at ¶ 49; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27 (authenticating SJ Ex. 56); SJ Ex. 7 (Nesheiwat Dep.) at 79:5-8 (invoking Fifth Amendment) | |
| 134. | At that time, Max Chou worked for a debt-relief company called Monster Tax Relief. | SJ Ex. 56; SJ Ex. 1 (Hoose Decl.) at ¶ 49; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27 | |

| | | | |
|---|---|---|---|
| | | (authenticating SJ Ex. 56) | |
| 135. | Nesheiwat directed Max Chou to create a "generic" Monster Loans email account to use when communicating with Experian. | SJ Ex. 56; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27 (authenticating SJ Ex. 56); Nesheiwat Dep.) at 79:10-20 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 56;<br>SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27<br><br>because they:<br><br>(a) are irrelevant, and vague and ambiguous as to time;<br>(b) call for speculation;<br>(c) are irrelevant;<br>(d) are based on hearsay (*i.e.*, documents);<br>(e) lack personal knowledge, foundation; |

| | | | | |
|---|---|---|---|---|
| | | | | (f)  are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Ex. 5 Objection and Van Loon Decl. Objections.<br><br>    SJ Ex. 7 (Nesheiwat Dep.) at 79:10-20<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 136. | Nesheiwat directed Abdel and Chou to send the prescreened lists to the mailing house that the SLDR Companies used. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 27, 33; SJ Ex. 1 (Hoose Decl.) at ¶¶ 43-44 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 4 (Sklar Decl.) at ¶¶ 27, 33;<br><br>  SJ Ex. 1 (Hoose Decl.) at ¶¶ 43-44<br><br>because they:<br><br>  (a) are irrelevant, and vague and ambiguous as to time;<br>  (b)  call for speculation;<br>  (c)  are irrelevant;<br>  (d)  are based on hearsay (*i.e.*, documents);<br>  (e)  lack personal knowledge, foundation;<br>  (f)  are irrelevant as speculative.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections; and Hoose  Decl. Objections. |
| 137. | To reduce expenses and benefit Docu Prep Center, Nesheiwat negotiated with Experian to obtain lower prices for the prescreened lists purchased through Monster Loans' Experian account. | | SJ Ex. 1 (Hoose Decl.) at ¶¶ 45-47; SJ Ex. 1g (Hoose Decl. Ex. 7); SJ Ex. 4 (Sklar Decl.) at ¶¶ 35-36; SJ Ex. 4e (Sklar Decl. Ex. 5; *see also* Nesheiwat Dep.) at 80:9-19 (invoking Fifth Amendment); SJ Ex. 57; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27 (authenticating SJ Ex. 57); | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

69

**Nesheiwat objects to and moves to strike:**

SJ Ex. 1 (Hoose Decl.) at ¶¶ 45-47; SJ Ex. 1g (Hoose Decl. Ex. 7); SJ Ex. 4 (Sklar Decl.) at ¶¶ 35-36; SJ Ex. 4e (Sklar Decl. Ex. 5) SJ Ex. 57; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 27.

because they:

  (a) are irrelevant, and vague and ambiguous as to time;
  (b) call for speculation;
  (c) are irrelevant;
  (d) are based on hearsay (*i.e.*, documents);
  (e) lack personal knowledge, foundation;
  (f) are irrelevant as speculative.

*See* Evidentiary Objections: Sklar Decl. Objections; Hoose  Decl. Objections; Van Loon Decl. Objections.

  SJ Ex. 7 (Nesheiwat Dep.) at 80:9-19

because it is:

  (a) irrelevant & prejudicial;
  (b) violates *Griffin*.

*See* Nesheiwat Dep. Objections.

| | | | |
|---|---|---|---|
| 138. | At times, the SLDR Companies used the consumer information contained in the prescreened lists to send more than one direct mail solicitation to the same consumer. | SJ Ex. 1 (Hoose Decl.) at ¶ 40; SJ Ex. 6 (Sebreros Dep.) at 154:20-155:12 | |
| 139. | In 2016, Monster Loans received complaints from consumers whose information was in the prescreened lists that Monster Loans ordered for the SLDR Companies. | SJ Ex. 1 (Hoose Decl.) at ¶ 53; SJ Ex. 1a (Hoose Decl. Ex. 11) at ¶ 53. | |
| 140. | Between June 2015 and August 2017, those associated with Monster Loans, including Nesheiwat, consistently represented to Experian that Monster Loans was purchasing prescreened lists to make firm offers of credit to potential mortgage customers. | SJ Ex. 18 (Glaze Decl.) at ¶¶ 10, 17. | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 18 (Glaze Decl.) at ¶¶ 10, 17. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

71

| | | | | because it: |
|---|---|---|---|---|
| | | | | (a) is vague and ambiguous as to time; (b) is irrelevant; (c) is based on hearsay (*i.e.*, documents); (d) lacks personal knowledge, foundation. *See* Evidentiary Objections: Glaze Decl. Objections. |
| 141. | No one associated with Monster Loans, including Nesheiwat, ever disclosed to Experian that Monster Loans intended to use or was using the prescreened lists it purchased for any purpose other than making a firm offer of credit to potential mortgage customers. | SJ Ex. 18 (Glaze Decl.) at ¶ 18; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 81:10-14 (invoking Fifth Amendment). | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. **Nesheiwat objects to and moves to strike:** SJ Ex. 18 (Glaze Dec.) at ¶ 18 because it: (a) is vague and ambiguous as to time; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

72

| | | | | |
|---|---|---|---|---|
| | | | | (b) is irrelevant; (c) is based on hearsay (*i.e.*, documents); (d) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Glaze Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 81:10-14<br><br>because it is:<br><br>(a) irrelevant & prejudicial; (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 142. | No one associated with Monster Loans, including Nesheiwat, ever disclosed to Experian that Monster Loans intended to provide or was providing prescreened lists to other companies offering debt relief services. | SJ Ex. 18 (Glaze Decl.) at ¶ 18; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 81:10-14 (invoking Fifth Amendment). | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 18 (Glaze Decl.) at ¶ 18 because it: <br><br> (a) is vague and ambiguous as to time; <br> (b) is irrelevant; <br> (c) is based on hearsay (*i.e.*, documents); <br> (d) lacks personal knowledge, foundation. <br><br> *See* Evidentiary Objections: Glaze Decl. Objections. <br><br> SJ Ex. 7 (Nesheiwat Dep.) at 81:10-14 <br><br> because it is: <br><br> (a) irrelevant & prejudicial; <br> (b) violates *Griffin*. <br><br> *See* Nesheiwat Dep. Objections. |
| | 143. | In around May 2017, Monster Loans stopped using its Experian account to buy prescreened lists for the SLDR Companies because of concerns about violating FCRA | SJ Ex. 10 (Van Loon IH) at 62:4-23, 69:16-70:11; *see also* SJ Ex. 1a (Hoose Decl. Ex. 11) (Oct. 2016 email discussing "freqent complaints … now w written threat of lawsuits") | |
| | 144. | In a series of emails in May 2017, Nesheiwat discussed using a different | SJ Ex. 59; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at |

| | | mortgage company to obtain Experian prescreened lists for the SLDR Companies. | (authenticating SJ Ex. 59); SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27 (invoking Fifth Amendment regarding email) | p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. **Nesheiwat objects to and moves to strike:**   SJ Ex. 59;   SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26 because they:   (a) are vague and ambiguous as to time;   (b) are irrelevant;   (c) are based on hearsay (*i.e.*, documents);   (d) lack personal knowledge, foundation. *See* Evidentiary Objections: Ex. 59 Objections and Van Loon Decl. Objections.   SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27 |
|---|---|---|---|---|

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

75

| | | | |
|---|---|---|---|
| | | | because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 145. | In a May 10, 2017 email to Thomas Chou, Nesheiwat described his efforts to find a "physical commercial space" for a mortgage company and said that "[t]he good news is we are less than 30 days away from buying data" from Experian. | SJ Ex. 59; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26 (authenticating SJ Ex. 59); SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27 (invoking Fifth Amendment regarding email) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 59;<br>SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26<br><br>because they:<br><br>(a) are multiple hearsay;<br>(b) are irrelevant;<br>(c) are based on hearsay (*i.e.*, documents); |

| | | | (d) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Ex. 59 Objections and Van Loon Decl. Objections.<br><br>SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 146. | In a subsequent email to Thomas Chou on May 10, 2017, Nesheiwat wrote that Experian "ask[s] a ton of questions!" | SJ Ex. 59; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26 (authenticating SJ Ex. 59); SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27 (invoking Fifth Amendment regarding email) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:** |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 59;<br><br>SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26<br><br>because they:<br><br>(a) are multiple hearsay;<br>(b) are irrelevant;<br>(c) are based on hearsay (*i.e.*, documents);<br>(d) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Ex. 59 Objections and Van Loon Decl. Objections.<br><br>SJ Ex. 14 (Nesheiwat RFA Resp. No. 16) at 27<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 147. | In an email to Thomas Chou on May 11, 2017, Nesheiwat wrote: "Experian or any other bureau will require a permanent commercial location where they will need to pass an initial inspection and possibly annual. Understanding how easy it is to put together any office space and call it 'ladera ranch | SJ Ex. 59; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26 (authenticating SJ Ex. 59); SJ Ex. 14 (Nesheiwat RFA Resp. No. 16 (invoking Fifth Amendment regarding email) | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

78

| | | | |
|---|---|---|---|
| | home loans' I need to have a story behind it to make sense for the volume of data. Its very important to me personally with the risk involved to cover my butt. I would feel best building the story of ladera ranch home loans and providing data as needed to our businesses and keep it separate in every way possible." | | David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.

**Nesheiwat objects to and moves to strike:**

  SJ Ex. 59;
  SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-26

because they:

  (a) are multiple hearsay;
  (b) are irrelevant;
  (c) are based on hearsay (*i.e.*, documents);
  (d) lack personal knowledge, foundation.

  *See* Evidentiary Objections:  Ex. 59 Objections and Van Loon Decl. Objections.

  SJ Ex. 14 (Nesheiwat RFA Resp. No. 16)

because it is:

  (a) irrelevant & prejudicial;
  (b) violates *Griffin*.

*See* Nesheiwat RFA Objections. |
| 148. | Between 2015 and 2018, Thomas Chou was the owner of Monster Loans. | SJ Ex. 5 (Van Loon Decl.) at ¶ 7 | |

| | | | |
|---|---|---|---|
| 149. | Between 2015 and 2018, Chou was a limited partner in the SLDR Companies. | SJ Ex. 5 (Van Loon Decl.) at ¶ 4; SJ Ex. 1 (Hoose Decl.) at ¶¶ 80, 98 | |
| 150. | Lend Tech was created in June 2017 to provide a new source of Experian prescreened lists for the SLDR Companies. | SJ Ex. 6 (Sebreros Dep.) at 22:21-23:8, 144:17-145:2, 146:22-147:10, 148:8-12; SJ Ex. 46 at 14 (LT Art. of Inc.); *see also* SJ Ex. 7 (Nesheiwat Dep.) at 88:13-17 (invoking Fifth Amendment) | |
| 151. | Lend Tech was registered by Sean Cowell with the California Secretary of State. | SJ Ex. 46 at 14 (LT Art. of Inc.) | |
| 152. | Between 2015 and 2018, Cowell was a limited partner in the SLDR Companies. | SJ Ex. 5 (Van Loon Decl.) at ¶ 4; SJ Ex. 1 (Hoose Decl.) at ¶¶ 80, 98 | |
| 153. | Lend Tech told Experian that it would use prescreened lists to extend firm offers of credit to potential mortgage customers. | SJ Ex. 19 (Marple Decl.) at ¶¶ 10-11; SJ Ex. 19a (Marple Decl. Ex. 1). | |
| 154. | During 2016 and 2017, Frank Anthony Sebreros ("Sebreros") was the manager of Assure Direct Services. | SJ Ex. 6 (Sebreros Dep.) at 13:12-14:7 | |
| 155. | Nesheiwat and other limited partners in the SLDR Companies | SJ Ex. 6 (Sebreros Dep.) at 22:21-23:8, | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

80

| | | | |
|---|---|---|---|
| | instructed Sebreros to use Lend Tech to "obtain an Experian license so the student loan locations could survive … and pull leads." | 144:17-145:7, 146:22-147:14, 147:22-148:12; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 88:19-89:8 (invoking Fifth Amendment). | p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 6 (Sebreros Dep.) at 22:21-23:8, 144:17-145:7, 146:22-147:14, 147:22-148:12<br><br>because they:<br><br>   (a) are multiple hearsay;<br>   (b) are irrelevant;<br>   (c) are based on hearsay (*i.e.*, documents);<br>   (d) lack personal knowledge, foundation.<br><br>   *See* Evidentiary Objections:  Sebreros Decl. Objections.<br><br>   SJ Ex. 7 at 88:19-89:8<br><br>because it is: |

| | | | | |
|---|---|---|---|---|
| | | | | (a) irrelevant & prejudicial; (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| | 156. | Lend Tech has never brokered or originated any mortgage loans. | SJ Ex. 9 (Martinez Dep.) at 64:20-65:2, 93:20-94:10; SJ Ex. 6 (Sebreros Dep.) 147:15-21; SJ Ex. 15 (Lend Tech Rog Resp. Nos. 3 & 4). | |
| | 157. | Sebreros testified that Lend Tech "wasn't a real company." | SJ Ex. 6 (Sebreros Dep.) at 149:11-13 *see also* SJ Ex. 11 (Martinez IH) at 233:8-234:2. | |
| | 158. | Between August and October 2017, Lend Tech purchased from Experian prescreened lists containing prescreened consumer reports for 1,503,964 consumers. | SJ Ex. 26 (Ramirez-Velazquez XPN Decl.) at ¶ 6 | |
| | 159. | Lend Tech provided the prescreened lists to the SLDR Companies for use in the SLDR Companies' marketing. | SJ Ex. 6 (Sebreros Dep.) at 146:22-147:10, 162:24-163:5; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 88:19-89:8 (invoking Fifth Amendment) | |

| | | | |
|---|---|---|---|
| **V.** | **The SLDR Companies Made False Promises to Consumers About the Benefits of Their Services in Marketing Materials and Sales Calls** | | |
| | **A.** | **The SLDR Companies Falsely Promised that Consumers Would Receive Lower Interest Rates By Consolidating** | |
| 160. | During 2015, Docu Prep Center's Solicitation Letters listed a "Lower Interest Rate" as a benefit of the company's "Student Loan Consolidation & Payment Reduction Program." | SJ Ex. 1a (Hoose Decl. Ex. 1) at 4-6; SJ Ex. 1 (Hoose Decl.) at ¶¶ 32, 34-35 | |
| 161. | During 2016 and 2017, the SLDR Companies' Solicitation letters stated: "Our records indicate that your federal student loans may be eligible for a consolidation with the U.S. Department of Education. As a federal student loan holder, you may be eligible to convert your existing high-interest loan into a federally-backed consolidation with a lower rate.*" | SJ Ex. 1 (Hoose Decl.) at ¶¶ 33-35 & Ex. 2; SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-JN-0037419-21; SJ Ex. 36a (Davis Decl. Ex. A) SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a and 7b (Nesheiwat Dep. Ex. 16 and 17) | |

| | | |
|---|---|---|
| 162. | During 2016 and 2017, the SLDR Companies' Solicitation Letters included the following statement in smaller print at the bottom of the Letters: "*The Department of Education may offer an interest rate reduction with set-up of automatic payments." | SJ Ex. 1 (Hoose Decl.) at ¶¶ 33-35 & Ex. 2; SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-JN-0037419-21; SJ Ex. 36a (Davis Decl. Ex. A) SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a and 7b (Nesheiwat Dep. Ex. 16 and 17) | |
| 163. | During 2016 and 2017, the SLDR Companies' direct mail solicitations stated that the "[b]enefits of the Consolidation Program may include" an "[i]nterest rate reduction regardless of balance or pay history." | SJ Ex. 1 (Hoose Decl.) at ¶¶ 33-35 & Ex. 2; SJ Ex. 4a (Sklar Decl. Ex. 1); SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-JN-0037419-21; SJ Ex. 36a (Davis Decl. Ex. A) SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6a (Sebreros Dep. Ex. 2); SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7a | |

| | 164. | In numerous instances, the SLDR Companies represented to consumers during sales calls that consolidating would lower the interest rate on consumers' federal student loans. | and 7b (Nesheiwat Dep. Ex. 16 and 17) | |
| | | | SJ Ex. 32 (Akwensioge Decl.) at ¶ 3; SJ Ex. 34 (Capeci Decl.) at ¶ 5; SJ Ex. 35 (Chekanski Decl.) at ¶¶ 5-7; SJ Ex. 36 (Davis Decl.) at ¶ 4-5; SJ Ex. 37 (Hampton Decl.) at ¶¶ 5, 8; SJ Ex. 38 (Hebin Decl.) at ¶ 4; SJ Ex. 39 (Jones Decl.) at ¶ 4; SJ Ex. 42 (Martin Decl.) at ¶ 4; SJ Ex. 41 (Marin Decl.) at ¶¶ 5, 7, 12-13; SJ Ex. 43 (O'Neill Decl.) at ¶ 7; SJ Ex. 44 (Sowinski Decl.) at ¶¶ 6-7; SJ Ex. 45 (Storm Decl.) at ¶¶ 3-5; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9; SJ Ex. 30 (Schneider Decl.) at ¶ 12; SJ Ex. 6c (Sebreros Dep. Ex. 5); *see also* SJ Ex. 5 | |

