UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 8:20-cv-00043-SB-ADS | Date: | August 10, 2021 |
|---|---|---|---|

| Title: | *Bureau of Consumer Financial Protection v. Chou Team Realty LLC, et al.* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** ORDER ON MOTION FOR SUMMARY JUDGMENT (Dkt. No. 189)

    Plaintiff Bureau of Consumer Financial Protection (Bureau) brought this action against Defendant Jawad Nesheiwat (and others) under the Fair Credit Reporting Act (FCRA), the Consumer Financial Protection Act of 2010 (CFPA), and the Telemarketing Sales Rule (TSR). The Bureau now seeks summary judgment on its claims against Nesheiwat. Dkt. No. 189-1 (Motion). Nesheiwat opposed the Motion primarily by raising evidentiary challenges to the declarations the Bureau submitted in support of its Motion.[1] Dkt. No. 197 (Opp.). For the reasons stated herein, the Court grants the Motion in full.

---

[1] Most of these challenges were struck for procedural deficiencies. Dkt. No. 222. However, even if they had been procedurally proper, the filings are substantively lacking. Nesheiwat's objections were boilerplate and insufficiently detailed to allow for informed rulings. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (declining to "scrutinize each [evidentiary] objection and give a full analysis of identical objections raised as to each fact" where parties asserted only "boilerplate recitations of evidentiary principles or

# DISCUSSION

## A. Background

This case involves alleged violations of various consumer financial protection laws. Nesheiwat was—at various times—a limited partner in multiple debt-relief businesses: Docu Prep Center, Certified Doc Prep Services, Assure Direct Services, Direct Document Solutions, and Secure Preparation Services (collectively, the Student Loan Debt Relief Companies (SLDRC)). Dkt. No. 220, Consolidated Statement of Undisputed Facts (SUF) P4-P29, P38, P60-P61.[2] In exchange for a fee, the SLDRC purported to provide consumers with assistance in consolidating their federal student loans and enrolling in loan repayment and forgiveness programs offered by the U.S. Department of Education (DOE). SUF P55-P56. Notably, DOE does not charge borrowers any fees to consolidate loans or to access any loan repayment and forgiveness programs. SUF P42.

The SLDRC primarily marketed services to consumers using direct-mail marketing. Sales representatives—self-described "Student Loan Advisors"—also enrolled consumers in the SLDRC programs over the phone. SUF P57-P58, P71, P82, P84-P91. Between 2015 and 2017, Nesheiwat oversaw these marketing efforts and designed the phone scripts used by the sales representatives. SUF P264-P265, P269-P276, P279-P287. To facilitate the targeting of consumers, Nesheiwat—working through a mortgage company known as Monster Loans— represented to Experian Information Solutions, Inc. (Experian) that Monster Loans was obtaining prescreened lists to send firm offers of credit to consumers for mortgage loans. SUF P99-P102, P109, P111-P117. Instead, Nesheiwat used these prescreened lists to target consumers through the SLDRC and charge them advance fees for services that were never ultimately rendered. SUF P118-P123. With

---

blanket objections without analysis applied to specific items of evidence") (internal citations omitted).

[2] Most, if not all, of Nesheiwat's "disputes" of fact in the SUF are based on his contention that "[t]here is no admissible evidence to support this assertion." *Id.* Because the objections raised in the SUF are boilerplate and conclusory, the Court overrules them. *See United States v. HVI Cat Canyon, Inc.*, 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016) ("The parties' evidentiary objections are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded. As such, the court overrules the parties' objections.") (citations omitted).

Nesheiwat's aid, Monster Loans also sold the prescreened lists it purchased from Experian to Eduardo Martinez (Martinez), who in turn resold the lists to other student loan debt relief companies—some of which were affiliates of the SLDRC. SUF P124-P126.

Most of the involved entities and individuals have either defaulted in this action or have reached a stipulated final judgment with the Bureau. The Bureau now seeks summary judgment against Nesheiwat alone.

B. **Legal Standard**

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The moving party has the initial burden of establishing that there are no disputed material facts. *Id.* at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein," *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) and may only consider admissible evidence, Fed. R. Civ. P. 56(e). Arguments based on conjecture or unfounded belief do not raise a genuine issue of material fact. Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1481 n.4 (9th Cir. 1994) (citing *Anderson*, 477 U.S. at 249).

