# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>        Plaintiff,<br><br>vs.<br><br>Chou Team Realty, LLC, et al.,<br><br>        Defendants. | Case No.: 8-20-cv-00043-SB-ADS<br><br>**[PROPOSED] JUDGMENT AGAINST JAWAD NESHEIWAT** |

      Plaintiff Bureau of Consumer Financial Protection ("Bureau") filed a motion for summary judgment under Federal Rule of Civil Procedure 56 against Defendant Jawad Nesheiwat ("Defendant"). On August 10, 2021, after considering the pleadings, declarations, exhibits, summary-judgment briefing, evidentiary objections, and the entire record in this matter, this Court granted the Bureau's motion for summary judgment against Defendant on all claims and found that injunctive relief, restitution, and a civil money penalty are appropriate remedies in this case. ECF No. 233. The Court finds good cause to grant the following relief against Defendant.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

    1.    This is an action instituted by the Bureau under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681; the Telemarketing Sales Rule

1

("TSR"), 16 C.F.R. Part 310, the implementing regulation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d); and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A). The Second Amended Complaint seeks permanent injunctive relief, rescission or reformation of contracts, disgorgement, damages, redress, and civil money penalties. The Bureau has the authority to seek this relief. 12 U.S.C. § 5565.

2. This Court has subject-matter jurisdiction over this action because it was brought under federal consumer-financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and the plaintiff is an agency of the United States, 28 U.S.C. § 1345.

3. Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564, 5565, empower this Court to order injunctive and other equitable and legal relief against Defendant for violations of FCRA, the TSR, and the CFPA, and to award restitution, damages, refund of moneys, disgorgement of ill-gotten gains resulting from Defendant's unlawful practices, and civil money penalties for violations of the Federal consumer-financial laws.

4. Uncontroverted facts show that, since February 2015, the Student Loan Debt Relief Companies charged Affected Consumers approximately $19,699,870 in fees paid by Affected Consumers (not including fees that were refunded to consumers).

5. Because of his violations of the TSR and CFPA, Defendant is jointly and severally liable for the full amount of fees paid by Affected consumers to the Student Loan Debt Relief Companies. Pursuant to the Court's authority to award legal restitution, the Bureau is entitled to a judgment for monetary relief of $19,699,870 against Defendant as redress for the fees paid by Affected Consumers.

6. Defendant has recklessly violated FCRA, the TSR, and the CFPA,

warranting a second tier civil money penalty of $116,142,160. 12 U.S.C. § 5565(c)(2)(B).

7. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

8. Entry of this Judgment is in the public interest.

## DEFINITIONS

9. The following definitions apply to this Order:
   a. "Affected Consumers" includes all consumers who, since February 1, 2015, were charged fees by any of the Student Loan Debt Relief Companies.
   b. "Assisting Others" includes but is not limited to:
      i. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to any telephone-sales script, direct-mail solicitation, or the text of any Internet website, email, or other electronic communication;
      ii. providing names of, or contributing to the generation of, potential customers;
      iii. participating in or providing services related to the offering, sale, or servicing of a product, or the collection of payments for a product;
      iv. acting or serving as an owner, officer, director, manager, principal, partner, limited partner, member, employee, independent contractor, or agent of any entity; and
      v. investing or loaning money.

3

c. "Bureau" means the Bureau of Consumer Financial Protection.
d. "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:
    i. extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);
    ii. providing financial advisory services to consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and
    iii. engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.
e. "Consumer Report" means a "consumer report," as that term is defined in § 603(d) of FCRA, 15 U.S.C. § 1681a(d).
f. "Consumer Reporting Agency" means a "consumer reporting agency," as that term is defined in § 603(f) of FCRA, 15 U.S.C. § 1681a(f).

g. "Debt-Relief Service" means any product, service, plan, or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt, including but not limited to a student-loan debt, mortgage-loan debt, credit-card debt, or tax debt or obligation, between a person and one or more creditors or debt collectors, including but not limited to a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

h. "Defendant" means Jawad Nesheiwat, and any other names by which he may be known.

i. "Dwelling" means a residential structure containing four or fewer units, whether or not that structure is attached to real property, that is primarily for personal, family, or household purposes. The term includes any of the following if used as a residence: an individual condominium unit, cooperative unit, mobile home, manufactured home, or trailer.

j. "Effective Date" means the date on which the Order is entered on the docket.

k. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

l. "Mortgage Loan" means any loan secured by a dwelling, and any associated deed of trust or mortgage.

