COLIN REARDON (NY Bar #4945655)
E-mail: colin.reardon@cfpb.gov
Phone: (202) 435-9668
E. VANESSA ASSAE-BILLE (NY Bar #5165501)
E-mail: elisabeth.assae-bille@cfpb.gov
Phone: (202) 435-7688
1700 G Street, NW
Washington, D.C. 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar #264787) – Local Counsel
E-mail: leanne.hartmann@cfpb.gov
Phone: (415) 844-9787
301 Howard St., Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, ) | Case No.: 8-20-cv-00043-SB-ADS |
| Plaintiff, ) | |
| vs. ) | **RESPONSE IN SUPPORT OF PLAINTIFF'S PROPOSED CONFORMING JUDGMENT AGAINST DEFENDANT JAWAD NESHEIWAT** |
| Chou Team Realty, LLC et al., ) | |
| Defendants. ) | |

## BACKGROUND

In support of its summary judgment motion, the Bureau of Consumer Financial Protection laid out the undisputed evidence establishing Defendant Jawad Nesheiwat's liability: he was central to a scheme that illegally obtained consumer reports containing sensitive information for millions of consumers. Then, with Nesheiwat's assistance, five student-loan debt-relief businesses (the "SDLR Companies") used that illegally obtained information to deceptively market debt-relief services. Over 23,000 consumers enrolled and were charged more than $19.6 million in fees resulting from unlawful conduct.

The Bureau's motion for summary judgment laid out the basis for holding Nesheiwat jointly and severally liable with the SLDR Companies for all fees charged. *See* ECF No. 189-1 at 22-23. In the proposed judgment that it submitted concurrently, the Bureau sought: judgment against Nesheiwat equal to the full amount of fees the SLDR Companies charged consumers, *see* ECF No. 189-2 at ¶¶ 32-25; injunctive relief banning him from the mortgage and debt-relief industries and from telemarketing consumer financial products or services, banning him from using or obtaining prescreened consumer reports and from using or obtaining consumer reports for any business purpose, and banning him from using consumer information obtained through the unlawful conduct, *id.* at ¶¶ 26-31; provisions enabling the Bureau to monitor Nesheiwat's compliance with the order, *id.* at ¶¶ 48-59, 61-64; and provisions to aid in collecting the money judgment and to identify harmed consumers, *id.* at ¶¶ 39-47, 60. Regarding the civil money penalty, the Bureau explained that the maximum penalty exceeded $115 million and that it had not identified evidence supporting mitigation, but that Nesheiwat could present evidence supporting mitigation in his opposition. ECF No. 189-1 at 25. But, as the Court found in its order granting summary judgment, Nesheiwat "did not meaningfully oppose the Bureau's request for relief." ECF No. 233 at 9 n.8.

This Court granted the Bureau's motion in full, finding that injunctive relief, restitution, and a civil money penalty are all appropriate remedies. ECF No. 233 at 9. At the Court's direction, the Bureau filed a proposed conforming judgment, which again proposed a judgment for the full amount of fees charged and included the same injunctive and compliance-monitoring provisions. *Compare* ECF No. 234-1 at ¶¶ 10-19, 23-33, 35-49 *with* ECF No. 189-2 at ¶¶ 26-35, 39-64.

Nesheiwat now objects to the injunctive relief sought, for the first time challenging its "breadth, scope, and subject matters." ECF No. 235 at 4.

1    Nesheiwat also argues that the Court should award "$0" in restitution and,

2    without citing any evidence supporting mitigation, that it should reduce the

3    penalty to $200,000. *Id*. at 3-4.

4                              **ARGUMENT**

5    **I.    The Court properly applied Ninth Circuit precedent in ordering full**

6         **legal restitution.**

7         The Court's summary judgment order found that "injunctive relief,

8    restitution, and a civil penalty are all appropriate remedies here." ECF No. 233

9    at 9. With respect to restitution, the Court recognized that under Ninth Circuit

10   precedent, restitution to consumers is appropriately measured by the "full

11   amount lost by consumers rather than limiting damages to a defendant's

12   profits." *Id.* at 9, n.7 (quoting *CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir.