| | | | | |
|---|---|---|---|---|
| | | | (Van Loon Decl.) at ¶¶ 22-25, 34 (authenticating Sebreros Dep. Ex. 5) | |
| | 165. | For example, in one call with a consumer in around January 2017, Docu Prep Center promised the consumer that his interest rate would be lowered by at least 2% to 2.5%. | SJ Ex. 41 (Marin Decl.) at ¶ 5. | |
| | 166. | Numerous consumers understood from the SLDR Companies' representations that consolidating would lower the interest rate on their student loans. | SJ Ex. 32 (Akwensioge Decl.) at ¶ 3; SJ Ex. 34 (Capeci Decl.) at ¶ 5; SJ Ex. 35 (Chekanski Decl.) at ¶¶ 5-7; SJ Ex. 36 (Davis Decl.) at ¶ 4-5; SJ Ex. 37 (Hampton Decl.) at ¶¶ 8, 12; SJ Ex. 38 (Hebin Decl.) at ¶ 4; Jones Decl.) at ¶ 4; SJ Ex. 42 (Martin Decl.) at ¶ 4; SJ Ex. 41 (Marin Decl.) at ¶¶ 5, 7, 12-13; SJ Ex. 43 (O'Neill Decl.) at ¶ 7; Sowinski Decl.) at ¶¶ 6-7; SJ Ex. 45 (Storm Decl.) at ¶¶ 3-5; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9; SJ | |

| | | | | |
|---|---|---|---|---|
| | | | Ex. 30 (Schneider Decl.) at ¶ 12. | |
| 167. | | Numerous consumers enrolled with the SLDR Companies because they believed that consolidating would lower the interest rate on their student loans. | SJ Ex. 32 (Akwensioge Decl.) at ¶ 3; SJ Ex. 44 (Sowinski Decl.) at ¶¶ 6-8; SJ Ex. 36 (Davis Decl.) at ¶ 5;  SJ Ex. 35 (Chekanski Decl.) at ¶ 6; SJ Ex. 42 (Martin Decl.) at ¶ 4;  SJ Ex. 43 (O'Neill Decl.) at ¶ 7; SJ Ex. 45 (Storm Decl.) at ¶¶ 3-4; SJ Ex. 37 (Hampton Decl.) at ¶ 8; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9; SJ Ex. 30 (Schneider Decl.) at ¶ 12 | |
| 168. | | For example, during sales calls in October 2015, Docu Prep Center "guaranteed" one consumer that "the interest rates … on [his] loans would be lowered through the consolidation." | SJ Ex. 44 (Sowinski Decl.) at ¶ 6 | |
| 169. | | That consumer "agreed to pay the fee and sign Docu Prep Center's contract, because [he] believed that the interest savings [he] | SJ Ex. 44 (Sowinski Decl.) at ¶ 8 | |

| | | | |
|---|---|---|---|
| | | would receive were going to be more than $700." | |
| | 170. | When federal student loans are consolidated, the resulting loan has a fixed interest rate equal to the weighted average of the interest rates on the consolidated loans, rounded up to the nearest one-eighth of one percent. | SJ Ex. 47 (Consolidation); 34 C.F.R. § 685. 202(a)(10)(i)(F); *see also* SJ Ex. 35 (Chekanski Decl.) at ¶ 15; SJ Ex. 41 (Marin Decl.) at ¶ 11; SJ Ex. 8 (DDR Dep.) at 185:17-186:6; SJ Ex. 11 (Martinez IH) at 168:11-24 | |
| | 171. | After consolidation, the consumer's consolidated loan has the same effective interest rate as the prior loans or a higher interest rate. | SJ Ex. 47 (Consolidation); 34 C.F.R. § 685. 202(a)(10)(i)(F); *see also* SJ Ex. 35 (Chekanski Decl.) at ¶ 15; SJ Ex. 41 (Marin Decl.) at ¶ 11; SJ Ex. 8 (DDR Dep.) at 185:17-186:6; SJ Ex. 11 (Martinez IH) at 168:11-24; SJ Ex. 36 (Davis Decl.) at ¶ 19 | |
| | 172. | Consolidating "doesn't lower your interest" rate. | SJ Ex. 11 (Martinez IH) at 168:11-20. | |
| | 173. | For example, consolidating increased one Docu Prep Center customer's interest rate from 6.8% to 6.875%. | SJ Ex. 45 (Storm Decl.) at ¶¶ 4-5, 9 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

88

| | | | |
|---|---|---|---|
| 174. | Consumers with federal student loans can generally receive an interest rate deduction by setting up automatic monthly payments. | SJ Ex. 51 (Student Loan Repayment Plan) at 3-4 ("If you schedule an automatic monthly electronic debit of your loan payment from your checking or savings account, you receive a 0.25% interest rate deduction on Direct Loans."); SJ Ex. 8 (DDR Dep.) at 186:13-187:19. | |
| 175. | Consumers with federal student loans generally do not need to consolidate to receive the interest rate reduction associated with setting up automatic monthly payments. | SJ Ex. 51 (Student Loan Repayment Plan) at 3-4; SJ Ex. 8 (DDR Dep.) at 186:13-187:19; SJ Ex. 9 (Martinez Dep.) at 226:2-15 (reduction is "automatic") | |
| 176. | The manager of Docs Done Right testified that the statement in certain Solicitation Letters that "the Department of Education may offer an interest rate reduction with set-up of automatic payments" was "trying to take credit" for the | SJ Ex. 9 (Martinez Dep.) at 226:2-15 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

89

| | | | |
|---|---|---|---|
| | | reduction and was "very misleading." | |
| | 177. | The SLDR Companies did not disclose to consumers that consumers with federal student loans generally do not need to consolidate to receive the interest rate reduction associated with setting up automatic monthly payments. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 33-35), SJ Ex. 1b (Hoose Decl. Ex. 2) at 3-14; SJ Ex. 4a (Sklar Decl. Ex. 1) at 2-4; SJ Ex. 41a (Marin Decl. Ex. A); SJ Ex. 3c (Mason Decl. Ex. 3) at CFPB-JN-0037419-21; SJ Ex. 36a (Davis Decl. Ex. A) SJ Ex. 39a (Jones Decl. Ex. A); SJ Ex. 6 (Sebreros Dep.) at Ex. 2; SJ Ex. 35a (Chekanski Decl. Ex. A); SJ Ex. 7 (Nesheiwat Dep.) at Ex. 16 and 17; *see also* SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE00000464; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006181 | |
| | 178. | The SLDR Companies' services did not lower the interest rates on consumers' student loans as they promised. | SJ Ex. 32 (Akwensioge Decl.) at ¶ 10; SJ Ex. 33 (Blevins Decl.) at ¶¶ 4, 10; SJ Ex. 35 (Chekanski | |

| | | | |
|---|---|---|---|
| | | Decl.) at ¶ 15; SJ Ex. 36 (Davis Decl.) at ¶ 19; SJ Ex. 39 (Jones Decl.) at ¶ 12; SJ Ex. 42 (Martin Decl.) at ¶ 12; SJ Ex. 41 (Marin Decl.) at ¶¶ 11-14; SJ Ex. 44 (Sowinski Decl.) at ¶ 10; Storm Decl.) at ¶¶ 9, 12, 16; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9; SJ Ex. 30 (Schneider Decl.) at ¶ 12. | |

### B.   The SLDR Companies Falsely Promised that Consolidating Would Improve Consumers' Credit Scores

| | | | |
|---|---|---|---|
| 179. | The SLDR Companies told consumers in numerous sales calls that consolidating would improve the consumers' credit scores. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 67-68; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE0000046 4-65; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006181; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168864; SJ Ex. 3d (Mason Ex. 4) at CFPB-EM-0052152; SJ Ex. 6 (Sebreros Dep.) | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

91

| | | | | |
|---|---|---|---|---|
| | | | at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3) at ML00333049; SJ Ex. 42 (Martin Decl.) at ¶¶ 5, 6, 12; SJ Ex. 34 (Capeci Decl.) at ¶ 5; SJ Ex. 40 (Kenner Decl.) at ¶ 6, 11; SJ Ex. 37 (Hampton Decl.) at ¶¶ 7- 8; SJ Ex. 27 (Ramirez-Velazquez Decl.) at ¶ 11; SJ Ex. 6c (Sebreros Dep. Ex. 5); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 34 (authenticating Sebreros Dep. Ex. 5) | |
| 180. | During 2015 and 2016, Docu Prep Center's sales scripts instructed sales representatives to tell consumers about the following benefit of consolidating: "*Improved Credit*. According to the Fair Credit Report Act (FCRA) the rules and law that govern how credit reporting companies report and generate your three digit credit score, having multiple trade line items will impact your credit score negatively | SJ Ex. 1 (Hoose Decl.) at ¶¶ 67-68; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE00000465; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006182; SJ Ex. 4 (Sklar Decl.) at ¶ 45; Sklar Decl. Ex. 9 at CFPB-EM-0168864; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ | |

| | | | |
|---|---|---|---|
| | | when compared to a profile with fewer trade lines. Therefore, through this consolidation process, we will be reducing your trade lines and you will not appear over extended." | Ex. 6b (Sebreros Dep. Ex. 3) at ML00333049 | |
| 181. | During 2015, Docu Prep Center's sales scripts also instructed sales representatives to tell consumers that by consolidating "[t]he Department of Education will pay off all your existing Federal loans for you in full!" and "[t]his will have the benefit of improving your credit." | SJ Ex. 1a (Hoose Decl. Ex. 12) at HOOSE00000115; SJ Ex 1a (Hoose Decl. Ex. 13) at HOOSE00000464; SJ Ex 1a (Hoose Decl. Ex. 14) at ML00006181 | |
| 182. | During 2016, Docu Prep Center's employee handbook told sales representatives that during "[t]he [c]lose" of a sales call they should "[r]ecap to the client … all the benefits of the program," including "improved credit." | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168868; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3 at ML0033053 | |
| 183. | The section of Docu Prep Center's employee handbook on "How to Upsell" told sales representatives that "[y]ou have to get back to the benefits," including "improving the client's credit." | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-016882; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros | |

| | | | |
|---|---|---|---|
| | | Dep. Ex. 3) at ML00333067. | |
| 184. | Certified Doc Prep Services used Docu Prep Center's sales script when it began operating in late 2015. | SJ Ex. 3 (Mason Decl.) at ¶¶ 14, 25. | |
| 185. | Thereafter, Certified Doc Prep Services and Docu Prep Center shares sales scripts with each other. | SJ Ex. 3 (Mason Decl.) at ¶ 25. | |
| 186. | In 2016, Certified Doc Prep Services' sales script instructed sales representatives to tell consumers: "Right now you have (X Amt) open trade lines for every loan you have and this can put a very negative impact on your credit. When they get reduced down to one this should really help to improve your credit score." | SJ Ex. 3 (Mason Decl.) at ¶¶ 26, 28; SJ Ex 3d (Mason Ex. 4) at CFPB-EM-0052152 | |
| 187. | The same Certified Doc Prep Services sales script instruct sales representatives to tell consumers that by consolidating "[i]nstead of having (Their # of Loans), you're just going to have 1 with the same balance you currently have but we[']re going to place you directly with the US Department of Education for the program. When this happens, this will help to improve your credit." | SJ Ex 3d (Mason Ex. 4) at CFPB-EM-0052152 | |

| 188. | Assure Direct Services, Direct Document Solutions, and Secure Preparation Services used the same scripts as Docu Prep Center. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 65, 69-71; SJ Ex. 6 (Sebreros Dep.) at 38:16-39:4. | |
|---|---|---|---|
| 189. | It is the expert opinion of Dr. David Skanderson that the representations the SLDR Companies made regarding improved credit scores "cannot be supported." | SJ Ex. 17a (Skanderson Rep.) at ¶ 12; *see also* SJ Ex. 17 (Skanderson Decl.), | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 17a (Skanderson Rep.) at ¶ 12;<br>   SJ Ex. 17 (Skanderson Decl.)<br><br>because they:<br><br>   (a) are inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see, also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br>   (b) are inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000); |

| | | | | |
|---|---|---|---|---|
| | | | | (c) are inadmissible because the proposed testimony and information are not within the scope of the expert witness designation; <br><br> (d) are inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise; <br><br> (e) are hearsay and multiple hearsay; <br><br> (f) lack proper foundation; <br><br> (g) lack personal knowledge; <br><br> (h) are irrelevant and improper expert witness and expert testimony; <br><br> (i) are irrelevant and improper opinions; <br><br> (j) are based on hearsay and multiple hearsay (*i.e.*, documents). <br><br> *See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 190. | It is the expert opinion of Dr. David Skanderson that the representations the SLDR Companies made regarding improved credit scores "likely were false for many borrowers." | SJ Ex. 17a (Skanderson Rep.) at ¶ 15. | | **DISPUTED**: There is no admissible evidence to support this assertion. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 17a (Skanderson Rep.) at ¶ 15. <br><br> because it: |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

96

| | | | | (a) is inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see*, *also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br>(b) is inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000);<br><br>(c) is inadmissible because the proposed testimony and information are not within the scope of the expert witness designation;<br>(d)  is inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise;<br>(e) is hearsay and multiple hearsay;<br>(f) lacks proper foundation;<br>(g) lacks personal knowledge;<br>(h) is irrelevant and improper expert witness and expert testimony;<br>(i) is irrelevant  and improper opinions; |

| | | | |
|---|---|---|---|
| | | | (j) is based on hearsay and multiple hearsay (*i.e.*, documents).<br><br>*See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 191. | It is the expert opinion of Dr. David Skanderson that "[t]here is no basis for a blanket assertion that consolidating a borrower's federal student loans will have a favorable impact on the borrower's credit score, or that having multiple student loans outstanding will negatively affect a borrower's credit score compared to having the same amount of debt in fewer trade lines." | SJ Ex. 17a (Skanderson Rep.) at ¶ 12 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 17a (Skanderson Rep.) at ¶ 12<br><br>because it:<br><br>(a) is inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see, also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br>(b) is inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000); |

| | | | | |
|---|---|---|---|---|
| | | | | (c) is inadmissible because the proposed testimony and information are not within the scope of the expert witness designation;<br><br>(d)  is inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise;<br><br>(e) is hearsay and multiple hearsay;<br><br>(f) lacks proper foundation;<br><br>(g) lacks personal knowledge;<br><br>(h) is irrelevant and improper expert witness and expert testimony;<br><br>(i) is irrelevant  and improper opinions;<br><br>(j) is based on hearsay and multiple hearsay (*i.e.*, documents).<br><br>*See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 192. | It is the expert opinion of Dr. Skanderson that the SLDR Companies' "representations cannot be supported, because loan consolidation could increase, decrease, or have no material impact on a consumer's credit score depending upon the individual's specific credit situation and history. My | SJ Ex. 17a (Skanderson Rep.) at ¶ 34 | | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 17a (Skanderson Rep.) at ¶ 34 because it:<br><br>(a) is inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

99

| | | |
|---|---|---|
| analysis also supports the conclusion that Defendants' representations likely were false for many consumers." | | *see, also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br> (b) is inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000);<br><br> (c) is inadmissible because the proposed testimony and information are not within the scope of the expert witness designation;<br> (d)  is inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise;<br> (e) is hearsay and multiple hearsay;<br> (f) lacks proper foundation;<br> (g) lacks personal knowledge;<br> (h) is irrelevant and improper expert witness and expert testimony;<br> (i) is irrelevant  and improper opinions; |

| | | | |
|---|---|---|---|
| | | | (j) is based on hearsay and multiple hearsay (*i.e.*, documents).<br><br>*See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 193. | It is the expert opinion of Dr. David Skanderson that "[w]ithout reviewing each borrower's full credit report and having access to the proprietary credit scoring models used by credit reporting agencies, there would have been no way for Defendants to determine with confidence whether the impact would be favorable, unfavorable, or neutral for any given borrower." | SJ Ex. 17a (Skanderson Rep.) at ¶ 15 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 17a (Skanderson Rep.) at ¶ 15<br><br>because it:<br><br>(a) is inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see, also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br>(b) is inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000); |

| | | | | |
|---|---|---|---|---|
| | | | | (c) is inadmissible because the proposed testimony and information are not within the scope of the expert witness designation; |
| | | | | (d)  is inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise; |
| | | | | (e) is hearsay and multiple hearsay; |
| | | | | (f) lacks proper foundation; |
| | | | | (g) lacks personal knowledge; |
| | | | | (h) is irrelevant and improper expert witness and expert testimony; |
| | | | | (i) is irrelevant  and improper opinions; |
| | | | | (j) is based on hearsay and multiple hearsay (*i.e.*, documents). |
| | | | | *See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 194. | It is the expert opinion of Dr. David Skanderson that "[t]here is no reason to believe that an increased credit score was a likely result of federal student loan consolidation[.]" | | SJ Ex. 17a (Skanderson Rep.) at ¶ 15 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 17a (Skanderson Rep.) at ¶ 15<br><br>because it: |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