C. **The Bureau's Claims**

Nesheiwat's opposition to the Motion is essentially limited to the following conclusory statement: "the Bureau has failed to provide admissible and undisputed

material facts to prove [Claim __ ] of the SAC, and, therefore, the Court should deny the MSJ as to [Claim __ ]." Opp. at 10, 12, 13, 15, 16, 17, 18, 20, 21, 22, 24 (making identical arguments in opposition to summary judgment on Claims 1-11). There is not a single case cited in the Opposition's "Legal Argument" section. Indeed, there are only seven cases cited in total in the 24-page brief, six of which are cited for the summary judgment standard and the seventh in support of Nesheiwat's statute of limitations argument. When Nesheiwat cites a statute, he does so only to reiterate the elements of the claims against him. By failing to raise any substantial argument, Nesheiwat effectively concedes that if the Court denies his boilerplate evidentiary objections—which it does—the Bureau can prevail on each of its claims.

      1.     **FCRA Claim**

The FCRA prohibits an individual or business from obtaining or using a consumer report unless it is for a permissible purpose and the purpose is certified by the prospective user of the report. 15 U.S.C. § 1681b(f); 15 U.S.C. § 1681a(b). "Consumer reports" include the prescreened lists at issue in this case. 15 U.S.C. § 1681a(d)(1). Any defendant charged with a violation of the FCRA bears the burden to show they "had an authorized purpose to acquire" the consumer report. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 495 (9th Cir. 2019). Use of a consumer report in connection with any credit or insurance transaction that is not initiated by the consumer is permitted if, among other things, "the transaction consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(i).

Here, the evidence is undisputed that Nesheiwat obtained and later used prescreened lists from Experian without a permissible purpose. He did so primarily by applying for accounts through various SLDRC. SUF P100-P101, P111, P115.[3] Nesheiwat intended to use the Experian account to buy prescreened

---

[3] Nesheiwat repeatedly disputes sworn statements from others by pointing to an excerpt of an interview conducted by the Bureau with Edward Avalos Martinez. However, Martinez's testimony does not actually contradict any of the other statements. He merely states that another individual (Robert Hoose) "was probably the loudest voice" and "was down there in the trenches running the business" of the SLDRC. Dkt. No. 201-2. But this does not exculpate Nesheiwat. This is particularly so given that Martinez went on to testify immediately thereafter that Hoose "would get outvoted by Tom, Sean, and [Nesheiwat]." *Id.* at 154:3-6. Similarly, the SLDRC articles of incorporation (Dkt. No. 201-3)—also repeatedly

lists for Docu Prep Center to use to send direct mailers.  SUF P118.  And that is what he did.  SUF P122-P123, P140-P142, P287.  Nesheiwat then sold those prescreened lists to Martinez, who in turn used a company he controlled to resell the prescreened lists to other SLDRC.  SUF P124-P126.  A similar process was repeated with another of the SLDRC in 2017.  SUF P150-P159.

Nesheiwat never used the prescreened lists obtained from Experian to make firm offers of credit or insurance.  Instead, he used the lists to send direct mail solicitations from the SLDRC he controlled to consumers whose information was contained in those lists.  The mailers stated that the "[b]enefits of the Consolidation Program may include" an "[i]nterest rate reduction regardless of balance or pay history."  SUF P163.  Thus, the SLDRC made false promises to consumers through direct mail and in sales calls in attempts to enroll consumers in a "Student Loan Consolidation & Payment Reduction Program."  SUF P160-P169.

In response to the evidence and argument presented by the Bureau, Nesheiwat only argues that the Bureau lacks admissible and undisputed evidence on each element of an FCRA claim.  Opp. at 9-10.  He is incorrect.  The undisputed evidence shows that Nesheiwat—working through the SLDRC and the employees working for the SLDRC—used or obtained prescreened lists for an illegal purpose.  Accordingly, the Court grants summary judgment for the Bureau on the FCRA claim.