m. "Prescreened Consumer Reports" means Consumer Reports relating to consumers furnished by a Consumer Reporting Agency in connection with credit or insurance transactions that are not initiated by the consumers, pursuant to 15 U.S.C. § 1681b(c).

n. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Second Amended Complaint.

o. "Student Loan Debt Relief Companies" means Docu Prep Center, Inc., d/b/a DocuPrep Center, d/b/a Certified Document Center; Document Preparation Services, LP, d/b/a DocuPrep Center, d/b/a Certified Document Center; Certified Doc Prep, Inc.; Certified Doc Prep Services, LP; Assure Direct Services, Inc.; Assure Direct Services, LP; Direct Document Solutions, Inc.; Direct Document Solutions, LP; Secure Preparation Services, Inc.; Secure Preparation Services, LP, and their successors and assigns, individually, collectively, or in any combination.

p. "Telemarketing" means a plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

# ORDER

## I.

### Permanent Ban on Offering or Providing Debt-Relief Services

**IT IS ORDERED** that:

10. Defendant, whether acting directly or indirectly, is permanently restrained from:

    a. participating in, advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; and

    b. Assisting Others in, or receiving any remuneration or other consideration from, the provision, advertising, marketing, promoting, offering for sale, sale, or production of any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this paragraph.

## II.

### Permanent Ban on Offering or Providing Mortgage Loans

**IT IS FURTHER ORDERED** that:

11. Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from:

    a. participating in, advertising, marketing, promoting, offering for sale, selling, or providing any Mortgage Loan; and

    b. Assisting Others in, or receiving any remuneration or other consideration from, the provision, advertising, marketing, promoting, offering for sale, sale, or production of any Mortgage Loan.

Nothing in this Order shall be read as an exception to this paragraph.

## III.
## Permanent Ban on Telemarketing
## Consumer Financial Products or Services

**IT IS FURTHER ORDERED** that:

12. Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from participating in Telemarketing or Assisting Others engaged in Telemarketing any Consumer Financial Product or Service. Nothing in this Order shall be read as an exception to this paragraph.

## IV.
## Permanent Ban on Using or Obtaining Prescreened Consumer Reports

**IT IS FURTHER ORDERED** that:

13. Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from using, obtaining, offering, providing, selling, or arranging for others to use or obtain Prescreened Consumer Reports for any purpose. Nothing in this Order shall be read as an exception to this paragraph.

## V.
## Permanent Ban on Using or Obtaining
## Consumer Reports for Any Business Purpose

**IT IS FURTHER ORDERED** that:

14. Defendant, and his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from using, obtaining, offering, providing, selling, or arranging for others to use or obtain Consumer Reports for any business purpose. Nothing in this Order shall be read as an exception to this paragraph.

# VI.
# Consumer Information

**IT IS FURTHER ORDERED** that:

15. Defendant and his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, may not:

   a. disclose, use, or benefit from consumer information, including the name, address, or any information about the consumer's student loans, contained in or derived from Prescreened Consumer Reports obtained for use in marketing Debt-Relief Services; or

   b. disclose, use, or benefit from consumer information, including the name, address, telephone number, email address, social-security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), obtained from or through the activities of the Student Loan Debt Relief Companies.

*However*, consumer information may be disclosed if lawfully requested by a government agency or required by law, regulation, or court order.

# MONETARY PROVISIONS
# VII.
# Order to Pay Redress

**IT IS FURTHER ORDERED** that:

16. A judgment for monetary relief is entered in favor of the Bureau and against Defendant in the amount of $19,699,870 for the purpose of providing redress to Affected Consumers. The monetary judgment set forth in this section is immediately due and payable upon entry of this Order and is

enforceable against any asset owned by, on behalf of, for the benefit of, or in trust by or for Defendant.

17. Any funds received by the Bureau in satisfaction of the judgment in this section will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including but not limited to refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

18. If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge the Bureau's choice of remedies under this section and will have no right to contest the manner of distribution chosen by the Bureau.

19. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## VIII.
## Order to Pay Civil Money Penalty to Plaintiff

**IT IS FURTHER ORDERED** that:

20. Under §§ 1042(a) 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a), 5565(c), by reason of Defendant's violations of law and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $116,142,160 to the Bureau.

21. The civil money penalty set forth in this section is immediately due and payable upon entry of this Order and is enforceable against any Asset owned by, on behalf of, for the benefit of, or in trust by or for Defendant.

22. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

## IX.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED that**:

23. In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

24. Defendant must relinquish all dominion, control, and title to the funds transferred or paid under this Order to the fullest extent permitted by law, and no part of the funds may be returned to Defendant.

25. The facts found in the Court's order granting summary judgment to the Bureau will be taken as true and given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce their rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

26. The facts found in the Court's order granting summary judgment to the Bureau establish all elements necessary to sustain an action by the Bureau under § 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant, even in such Defendant's capacity as debtor-in-possession.

27. The civil penalty imposed by the Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

28. Under 31 U.S.C. § 7701, Defendant, unless he has already done so, must furnish to the Bureau any taxpayer-identification numbers associated with him, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

29. Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that he is entitled to, nor may Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

30. Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how such funds are used, Defendant may not:

    a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

31. Upon written request of a representative of the Bureau, any consumer reporting agency must furnish consumer reports to the Bureau concerning Defendant under § 604(a)(1) of FCRA, 15 U.S.C.§ 1681b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COMPLIANCE PROVISIONS

## X.

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

32. Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide such notice at least 30 days before the development, or as soon as practicable after learning of the development, whichever is sooner.

33. Within 7 days of the Effective Date, Defendant must:
    a. designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant;
    b. identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all

of their names, telephone numbers, and electronic, physical, and postal addresses;

    c.  describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

    d.  identify Defendant's telephone numbers and all electronic, physical, and postal addresses, including all residences; and

    e.  describe in detail Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including his title, role, responsibilities, participation, authority, control, and ownership.

34. Within 14 days of the Effective Date, Defendant must submit to the Enforcement Director a completed financial statement accurate as of the Effective Date, using the form attached as Attachment A to this Order, and all documents requested in the form attached as Attachment A.

35. Defendant must report any change in the information required to be submitted under Paragraph 33 at least 30 days before the change, or as soon as practicable after learning about the change, whichever is sooner.

36. Within 90 days of the Effective Date, and again one year after the Effective Date, Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury ("Compliance Report"), which, at a minimum:

    a.  lists each applicable paragraph and subparagraph of this Order and describes in detail the manner and form in which such Defendant has complied with each such paragraph and subparagraph of this Order;

    b.  describes in detail the manner in which and purposes for which Defendant has used or obtained Consumer Reports; and

  c. attaches a copy of each Order Acknowledgment obtained under Section XI, unless previously submitted to the Bureau.

## XI.
## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

37. Within 7 days of the Effective Date, Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

38. Within 30 days of the Effective Date, Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to each of its owners, board members, officers, LLC members and managers, and general and limited partners, as well as any managers, employees, or other agents and representatives who have responsibilities related to Consumer Reports.

39. Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section X, any future owners, board members, officers, LLC members and managers, and general and limited partners, as well as any managers, employees, or other agents and representatives who will have responsibilities related to Consumer Reports before they assume their responsibilities.

40. Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this section.

41. Within 90 days of the Effective Date, Defendant must provide the Bureau with a list of all persons and their titles to whom this Order was

delivered through that date under Paragraphs 38 and 39 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 40.

## XII.
## Recordkeeping

**IT IS FURTHER ORDERED** that:

42. Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must create all documents and business records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau. Defendant must retain these documents for at least 10 years after creation and make them available to the Bureau upon the Bureau's request.

43. Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must maintain, for 10 years from the Effective Date, or 10 years after creation, whichever is longer:

    a. all records concerning Consumer Reports used or obtained; and
    b. all consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

Defendant must make these materials available to the Bureau upon the Bureau's request.

## XIII.
## Notices

**IT IS FURTHER ORDERED** that:

44. Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Chou Team Realty, LLC, et al.*, Case No. 8:20-cv-00043-SB-ADS," and send them by overnight courier or first-class mail to the below address, and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement

Bureau of Consumer Financial Protection

ATTENTION: Office of Enforcement

1700 G Street, N.W.

Washington D.C. 20552

## XIV.
## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

45. Defendant must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendant must provide such information in his agents' possession or control within 14 days of receiving a written request from the Bureau.

## XV.
## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

46. Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide testimony; or produce documents.

47. For purposes of this section, the Bureau may communicate directly with Defendant, unless Defendant retains counsel related to these communications.

48. Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

49. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XVI.

## Retention of Jurisdiction

**It is FURTHER ORDERED that**:

50. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

It is **SO ORDERED**, this _____ day of _____, 2021.

_____
The Honorable Stanley Blumenfeld, Jr.
United States District Judge