13   2016)). Here, the undisputed facts established this amount at $19,699,870—the

14   net total of fees that the SLDR Companies charged consumers since February 1,

15   2015. *See* ECF No. 220 at p. 131 (Pl.'s Undisputed Fact ¶ 261). Nesheiwat did

16   not dispute the Bureau's calculation or the facts on which it was based. *See id.*;

17   *see also* ECF No. 233 at 9 n.8 (noting that Nesheiwat did not "meaningfully

18   oppose" Bureau's request for restitution). The Court should therefore reject

19   Nesheiwat's belated attempts to reopen this issue and conclude that he has

20   waived his arguments with respect to restitution by failing to raise them in his

21   summary-judgment briefing.

22        If the Court does consider these arguments, it should reject them. In his

23   objections, Nesheiwat still does not dispute that this amount accurately reflects

24   the amount of fees unlawfully charged. Instead, Nesheiwat invokes two cases

25   that he claims require this Court to award "$0" in restitution. ECF No. 235 at 3.

26   Nesheiwat is wrong. *Liu v. SEC*, 140 S. Ct. 1936 (2020), simply held that the

27   Securities and Exchange Commission is statutorily authorized to secure

28   disgorgement awards that do not exceed a wrongdoer's net profits. *Id*. at 1946.

1   It has no bearing on the Bureau's ability—confirmed by this Circuit's

2   precedent—to secure the different statutory remedy authorized here: restitution

3   equal to the total fees consumers paid. *Cf. CFPB v. Glob. Fin. Support, Inc.*,

4   No. 15-cv-2440, 2021 WL 1165078, at *4 (S.D. Cal. Mar. 26, 2021)

5   (explaining that *Liu* "has no bearing on whether restitution under the [Consumer

6   Financial Protection Act of 2010] must exclusively be calculated by measure of

7   net profits"); *see also* 12 U.S.C. § 5565(a)(1), (2) (authorizing the Court to

8   award "any appropriate legal or equitable relief," including restitution and

9   refund of moneys).

10    Likewise, *CFPB v. Consumer First Legal Group, LLC*, 6 F.4th 694, 710-

11  11 (7th Cir. 2021), does not overrule this Circuit's precedent approving the type

12  of restitution award that the Court ordered. In any event, *Consumer First*'s

13  discussion of equitable relief does not apply here, given that the restitution the

14  Bureau seeks is properly characterized as *legal* rather than equitable. Restitution

15  is a legal remedy when a plaintiff seeks, as the Bureau does here, "to obtain a

16  judgment imposing a merely personal liability upon the defendant to pay a sum

17  of money." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213

18  (2002). By contrast, a judgment seeking equitable restitution would be one that

19  required the return of "particular funds or property" in Nesheiwat's possession.[1]

20  *See id*. at 213-14.

21    Finally, Nesheiwat asserts—without any record support—that he "did not

22  charge or receive any fees." ECF No. 235 at 11. Even if he had cited supporting

23  evidence, the proposed restitution judgment would still be proper. This Court

24  

---

25  [1] The proposed judgment submitted with the Bureau's Motion for Summary
    Judgment erroneously used the term "equitable restitution" rather than "legal
26  restitution," but the motion itself requested that Nesheiwat be held personally
    liable for a sum certain, $19,699,870, which is a calculation of net fees charged
27  to consumers (i.e., a legal remedy), not a request for the return of particular
    funds or property in Nesheiwat's possession (i.e., an equitable remedy).
28

found that Nesheiwat violated the Telemarketing Sales Rule's ("TSR") prohibitions against advance fees and misrepresentations, substantially assisted the SLDR Companies' violations of those same prohibitions, committed deceptive acts or practices in violation of the Consumer Financial Protection Act of 2010 ("CFPA"), and substantially assisted deceptive acts or practices in violation of the CFPA. ECF No. 233 at 5-7. The Court also found that "Nesheiwat was heavily involved in and controlled much of the [SLDR Companies'] activities." *Id*. at 7. In circumstances like this, it is appropriate to hold Nesheiwat and the companies jointly and severally liable for the full amount of fees resulting from unlawful conduct. *See Gordon*, 819 F.3d at 1196; *see also* 12 U.S.C. § 5536(a)(3); *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240-41 (11th Cir. 2017).[2]

## II.    The civil money penalty in the proposed judgment is proper.

The Court determined that a civil money penalty is appropriate, that Nesheiwat's violations were reckless, and that Nesheiwat had not "meaningfully oppose[d]" the Bureau's request for a penalty. ECF No. 233 at 6, 9 & n.8. The Bureau's proposed judgment would thus order the maximum penalty of $116,142,160. *See* ECF No. 189-1 at 24-25 (describing basis for penalty calculation). Rather than challenge the penalty calculation or point to evidence in the record supporting mitigation, Nesheiwat lists penalties entered against other defendants and urges the Court to impose a penalty of $200,000— a figure he admits is rooted in nothing other than his last settlement offer. ECF No. 235 at 4 n.2.