102

(a) is inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see*, *also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;

(b) is inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000);

(c) is inadmissible because the proposed testimony and information are not within the scope of the expert witness designation;

(d) is inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise;

(e) is hearsay and multiple hearsay;

(f) lacks proper foundation;

(g) lacks personal knowledge;

(h) is irrelevant and improper expert witness and expert testimony;

| | | | | |
|---|---|---|---|---|
| | | | | (i) is irrelevant and improper opinions;<br>(j) is based on hearsay and multiple hearsay (*i.e.*, documents).<br><br>*See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 195. | It is the expert opinion of Dr. David Skanderson that "the Fair Credit Reporting Act has no bearing on how the number of student loan trade lines will affect a consumer's credit score." | SJ Ex. 17a (Skanderson Rep.) at ¶ 17; *see also* SJ Ex. 8 (DDR Dep.) at 238:22-239:24 | | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 17a (Skanderson Rep.) at ¶ 17; *see also* SJ Ex. 8 (DDR Dep.) at 238:22-239:24<br><br>because they:<br><br>(a) are inadmissible as the requirements of F.R.E., Rule 702 have not been satisfied, *see, also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999)—Nesheiwat hereby moves for a *Daubert* Hearing before the court prior to any ruling on the merits of the Bureau's MSJ;<br><br>(b) are inadmissible and should be excluded, *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

104

| | | | | |
|---|---|---|---|---|
| | | | | Cir. 2007), and FRE 702, *Adv. Comm. Notes* (2000); |
| | | | | (c) are inadmissible because the proposed testimony and information are not within the scope of the expert witness designation; |
| | | | | (d) are inadmissible because the proposed testimony and information are outside the witness' areas of knowledge and expertise; |
| | | | | (e) are hearsay and multiple hearsay; |
| | | | | (f) lack proper foundation; |
| | | | | (g) lack personal knowledge; |
| | | | | (h) are irrelevant and improper expert witness and expert testimony; |
| | | | | (i) are irrelevant and improper opinions; |
| | | | | (j) are based on hearsay and multiple hearsay (*i.e.*, documents). |
| | | | | *See* Evidentiary Objections: Skanderson Objections and Request for *Dauber* hearing. |
| 196. | At times, the SLDR Companies' sales representatives "ma[d]e up fake numbers about credit scores going up." | | SJ Ex. 6c (Sebreros Dep. Ex. 5); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 34 (authenticating Sebreros Dep. Ex. 5); SJ Ex. 40 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

105

| | | | |
|---|---|---|---|
| | | (Kenner Decl.) at ¶ 6. | |
| 197. | For example, during sales calls in October 2016, Certified Doc Prep Services promised one consumer that consolidating would increase his credit score by 50 to 100 points. | SJ Ex. 40 (Kenner Decl.) at ¶¶ 4, 6. | |
| 198. | Some consumers decided to enroll with the SLDR Companies based on their representations that consumers' credit scores would improve. | SJ Ex. 40 (Kenner Decl.) at ¶ 6; SJ Ex. 41 (Martin Decl.) at ¶ 6; SJ Ex. 27 (Ramirez Velazquez DPP Decl.) at ¶ 11 | |
| 199. | Some consumers who purchased the SLDR Companies' services did not experience improved credit scores. | SJ Ex. 37 (Hampton Decl.) at ¶ 22; SJ Ex. 40 (Kenner Decl.) at ¶ 16; SJ Ex. 42 (Martin Decl.) at ¶ 12 | |
| 200. | Those involved with Docu Prep Center, including Nesheiwat, never attempted to determine whether Docu Prep Center's statements regarding loan consolidation improving consumers' credit scores were true. | SJ Ex. 1 (Hoose Decl.) at ¶ 69; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 106:6-107:24 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

106

| | | | | David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

**Nesheiwat objects to and moves to strike:**

SJ Ex. 1 (Hoose Decl.) at ¶ 69

because it:

(a) is multiple hearsay;
(b) is irrelevant;
(c) it based on hearsay (*i.e.*, documents);
(d) lacks personal knowledge, foundation.

*See* Evidentiary Objections: Sebreros Decl. Objections.

SJ Ex. 7 at 106:6-107:24

because it is:

(a) irrelevant & prejudicial;
(b) violates *Griffin*.
*See* Nesheiwat Dep. Objections.

| | | | | |
|---|---|---|---|---|
| | **C.** | **The SLDR Companies Falsely Promised that the Department of Education Would Become Consumers' "New Servicer"** | | |
| 201. | Between 2015 and 2017, Docu Prep Center told consumers in numerous | SJ Ex. 4 (Sklar Decl.) at ¶¶ 44-45; SJ Ex. 4h | | |

| | | | |
|---|---|---|---|
| | | sales calls that ED would become the servicer on their federal student loans after they consolidated. | (Sklar Decl. Ex. 8 at CFPB-EM-0072299; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168863; SJ Ex. 1 (Hoose Decl ¶¶ 65-66; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE00000460, 464; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006181; SJ Ex. 11 (Martinez IH) at 195:20-196:8, 199:1-9 | |
| | 202. | During 2015, Docu Prep Center's sales script instructed sales representatives to tell consumers: "Many of my other clients with (NAME OF SERVICER) have expressed to me some displeasure working with (NAME OF SERVICER) and relayed some horror stories working with (NAME OF SERVICER). If this has NOT happened to you yet then good for you. But before it does, we have a perfect solution for you. Through this consolidation process, the U.S. Department of Education will be your new servicer and you will be making your new | SJ Ex. 4 (Sklar Decl.) at ¶ 44; SJ Ex. 4h (Sklar Decl. Ex. 8) at CFPB-EM-0072299; SJ Ex. 1 (Hoose Decl.) at ¶ 65; SJ Ex. 1a (Hoose Decl. Ex. 13 DPC Sales Script 1) at HOOSE00000460 | |

| | | | |
|---|---|---|---|
| | single student loan payment to the U.S. Department of Education." | | |
| 203. | The same Docu Prep Center script directed sales representatives to tell consumers that by consolidating "[t]he Department of Education will pay off all your existing Federal loans for you in full! … Once approved and processed, you will only have one monthly payment with this program payable to the U.S. Department of Education." | SJ Ex. 4h (Sklar Decl. Ex. 8) at CFPB-EM-0072303; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE00000464 | |
| 204. | The same Docu Prep Center script directed sales representatives to tell consumers that, after the consumers consolidated, "[i]nstead of multiple payments to different servicers with different payment dates, you will have the convenience of making only a single payment to the U.S. Department of Education." | SJ Ex. 1a (Hoose Decl. Ex. 13 DPC Sales Script 1) at HOOSE00000465; SJ Ex. 4h (Sklar Decl. Ex. 8) at CFPB-EM-0072304 | |
| 205. | During 2015, another Docu Prep Center sales script instructed sales representatives to tell consumers: "Through this consolidation process, the U.S. Department of Education will be your | SJ Ex. 1 (Hoose Decl.) at ¶ 66; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006178 | |

| | | | |
|---|---|---|---|
| | new servicer and you will be making your new single student loan payment to the U.S. Department of Education. It's because of this main reason that servicers such as (NAME OF SERVICER) do not go out of their way to assist borrowers with this consolidation process. They do not want to lose your business and lose the revenue they earn servicing your (TOTAL NUMBER OF LOANS)." | | |
| 206. | During 2016, Docu Prep Center's sales scripts directed sales representatives to tell consumers: "From now until (Estimated Month), your loans are going to go through a processing period in which they will be paid off in full by the Department of Education, and replaced with a new one for the program. Instead of having (Their # of Loans), you're just going to have 1 loan with the same balance you currently have, but we're going to place you directly with the US Department of Education for the program." | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168863; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3) at ML00333048 | |

| 207. | The same scripts directed sales representatives to tell consumers that after their forbearance request was approved "you're not going to have to make any more monthly payments to your current servicer." | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168863; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3 at ML00333048) | |
| 208. | The same scripts directed sales representatives to tell consumers that "[y]our new monthly payment due to the US Department of Education was approved" | SJ Ex. 4 (Sklar Decl.) at ¶ 45; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168863; SJ Ex. 6 (Sebreros Dep.) at 68:22-72:7; SJ Ex. 6b (Sebreros Dep. Ex. 3 at ML00333048 | |
| 209. | After federal student loans are consolidated, the consolidate loans continue to be handled by ED's student loan servicers. | SJ Ex. 47 (Consolidation); SJ Ex. 49 (Servicers); SJ Ex. 8 (DDR Dep.) at 256:9-23 | |
| 210. | ED does not become consumers' "new servicer" after consolidation. | SJ Ex. 47 (Consolidation); SJ Ex. 49 (Servicers); DDR Dep.) at 256:9-23 | |
| 211. | Consolidating does not enable a consumer to avoid having their student loans handled by a student loan servicer. | SJ Ex. 47 (Consolidation); SJ Ex. 49 (Servicers); SJ Ex. 8 (DDR Dep.) at 256:9-23 | |

| | | | |
|---|---|---|---|
| 212. | Eduardo Martinez testified that Docu Prep Center's statement in its sale script telling consumers that ED would be their new servicer was "ridiculously bad." | SJ Ex. 11 (Martinez IH) at 173:12-174:4 | |
| 213. | One reason consumers cancelled services with the SLDR Companies "that came up quite a bit was that they thought they were getting a loan with the Department of Education directly." | SJ Ex. 11 (Martinez IH) at 195:16-196:8 | |
| 214. | When those consumers found out there was "going to be a servicer," they complained that "that's not what I was told." | SJ Ex. 11 (Martinez IH) at 196:4-19; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 112:25-113:19 (invoking Fifth Amendment) | |
| **VI.   The SLDR Companies Charged Advance Fees in Violation of the TSR** | | | |
| 215. | The SLDR Companies' fees for their services ranged between $599 and $999. | SJ Ex. 1 (Hoose Decl.) at ¶ 70; SJ Ex. 4 (Sklar Decl.) at ¶ 49; SJ Ex. 6 (Sebreros Dep.) 36:13-18, 112:8-15; SJ Ex. 32 (Akwensioge Decl.) at ¶ 3; SJ Ex. 35 (Chekanski Decl.) at ¶ 8; SJ Ex. 34 (Capeci Decl.) at ¶ 6; SJ Ex. 38 (Hebin | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

112

| | | | |
|---|---|---|---|
| | | Decl.) at ¶ 11; SJ Ex. 43 (O'Neill Decl.) at ¶ 7 | |
| 216. | The SLDR Companies' sales representatives collected consumers' payment information during sales calls. | SJ Ex. 1a (Hoose Decl. Ex. 13 DPC Sales Script 1) at HOOSE0000046 5-66; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006181, 83; SJ Ex. 36 Davis Decl.) at ¶ 5; SJ Ex. 33 Blevins Decl.) at ¶ 4; SJ Ex. 34 (Capeci Decl.)  at ¶ 6 ; SJ Ex. 38 (Hebin Decl.) at ¶ 5 | |
| 217. | Consumers varied in how quickly they returned signed loan consolidation and repayment plan application documents to the SLDR Companies and Docs Done Right. | SJ Ex. 8 (DDR Dep.) at 120:5-16 | |
| 218. | After Docs Done Right submitted consumers' loan consolidation and repayment plan applications to consumers' servicers, it typically took 45 to 90 days for the application documents to be approved by those servicers. | SJ Ex. 8 (DDR Dep.) at 121:12-24; SJ Ex. 9 (Martinez Dep.) at 235:6-24; *see also* SJ Ex. 1 (Hoose Decl.) at ¶ 72. | |
| 219. | The SLDR Companies did not wait for the loan | SJ Ex. 8 (DDR Dep.) at 92:7- | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

113

| | | | |
|---|---|---|---|
| | | consolidation and repayment plan applications prepared for consumers to be approved to charge consumers fees. | 94:14 ("Once the forms are filled out … our fees are completed" and customer is charged); *see also* SJ Ex. 36 (Davis Decl.) at ¶¶ 8-10; SJ Ex. 35 (Chekanski Decl.) at ¶¶ 9, 11; SJ Ex. 37 (Hampton Decl.) at ¶¶ 10, 13-15; SJ Ex. 39 (Jones Decl.) at ¶¶ 6-7; SJ Ex. 33 (Blevins Decl.) at ¶¶ 4, 8; SJ Ex. 45 (Storm Decl.) at ¶¶ 6-8 | |
| 220. | The SLDR Companies charged consumers fees without regard to whether the loan consolidation and repayment plan applications prepared for consumers were actually approved. | SJ Ex. 8 (DDR Dep.) at 92:14-94:13, 136:8-15; SJ Ex. 8a (DDR Dep. Ex. 20) | |
| 221. | The SLDR Companies did not track whether the loan consolidation and repayment plan applications prepared for consumers were actually approved. | SJ Ex. 8 (DDR Dep.) at 137:18-139:1 | |
| 222. | The forbearance requests that the SLDR Companies and Docs Done Right prepared typically sought | SJ Ex. 28 (Ramirez-Velazquez Forb. Decl.) at ¶¶ 8, 11; | |

| | | | |
|---|---|---|---|
| | | to place consumers into forbearance for 90 days. | SJ Ex. 37 (Hampton Decl.) at ¶ 10; SJ Ex. 40a (Kenner Decl. Ex. A) at 2; SJ Ex. 39 (Jones Decl.) at ¶ 5; SJ Ex. 33 (Blevins Decl.) at ¶ 6 | |
| 223. | The SLDR Companies prepared forbearance requests so that consumers would not have to make a payment on their student loans until after the consumers' consolidation and repayment plan requests were approved and the consumers had a new payment amount on their student loans. | SJ Ex. 8 (DDR Dep.) at 123:25-124:10; SJ Ex. 4i (Sklar Decl. Ex. 9) at CFPB-EM-0168863; SJ Ex. 1a (Hoose Decl. Ex. 13) at HOOSE00000466; SJ Ex. 1a (Hoose Decl. Ex. 14) at ML00006183. | |
| 224. | When a consumer's federal student loans are in forbearance, their next monthly payment is due the month following the end of the forbearance. | SJ Ex. 28 (Ramirez-Velazquez Forb. Decl.) at ¶ 10 & Ex. 1. | |
| 225. | Consumers using the SLDR Companies' services would begin repayment under the new payment program for which the consumers had signed up only after (1) the consumers' consolidation and repayment plan applications had been approved and (2) the | SJ Ex. 1 (Hoose Decl.) at ¶ 59; SJ Ex. 8 (DDR Dep.) at 123:25-124:10 | |

| | | | |
|---|---|---|---|
| | | consumers' forbearance period had ended. | |
| 226. | | The SLDR Companies charged consumers fees for their services before consumers' consolidation and repayment plan applications were approved. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 71-72; Sklar Decl.) at ¶ 54; SJ Ex. 12 (Cowell IH) at 76:7-19; SJ Ex. 11 (Martinez IH) at 175:13-178:8; SJ Ex. 32 (Akwensioge Decl.) at ¶¶ 3-9; SJ Ex. 36 (Davis Decl.) at ¶¶ 10-11; SJ Ex. 35 (Chekanski Decl.) ¶¶ 10-15; SJ Ex. 37 (Hampton Decl.) ¶¶ 9, 13-16; SJ Ex. 40 (Kenner Decl.) ¶¶ 9-10, 14, 16; SJ Ex. 33 (Blevins Decl.) ¶¶ 8-9, 12; SJ Ex. 39 (Jones Decl.) at ¶¶ 7, 9; SJ Ex. 38 (Hebin Decl.) at ¶¶ 8-9; SJ Ex. 42 (Martin Decl.) at ¶¶ 10-11; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 116:12-117:13 (invoking Fifth Amendment) |
| 227. | | The SLDR Companies charged consumers fees for their services before | SJ Ex. 1 (Hoose Decl.) at ¶ 72; SJ Ex. 8 (DDR Dep.) at 139:7- |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