### 2. TSR and CFPA Claims

The Bureau also claims that Nesheiwat violated two components of the TSR: the advance fees provision and the deceptive practices provision.  Mot. at 14-15.  Under the TSR, it is unlawful for a seller or telemarketer to receive advance fees for debt-relief services or to misrepresent any material aspect of a debt-relief service.  16 C.F.R. § 310.3(a)(2)(x); 16 C.F.R. § 310.4(a)(5)(i).  The Bureau posits that the same misrepresentations that constitute a violation of the TSR's deceptive practices provision also make out the basis for a violation of the CFPA.  Mot. at 14-19.  Through the SLDRC, Nesheiwat, a "seller" or "telemarketer," offered "debt relief services" (as defined in the TSR, 16 C.F.R. §§ 310.2(o), (dd), (ff)) by providing a program or service represented to alter the terms of consumers' student loans by consolidating consumers' loans, lowering consumers' interest rates and

---

cited by Nesheiwat to evidence his own lack of involvement—do not create any genuine dispute of material fact.

monthly payments, and achieving loan forgiveness.  SUF P160-P169.  He is therefore subject to the TSR.

Fees may only be collected under the TSR after sellers or telemarketers (like Nesheiwat) have both (1) renegotiated or altered a debt on behalf of a consumer and (2) the consumer has made at least one payment under the altered terms of their loans.  16 C.F.R. § 310.4(a)(5)(i).  Yet the SLDRC—at Nesheiwat's direction—collected advance fees in violation of the TSR.  SUF P215, P226-P229.  At the time, Nesheiwat was familiar with the provisions of the TSR governing the collection of such fees.  SUF P242.  Nevertheless, he directed the SLDRC to collect the fees and substantially assisted them in doing so.  16 C.F.R. § 310.3(b); 12 U.S.C. § 5536 (a)(3).

The TSR also prohibits sellers and telemarketers from misrepresenting any material aspect of a debt-relief service.  16 C.F.R. § 310.3(a)(2)(x).  It is undisputed that the representations Nesheiwat and the SLDRC made to consumers about lower interest rates, improved credit scores, and the identity of the loan servicers were false.  SUF P160-P175, P189-P199, P201-P214.  Nesheiwat participated extensively in the management and operation of the SLDRC.  SUF P264.  This included his giving the SLDRC managers specific and detailed direction on how to sell the company's services, overseeing the direct-mail marketing, editing solicitation letters, and managing the use of phone scripts for sales representatives.  SUF P269-P276, P279-P288.  Nesheiwat made no effort to verify the truthfulness of the statements in the materials used to market to consumers—and much of the information provided therein was false.  SUF P277-P278.

Beyond violating the TSR, the misrepresentations discussed above also constitute a violation of the CFPA's prohibition on deceptive practices.  An act or practice is considered "deceptive" under the CFPA if it (1) is likely to mislead consumers acting reasonably under the circumstances and (2) is material.  *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (citation omitted).  Express representations are presumed to be material, and courts consider these likely to mislead consumers either when the statement was false or when the advertiser lacked a reasonable basis for asserting that the message was true.  *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994).  Nesheiwat and the SLDRC made material, false statements about the services offered by the SLDRC to induce consumers to pay advance fees for the programs offered by the

SLDRC.  SUF P160-P175, P192-P199, P209-P214.  As such, Nesheiwat violated the CFPA.[4]

In cases where an individual defendant "had control over the marketing materials and knowledge of their contents," courts have found it appropriate to grant summary judgment on claims brought under the CFPA.  *Gordon*, 819 F.3d at 1193; *see F.T.C. v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999) ("The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability.") (citations omitted).  Here, it is undisputed that Nesheiwat was heavily involved in and controlled much of the SLDRC's activities.  This warrants a finding (relevant for purposes of calculating the appropriate civil penalties under 12 U.S.C. § 5565(c)(2) and 12 C.F.R. § 1083.1) that he acted recklessly.  Accordingly, summary judgment is appropriate here on the Bureau's claims against Nesheiwat under the TSR and CFPA—including those claims predicated on his substantially assisting the SLDRC in violating those same statutes (e.g., Claims II-XI).[5]

### D. Invocation of the Fifth Amendment

To the extent that there remains any question about Nesheiwat's culpability here—and there appears to be none on this record—the Court considers Nesheiwat's refusal to answer questions or respond to discovery in this case.  Rather than respond to the Bureau's questions, Nesheiwat invoked his rights under the Fifth Amendment.  SUF P290-P304.  In civil cases, such an invocation allows the court to draw an adverse inference.  *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008).  It further permits the court to use its discretion to shift the burden to the defendant to disprove the fact at issue.  *S.E.C. v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998).