---

[2] Nesheiwat also argues that this Court should not order restitution against him because the default judgment against Defendant Bill Abdel did not include restitution. ECF No. 235 at 3. But that default judgment was based solely on Abdel's violations of the Fair Credit Reporting Act, violations for which the Bureau did not seek restitution. *See* ECF No. 177 at 4-5, 7, 8-11 (order describing Abdel's violations and relief sought by Bureau); *see also* ECF No. 184 (default judgment against Abdel).

The Court should reject Nesheiwat's arguments as waived because he failed to raise them in his summary-judgment papers. If it does not, it should reject those arguments as meritless. The CFPA requires the Court to consider mitigating factors in determining the penalty. *See* 12 U.S.C. § 5565(c)(3). The penalties in the previous judgments reflect different circumstances and different evidence regarding those statutory mitigating factors. Some penalties were the product of settlements and were based on the defendant's demonstrated inability to pay. *See, e.g.*, ECF No. 90 at ¶¶ 24, 28; ECF No. 115 at ¶ 21; ECF No. 181 at ¶ 22. Other penalties were based on judgments in which the Bureau sought penalties for single, tier-one violations. *See* ECF No. 177 at 10-11; *see also* ECF Nos. 183, 184. But these previous judgments need not factor into the Court's analysis—neither *Liu* nor *Consumer First* requires that penalties must be proportionate between settling and non-settling defendants or between defendants with different levels of culpability. In fact, *Liu* doesn't concern a civil money penalty. *See* 140 S. Ct. at 1942 ("We granted certiorari to determine whether § 78u(d)(5) authorizes the SEC to seek *disgorgement* beyond a defendant's net profits from wrongdoing." (emphasis added)).

Nesheiwat had opportunities to oppose the penalty amount. In its opening summary judgment brief, the Bureau explained that the maximum penalty exceeds $115 million and that the Bureau had not identified evidence supporting substantial mitigation. ECF No. 189-1 at 25. As the Bureau's opening motion further explained, Nesheiwat would have the opportunity to address this argument in his opposition to the Bureau's summary judgment motion, by presenting evidence in support of mitigation. *Id*. Nesheiwat did not do so in his summary-judgment papers and still has not done so. Nor has he demonstrated an inability to pay. At his deposition, Nesheiwat declined to answer any questions about his financial situation, assets, and income on Fifth Amendment grounds. *See* ECF No. 220 at ¶ 304. This failure to introduce any

1  mitigating evidence supports awarding the maximum penalty in this

2  circumstance.

3          Nesheiwat also does not attempt to support his bare assertion that the

4  penalty amount, or any other relief in this case, would somehow violate his

5  constitutional right to due process. ECF No. 235 at 2. To the contrary,

6  Nesheiwat has received the same process as any other civil litigant and all that

7  he is entitled to. And as the Bureau made clear in its opening brief, the Court

8  may impose a lower penalty based on the CFPA's mitigating factors. *See* ECF

9  No. 189-1 at 25. But Nesheiwat cannot claim that his constitutional rights were

10  violated where he had the opportunity to present evidence, but chose not to do

11  so.

12  **III.     The injunctive relief sought by the Bureau is proper.**

13          The Court should deny Nesheiwat's request to limit the permanent

14  injunctive relief against him to student loan debt relief services. The injunctive

15  relief sought by the Bureau here is appropriate given that Nesheiwat's

16  numerous reckless violations spanned across the mortgage, debt-relief, and

17  telemarking industries. Nesheiwat's reliance on *Consumer First* is of no avail.

18  Setting aside that this case does not establish precedent in this Circuit, its facts

19  are also distinguishable. There, the Bureau only alleged violations involving the

20  mortgage debt-relief industry. *See Consumer First*, 6 F.4th at 701-02. The

21  defendants in that matter also purported to believe and argued that their conduct

22  was legal, a distinction that convinced the Seventh Circuit that their violations

23  did not rise to the level of recklessness. *Id*. at 712-13. By contrast, Nesheiwat

24  pleaded the Fifth Amendment throughout this litigation, which, as the Court

25  held, "support[s] the conclusion that [he] knew exactly what was going on—or

26  at least recklessly disregarded the reality of the situation." ECF No. 233 at 7-8

27  (quoting *SEC v. Autocorp Equities, Inc*., 292 F. Supp. 2d 1310, 1324 (D. Utah

28  2003)).