116

| | | | |
|---|---|---|---|
| | | consumers' period of forbearance ended. | 15; SJ Ex. 37 (Hampton Decl.) at ¶¶ 10, 13-15; SJ Ex. 40a (Kenner Decl. Ex. A) at ¶¶ 9, 11; SJ Ex. 39 (Jones Decl.) at ¶ 4-6, 7; SJ Ex. 33 (Blevins Decl.) at ¶ 4, 6-9; SJ Ex. 36 (Davis Decl.) at ¶¶ 10-13; SJ Ex. 42 (Martin Decl.) at ¶ 10; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 119:25-120:12 (invoking Fifth Amendment) | |
| 228. | Consumers paid the SLDR Companies' fees either in a single lump sum or in installments. | SJ Ex. 1 (Hoose Decl.) at ¶ 71; SJ Ex. 8 (DDR Dep.) at 133:8-134:12; SJ Ex. 25 (Heidari Decl.) at ¶ 21 | |
| 229. | The SLDR Companies collected their fees by either debiting consumers' bank accounts through an ACH transaction or by charging consumers' credit cards. | SJ Ex. 1 (Hoose Decl.) at ¶ 73; SJ Ex. 4 (Sklar Decl.) at ¶¶ 50-52; SJ Ex. 6 (Sebreros Dep.) at 36:25-37:6, 106:25-107:6, 111:1-15; SJ Ex. 8 (DDR Dep.) at 89:17-90:19, 116:20-117:7 | |

| | | | |
|---|---|---|---|
| 230. | In 2015, Docu Prep Center initially used the ACH payment processor Trans2Pay, LLC ("Trans2Pay") to charge its fees to consumers. | SJ Ex. 4 (Sklar Decl.) at ¶ 51; SJ Ex. 1 (Hoose Decl.) at ¶ 73 | |
| 231. | In April 2015, one of Docu Prep Center's co-managers forwarded to Nesheiwat an email from Trans2Pay with the subject line "Important Notice from Trans2pay, LLC." | SJ Ex. 1 (Hoose Decl.) at ¶ 74; SJ Ex. 1a (Hoose Decl. Ex. 15)[7]; *see also* SJ Ex. 14 (Nesheiwat RFA Resp. No. 49) at pp. 57-58 (invoking Fifth Amendment regarding email) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 1 (Hoose Decl.) at ¶ 74; <br> SJ Ex. 1a (Hoose Decl. Ex. 15) <br><br> because they: |

---

[7] Bureau note: This citation and the identical citations in UF ¶¶ 232 and 233 should have been to SJ Ex. 1n, which contains exhibit 15 to Hoose's declaration.

| | | | | |
|---|---|---|---|---|
| | | | | (a) are hearsay and multiple hearsay; (b) are irrelevant; (c) are based on hearsay (*i.e.*, documents); (d) lack personal knowledge, foundation. *See* Evidentiary Objections:  Hoose Decl. Objections. SJ Ex. 14 (Nesheiwat RFA Resp. No. 49) because it is: (a) irrelevant & prejudicial; (b) violates *Griffin*. *See* Nesheiwat RFA Objections. |
| 232. | The email from Trans2Pay stated that "[i]n light of the recent order between the Consumer Financial Protection Bureau ('CFPB'), the Office of the Attorney General, State of Florida, Department of Legal Affairs and College Education Services, whereby student-loan debt relief services are considered to be subject to the FTC's Telemarketing Sales Rule - Debt Relief Rule ('TSR'), Trans2pay has made the decision to assign its responsibility | SJ Ex. 1a (Hoose Decl. Ex. 15); *see also* SJ Ex. 14 (Nesheiwat RFA Resp. No. 49) at pp. 57-58 (invoking Fifth Amendment regarding email) | | |

| | | | |
|---|---|---|---|
| | for the services currently being provided to you and to your clients to its affiliate company, Global Client Solutions, LLC ('GCS')." | | |
| 233. | The email from Trans2Pay stated that, "effective as of June 1, 2015, all services provided by GCS will be subject to the policies and procedures currently in place with respect to debt relief services offered by for-profit debt relief service providers. Therefore, per GCS's compliance with the TSR, program fees will not be disbursed from a client's dedicated account until (i) the client has accepted a modification/ adjustment to a debt and a subsequent payment has been made towards such debt, or (ii) Global receives sufficient documentation evidencing the approval of consolidation and/or direct confirmation/authorization from the client attesting to such occurrence." | SJ Ex. 1a (Hoose Decl. Ex. 15); *see also* SJ Ex. 14 (Nesheiwat RFA Resp. No. 49) pp. 57-58 (invoking Fifth Amendment regarding email) | |
| 234. | In May 2015, Thomas Chou sent an email to several of Docu Prep Center's owners and managers, including Nesheiwat, with the subject line "Re: DocuPrep Center Update." | SJ Ex. 4 (Sklar Decl.) at ¶ 56; SJ Ex. 4j (Sklar Decl. Ex. 10); *see also* SJ Ex. 1 (Hoose Decl.) at ¶ 82 (authenticating | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

120

| | | | same email); SJ Ex. 1a (Hoose Decl. Ex. 19); *see also* SJ Ex. 3 (Lawson Decl.) at ¶¶ 6-7, 9 (authenticating same email); SJ Ex. 3b (Lawson Decl. Ex. 2); SJ Ex. 14 (Nesheiwat RFA Resp. No. 50) at pp. 58-59 (invoking Fifth Amendment regarding email) | following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 4 (Sklar Decl.) at ¶ 56;<br>    SJ Ex. 4j (Sklar Decl. Ex. 10);<br>    SJ Ex. 1 (Hoose Decl.) at ¶ 82;<br>    SJ Ex. 1a (Hoose Decl. Ex. 19);<br>    SJ Ex. 3 (Lawson Decl.) at ¶¶ 6-7, 9;<br>    SJ Ex. 3b (Lawson Decl. Ex. 2)<br><br>because they:<br><br>  (a) are hearsay and multiple hearsay;<br>  (b) are irrelevant;<br>  (c) are based on hearsay (*i.e.*, documents);<br>  (d) lack personal knowledge, foundation.<br><br>  *See* Evidentiary Objections:  Hoose Decl. |

| | | | | |
|---|---|---|---|---|
| | | | | Objections and Lawson Decl. Objections.<br><br>   SJ Ex. 14 (Nesheiwat RFA Resp. No. 50) at pp. 58-59<br><br>because it is:<br><br>   (a) irrelevant & prejudicial;<br>   (b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 235. | In the May 2015 email, Thomas Chou asked one of Docu Prep Center's co-managers: "Do you have any additional information about the potential ban on advance fees that might extend the time frame that we get payment? If there is a delay in being paid, how do you anticipate it slowing growth toward that 1000 deal/mo mark? I'm concerned, because I really want to go to Vegas.     :-)" | SJ Ex. 4j (Sklar Decl. Ex. 10); SJ Ex. 14 (Nesheiwat RFA Resp. No. 50) at pp. 58-59 (invoking Fifth Amendment regarding email) | | |
| 236. | At the time, several of those involved with Docu Prep Center planned to celebrate reaching the goal of closing 1,000 deals each month with a trip to Las Vegas. | SJ Ex. 4 (Sklar Decl.) at ¶ 56; *see also* SJ Ex. 14 (Nesheiwat RFA Resp. No. 50) at pp. 58-59 (invoking Fifth Amendment regarding email) | | |
| 237. | After Thomas Chou's May 2015 email, "Docu | SJ Ex. 4 (Sklar Decl.) at ¶ 57 | | |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | Prep Center did not change its practices to extend how long it took to receive consumers' fees or make other efforts to comply with the TSR's requirements regarding the timing of charging fees." | |
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 238. | In around June 2015, Docu Prep Center switched to using the payment processor Reliant Account Management ("RAM") to charge fees to consumers who paid via ACH. | SJ Ex. 4 (Sklar Decl.) at ¶ 58; SJ Ex. 4k (Sklar Decl. Ex. 11) ("With regard to the potential billing issues we identified last month, we've moved to RAM, a new payment processor.  RAM maakes our funds available between 7 to 9 days after the client has made their ACH payment, which is much improved over the 45 day turn time we were initially anticipating."); *see also* Heidari Decl.) at ¶ 6.a; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 32 (authenticating Sklar Decl. Ex. 11) | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

123

| | | | |
|---|---|---|---|
| 239. | The switch to RAM meant that Docu Prep Center generally received consumers' first payments within about three weeks and received all of the consumers' payments within 60 days. | SJ Ex. 4 (Sklar Decl.) at ¶ 58 | |
| 240. | On July 1, 2015, one of Docu Prep Center's co-managers sent an email to Docu Prep Center's investors, including Nesheiwat. | SJ Ex. 4 (Sklar Decl.) at ¶ 58; SJ Ex. 4k (Sklar Decl. Ex. 11); *see also* SJ Ex. 3 (Lawson Decl.) at ¶¶ 6-7, 9; SJ Ex. 3c (Lawson Decl. Ex. 3) (same email); SJ Ex. 14 (Nesheiwat RFA Resp. No. 52) at 60 (invoking Fifth Amendment regarding email) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 4 (Sklar Decl.) at ¶ 58;<br>   SJ Ex. 4k (Sklar Decl. Ex. 11);<br>   SJ Ex. 3 (Lawson Decl.) at ¶¶ 6-7, 9; SJ Ex. 3c (Lawson Decl. Ex. 3).<br><br>because they: |

| | | | | |
|---|---|---|---|---|
| | | | | (a) are hearsay and multiple hearsay;<br>  (b) are irrelevant;<br>  (c) are based on hearsay (*i.e.*, documents);<br>  (d) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections and Lawson Decl. Objections.<br><br>  SJ Ex. 14 (Nesheiwat RFA Resp. No. 52) at 60.<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 241. | The July 1, 2015 email stated that "RAM makes our funds available between 7 to 9 days after the client has made their ACH payment." | SJ Ex. 4 (Sklar Decl.) at ¶ 58; SJ Ex. 4k (Sklar Decl. Ex. 11); *see also* SJ Ex. 14 (Nesheiwat RFA Resp. No. 52) at 60 (invoking Fifth Amendment regarding email) | | |
| 242. | Between 2015 and 2017, Nesheiwat was familiar with the TSR's provisions regarding the collection of advanced fees for debt relief services. | SJ Ex. 1 (Hoose Decl.) at ¶ 74 & Ex. 15; SJ Ex. 4j (Sklar Decl. Ex. 10; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 122:19-123:16 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

125

| | | | | |
|---|---|---|---|---|
| | | | | following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 1 (Hoose Decl.) at ¶ 74 & Ex. 15;<br>  SJ Ex. 4j (Sklar Decl. Ex. 10.)<br><br>because they:<br><br>  (a) are vague and ambiguous as to time;<br>  (b) are hearsay and multiple hearsay;<br>  (c) are irrelevant;<br>  (d) are based on hearsay (*i.e.*, documents);<br>  (e) lack personal knowledge, foundation.<br><br>  *See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 122:19-123:16.<br><br>because it is: |

| | | | |
|---|---|---|---|
| | | | (a) irrelevant & prejudicial; (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 243. | Docu Prep Center used RAM to collect fees paid by consumers in ACH transactions between June 2015 and January 2016. | SJ Ex. 25 (Heidari Decl.) at ¶ 6.a.; *see also* SJ Ex. 1 (Hoose Decl.) at ¶ 73; SJ Ex. 4 (Sklar Decl.) at ¶ 50-51, 58 | |
| 244. | In transactions processed by RAM, on average, consumers made their first payment towards Docu Prep Center's fees 9 days after the consumers enrolled with Docu Prep Center. | SJ Ex. 25 (Heidari Decl.) at ¶¶ 18, 22 | |
| 245. | In transactions processed by RAM, on average, consumers made their final payment towards Docu Prep Center's fees 28 days after consumers enrolled with Docu Prep Center. | SJ Ex. 25 (Heidari Decl.) at ¶ 22 | |
| 246. | Consumers' payments for Docu Prep Center's fees were temporarily held by RAM before being disbursed to Docu Prep Center. | SJ Ex. 25 (Heidari Decl.) at ¶ 24 | |
| 247. | In transactions processed by RAM, on average, RAM made its first disbursement of consumers' fees to Docu | SJ Ex. 25 (Heidari Decl.) at ¶ 24; *see also* SJ Ex. 4k (Sklar Decl. Ex. 11 | |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

127

| | | | |
|---|---|---|---|
| | Prep Center 16 days after consumers enrolled with Docu Prep Center. | ("RAM makes our funds available between 7 to 9 days after the client has made their ACH payment….") | |
| 248. | In transactions processed by RAM, on average, RAM made its final disbursement of consumers' fees to Docu Prep Center 37 days after consumers enrolled with Docu Prep Center. | SJ Ex. 25 (Heidari Decl.) at ¶ 24; *see also* Sklar Decl. Ex. 11 ("RAM makes our funds available between 7 to 9 days after the client has made their ACH payment…") | |
| 249. | Between December 2015 and January 2018, the SLDR Companies and Docs Done Right used the payment processor Debt Pay Gateway to charge fees to consumers who paid via ACH. | SJ Ex. 25 (Heidari Decl.) at ¶ 6; *see also* SJ Ex. 1 (Hoose Decl.) at ¶ 73; SJ Ex. 8 (DDR Dep.) at 88:7-14 | |
| 250. | In transactions processed by Debt Pay Gateway, on average, consumers made their first payment for the SLDR Companies' fees 15 days after the consumers enrolled with the SLDR Companies. | SJ Ex. 25 (Heidari Decl.) at ¶ 26; *see also* SJ Ex. 8 (DDR Dep 133:11-25 ("usually, the company wanted to charge them within 14 days") | |
| 251. | In transactions processed by Debt Pay Gateway, on average, consumers made their final payment for the SLDR Companies' fees 51 | SJ Ex. 25 (Heidari Decl.) at ¶ 26 | |

| | | | |
|---|---|---|---|
| | | days after the consumers enrolled with the SLDR Companies. | |
| 252. | | Consumers' payments for the SLDR Companies' fees were temporarily held by Debt Pay Gateway before being disbursed to the SLDR Companies and Docs Done Right. | SJ Ex. 25 (Heidari Decl.) at ¶ 28; SJ Ex. 9 (Martinez Dep.) at 272:10-273:17 |
| 253. | | In transactions processed by Debt Pay Gateway, on average, Debt Pay Gateway made its first disbursement of consumers' fees to the SLDR Companies 22 days after consumers enrolled with the SLDR Companies. | SJ Ex. 25 (Heidari Decl.) at ¶ 28 |
| 254. | | In transactions processed by Debt Pay Gateway, on average, Debt Pay Gateway made its first disbursement of consumers' fees to the SLDR Companies 59 days after consumers enrolled with the SLDR Companies. | SJ Ex. 25 (Heidari Decl.) at ¶ 28 |
| 255. | | Debt Pay Gateway temporarily held consumers' payments for the SLDR Companies' fees in "custodial accounts." | SJ Ex. 9 (Martinez Dep.) at 272:10-21 |
| 256. | | The "custodial accounts" were only used for the purpose of paying consumers' fees for the | SJ Ex. 9 (Martinez Dep.) at 273:4-274:1 |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

129

| | | | |
|---|---|---|---|
| | SLDR Companies' services. | | |
| 257. | The "custodial accounts" were not used for the purpose of paying consumers' student loans. | SJ Ex. 9 (Martinez Dep.) at 273:18-21 | |
| 258. | In credit card transactions, on average, consumers made their first payment towards the SLDR Companies' fees 13 days after consumers enrolled with the SLDR Companies. | SJ Ex. 25 (Heidari Decl.) at ¶ 30 | |
| 259. | In credit card transactions, on average, consumers made their final payment towards the SLDR Companies' fees 20 days after consumers enrolled with the SLDR Companies. | SJ Ex. 25 (Heidari Decl.) at ¶ 30 | |
| 260. | In total, between 2015 and 2018, after netting out refunds, the SLDR Companies charged consumers $18,048,228 in fees within 90 days of consumers' enrollment. | SJ Ex. 25 (Heidari Decl.) at ¶¶ 6, 32 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 25 (Heidari Decl.) at ¶¶ 6, 32<br><br>because it:<br><br>(a) is irrelevant and improper non-designated expert witness and expert testimony;<br>(b) is irrelevant and improper opinion;<br>(c) is irrelevant; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

130

| | | | |
|---|---|---|---|
| | | | (d) is hearsay and multiple hearsay; (e) is based on hearsay (*i.e.*, documents); (f) lacks personal knowledge, foundation. *See* Evidentiary Objections: Heidari Decl. Objections. |
| 261. | In total, between 2015 and 2018, after netting out refunds, the SLDR Companies charged consumers $19,699,870 in fees. | SJ Ex. 25 (Heidari Decl.) at ¶15. | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 25 (Heidari Decl.) at ¶ 15 because it: (a) is irrelevant and improper non-designated expert witness and expert testimony; (b) is irrelevant and improper opinion; (c) is irrelevant; (d) is hearsay and multiple hearsay; (e) is based on hearsay (*i.e.*, documents); (f) lacks personal knowledge, foundation. *See* Evidentiary Objections: Heidari Decl. Objections. |
| 262. | In total, between 2015 and 2018, the SLDR Companies received fees | SJ Ex. 25 (Heidari Decl.) at ¶ 34 (providing total number of | **DISPUTED**: There is no admissible evidence to support this assertion. |

| | | | |
|---|---|---|---|
| from over 23,000 customers. | consumers per company who paid all or part of their fees within 90 days, after excluding consumers who received full refunds). | **Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 25 (Heidari Decl.) at ¶ 34<br><br>because it:<br><br>(a) is irrelevant and improper non-designated expert witness and expert testimony;<br>(b) is irrelevant and improper opinion;<br>(c) is irrelevant;<br>(d) is hearsay and multiple hearsay;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Heidari Decl. Objections. | |

### VII.   Nesheiwat's Role in the Student Debt Relief Operation and Knowledge of its Practices

| 263. | In early 2015, Nesheiwat helped launch Docu Prep Center as a new business. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 13-14, 16-20; SJ Ex. 4 (Sklar Decl.) at ¶¶ 13-15; SJ Ex. 2a (Lawson Decl. Ex. 1; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 40:22-41:6 (invoking Fifth Amendment). | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and |

David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.