Here, Nesheiwat's refusal to answer even the most basic questions about his involvement with the operations of the SLDRC "support[s] the conclusion that [he]

---

[4] Nesheiwat further violated the CFPA's provision stating that covered persons may not violate a federal consumer financial law—including the TSR and FCRA.  12 U.S.C. § 5536(a)(1)(A).

[5] Nesheiwat's argument that the Seventh Amendment guarantees him the right to a jury trial in this case (Opp. at 5-6) is incorrect.  In cases like the one at bar, where there is no dispute of material fact on the plaintiff's claims, a defendant does not have an unfettered right to proceed to trial.

knew exactly what was going on—or at least recklessly disregarded the reality of the situation." S.E.C. v. Autocorp Equities, Inc., 292 F. Supp. 2d 1310, 1324 (D. Utah 2003).  Though the evidence provided by the Bureau is sufficient to find that Nesheiwat violated the FCRA, TSR, and CFPA, his refusal to answer questions throughout this case, coupled with the affirmative evidence of violations, allows the Court to draw an adverse inference about his intent.

### E. Nesheiwat's Statute of Limitations Defense Fails

Finally, Nesheiwat argues that summary judgment should be granted in his favor because the Bureau's claims are barred by the CFPA's statute of limitations. Opp. at 2-5 (citing 12 U.S.C. § 5564(g)(1)).  This argument fails on procedural and substantive grounds.

Nesheiwat did not move for summary judgment, and this Court's standing order does not permit cross-motions for summary judgment. MSJ Order (10.27.20) ¶ 1(d).  His statute of limitations defense thus fails procedurally.  It fares no better substantively.  While there is a three-year statute of limitations for violations of federal consumer financial protection laws, the limitations period begins to run only "after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1).  Nesheiwat appears to argue that the Bureau was on notice of the claims against him because of consumer complaints about the SLDRC. Opp. at 2-5.  But there is no "constructive discovery" rule set forth in the statute—and Nesheiwat has not shown that the Court is free to engraft one onto it, especially when the Supreme Court has cautioned against any such enlargement in construing such statutes against the government. Badaracco v. Comm'r, 464 U.S. 386, 391 (1984) ("Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.") (citation omitted).  What's more, the vast majority of the complaints Nesheiwat cites were not even made to the Bureau but rather were submitted to the Federal Trade Commission's Consumer Sentinel database. Dkt. No. 191-35.  Of the 108 complaints referenced, only 24 were received by the Bureau, and none of those 24 complaints refers to Nesheiwat or Monster Loans. See SUF D3-D8, D10-D19, D21-D29 (describing complaints made specifically against Docu Prep Center d/b/a Certified Document Center, Assure Direct Services, and Certified Doc Prep).

Nesheiwat provides no competent evidence that the Bureau discovered his violations of federal consumer financial protection laws prior to January 9, 2017, three years before the complaint in this action was filed.  Accordingly, he cannot

prevail on his argument that all of the Bureau's claims are barred by 12 U.S.C. § 5564(g)(1).

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Motion in full. The Court finds that injunctive relief,[6] restitution,[7] and a civil money penalty are all appropriate remedies here.[8] The Bureau is directed to file a proposed conforming judgment by no later than **August 27, 2021**.

---

[6] A permanent injunction is justified when there is "some reasonable likelihood of future violations." *Commodity Futures Trading Commission v. Co Petro Marketing Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982). This is true even if Nesheiwat has ceased his unlawful activities, so long as recurrence remains possible. *Affordable Media, LLC*, 179 F.3d at 1237. Where, as here, the illegal conduct is elaborate and wide-ranging, regulatory agencies may seek injunctive relief "which extends beyond the immediate facts" of the case, using "fencing in" provisions "to prevent similar and related violations from occurring in the future." *Trans World Accts., Inc. v. F.T.C.*, 594 F.2d 212, 215, 217 (9th Cir. 1979).

[7] The CFPA authorizes the Court to grant relief on behalf of consumers, including a refund of moneys, restitution, and disgorgement or compensation for unjust enrichment. 12 U.S.C. § 5565(a)(2). "Restitution may be measured by the 'full amount lost by consumers rather than limiting damages to a defendant's profits.'" *Gordon*, 819 F.3d at 1195.

[8] Nesheiwat did not meaningfully oppose the Bureau's request for relief. Instead, he incorrectly contends that "the Bureau further failed to provide undisputed and admissible evidence to support any type of relief, including any amount of monetary relief." Opp. at 24.