And though he now claims that the proposed injunctive relief would threaten his career, ECF No. 235 at 5-6, at his deposition, Nesheiwat refused to answer any of the Bureau's questions regarding his present business activities on Fifth Amendment grounds. *See* ECF No. 190-47 at 25:22-28:24, 135:18-141:6. To the extent his career involves the mortgage, debt-relief, and telemarketing industries, Nesheiwat has shown no ability or willingness to operate in those fields in a way that does not harm consumers and violate Federal consumer financial law. It is therefore entirely proper for the Court to impose this injunctive relief. *Cf. FTC v. Am. Home Servicing Ctr.*, LLC, No. 8:18-CV-00597-JLS-KES, 2019 WL 7171733, at *13 (C.D. Cal. Dec. 5, 2019) (granting broader injunctive relief where the "scheme of misrepresentations and fee solicitations to distressed debtors could easily be translated to the realm of marketing and sale other types of debt relief").

Finally, Nesheiwat complains that certain injunctive provisions would reach "individuals who are not presently before the Court, *e.g.*, officers, agents, servants, employees, and even **attorneys**." ECF No. 235 at 5 (bold in original). But those are precisely the individuals that Rule 68 explains may be bound by an injunction, to the extent they have actual notice of an order. *See* Fed. R. Civ. P. 68(d)(2).

## IV.    The additional provisions in the Bureau's proposed judgment are also proper.

Lastly, Nesheiwat argues that other provisions in the proposed judgment, such as the clauses pertaining to bankruptcy, notice, indemnification, reporting duties, and cooperation requirements, were not requested in the Bureau's Second Amended Complaint and amount to an overreach under the Bureau's authority. *See* ECF No. 235 at 6-8 (challenging ¶¶ 26-27, 29-33, 35-36, 38-43, 45-46 and 48 in proposed judgment). Nesheiwat is mistaken. In its "Demand for Relief," the Bureau requested that the Court "grant additional injunctive relief

as the Court may deem to be just and proper." ECF No. 141 at p. 43. And the Bureau sought these provisions in the proposed judgment it submitted with its summary judgment motion. *Compare* ECF No. 189-2 *with* ECF No. 234-1.

The clauses to which Nesheiwat objects fall squarely within the Court's discretion, and are consistent with the multiple judgments previously entered in this litigation, *see, e.g.*, ECF Nos. 90, 115, 181, 187, 188, and with judgments entered by other courts, *see, e.g.*, *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 213, 217 (D. Mass. 2009) (including monitoring provisions in permanent injunction and collecting cases); *Am. Home Serv. Ctr.*, 2019 WL 7171733, at *13 (including monitoring and reporting provisions to ensure compliance with permanent injunction); *FTC v. Mortg. Relief Advocs. LLC*, No. CV-14-5434-MWF-AGRX, 2015 WL 11257575, at *9 (C.D. Cal. July 1, 2015) (finding monitoring provisions appropriate); *see also* 15 U.S.C. § 1681b(a)(1) (authorizing consumer reporting agencies to furnish consumer reports pursuant to a court order).

Further, the record on summary judgment makes clear that this relief is appropriate. The breadth and duration of Nesheiwat's violations strongly suggest that, without continued oversight, he could easily engage in activities harmful to consumers. Accordingly, provisions enabling the Bureau to monitor Nesheiwat's compliance will help ensure that he does not engage in illegal activities subject to the Bureau's authority.

## CONCLUSION

For the foregoing reasons, the Court should enter the Bureau's [Proposed] Conforming Judgment Against Defendant Jawad Nesheiwat.

Dated September 7, 2021                    Respectfully Submitted,

                                           /s/ Colin Reardon
                                           Leanne E. Hartmann
                                           Colin Reardon (*pro hac vice*)
                                           E. Vanessa Assae-Bille (*pro hac vice*)
                                           Bureau of Consumer Financial Protection
                                           1700 G Street, NW
                                           Washington, D.C. 20552

                                           *Attorney for Plaintiff Bureau of*
                                           *Consumer Financial Protection*