**Nesheiwat objects to and moves to strike:**

 SJ Ex. 1 (Hoose Decl.) at ¶¶ 13-14, 16-20;
 SJ Ex. 4 (Sklar Decl.) at ¶¶ 13-15;
 SJ Ex. 2a (Lawson Decl. Ex. 1).

because they:

 (a) are vague and ambiguous as to time;
 (b) are hearsay and multiple hearsay;
 (c) are irrelevant;
 (d) are based on hearsay (*i.e.*, documents);
 (e) lack personal knowledge, foundation. *See* Evidentiary Objections:  Sklar Decl. Objections; Lawson Decl. Objections and Hoose Decl. Objections.

 SJ Ex. 7 (Nesheiwat Dep.) at 40:22-41:6.

because it is:

 (a) irrelevant & prejudicial;
 (b) violates *Griffin*.

| | | | | |
|---|---|---|---|---|
| | | | | *See* Nesheiwat Dep. Objections. |
| 264. | Between 2015 and 2017, Nesheiwat participated extensively in the management and operation of Docu Prep Center. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 22, 36, 39, 60; SJ Ex. 4 (Sklar Decl.) at ¶¶ 19-20, 23, 27, 29, 46; SJ Ex. 3 (Mason Decl.) at ¶¶ 10, 12-13; SJ Ex. 6 (Sebreros Dep.) at 31:1-22; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 45:3-48:15 (invoking Fifth Amendment) | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. <br><br> **Nesheiwat objects to and moves to strike:** <br><br> SJ Ex. 1 (Hoose Decl.) at ¶¶ 22, 36, 39, 60; <br> SJ Ex. 4 (Sklar Decl.) at ¶¶ 19-20, 23, 27, 29, 46; <br> SJ Ex. 3 (Mason Decl.) at ¶¶ 10, 12-13; <br> SJ Ex. 6 (Sebreros Dep.) at 31:1-22. <br><br> because they: <br><br> (a) are improper opinions; <br> (b) are vague and ambiguous as to time; |

| | | | |
|---|---|---|---|
| | | | (c) are hearsay and multiple hearsay;<br>  (d) are irrelevant;<br>  (e) are based on hearsay (*i.e.*, documents);<br>  (f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections; Sklar Objections; Mason Objections; and Hoose Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 45:3-48:15.<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 265. | Of Docu Prep Center's limited partners, Nesheiwat was the most involved in the daily operations of the company. | SJ Ex. 4 (Sklar Decl.) at ¶ 19 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

135

| | | | from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4 (Sklar Decl.) at ¶ 19<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections. |
| 266. | Nesheiwat helped select Docu Prep Center's two co-managers. | SJ Ex. 1 (Hoose Decl.) at ¶ 16; SJ Ex. 4 (Sklar Decl.) at ¶ 5 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and |

| | | | | |
|---|---|---|---|---|
| | | | | ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. **Nesheiwat objects to and moves to strike:** SJ Ex. 1 (Hoose Decl.) at ¶ 74 & Ex. 15; SJ Ex. 4j (Sklar Decl. Ex. 10.) because they: (a) are improper opinions; (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation. *See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections. |
| 267. | One of the managers was a career bartender with no prior management or executive experience. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 2, 6 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from |

| | | | | |
|---|---|---|---|---|
| | | | | Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4 (Sklar Decl.) at ¶¶ 2, 6<br><br>because it:<br><br>(a) is an improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections and Hoose Decl. Objections. |
| 268. | The other manager also had no prior executive experience. | | SJ Ex. 4 (Sklar Decl.) at ¶ 12 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

138

| | | | | |
|---|---|---|---|---|
| | | | | Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br> SJ Ex. 4 (Sklar Decl.) at ¶ 12<br><br>because it:<br><br> (a) is improper opinion;<br> (b) is vague and ambiguous as to time;<br> (c) is hearsay and multiple hearsay;<br> (d) is irrelevant;<br> (e) is based on hearsay (*i.e.*, documents);<br> (f) lacks personal knowledge, foundation.<br><br> *See* Evidentiary Objections: Sklar Decl. Objections. |
| 269. | Nesheiwat gave Docu Prep Center's two managers directions regarding how to market and sell Docu Prep Center's services, which the managers followed. | | SJ Ex. 1 (Hoose Decl.) at ¶¶18-20, 22; SJ Ex. 3 (Mason Decl.) at ¶¶ 12-13; SJ Ex. 4 (Sklar Decl.) at ¶¶ 6, 12, 14-15, 19-20, 23; *see* | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

139

| | | | *also* SJ Ex. 7 (Nesheiwat Dep.) at 43:3-7 (invoking Fifth Amendment) | following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |
|---|---|---|---|---|
| | | | | **Nesheiwat objects to and moves to strike:** |
| | | | | SJ Ex. 1 (Hoose Decl.) at ¶¶18-20, 22; SJ Ex. 3 (Mason Decl.) at ¶¶ 12-13; SJ Ex. 4 (Sklar Decl.) at ¶¶ 6, 12, 14-15, 19-20, 23 |
| | | | | because they: |
| | | | | (a) are improper opinions; (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation. |
| | | | | *See* Evidentiary Objections:  Sklar Decl. Objections; Mason Decl. Objections; and Hoose Decl. Objections. |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 7 (Nesheiwat Dep.) at 43:3-7.<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 270. | Nesheiwat oversaw Docu Prep Center's direct mail marketing between 2015 and 2017. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 28, 31, 33, 36, 37, 39, 43, 49, 51; SJ Ex. 4 (Sklar Decl.) at ¶¶ 23, 27, 29, 33-34; SJ Ex. 4b (Sklar Decl. Ex. 2); SJ Ex. 6 (Sebreros Dep.) at 31:1-22 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 1 (Hoose Decl.) at ¶¶ 28, 31, 33, 36, 37, 39, 43, 49, 51;<br>SJ Ex. 4 (Sklar Decl.) at ¶¶ 23, 27, 29, 33-34;<br>SJ Ex. 4b (Sklar Decl. Ex. 2); |

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 6 (Sebreros Dep.) at 31:1-22<br><br>because they:<br><br>(a) are improper opinions;<br>(b) are vague and ambiguous as to time;<br>(c) are hearsay and multiple hearsay;<br>(d) are irrelevant;<br>(e) are based on hearsay (*i.e.*, documents);<br>(f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections; Sebreros Dep. Objections; and Hoose Decl. Objections. |
| 271. | Nesheiwat made edits to the SLDR Companies' template for the Solicitation Letters. | SJ Ex. 1 (Hoose Decl.) at ¶ 36; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 47:14-18, 56:20-57:23 (invoking Fifth Amendment) | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

| | | | | |
|---|---|---|---|---|
| | | | | **Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 1 (Hoose Decl.) at ¶ 36<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 47:14-18, 56:20-57:23.<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 272. | Any edits Docu Prep Center's direct mail template that Docu Prep Center's managers wanted to make had to be approved by Nesheiwat. | SJ Ex. 1 (Hoose Decl.) at ¶ 36 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

143

| | | | | |
|---|---|---|---|---|
| | | | | of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 1 (Hoose Decl.) at ¶ 36<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections and Hoose Decl. Objections. |
| 273. | In February 2015, Nesheiwat directed Docu Prep Center's managers to adapt and use sales scripts | SJ Ex. 1 (Hoose Decl.) at ¶¶ 19, 20, 60; *see also* SJ Ex. 4 (Sklar | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); |

| | | provided by Student Loan Processing Center. | Decl.) at ¶ 46; SJ Ex. 14 (Nesheiwat RFA Resp. No. 19) at 29-30 (invoking Fifth Amendment) | Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |
|---|---|---|---|---|

**Nesheiwat objects to and moves to strike:**

  SJ Ex. 1 (Hoose Decl.) at ¶¶ 19, 20, 60;
  SJ Ex. 4 (Sklar Decl.) at ¶ 46

because they:

(a) are improper opinions;
  (b) are vague and ambiguous as to time;
  (c) are hearsay and multiple hearsay;
  (d) are irrelevant;
  (e) are based on hearsay (*i.e.*, documents);
  (f) lack personal knowledge, foundation.

  *See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections.

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 14 (Nesheiwat RFA Resp. No. 19) at 29-30.<br><br>because it is:<br>  (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat RFA Objections. |
| 274. | Nesheiwat was familiar with the sales scripts that Docu Prep Center used. | | SJ Ex. 4 (Sklar Decl.) at ¶¶ 44, 46; SJ Ex. 4h (Sklar Decl. Ex. 8 (email sending script to Nesheiwat); SJ Ex. 53 (email to Nesheiwat re on-hold script); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22, 24, 25 (authenticating SJ Ex. 53); SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 4 (Sklar Decl.) at ¶¶ 44, 46;<br>  SJ Ex. 4h (Sklar Decl. Ex. 8);<br>  SJ Ex. 53 (email to Nesheiwat re on-hold script);<br>  SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22, 24, 25 |

| | | | | because they: |
|---|---|---|---|---|
| | | | | (a) are improper opinions; (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Sklar Decl. Objections and Hoose Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13.<br><br>because it is:<br><br>(a) irrelevant & prejudicial; (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 275. | Nesheiwat made edits to Docu Prep Center's sales scripts. | SJ Ex. 4 (Sklar Decl.) at ¶ 46; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13 (invoking Fifth Amendment) | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

147

| | | | | |
|---|---|---|---|---|
| 1 | | | | Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.

**Nesheiwat objects to and moves to strike:**

   SJ Ex. 4 (Sklar Decl.) at ¶ 46

because it:

   (a) is improper opinion;
   (b) is vague and ambiguous as to time;
   (c) is hearsay and multiple hearsay;
   (d) is irrelevant;
   (e) is based on hearsay (*i.e.*, documents);
   (f) lacks personal knowledge, foundation.

   *See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections.

   SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13.

because it is:

   (a) irrelevant & prejudicial;
   (b) violates *Griffin*.

| | | | *See* Nesheiwat Dep. Objections. |
|---|---|---|---|
| 276. | Nesheiwat approved changes that were made to Docu Prep Center's sales scripts. | SJ Ex. 4 (Sklar Decl.) at ¶ 46; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 4 (Sklar Decl.) at ¶ 46<br><br>because they:<br><br>  (a) are improper opinions;<br>  (b) are vague and ambiguous as to time;<br>  (c) are hearsay and multiple hearsay;<br>  (d) are irrelevant;<br>  (e) are based on hearsay (*i.e.*, documents);<br>  (f) lack personal knowledge, foundation. |

| | | | | |
|---|---|---|---|---|
| | | | | *See* Evidentiary Objections:  Sklar Decl. Objections.<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 52:12-53:13.<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 277. | Nesheiwat made no efforts to verify the truthfulness of Docu Prep Center's statements regarding loan consolidation in its sales scripts. | SJ Ex. 4 (Sklar Decl.) at ¶ 47; SJ Ex. 1 (Hoose Decl.) at ¶ 69; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 112:12-23 (invoking Fifth Amendment). | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 4 (Sklar Decl.) at ¶ 47;<br>SJ Ex. 1 (Hoose Decl.) at ¶ 69 |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

150

| | | | because they: |
|---|---|---|---|
| | | | (a) are improper opinions;<br>(b) are vague and ambiguous as to time;<br>(c) are hearsay and multiple hearsay;<br>(d) are irrelevant;<br>(e) are based on hearsay (*i.e.*, documents);<br>(f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 112:12-23.<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections.<br><br><br>SJ Ex. 4 (Sklar Decl.) at ¶ 47; SJ Ex. 1 (Hoose Decl.) at ¶ 69; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 112:12-23 (invoking Fifth Amendment). |
| 278. | Nesheiwat made no efforts to verify the truthfulness of Docu Prep Center and Certified Doc Prep | SJ Ex. 3 (Mason Decl.) at ¶ 22; *see also* SJ Ex. 7 (Nesheiwat Dep.) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); |

| | | Services' statements in the Solicitation Letters. | at 100:21-101:1 (invoking Fifth Amendment). | Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br> SJ Ex. 3 (Mason Decl.) at ¶ 22<br><br>because it:<br><br>  (a) is improper opinion;<br>  (b) is vague and ambiguous as to time;<br>  (c) is hearsay and multiple hearsay;<br>  (d) is irrelevant;<br>  (e) is based on hearsay (*i.e.*, documents);<br>  (f) lacks personal knowledge, foundation.<br>*See* Evidentiary Objections: Mason Decl. Objections.<br><br>  SJ Ex. 7 (Nesheiwat Dep.) at 100:21-101:1. |

| | | | | |
|---|---|---|---|---|
| | | | | because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 279. | Nesheiwat provided instructions and training to Docu Prep Center sales employees on how to sell the company's services over the phone. | | SJ Ex. 3 (Mason Decl.) at ¶ 13 | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 3 (Mason Decl.) at ¶ 13<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant; |

| | | | | |
|---|---|---|---|---|
| | | | | (e) is based on hearsay (*i.e.*, documents); (f) lacks personal knowledge, foundation. *See* Evidentiary Objections: Mason Decl. Objections. |
| 280. | For example, Nesheiwat coached Docu Prep Center sales employees on how to overcome consumers' objections during sales calls, so that the sales employees could complete their sales. | SJ Ex. 3 (Mason Decl.) at ¶ 13 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. **Nesheiwat objects to and moves to strike:** SJ Ex. 3 (Mason Decl.) at ¶ 13 because it: (a) is improper opinion; (b) is vague and ambiguous as to time; (c) is hearsay and multiple hearsay; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

154

| | | | | |
|---|---|---|---|---|
| | | | | (d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Mason Decl. Objections. |
| 281. | Nesheiwat provided directions to Docs Done Right's manager regarding the services Docs Done Right provided to consumers on behalf of Docu Prep Center. | SJ Ex. 4 (Sklar Decl.) at ¶ 21 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 4 (Sklar Decl.) at ¶ 21<br><br>because they:<br><br>  (a) are improper opinions;<br>(b) are vague and ambiguous as to time; |

| | | | |
|---|---|---|---|
| | | | (c) are hearsay and multiple hearsay;<br>(d) are irrelevant;<br>(e) are based on hearsay (*i.e.*, documents);<br>(f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections. |
| 282. | Between 2015 and 2017, Nesheiwat arranged for each of the SLDR Companies to send direct mail through the mailing house that Monster Loans used to send direct mail marketing its services. | SJ Ex. 1 (Hoose Decl.) at ¶ 28, 103; SJ Ex. 4 (Sklar Decl.) at ¶ 23, 65; SJ Ex. 3 (Mason Decl.) at ¶ 18; SJ Ex. 6 (Sebreros Dep.) at 31:1-22; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 45:18-21, 53:15-23, 55:14-56:3 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 1 (Hoose Decl.) at ¶ 28, 103;<br>SJ Ex. 4 (Sklar Decl.) at ¶ 23, 65;<br>SJ Ex. 3 (Mason Decl.) at ¶ 18; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

156

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 6 (Sebreros Dep.) at 31:1-22 |
| | | | | because they: |
| | | | |   (a) are improper opinions;<br>  (b) are vague and ambiguous as to time;<br>  (c) are hearsay and multiple hearsay;<br>  (d) are irrelevant;<br>  (e) are based on hearsay (*i.e.*, documents);<br>  (f) lack personal knowledge, foundation. |
| | | | | *See* Evidentiary Objections:  Sklar Decl. Objections and Hoose Decl. Objections. |
| | | | |   SJ Ex. 7 (Nesheiwat Dep.) at 45:18-21, 53:15-23, 55:14-56:3. |
| | | | | because it is: |
| | | | |   (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*. |
| | | | | *See* Nesheiwat Dep. Objections. |
| 283. | Between 2015 and around September 2017, Nesheiwat oversaw the SLDR Companies' direct mail through the mailing house. | SJ Ex. 1 (Hoose Decl.) at ¶¶ 28, 31, 103, 39; SJ Ex. 1e (Hoose Decl. Ex. 5) at ML00004210 (Sept. 2016 email re mailing house invoices); SJ Ex. | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

157

| | | | |
|---|---|---|---|
| | | 4 (Sklar Decl.) at ¶¶ 27, 29, 65; SJ Ex. 3 (Mason Decl.) at ¶ 18; SJ Ex. 6 (Sebreros Dep.) at 124:14-19; SJ Ex. 58 (Feb. 2017 emails re tracking direct mail marketing costs); SJ Ex. 60 (June 2017 email coordinating visit to mail house with SLDR Company managers); SJ Ex. 61 (June 2017 email placing order with mail house); SJ Ex. 62 (July 2017 email from mail house re "Jawad Open Balance" for SLDR Company mailings); SJ Ex. 63 (Aug. 29, 2017 email with mail house); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-27 (authenticating SJ Exs. 58, 60, 61, 62, 63). | Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>     SJ Ex. 1 (Hoose Decl.) at ¶¶ 28, 31, 39, 103;<br>     SJ Ex. 1e (Hoose Decl. Ex. 5) at ML00004210 (Sept. 2016 email re mailing house invoices);<br>     SJ Ex. 4 (Sklar Decl.) at ¶¶ 27, 29, 65;<br>     SJ Ex. 3 (Mason Decl.) at ¶ 18;<br>     SJ Ex. 6 (Sebreros Dep.) at 124:14-19;<br>     SJ Ex. 58 (Feb. 2017 emails re tracking direct mail marketing costs);<br>     SJ Ex. 60 (June 2017 email coordinating visit to mail house with SLDR Company managers);<br>     SJ Ex. 61 (June 2017 email placing order with mail house);<br>     SJ Ex. 62 (July 2017 email from mail house re "Jawad Open Balance" for SLDR Company mailings); |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

158

| | | | | |
|---|---|---|---|---|
| | | | | SJ Ex. 63 (Aug. 29, 2017 email with mail house); |
| | | | | SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-27 (authenticating SJ Exs. 58, 60, 61, 62, 63). |
| | | | | because they: |
| | | | | (a) are improper opinions; (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation. |
| | | | | *See* Evidentiary Objections:  Sklar Decl. Objections, Mason Decl. Objections; Sebreros Dep. Objections; Van Loon Decl. Objections; and Hoose Decl. Objections; and Exs. 58, 60, 61, 62, 63 Objections. |
| 284. | Nesheiwat controlled who at the SLDR Companies was allowed to communicate with the mailing house. | SJ Ex. 6 (Sebreros Dep.) at 124:14-19, 125:10-16; SJ Ex. 52 at CFPB-JN-0086314 (Nesheiwat instructing mail house "not to discuss our mail" with Docu Prep Center co-manager Robert | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

159

| | | | Hoose); *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22, 24, 25 (authenticating SJ Ex. 52) | David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 6 (Sebreros Dep.) at 124:14-19, 125:10-16;<br>  SJ Ex. 52 at CFPB-JN-0086314<br>  SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22, 24, 25<br><br>because they:<br><br>  (a) are improper opinions;<br>  (b) are vague and ambiguous as to time;<br>  (c) are hearsay and multiple hearsay;<br>  (d) are irrelevant;<br>  (e) are based on hearsay (*i.e.*, documents);<br>  (f) lack personal knowledge, foundation.<br><br>  *See* Evidentiary Objections:  Sebreros Dep. Objections; Van Loon Decl. Objections, and Exh. 52 Objections. |
| 285. | Before sending a batch of direct mail for the SLDR Companies, the mailing house sent an example of the mailing known as a "proof" for review. | SJ Ex. 1 (Hoose Decl.) at ¶ 30; SJ Ex. 1b (Hoose Decl. Ex. 2);  SJ Ex. 1c (Hoose Decl. Ex. 3) | |

| 286. | Between 2015 and 2017, Nesheiwat received emails from the mailing house attaching "proofs" of the SLDR Companies' Solicitation Letters. | SJ Ex. 1 (Hoose Decl.) at ¶ 31 SJ Ex. 1b (Hoose Decl. Ex. 2) at 2 (proof emailed to Nesheiwat); SJ Ex. 64 (proof emailed to Nesheiwat); SJ Ex. 65 (proof emailed to Nesheiwat); *see also* SJ Ex. 22 (Klarow Decl.) (authenticating SJ Exs. 64 and 65); SJ Ex. 7 (Nesheiwat Dep.) at 46:13-47:10, 56:20-57:23 (invoking Fifth Amendment) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel, and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 1 (Hoose Decl.) at ¶ 31<br>    SJ Ex. 1b (Hoose Decl. Ex. 2) at 2;<br>    SJ Ex. 64;<br>    SJ Ex. 65;<br>    SJ Ex. 22 (Klarow Decl.)<br><br>because they:<br><br>  (a) are improper opinions;<br>  (b) are vague and ambiguous as to time;<br>  (c) are hearsay and multiple hearsay;<br>  (d) are irrelevant;<br>  (e) are based on hearsay (*i.e.*, documents); |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

161

| | | | | (f) lack personal knowledge, foundation.<br><br>  *See* Evidentiary Objections:  Klarow Decl. Objections and Hoose Decl. Objections; and Exhs. 64 & 65 Objections.<br><br>   SJ Ex. 7 (Nesheiwat Dep.) at 46:13-47:10, 56:20-57:23.<br><br>because it is:<br><br>    (a) irrelevant & prejudicial;<br>  (b) violates *Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 287. | Between 2015 and 2017, Nesheiwat arranged for the SLDR Companies to obtain the marketing lists they used to send direct mail. | SJ Ex. 3 (Mason Decl.) at ¶ 19; SJ Ex. 1 (Hoose Decl.) at ¶¶ 42-43; SJ Ex. 4 (Sklar Decl.) at ¶¶ 32-35, 67; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 12-15; *see also* SJ Ex. 7 (Nesheiwat Dep.) at 121:21-122:7 | | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

162

**Nesheiwat objects to and moves to strike:**

　SJ Ex. 3 (Mason Decl.) at ¶ 19;
　SJ Ex. 1 (Hoose Decl.) at ¶¶ 42-43;
　SJ Ex. 4 (Sklar Decl.) at ¶¶ 32-35, 67;
　SJ Ex. 5 (Van Loon Decl.) at ¶¶ 12-15

because they:

　(a) are improper opinions;
　(b) are vague and ambiguous as to time;
　(c) are hearsay and multiple hearsay;
　(d) are irrelevant;
　(e) are based on hearsay (*i.e.*, documents);
　(f) lack personal knowledge, foundation.

*See* Evidentiary Objections:  Mason Decl. Objections; Van Loon Decl. Objections; Sklar Decl. Objections; and Hoose Decl. Objections.

　SJ Ex. 7 (Nesheiwat Dep.) at 121:21-122:7.

because it is:

　(a) irrelevant & prejudicial;
　(b) violates *Griffin*.

| | | | |
|---|---|---|---|
| | | | *See* Nesheiwat Dep. Objections. |
| 288. | In 2016, Nesheiwat provided Certified Doc Prep Services' co-manager with guidance regarding how to sell the company's services and train employees. | SJ Ex. 3 (Mason Decl.) at ¶¶ 14, 23. | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 3 (Mason Decl.) at ¶¶ 14, 23<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation. |

| | | | | |
|---|---|---|---|---|
| | | | | *See* Evidentiary Objections:  Mason Decl. Objections. |
| 289. | Nesheiwat received updates regarding the SLDR Companies' business activities as a limited partner. | SJ Ex. 4 (Sklar Decl.) at ¶¶ 36, 56; SJ Ex. 4f and 4j (Sklar Decl. Ex. 6 and 10) (investor update emails); SJ Ex. 6 (Sebreros Dep.) at 41:22-42:25, 183:22-184:4; SJ Ex. 58; *see also* SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 32 (authenticating SJ Ex. 58) | **DISPUTED**: Ex. 129 (Lepiscopo Decl. at ¶¶ 6 & 7); Ex. 130 (Martinez CID at p. 153, l. 10 to p. 154, l. 12); Ex. 131 (Articles of incorporation and certificate of limited partners for the Companies); and the following exhibits show that Nesheiwat did not order prescreened lists from Experian but rather Max Chou, Bill Abdel,  and David Sklar worked with and directed Experian and ordered pre-screened lists from Experian: Ex. 129 (Lepiscopo Decl. at ¶¶ 8-16) and Exs. 132 through 140. **Nesheiwat objects to and moves to strike:** SJ Ex. 4 (Sklar Decl.) at ¶¶ 36, 56; SJ Ex. 4f and 4j (Sklar Decl. Ex. 6 and 10); SJ Ex. 6 (Sebreros Dep.) at 41:22-42:25, 183:22-184:4; SJ Ex. 58; SJ Ex. 5 (Van Loon Decl.) at ¶¶ 22-25, 32 because they: (a) are improper opinions; |

| | | | (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Sklar Decl. Objections; Van Loon Objections; and Sebreros Decl. Objections. |
| **VIII.    Nesheiwat's Invocation of the Fifth Amendment** | | | |
| 290. | In his Answer to the Bureau's Second Amended Complaint, Nesheiwat did not admit or deny the allegations asserted against him or state that he lacks knowledge or information sufficient to form a belief about the truth of the allegations. | ECF No. 146 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   ECF No. 146<br><br>because it is:<br><br>  (a) irrelevant & prejudicial; (b) *see also Griffin v. California*, 380 U.S. 609, 612 (1965) ("*Griffin*"). *Griffin* prohibits any "adverse comment" because it creates a constitutionally prohibited negative inference—*i.e.*, that the defendant is hiding something. Thus, the Court in *Griffin* held that this |

| | | | | |
|---|---|---|---|---|
| | | | | assumption amounts to an unfair penalty on a defendant's invocation of a constitutionally protected right.<br><br>*See* Nesheiwat Dep. Objections. |
| 291. | In his Answer to the Bureau's Second Amended Complaint, Nesheiwat refused to respond to the allegations in that complaint on Fifth Amendment grounds. | ECF No. 146 | | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   ECF No. 146<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 292. | Nesheiwat refused on Fifth Amendment grounds to answer requests for admission relating to prescreened lists, including requests regarding Monster Loans' Experian account, his role in purchasing of prescreened lists for the SLDR Companies, and his knowledge of the Fair Credit Reporting Act at the time of the purchases. | SJ Ex. 14 (Nesheiwat RFA Resp. Nos. 1-16) at 10-27 | | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 14 (Nesheiwat RFA Resp. Nos. 1-16) at 10-27<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) *see Griffin*. |

| | | | |
|---|---|---|---|
| | | | *See* Nesheiwat Dep. Objections. |
| 293. | At his deposition, Nesheiwat and his attorney stipulated that Nesheiwat's attorney would assert the Fifth Amendment on Nesheiwat's behalf during the deposition. | SJ Ex. 7 (Nesheiwat Dep.) at 11:3-13:24, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 7 (Nesheiwat Dep.) at 11:3-13:24, 144:25-145:9<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 294. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to provide any testimony regarding any of the facts at issue in this case. | SJ Ex. 7 (Nesheiwat Dep.) at 145:17-21; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 7 (Nesheiwat Dep.) at 145:17-21; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>  (a) irrelevant & prejudicial;<br>  (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |

| 295. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to his role and conduct while working at Monster Loans. | SJ Ex. 7 (Nesheiwat Dep.) at 24:19-25:20, 29:1-33:17; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 7 (Nesheiwat Dep.) at 24:19-25:20, 29:1-33:17; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>   (a) irrelevant & prejudicial; (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 296. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to the SLDR Companies, including about their marketing, sales, and services and his involvement in them and knowledge of their activities. | SJ Ex. 7 (Nesheiwat Dep.) at 40:7-67:24; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 7 (Nesheiwat Dep.) at 40:7-67:24; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>   (a) irrelevant & prejudicial; (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 297. | At his deposition, Nesheiwat refused on Fifth Amendment grounds | SJ Ex. 7 (Nesheiwat Dep.) at 68:1-83:10, | **DISPUTED**: There is no admissible evidence to support this assertion. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

169

| | | | |
|---|---|---|---|
| | to answer any questions or requests for admission relating to prescreened lists, including questions about purchases of prescreened lists for the SLDR Companies from Experian by Monster Loans and Lend Tech, the use of prescreened lists by the SLDR Companies, his involvement in purchasing prescreened lists for the SLDR Companies, and his knowledge of the Fair Credit Reporting Act. | 87:23-92:23; *see also id.* at 11:3-13:25, 144:25-145:9 | **Nesheiwat objects to and moves to strike:**<br><br>　SJ Ex. 7 (Nesheiwat Dep.) at 68:1-83:10, 87:23-92:23; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>　(a) irrelevant & prejudicial;<br>　(b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 298. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to the SLDR Companies' representations regarding consumers receiving lower interest rates by consolidating, including questions about his knowledge of and participation in making those representations. | SJ Ex. 7 (Nesheiwat Dep.) at 93:12-101:22; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>　SJ Ex. 7 (Nesheiwat Dep.) at 93:12-101:22; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>　(a) irrelevant & prejudicial;<br>　(b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 299. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to the SLDR Companies' | SJ Ex. 7 (Nesheiwat Dep.) at 101:24-107:24; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:** |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

170

| | | | |
|---|---|---|---|
| | representations regarding consumers receiving improved credit scores by consolidating, including questions about his knowledge of, participation in, and basis for making those representations. | | SJ Ex. 7 (Nesheiwat Dep.) at 101:24-107:24; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>(a) irrelevant & prejudicial; (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 300. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to the Docu Prep Center's representations regarding ED becoming consumers' "new servicer," including questions about his knowledge of and participation in making those representations. | SJ Ex. 7 (Nesheiwat Dep.) at 108:1-114:2; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 108:1-114:2; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>(a) irrelevant & prejudicial; (b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| 301. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to his knowledge of consumer complaints about misrepresentations by the SLDR Companies. | SJ Ex. 7 (Nesheiwat Dep.) at 100:9-19, 105:19-23, 112:25-113:12; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 100:9-19, 105:19- |

| | | | 23, 112:25-113:12; *see also id.* at 11:3-13:25, 144:25-145:9 |
|---|---|---|---|
| | | | because it is: |
| | | | (a) irrelevant & prejudicial; (b) *see Griffin.* |
| | | | *See* Nesheiwat Dep. Objections. |
| 302. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions relating to the SLDR Companies' collection of advance fees, including questions about his knowledge of and participation in the collection of advance fees and his knowledge of the TSR. | SJ Ex. 7 (Nesheiwat Dep.) at 114:4-127:16; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 7 (Nesheiwat Dep.) at 114:4-127:16; *see also id.* at 11:3-13:25, 144:25-145:9 because it is: (a) irrelevant & prejudicial; (b) *see Griffin.* *See* Nesheiwat Dep. Objections. |
| 303. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions about whether since 2017 he has engaged in any of the conduct alleged in the Bureau's Complaint through companies besides Monster Loans and the SLDR Companies. | SJ Ex. 7 (Nesheiwat Dep.) at 135:18-141:6; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion. **Nesheiwat objects to and moves to strike:** SJ Ex. 7 (Nesheiwat Dep.) at 135:18-141:6; *see also id.* at 11:3-13:25, 144:25-145:9 |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

172

| | | | because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
|---|---|---|---|
| 304. | At his deposition, Nesheiwat refused on Fifth Amendment grounds to answer any questions about his financial situation, assets, and income. | SJ Ex. 7 (Nesheiwat Dep.) at 141:8-144:23; *see also id.* at 11:3-13:25, 144:25-145:9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 7 (Nesheiwat Dep.) at 141:8-144:23; *see also id.* at 11:3-13:25, 144:25-145:9<br><br>because it is:<br><br>(a) irrelevant & prejudicial;<br>(b) *see Griffin*.<br><br>*See* Nesheiwat Dep. Objections. |
| | **IX.   Consumers Have Complained Extensively About the SLDR Companies** | | |
| 305. | Between 2015 and 2020, 430 consumers filed complaints about the SLDR Companies with federal and state law enforcement agencies and the Better Business Bureau. | SJ Ex. 30 (Schneider Decl.) at ¶¶ 6-9 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶¶ 6-9<br><br>because it: |

| | | | |
|---|---|---|---|
| | | | (a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Schneider Decl. Objections. |
| 306. | Of the 430 consumers, 390 felt that they were misled by the SLDR Companies. | SJ Ex. 30 (Schneider Decl.) at ¶ 11 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶ 11<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Schneider Decl. Objections. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

174

| 307. | Consumers who felt misled stated in complaints that they were lied to or they did not receive the results they were promised. | SJ Ex. 30 (Schneider Decl.) at ¶ 11 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶ 11 because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Schneider Decl. Objections. |
| 308. | Of the 430 consumers, 147 consumers described the SLDR Companies as a "scam" or as having been "scammed" by them. | SJ Ex. 30 (Schneider Decl.) at ¶ 11 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶ 11 because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time; |

| | | | |
|---|---|---|---|
| | | | (c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Schneider Decl. Objections. |
| 309. | Of the 430 consumers, 31 consumers stated that they were promised lower interest rates by the SLDR Companies. | SJ Ex. 30 (Schneider Decl.) at ¶ 12 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶ 12<br><br>because it:<br><br>(a) is improper opinion;<br>(b) is vague and ambiguous as to time;<br>(c) is hearsay and multiple hearsay;<br>(d) is irrelevant;<br>(e) is based on hearsay (*i.e.*, documents);<br>(f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  Schneider Decl. Objections. |
| 310. | Between 2015 and 2020, at least 135 consumers filed complaints about Docu Prep Center with | SJ Ex. 30 (Schneider Decl.) at ¶¶ 9-10 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion. |

| | | | |
|---|---|---|---|
| | federal and state law enforcement agencies and the Better Business Bureau. | | **Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 30 (Schneider Decl.) at ¶¶ 9-10<br><br>because it:<br><br>  (a) is improper opinions;<br>  (b) is vague and ambiguous as to time;<br>  (c) is hearsay and multiple hearsay;<br>  (d) is irrelevant;<br>  (e) is based on hearsay (*i.e.*, documents);<br>  (f) lacks personal knowledge, foundation.<br><br>  *See* Evidentiary Objections:  Schneider Decl. Objections. |
| 311. | At times, Docs Done Right handled consumer complaints for the SLDR Companies. | SJ Ex. 8 (DDR Dep.) at 60:4-24, 77:5-12, 166:13-17 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>  SJ Ex. 8 (DDR Dep.) at 60:4-24, 77:5-12, 166:13-17<br><br>because it:<br><br>  (a) is improper opinion;<br>  (b) is vague and ambiguous as to time;<br>  (c) is hearsay and multiple hearsay;<br>  (d) is irrelevant; |

| | | | |
|---|---|---|---|
| | | | (e) is based on hearsay (*i.e.*, documents); (f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  DDR Dep. Objections. |
| 312. | The SLDR Companies and Docs Done Right received complaints directly from consumers regarding the SLDR Companies. | SJ Ex. 8 (DDR Dep.) at 60:4-24, 77:5-12, 166:13-17; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 6 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>SJ Ex. 8 (DDR Dep.) at 60:4-24, 77:5-12, 166:13-17; SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 6<br><br>because they:<br><br>(a) are improper opinions; (b) are vague and ambiguous as to time; (c) are hearsay and multiple hearsay; (d) are irrelevant; (e) are based on hearsay (*i.e.*, documents); (f) lack personal knowledge, foundation.<br><br>*See* Evidentiary Objections:  DDR Dep. Objections and Ramirez-Valazquez DDP Decl. Objections. |
| 313. | The SLDR Companies and Docs Done Right received those complaints | SJ Ex. 8 (DDR Dep.) at 166:18-167:11; SJ Ex. 27 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion. |

| | | | |
|---|---|---|---|
| | in writing and over the phone. | (Ramirez-Velazquez DPP Decl.) at ¶ 6 | **Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 8 (DDR Dep.) at 166:18-167:11;<br>   SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 6<br><br>because they:<br><br>   (a) are improper opinions;<br>   (b) are vague and ambiguous as to time;<br>   (c) are hearsay and multiple hearsay;<br>   (d) are irrelevant;<br>   (e) are based on hearsay (*i.e.*, documents);<br>   (f) lack personal knowledge, foundation.<br><br>   *See* Evidentiary Objections:  DDR Dep. Objections and Ramirez-Valazquez DDP Decl. Objections. |
| 314. | The SLDR Companies and Docs Done Right received at least 148 complaints in which consumers described the SLDR Companies as a "scam" or stated the SLDR Companies lied to them. | SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 13 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 13<br><br>because it:<br><br>   (a) is improper opinion; |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

179

| | | | |
|---|---|---|---|
| | | | (b) is vague and ambiguous as to time;<br>    (c) is hearsay and multiple hearsay;<br>    (d) is irrelevant;<br>    (e) is based on hearsay (*i.e.*, documents);<br>    (f) lacks personal knowledge, foundation.<br><br>    *See* Evidentiary Objections:  DDR Dep. Objections and Ramirez-Valazquez DDP Decl. Objections. |
| 315. | The SLDR Companies and Docs Done Right received complaints from at least 109 consumers that referenced representations made to consumers about obtaining a lower interest rate through the SLDR Companies' services | SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9 | **<u>DISPUTED</u>**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9<br><br>because it:<br><br>    (a) is improper opinion;<br>    (b) is vague and ambiguous as to time;<br>    (c) is hearsay and multiple hearsay;<br>    (d) is irrelevant;<br>    (e) is based on hearsay (*i.e.*, documents);<br>    (f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Ramirez-Valazquez DDP Decl. Objections. |

| 316. | The SLDR Companies and Docs Done Right received at least 35 complaints regarding the SLDR Companies' statements concerning the effects of the SLDR Companies' services on the consumers' credit scores or creditworthiness. | SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 11 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶ 9<br><br>because it:<br><br>   (a) is improper opinion;<br>   (b) is vague and ambiguous as to time;<br>   (c) is hearsay and multiple hearsay;<br>   (d) is irrelevant;<br>   (e) is based on hearsay (*i.e.*, documents);<br>   (f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: DDR Dep. Objections and Ramirez-Valazquez DDP Decl. Objections. |
| 317. | Docu Prep Center and Docs Done Right received at least 129 complaints about Docu Prep Center. | SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶¶ 9, 13 | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>   SJ Ex. 27 (Ramirez-Velazquez DPP Decl.) at ¶¶ 9, 13<br><br>because it:<br><br>   (a) is improper opinion; |

| | | | |
|---|---|---|---|
| | | | (b) is vague and ambiguous as to time;<br>    (c) is hearsay and multiple hearsay;<br>    (d) is irrelevant;<br>    (e) is based on hearsay (*i.e.*, documents);<br>    (f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Ramirez-Valazquez DDP Decl. Objections. |
| 318. | Customers of the SLDR Companies complained to Docs Done Right that "I was told my interest rate would be lowered" and "I thought I'd get a lower interest rate." | SJ Ex. 11 (Martinez IH) at 202:14-203:5. | **DISPUTED**: There is no admissible evidence to support this assertion.<br><br>**Nesheiwat objects to and moves to strike:**<br><br>    SJ Ex. 11 (Martinez IH) at 202:14-203:5.<br><br>because it:<br><br>    (a) is improper opinion;<br>    (b) is vague and ambiguous as to time;<br>    (c) is hearsay and multiple hearsay;<br>    (d) is irrelevant;<br>    (e) is based on hearsay (*i.e.*, documents);<br>    (f) lacks personal knowledge, foundation.<br><br>*See* Evidentiary Objections: Martinez IH Objections. |

# PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

## OF MATERIAL FACT

| Def.'s SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 1. | Between 2015 and 2018, Nesheiwat was a limited partner in defendants Docu Prep Center, Certified Doc Prep Services aka Certified Document Center, Assure Direct Services, Direct Document Solutions, and Secure Preparation Services (collectively, "Companies"). Hereinafter Nesheiwat and the Companies shall be referred to collectively as "Defendants." | *See* the Bureau's Memo, ECF 189-1, p. 2, ll. 25-28, and the Bureau's Separate Statement, ECF 190, UF ¶¶ 4-6, 7-8, 9-11, 12-14, 15-17, and 18-20. (*See* Fn. 2.) | Undisputed. |
| 2. | In April 2015, which was more than 4.5 years before this Action was untimely filed, the Bureau had full knowledge of the claims alleged in this Action against Defendants and was already investigating and taking rulemaking action under the Telemarking Sales Ruleregarding Defendants' alleged use of prescreened | Ex. 30 (Schneider Decl. at ¶10); Ex. 101 (Lepiscopo Decl. at ¶ 34); Ex. 128. | Disputed. This fact is not supported by the evidence cited. The declaration of Dani Schneider, a Bureau investigator, stated that she reviewed consumer complaints from the Federal Trade Commission's Consumer Sentinel complaint database dating back to April 2015. SJ Ex. 30 (Schneider Decl.) at ¶¶ 6-7, 10. Her declaration does not state that the Bureau was already investigating or had knowledge of its claims in April |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

183

| | | | |
|---|---|---|---|
| | student loan information for use in debt relief matters. | | 2015. *See id.* <br><br> The April 2015 email in Ex. 128 was sent by the payment processor Trans2Pay, LLC to certain of the defendants in this action. *See* SJ Ex. 1 at ¶¶ 73-74; SJ Ex. 1n. The email references the TSR's prohibition on advance fees and a 2014 Bureau enforcement action against an unrelated student-loan debt relief operation in Florida. *See CFPB v. College Educ. Servs. LLC*, No. 14-cv-3078 (M.D. Fla.). The email does not reference Nesheiwat or any other defendant in this action, or indicate that the Bureau was investigating them during 2015. The email in Ex. 128 was produced to the Bureau after this action was filed. *See* SJ Ex. 67 at ¶¶ Ex. 3-8. The email is not evidence of the Bureau's knowledge in 2015. <br><br> The Bureau does not have rulemaking authority over the Telemarketing Sales Rule. *See* 15 U.S.C. § 6102(a), (b). |
| 3. | On November 18, 2015, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with | Ex. 101 (Lepiscopo Decl. at ¶ 8); Ex. 102 (Luvin Complaint). The complaint is alleged against defendant Docu Prep Center for taking $699 in advance fees to consolidate | Disputed in Part. The Bureau does not dispute that Natalie Luvin submitted a complaint to the Bureau on November 18, 2015. <br><br> But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

184

| | | | |
|---|---|---|---|
| | the Bureau by Natalie Anne Luvin. | her student loans, which did not occur. She requested refund of her $699. Fees were not returned to Natalie Luvin. | any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate that Docu Prep Center engaged in telemarketing. |
| 4. | On February 26, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendantsin this Action through* a complaint filed with the Bureau by Megan Grogg. | Ex. 101 (Lepiscopo Decl. at ¶ 9); Ex. 103 (Grogg Complaint). The complaint alleges that defendant Docu Prep Center promised to consolidate her student loans (over $50K) so that she would not have a payment for the 1st year and then low payments for the following nine (9) years. She paid $899 in advance fees. Fees were not returned to Megan Grogg. | Disputed in Part. The Bureau does not dispute that Megan Grogg submitted a complaint to the Bureau on November 18, 2015.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center.<br><br>The complaint does not reference consumer reports or |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

185

| | | | |
|---|---|---|---|
| | | | the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer |
| 5. | On March 30, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendants in this Action through* a complaint filed with the Bureau by Laurie Whitehead. | Ex. 101 (Lepiscopo Decl. at ¶ 10); Ex. 104 (Whitehead Complaint). The complaint alleges that defendant Certified Doc Prep promised to lower her monthly student loan payment. She paid $599 in advance fees and then was asked to pay an additional $795, which she did not pay. Fees were not returned to Laurie Whitehead. | Disputed in Part. The Bureau does not dispute that Laurie Whitehead submitted a consumer complaint to the Bureau on March 30, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>This complaint is about one consumer's experience and appears to reference multiple businesses, including "select student loan help" and "Certified Document Center," and does not clearly identify what actions were taken by each business.<br><br>The complaint does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center.<br><br>The complaint does not reference consumer reports, the FCRA, or false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

186

| 6. | On April 27, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with the Bureau by Blair Rohlfing. | Ex. 101 (Lepiscopo Decl. at ¶ 11); Ex. 105 (Rohlfing Complaint). The complaint alleges that defendant Certified Doc Prep sent Blair Rohlfing a "*Final Notice*" *mail piece titled,* "*Student Loan Consolidation & Payment Reduction Program Prepared for Blair Rohlfing.*" The notice indicated that Ms. Rohlfing owed $188,064 in student loan debt. She contacted defendant Certified Doc Prep and spoke with a representative inquiring how they knew her balance. The response caused her to contact the Bureau to ascertain whether what she was told was correct. She then filed the Rohlfing Complaint. | Disputed in Part. The Bureau does not dispute that Blair Rohlfing submitted a complaint to the Bureau on April 27, 2016.

But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.

The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Certified Doc Prep Services.

The complaint does not reference consumer reports, the FCRA, or false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.

The complaint does not indicate when Certified Doc Prep Services wanted to receive its fees in relation to the timing of its services. |
| 7. | On May 16, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against** | Ex. 101 (Lepiscopo Decl. at ¶ 12); Ex. 106 (Castillo Complaint). The complaint alleges that defendant | Disputed in Part. The Bureau does not dispute that Darla Castillo submitted a complaint to the Bureau on May 16, 2016.

But the cited evidence does not support the statement that the |

| | | | |
|---|---|---|---|
| | ***Defendants in this Action through*** a complaint filed with the Bureau by Darla Castillo. | Certified Doc Prep contacted Ms. Castillo via email for the purpose student loan forgiveness or consolidation. She paid $799 in advance fees with her application. Pursuant to the Certified Doc Prep's cancellation policy, she requested that her $799 be refunded. The advance fees were not returned to Darla Castillo. | Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Certified Doc Prep Services.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 8. | On May 24, 2016, which was more than 3 years before this Action was ***untimely*** filed***, the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Jared McCullough. | Ex. 101 (Lepiscopo Decl. at ¶ 13); Ex. 107 (McCullough Complaint). The complaint alleges that defendant Docu Prep Center contacted Mr. McCullough for student loan consolidation and forgiveness program. The complaint further alleged that someone from Docu Prep Center threatened Mr. McCullough with sending his account | Disputed in Part. The Bureau does not dispute that Jared McCullough submitted a consumer complaint to the Bureau on May 24, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience. It references Docu Prep Center in passing but primarily focuses on the consumer's concerns about his interactions with the student loan servicer Navient Solutions. The complaint |

| | | | |
|---|---|---|---|
| | | to collections. He also contacted U.S. Senator Mark Warner's office for help. | alleges that Navient (not Docu Prep Center) threatened that his private loan would be put in collections. |
| 9. | On July 12, 2016, which was more than 3 years before this Action was *untimely* filed, the Bureau sent U.S. Senator Mark Warner a letter *on behalf of* Jared McCullough. | Ex. 101 (Lepiscopo Decl. at ¶ 14); Ex. 108 (McCullough Complaint); Senator Warner's committee assignment in 114th Congress (2015-2016), assignments, https://ballotpedia.org/United_States_Senate_Committee_on_Banking,_Housing,_and_Urban_Affairs.  The Bureau sent U.S. Senator Mark Warner a letter, along with a copy of its letter to Mr. McCullough and a copy of the complaint. | Disputed in Part. The Bureau does not dispute that on July 12, 2016 its Office of Consumer Response sent Senator Warner a letter with an update regarding McCollough's complaint against Navient and Navient's response. The Bureau's letter does not reference Nesheiwat, Docu Prep Center, or any other defendant and does not purport to be sent on behalf of McCullough. |

| | | The Bureau initiated this investigation due to the fact that in the 114th Congress Senator Warner was on the Senate Banking, Housing, and Urban Affairs committee, which had oversight over the Bureau.<br><br>Mr. McCullough was Senator Warner's constituent. The Bureau's letter has an official complaint number assigned to it: "Complaint 160524-000095 (McCullough)." | |
|---|---|---|---|
| 10. | On June 22, 2016, which was more than 3 years before this Action was ***untimely*** filed ***the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Brianna Price. | Ex. 101 (Lepiscopo Decl. at ¶ 15); Ex. 109 (Price Complaint). The complaint alleges that defendant Certified Document Center sent her a "Final Notice" for consolidating her student loans and that they would prepare and submit a forbearance request. Payments were scheduled for | Disputed in Part. The Bureau does not dispute that Brianna Price submitted a complaint to the Bureau on June 22, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a |

| | | | |
|---|---|---|---|
| | | removal from her account: $299.67 on 1/30/17, $299.67 on 7/22/17, and $299.66 on 8/5/17. After she was not satisfied with the services, Ms. Price closed her bank account so the auto-deductions would not occur. | Certified Document Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 11. | On July 7, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with the Bureau by Taylor Huval. | Ex. 101 (Lepiscopo Decl. at ¶ 16); Ex. 110 (Huval Complaint). The complaint alleges that defendant Certified Document Center sent Huval a "*Final Notice*" *mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Taylor Huval.*" The notice showed the balance on Huval's student loans was $23,480. They requested a $799 fee for consolidation services and a $30 per month fee for preparing and filing the annual renewal and for filing a loan | Disputed in Part. The Bureau does not dispute that Taylor Huval submitted a complaint to the Bureau on July 7, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate when Certified Document |

| | | forgiveness request. After conducting research Huval discovered that this could be done for free and cancelled the services. | Center wanted to receive its fees in relation to the timing of its services. |
|---|---|---|---|
| 12. | On July 26, 2016, which was more than 3 years before this Action was ***untimely*** filed, ***the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Kareem Steplight. | Ex. 101 (Lepiscopo Decl. at ¶ 17); Ex. 111 (Steplight Complaint). The complaint alleges that defendant DocuPrep Center contact Mr. Steplight numerous times by telephone. He eventually spoke with a representative from DocPrep Center who implied that his student debt could be reduced by 50% and obtained a $600 advance fees. Mr. Steplight's funds were not refunded. | Disputed in Part. The Bureau does not dispute that Kareem Steplight submitted a complaint to the Bureau on July 26, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate that Docu Prep Center engaged in telemarketing or support the statement that Docu Prep Center contacted the consumer "numerous times by telephone." The complaint does not indicate when the company charged its |

| | | | fees in relation to the timing of its services. |
|---|---|---|---|
| 13. | On July 26, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendants in this Action through* a complaint filed with the Bureau by Robert Cook. | Ex. 101 (Lepiscopo Decl. at ¶ 18); Ex. 112 (Cook Complaint). The complaint alleges that defendant Certified Document Center sent Mr. Cook a "Final Notice" indicating that he was eligible for a student loan consolidation. Mr. Cook contacted them and was told he could receive loan forgiveness if he made two $445 payments in June 2016, which he did. Mr. Cook then requested a refund of his $990 but has not received a refund. | Disputed in Part. The Bureau does not dispute that Robert Cook submitted a complaint to the Bureau on July 26, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 14. | On August 8, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendants in this Action through* a complaint filed with the Bureau by Jonathan | Ex. 101 (Lepiscopo Decl. at ¶ 19); Ex. 113 (Hollingsworth Complaint). The complaint alleges that defendant Certified Doc Prep Services represented it provided student loan debt services. Based on this Mr. | Disputed in Part. The Bureau does not dispute that Jonathan Hollingsworth submitted a complaint to the Bureau on August 8, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

193

| | | Hollingsworth. | Hollingsworth entered into an agreement for those services but later changed his mind. However, he did not pay any advance fees. | This complaint is about one consumer's experience and appears to reference multiple businesses, including "Select Student Services, LLC" and "Certified Doc Prep Services," and does not clearly identify what actions were taken by each business. |
|---|---|---|---|---|
| | | | | The complaint does not reference Nesheiwat or any other defendant besides Certified Doc Prep Services. |
| | | | | The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| | | | | The complaint does not indicate when Certified Doc Prep Services wanted to receive its fees in relation to the timing of its services. |
| 15. | | On August 8, 2016, which was more than 3 years before this Action was **_untimely_** filed**_, the Bureau received notice of the claims against Defendants in this Action through_** a complaint filed with the Bureau by Jeremy Bautista. | Ex. 101 (Lepiscopo Decl. at ¶ 20); Ex. 114 (Bautista Complaint). The complaint alleges that defendant Certified Document Center sent Mr. Bautista a "Final Notice" mail piece titled, | Disputed in Part. The Bureau does not dispute that Jeremy Bautista submitted a complaint to the Bureau on August 8, 2016. |
| | | | | But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

194

| | | | |
|---|---|---|---|
| | | *"Student Loan Consolidation& Payment Reduction Program Prepared for Jeremy Bautista.*" The noticeshowed the balance on Bautista's student loans was $40,239. Mr. Bautista spoke with a man named Steve at Certified Document Center who told him he qualified for a loan forgiveness after he paid an advance fee of $899. He did not pay the fees. | This complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant. The attached marketing letter appears to have been sent by Docu Prep Center d/b/a Certified Document Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate when the company he spoke to wanted to receive its fees in relation to the timing of its services. |
| 16. | On August 18, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendantsin this Action through** a complaint filed with the Bureau by Chelsea Sogard. | Ex. 101 (Lepiscopo Decl. at ¶ 21); Ex. 115 (Sogard Complaint). The complaint alleges that defendants Certified Document Center and Certified DoPrep sent Ms. Sogard a *"Final Notice"mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Chelsea Sogard.*" | Disputed in Part. The Bureau does not dispute that Chelsea Sogard submitted a complaint to the Bureau on August 18, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and appears to reference multiple businesses, including "Select Student Services" and |

| | | | The notice showed the balance on Sogard's student loans was $240,782. Ms. Sogard spoke with a representative who requested an $899 advance fee for processing the forbearance and consolidation. He placed a hold on withdrawal of the $899 advance fees. | "Certified Doc Prep," and does not clearly identify what actions were taken by each business. The complaint does not reference Nesheiwat or any other defendant besides Certified Doc Prep Services.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates or ED's role as a servicer. |
| 17. | On August 25, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendantsin this Action through** a complaint filed with the Bureau by Gerardo Gamboa. | Ex. 101 (Lepiscopo Decl. at ¶ 22); Ex. 116 (Gamboa Complaint). The complaint alleges that defendant Certified Document Center sent Mr. Gamboa a "*Final Notice" mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Gerardo Gamboa*." The notice showed the balance on Gamboa's student loans was $32,641. Mr. Gamboa did not pay any advance fees. | Disputed in Part. The Bureau does not dispute that Gerardo Gamboa submitted a complaint to the Bureau on August 25, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

196

| | | | | The complaint does not indicate when Certified Document Center wanted to receive its fees in relation to the timing of its services. |
|---|---|---|---|---|
| 18. | On August 29, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with the Bureau by Alexis Ross. | Ex. 101 (Lepiscopo Decl. at ¶ 23); Ex. 117 (Ross Complaint). The complaint alleges that defendant Certified Document Center sent Ms. Ross a "*Final Notice" mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Alexis Ross*." The notice showed the balance on Ross' student loans was $40,855. Ms. Ross paid $899 in advance fees to process her consolidation. When her loan payments increased, she requested a refund. A refund was not issued. | Disputed in Part. The Bureau does not dispute that Alexis Ross submitted a complaint to the Bureau on August 29, 2016. <br><br> But the cited evidence does not support the statement that the Bureau "received notice of the claims against Nesheiwat or any other defendant through that complaint. <br><br> The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant  besides Docu Prep Center d/b/a Certified Document Center. <br><br> The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 19. | On September 1, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against** | Ex. 101 (Lepiscopo Decl. at ¶ 24); Ex. 118 (Ambrosio Complaint). The complaint alleges that defendant | Disputed in Part. The Bureau does not dispute that Nicholas Ambrosio submitted a complaint to the Bureau on September 1, 2016. <br><br> But the cited evidence does not |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

197

| | | | |
|---|---|---|---|
| | ***Defendants in this Action through*** a complaint filed with the Bureau by Nicholas Ambrosio. | Certified Document Center sent Mr. Ambrosio a "*Final Notice*" mail piece titled, "*Student Loan Consolidation & Payment Reduction Program Prepared for Nicholas Ambrosio.*" The notice showed the balance on Ambrosio's student loans was $26,234. Mr. Ambrosio was requested to pay $899 in advance fees to process his loan forgiveness and consolidation. Ultimately, he did not pay the advance fees. | support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint. The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center. The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 20. | On September 1, 2016, which was more than 3 years before this Action was untimely filed, the Bureau was regularlycontacting Defendants in this Action. | Ex. 101 (Lepiscopo Decl. at ¶ 33); Ex. 126. This is an email between Certified Doc Prep representatives indicating that the Bureau was calling Defendants: "*Brad* [Brigante] *said not to do any more leg work on tracking the phone number of the caller from the CFPB* [*i.e.*, the Bureau]." | Disputed. This fact is not supported by the evidence cited. This email references a "caller from the CFPB," but does not support the statement that the "Bureau was regularly contacting Defendants." The email does not identify the caller, the recipient of the call, the nature of the call, the date of the call, or any other information about the caller or frequency of calls. |

| | | | |
|---|---|---|---|
| 21. | On September 2, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendants in this Action through* a complaint filed with the Bureau by Jennifer Huchim. | Ex. 101 (Lepiscopo Decl. at ¶ 25); Ex. 119 (Huchim Complaint). The complaint alleges that defendant Certified Document Center sent Ms. Huchim a "*Final Notice" mail piece titled, "Student Loan Consolidation& Payment Reduction Program Prepared for Jennifer Huchim*." The notice showed the balance on Ms. Huchim's student loans was $38,626. Ms. Huchim was requested to pay $2,600 in advance fees to process her loan forgiveness and consolidation, which the representative discounted to $700 if paid immediately. She did not pay any fees. | Disputed in Part. The Bureau does not dispute that Jennifer Huchim submitted a complaint to the Bureau on September 2, 2016. But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint. This complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant. The attached marketing letter appears to have been sent by Docu Prep Center d/b/a Certified Document Center. The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 22. | On September 10, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against* | Ex. 101 (Lepiscopo Decl. at ¶ 26); Ex. 120 (Pora Complaint). The complaint alleges that defendant Certified Doc Prep | Disputed in Part. The Bureau does not dispute that Olivia Pora submitted a complaint to the Bureau on September 10, 2016. But the cited evidence does not |

| | | | |
|---|---|---|---|
| | ***Defendants in this Action through*** a complaint filed with the Bureau by Olivia Pora. | Services made false representations about student loan consolidation and reduction. Ms. Pora did not sign any agreement and did not pay any advance fees but is concerned about her private information. | support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Certified Doc Prep Services.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate when Certified Doc Prep Services wanted to receive its fees in relation to the timing of its services. |
| 23. | On September 16, 2016, which was more than 3 years before this Action was ***untimely*** filed*, **the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Shelia Johnson. | Ex. 101 (Lepiscopo Decl. at ¶ 27); Ex. 127 (Johnson Complaint). The complaint alleges that defendant DocuPrep Center represented to Ms. Johnson that she was eligible for loan forgiveness and request a $1,000 advance fee, which reduced to $899 to be paid in three | Disputed in Part. The Bureau does not dispute that Shelia Johnson submitted a complaint to the Bureau on September 16, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

200

| | | payments: $299.67 on 11/30/15, $299.67 on 12/31/15, and $299.66 on 1/8/16, which was deducted from her bank account. After learning that DocuPrep Center did not do anything to procure a loan forgiveness, she requested a refund, which was not given. | any other defendant. The documents submitted by the consumer reference Docu Prep Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
|---|---|---|---|
| 24. | On October 24, 2016, which was more than 3 years before this Action was *untimely* filed*, the Bureau received notice of the claims against Defendants in this Action through* a complaint filed with the Bureau by Damina Durham. | Ex. 101 (Lepiscopo Decl. at ¶ 28); Ex. 121 (Durham Complaint). The complaint alleges that defendant DocuPrep Center contact Damina Durham offering student loan forgiveness assistance services. Damina completed and submitted all forms to DocuPrep Center, including the automatic debit form--$29.99 per month. Monthly payments commenced being deducted but it is unclear whether therewas ever a | Disputed in Part. The Bureau does not dispute that Damina Durham submitted a complaint to the Bureau on October 24, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>This complaint is about one consumer's experience and appears to involve multiple businesses. The complaint's narrative refers to "Student Assist Plus," while certain of the complaint's attachments reference Docu Prep Center, and the $29.99 monthly payment appears to have been charged by Student Assist Plus. |

| | | | refund. | The complaint does not reference Nesheiwat or any other defendant besides Docu Prep Center. |
| --- | --- | --- | --- | --- |
| | | | | The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| | | | | The complaint does not indicate that Docu Prep Center engaged in telemarketing. |
| 25. | On November 14, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with the Bureau by Edgard Parra. | Ex. 101 (Lepiscopo Decl. at ¶ 29); Ex. 122 (Parra Complaint). The complaint alleges that defendant Certified Document Center sent Mr. Parra a "*Final Notice" mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Edgard Parra*." The notice showed the balance on Mr. Parra's student loans was $31,000. Certified Document Center pressured Mr. Parra to sign on to their | Disputed in Part. The Bureau does not dispute that Edgard Parra submitted a complaint to the Bureau on November 14, 2016. But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint. The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center d/b/a Certified Document Center. The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit |

| | | services but he did not. | scores, or ED's role as a servicer.<br><br>The complaint does not indicate when Docu Prep Center wanted to receive its fees in relation to the timing of its services. |
|---|---|---|---|
| 26. | On November 15, 2016, which was more than 3 years before this Action was **untimely** filed**, the Bureau received notice of the claims against Defendants in this Action through** a complaint filed with the Bureau by Lisa Verdi. | Ex. 101 (Lepiscopo Decl. at ¶ 30); Ex. 123 (Verdi Complaint). The complaint alleges that Ms. Verdi received a letter from defendant DocuPrep Center that they could reduce or obtain forgiveness of her student loan debt. She was charged $900 in advance fees, in two separate $450 payments. Subsequently, she received a fraud alert from her lender but was never issued a refund. | Disputed in Part. The Bureau does not dispute that Lisa Verdi submitted a complaint to the Bureau on November 15, 2016.<br><br>But the cited evidence does not support the statement that Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer.<br><br>The complaint does not indicate when Docu Prep Center received its fees in relation to the timing of its services. |
| 27. | On December 30, 2016, which was more than 3 years before this Action was | Ex. 101 (Lepiscopo Decl. at ¶ 31); Ex. 124 (Vasquez | Disputed in Part. The Bureau does not dispute that Eric Vasquez submitted a complaint to the Bureau on December 30, |

| | | | |
|---|---|---|---|
| | ***untimely*** filed***, the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Eric Vasquez. | Complaint). The complaint alleges that defendant DocuPrep Center sent Mr. Vasquez a mailer indicating that they could consolidate his student loans. He accepted and paid DocuPrep Center an $800 advance fee. Subsequently he checked his credit, but his student loans had not been consolidated. He never received a refund. | 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Docu Prep Center.<br><br>The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 28. | On December 31, 2016, which was more than 3 years before this Action was ***untimely*** filed***, the Bureau received notice of the claims against Defendants in this Action through*** a complaint filed with the Bureau by Donna Sohovich. | Ex. 101 (Lepiscopo Decl. at ¶ 32); Ex. 125 (Sohovich Complaint). The complaint alleges that defendant Assure Direct Services Ms. Sohovich a "*Final Notice*" *mail piece titled, "Student Loan Consolidation & Payment Reduction Program Prepared for Donna Sohovich*." The notice showed the balance on Ms. | Disputed in Part. The Bureau does not dispute that Donna Sohovich submitted a complaint to the Bureau on December 31, 2016.<br><br>But the cited evidence does not support the statement that the Bureau "received notice of the claims against" Nesheiwat or any other defendant through that complaint.<br><br>The complaint is about one consumer's experience and does not reference Nesheiwat or any other defendant besides Assure Direct Services. |

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

204

| | | | |
|---|---|---|---|
| | | Sohovich's student loanswas $26,000. In November 2016 Ms. Sohovich contacted defendant Assure Direct Services and spoke with a representative, who pressuredher to sign up for the student loan reduction program for an $899 advance fee, as 12/31/16 was the last date it would be available. She made two $299.67 payments. When Ms. Sohovich inquired further, she was referred by a third part to contact the Bureau to try to recover her $599.34 and expose defendant Assure Direct Service. | The complaint does not reference consumer reports or the FCRA, or reference false representations regarding lower interest rates, improved credit scores, or ED's role as a servicer. |
| 29. | During the time frame April 23, 2015, through January 6, 2017, all of which were more than 3 years before this Action was untimely filed, the Bureau received 108 consumer complaints against Defendants in this Action. | Ex. 101 (Lepiscopo Decl. at ¶ 35); Ex. 141 (Bureau'sConsumer Complaint Spreadsheet). | Disputed. This fact is not supported by the evidence cited because there is no evidence that the Bureau received 108 complaints more than three years before filing this action.

Nesheiwat's Ex. 141 is excerpted from a spreadsheet of consumer complaints from the FTC's Consumer Sentinel database. *See* SJ Ex. 30 at ¶¶ 6-7 (identifying Bates number of |

| | | | spreadsheet of Sentinel complaints produced to Nesheiwat); Ex. 101 at ¶ 35 (Nesheiwat counsel referencing same Bates number). Consumer complaints in Sentinel are submitted to the FTC directly by consumers, as well as by 45 data contributors, which includes the Bureau. *See* SJ Ex. 30 at ¶ 6.<br><br>Of the 108 complaints that Nesheiwat references, the Bureau contributed only 24 to Sentinel. *See* Ex. 141 (complaints "Created By" a "CFPB-USER"). There is no evidence that the Bureau received the other 84 complaints more than three years before filing this action.<br><br>In addition, the complaints referenced in this spreadsheet do not refer to Nesheiwat, Monster Loans, Direct Document Solutions, or Secure Preparation Services. *See* SJ Ex. 66 (Supp. Schneider Decl.) at ¶¶ 3-9. |
|---|---|---|---|

Consol. Stmts. of Undisputed & Disputed Facts ISO Pl.'s Mot. for Summ. Judg. Against Def. Nesheiwat

206

Dated: July 9, 2021

/s/ Colin Reardon
Leanne E. Hartmann
E. Vanessa Assae-Bille (*pro hac vice*)
Colin Reardon (*pro hac vice*)
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Plaintiff Bureau of Consumer
Financial Protection*